**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Plaintiff, | Case No. 4:21-cv-01091-MWB |
| v. | JURY TRIAL DEMANDED |
| VINTAGE BRAND, LLC, | |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Plaintiff The Pennsylvania State University ("Penn State"), by and through its undersigned counsel, hereby alleges as follows for its First Amended Complaint against Defendant Vintage Brand, LLC ("Defendant"):

## Introduction

1.      This is an action for trademark infringement of Penn State's trademarks; counterfeiting; unfair competition; false designation of origin; and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, trademark dilution under Pennsylvania law, and trademark infringement and unfair competition under Pennsylvania common law.

2.      Defendant, through its website at <vintagebrand.com>, sells counterfeit Penn State-branded clothing and accessories.  Defendant does not have

a license agreement or any permission by Penn State to use Penn State's valuable trademarks.  Instead, Defendant is a serial infringer and blatantly uses its website to sell infringing merchandise from many colleges and universities.  Due to this persistent disregard for intellectual property rights, multiple colleges and universities have been forced to file suit against Defendant, including, but not limited to:  Purdue University, Baylor University, The University of Arizona, Arizona State University, The University of California at Berkeley and Los Angeles, The University of Colorado Boulder, The University of Oregon, Oregon State University, The University of Southern California, Leland Stanford Jr. University, University of Utah, University of Washington, and Washington State University.

3.     Defendant is willfully infringing Penn State's trademarks by branding and marketing apparel and other goods sold through its website <vintagebrand.com> under the PENN STATE name and/or with at least one of the Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo, and/or the Penn State Seal.  Defendant is further causing unfair competition and false designation of origin by claiming that the logos on its apparel are Penn State's logos.   Defendant is intentionally capitalizing on Penn State's name, marks, and goodwill to promote its business.  As a result, Penn State brings this action for federal and state trademark infringement, unfair competition, false designation of origin and trademark dilution.

**The Parties**

4.      Plaintiff is The Pennsylvania State University, a not-for-profit, State-related institution of higher education, created under the statutory authority of the Commonwealth of Pennsylvania, and which operates as an instrumentality thereof. Penn State maintains a place of business at 208 Old Main, University Park, Centre County, Pennsylvania 16802.

5.      Upon information and belief, Defendant Vintage Brand, LLC, is a limited liability company organized under the laws of Washington, with its principal place of business at 2211 Elliott Avenue, Suite 601, Seattle, Washington 98121.

**Jurisdiction and Venue**

6.      This Court has original jurisdiction over this Complaint for infringement of a trademark, unfair competition, false designation of origin, and trademark dilution involving a famous mark, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

7.      This Court has jurisdiction over all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendant.

8.     Defendant is subject to personal jurisdiction in this Court, as it has transacted business in Pennsylvania by offering to sell, selling, and delivering goods featuring one or more of Penn State's trademarks within Pennsylvania and this judicial district.  Defendant has therefore carried out its business and committed tortious acts and other wrongs within Pennsylvania and this judicial district.

9.     The Middle District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this judicial district.

## Penn State and its Protected Trademarks

10.     Penn State is the flagship public university of the Commonwealth of Pennsylvania.

11.     Penn State was founded in 1855 and began operating under the name "The Pennsylvania State University" in 1953.

12.     Penn State provides educational services, research, outreach, development and other related scholarly pursuits at multiple locations, within the Commonwealth of Pennsylvania, internationally, and online.  Since 1855, Penn State has grown to 24 campuses, 31,000 faculty and staff members, and over 100,000 students.

4

13.    Penn State is famous throughout the United States and the world for, among other things, its educational programs, athletics programs and services, and various and diverse student related services, such as entertainment services including sports exhibitions, theatrical productions, and musical concerts, as well as many goods and services related to the university, ranging from apparel to food items to alumni cruises.

14.    The goods and apparel Penn State markets and sells to consumers in connection with its trademarks (including the University Marks, as defined below) include t-shirts, sweatshirts, pennants, drinkware, socks, decals and magnets, kitchen and household products, coasters, pennants, and wall hangings.

15.    Penn State's athletic competitions are often televised to national and sometimes international audiences, and Penn State enjoys a large fan base throughout the country that is loyal to the University and its brand.

## **The PENN STATE Mark**

16.    Penn State has been using PENN STATE as a word and design mark continuously since 1908 for many goods and services.  The PENN STATE Mark designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the Mark is attached.

17.     To protect its valuable marks, Penn State has obtained numerous United States Patent and Trademark Office (**"USPTO"**) registrations for PENN STATE and marks incorporating PENN STATE in the United States and around the world. Those United States registrations include those listed in the following table, which sets out some (but not all) of the goods and services covered by these registrations:

| Mark | Services | Reg. No. and Date | Incontestable |
|---|---|---|---|
| PENN STATE | Int'l Cl. 16: Notebooks, looseleaf binders, notepads, writing paper and envelopes, pens, pencils, decals, stickers, playing cards, and printed publications<br><br>Int'l Cl. 21: Drinking mugs, tankards, glasses, cups, and tumblers<br><br>Int'l Cl. 24: Pennants and banners<br><br>Int'l Cl. 25: Night shirts, shirts, t-shirts, jerseys, sweat shirts, vests, sweaters, jackets, raincoats, golf gloves, ponchos, shorts, pants, | 1,308,610 (Dec. 11, 1984) | Yes |

|  | athletic warm-up suits, socks, hats, and visors<br><br>Int'l Cl. 27: Rugs and non-textile wall hangings |  |  |
| --- | --- | --- | --- |
| PENN STATE | Int'l Cl. 9: Sunglasses, decorative magnets, blank USB flash drives, headphones, mouse pads, cell phone cases<br><br>Int'l Cl. 21: Manual toothbrushes, non-electric portable coolers, salt and pepper shakers, bottle openers, flasks, coasters, not of paper or textile, ceramic mugs, utensils for barbecues, namely, forks, tongs, turners, drinking glasses, cutting boards<br><br>Int'l Cl. 28: Jigsaw puzzles | 5,766,698 (June 4, 2019) | No |

18.    Each of the registrations listed in Paragraph 17 is in full force and effect and have been since their respective dates of registration.  True and correct copies of the registration certificates for these marks are attached as **Exhibit A**.

19.     As noted in the chart above, one of the PENN STATE registered marks (U.S. Reg. No. 1,308,610) has obtained incontestable status under the Lanham Act, 15 U.S.C. § 1064, and is therefore conclusive evidence of the validity of that mark, of Penn State's registration and ownership of that mark, and of Penn State's exclusive right to use the mark in the United States.

20.     Similarly, the remaining PENN STATE registration (U.S. Reg. No. 5,766,698) is prima facie evidence of the validity of the PENN STATE mark, of Penn State's registration and ownership of the mark, and of Penn State's exclusive right to use the mark in the United States.

21.     In addition to its registrations, Penn State enjoys common law rights in the trademark PENN STATE through its extensive advertisement and use of that mark in connection with its goods and services continuously across the United States for decades.

22.     Penn State's rights in the trademark PENN STATE—including its common law rights and its rights covered by registrations—are collectively referred to as **the "PENN STATE Mark."**

23.     Penn State consistently and prominently displays and advertises the PENN STATE Mark in connection with its goods and services in the United States and throughout the world.

8

24.     Penn State's PENN STATE Mark is inherently distinctive.  In addition, as a result of Penn State's longstanding use and promotion of the PENN STATE Mark, the Mark has acquired secondary meaning (and become famous under the law), becoming widely recognized by the general consuming public as a designation identifying Penn State and its goods and services.

### Penn State's Lionhead, Nittany Lion, and Pozniak Lion Logos

25.     Penn State adopted a mascot called the "Nittany Lion" in approximately 1904.  Since then, Penn State has adopted and used several different design marks depicting this mascot.

26.     Penn State has been using the following Nittany Lion Logo



(**the "Lionhead Logo"**) for more than three decades in connection with, *inter alia*, "drinking glasses and ceramic mugs" and "t-shirts, sweat shirts, hooded sweat shirts, tennis shirts, and caps."  U.S. Reg. No. 1,370,866 (incontestable).  Penn State has also registered and used this Logo in connection with, *inter alia*, "decorative magnets," "cutting boards," and "ceramic mugs; tumblers; [and] cups."  U.S. Reg. No. 5,548,988.

9

27.    Additionally, Penn State uses in commerce and maintains a USPTO registration for the following design mark depicting its Nittany Lion mascot:



U.S. Reg. No. 1,350,286 (incontestable) (Nittany Lion on Rock Design covering, *inter alia*, "decorative magnetic stickers;" "notebooks, notepads, decals;" "drinking mugs, tankards, glasses, cups, tumblers;" "pennants," and "night shirts, shirts, t-shirts, jerseys, sweatshirts, sweaters, hats, visors, and men's ties").

28.    Penn State uses in commerce and maintains a USPTO registration for the following design marks depicting its Nittany Lion mascot:



U.S. Reg. No. 1,397,810 (incontestable) (NITTANY LION and Lion Design covering "frankfurters").

29.    The logos identified in Paragraphs 27-28 of this Complaint are collectively referred to as **the "Nittany Lion Logos."**

30.    Penn State uses in commerce and maintains a USPTO registration for the following design mark that is referred to as **the "Pozniak Lion Logo"**:



U.S. Reg. No. 5,305,910 (Pozniak Lion Design covering, *inter alia*, "clothing, namely, hats, T-shirts, sweat shirts, jackets, polo shirts").

31.     Penn State has established common law rights in the Lionhead Logo, the Nittany Lion Logos, and the Pozniak Lion Logos by using those marks for decades in United States commerce in connection with a range of goods and services, including clothing, coasters, mugs, magnets, drinking glasses, and food-related items.

32.     The Lionhead Logo, the Nittany Lion Logos, and the Pozniak Lion Logo each designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the marks are attached.

### The Penn State Seal

33.     Since 1984, Penn State has also promoted and sold its goods and services under the Penn State seal (shown below), which it has registered to cover, *inter alia*, "decorative magnetic stickers;" "drinking mugs, tankards, glasses, cups, and tumblers;" "pennants," and "shirts, t-shirts, sweat shirts, jackets, shorts, hats, and men's ties."



11

U.S. Reg. No. 1,276,712 (incontestable).

34.     And Penn State has registered the following trademark comprising the same seal in connection with, *inter alia*, "decanters; coasters; ceramic mugs;" "sweaters; cardigans; tennis shorts; ponchos; raincoats; hooded sweatshirts; sweatpants; [and] pants":



U.S. Reg. No. 5,877,080 .

35.     Penn State has also established common law rights in the logos shown in Paragraphs 33-34 by using these marks in United States commerce in connection with a range of goods and services, including clothing, hats, pennants, coasters, mugs, magnets, drinking glasses.

36.     The design marks referred to in Paragraphs 33-35 of this Complaint are referred to herein as **the "Penn State Seal."**

37.     The Penn State Seal designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the marks are attached.

38.     True and correct copies of registration certificates for the Nittany Lion Logos, the Pozniak Lion Logo, and the Penn State Seal are attached as **Exhibit B**.

12

39.     The PENN STATE Mark, the Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo, and the Penn State Seal are referred to collectively in this Complaint as **"the University Marks."**

## Penn State's Uses of its Protected Marks

40.     Penn State's football program is one of the most successful sporting programs of all-time, with its games seen worldwide.  Substantially all, if not all, of the games of Penn State's team are nationally televised and watched in areas outside of the United States as well.

41.     Penn State uses the University Marks prominently in connection with its football games, including on athletic uniforms, athletic equipment, advertising, and promotional items.

42.     Penn State's football stadium is one of the largest stadiums in college football.  With a seating capacity of 106,572, typically well over 100,000 people travel to and park near Penn State's football stadium for football games.

43.     Penn State also uses the University Marks in connection with its other athletic programs, including its nationally recognized men's and women's basketball programs.

44.     The University Marks are frequently used by Penn State with a navy blue and white color scheme.

45.     Additionally, Penn State uses the University Marks in connection with its educational and research programs provided through its 24 campuses and its online programs.

46.     Penn State's programs have achieved national and worldwide recognition, including in the U.S. News & World Report rankings for the best undergraduate business and engineering programs and the best graduate programs in business, engineering, education, nursing, health disciplines, humanities, sciences, and law.

47.     As of the fall of 2020, Penn State had an enrollment of over 100,000 students across its programs.  Penn State also employs over 31,000 faculty and staff. These students, faculty, and staff comprise individuals from all fifty U.S. states, all U.S. territories, and every continent except Antarctica.

48.     Penn State also has an estimated 700,000 living alumni residing across the United States and globally.

49.     These students, faculty, staff, and alumni, as well as the general public nationwide, have come to recognize and associate the University Marks with Penn State's high-quality goods and services.  The general consuming public has for decades also recognized at least the University Marks exclusively with Penn State and its goods and services.

50.    The goodwill and recognition Penn State has built in its athletics and educational programs has become associated with the University Marks.  Penn State, either directly or through its licensees, advertises and sells goods and services in connection with these Marks, including clothing, headwear, drinkware, household goods, pennants, decals and magnets, and wall hangings (the **"Penn State Goods"**).

51.    Representative examples of these products include, but are not limited to, the following:





52.     As a result of Penn State's extensive advertising and promotion of its goods and services using the University Marks, and through favorable industry acceptance and recognition, the relevant consuming public have come to recognize and identify Penn State as the source of the top quality goods and services offered in connection with those trademarks.

53.     Accordingly, the University Marks are assets of incalculable value as identifiers of Penn State and its high quality goods and services, as well as Penn State's extensive goodwill.

**Defendant's Infringing Uses of the University Marks**

54.     Defendant operates a website at the domain <vintagebrand.com>, through which Defendant offers, advertises, and sells, *inter alia*, t-shirts, sweatshirts,

hats, pennants, drinkware, coasters, posters, magnets, canvases, wall art, socks, puzzles, and cutting boards (**"Defendant's Goods"**).

55.    Customers visiting Defendant's website can navigate to a series of drop-down menus that link to the names of different universities, including "Penn State Nittany Lions," or can search for "Penn State" using the website's search bar.

56.    As shown below, once customers click on the "Penn State Nittany Lions" page, they are directed to a listing of Defendant's Goods sold in connection with the University Marks and other, confusingly similar marks that Defendant portrays as "vintage":



57.     As advertised on the above page, Defendant's Goods include several products sold that prominently feature the University Marks, including, but not limited to, the following:



58.     Defendant's uses of PENN STATE on goods that currently are or previously were offered, advertised, and/or sold through the website <vintagebrand.com> are referred to as **the "Infringing PENN STATE Marks"**).

59.     On information and belief, Defendant has previously offered, advertised, and/or sold goods through the website <vintagebrand.com> bearing a mark that is identical to and/or confusingly similar to the Lionhead Logo.

60.     Defendant also offers, advertises, and sells Defendant's Goods prominently featuring at least one of the Nittany Lion Logos, as shown by the representative examples below:



61.     Furthermore, Defendant offers, advertises, and sells Defendant's Goods featuring the Pozniak Lion Logo, as shown by these examples:



62.     And Defendant offers, advertises, and sells Defendant's Goods featuring the Penn State Seal, as shown by the below examples:



63.     The marks that are identical to and/or confusingly similar to the University Marks and which have been and/or are currently used by Defendant to

19

sell, advertise, and/or offer goods are referred to collectively as **the "Infringing Marks."**

64.    On information and belief, Defendant has previously offered, advertised, and/or sold goods that are no longer available through the <vintagebrand.com> website, and which had born the Infringing Marks or other marks that are identical to and/or confusingly similar to the University Marks.

65.    On the <vintagebrand.com> website, customers can select from multiple goods under each of the Infringing Marks, and Defendant offers, advertises, and sells each of Defendant's Goods in connection with each of the Infringing Marks.

66.    Defendant purports to offer Defendant's Goods in connection with "vintage" sports brands reproduced from historic memorabilia but ultimately designed by Defendant.

67.    In reality, Defendant's Goods bear the University Marks or marks that are virtually identical to the University Marks and are a deliberate attempt to take advantage of and capitalize upon the tremendous goodwill associated with Penn State and the University Marks.

68.    Defendant's Infringing Marks are identical to or confusingly similar in sight and commercial impression to the University Marks, as shown by the following representative examples:

20



69.    Although Defendant combines the University Marks with other elements, that combination does not reduce the likelihood of confusion.   The University Marks are prominently featured in the Infringing Marks and the additional elements—namely, images of lions and other references to Penn State's history—only confirm to the relevant trade and public that Defendant's Goods are purportedly associated with, or endorsed or sponsored by, Penn State.

70.    Indeed, Penn State and its licensees sell similar or identical vintage designs, as shown below, which only increases the likelihood of confusion, mistake, or deception of the relevant trade and public:



71.    The Infringing Marks are counterfeits of the University Marks.  The Infringing Marks so closely resemble the relevant University Marks that, when used in connection with Defendant's Goods, which are the identical with and substantially indistinguishable from the Penn State Goods in connection with which the University Marks are registered, they are highly likely to cause confusion, mistake, or deception of the relevant trade and public.  Consumers likely will believe that Defendant's Goods are in some way associated with or connected with Penn State, or approved, sponsored, or authorized by Penn State, when that is not the case.

72.    Defendant also targets Defendant's Goods at the same consumers as Penn State, stating on its website that "[t]he Vintage Brand Penn State Nittany Lion

Shop at VintageBrand.com is the ultimate destination for die-hard Penn State Nittany Lions fans and alumni . . . ."

73.    Additionally, Defendant's webpage for Penn State is titled "Penn State Nittany Lions Vintage Designs for Apparel & Gear," in a clear attempt to associate Defendant's Goods with Penn State and the goodwill Penn State has built over decades, as embodied in the University Marks.

74.    Defendant's Goods also overlap with, or are natural extensions of, the Penn State Goods and are directly competitive with those goods.

75.    Penn State's rights in the University Marks predate Defendant's use of the Infringing Marks.

76.    Penn State has not authorized Defendant's use in commerce, either directly or indirectly, of its valuable University Marks in connection with Defendant's Goods.  Penn State has no affiliation or connection with Defendant.

77.    Defendant's egregious misuse of the University Marks has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks, for which Penn State has no adequate remedy at law.

78.    Upon information and belief, Defendant will continue to commit the acts complained of unless enjoined.

79.    Upon information and belief, Defendant's acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to Penn State's rights in the University Marks for the purpose of trading on Penn State's reputation embodied in those marks and diluting those marks.

80.    The willful nature of Defendant's unlawful acts renders this an "exceptional case," entitling Penn State to an award of statutory damages, profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

## COUNT I
### Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)

81.    Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

82.    Defendant is using the Infringing Marks in commerce, in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with and are not sponsored by or affiliated with Penn State.

83.    Defendant is applying the Infringing Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods and services that do not originate with, and are not sponsored by or affiliated with, Penn State.

84.    Defendant's actions, including without limitation selling goods in trademark classes registered by Penn State or within the natural zone of expansion

24

of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Infringing Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant in connection with the Infringing Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

85.    As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

86.    The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## Counterfeiting under the Lanham Act (15 U.S.C. § 1116(d), 15 U.S.C. 1114, and 15 U.S.C. 1117 )

87.    Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

88.    The Infringing Marks used by Defendant are spurious, and are identical or substantially indistinguishable from Penn State's registered trademarks.

89.   Penn State's trademarks are registered on the Principal Register, and are in use in commerce.

90.   The Infringing Marks are used in connection with goods and types of goods listed in Penn State's relevant trademark registrations.

91.   Defendant's use of the Infringing Marks is likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Infringing Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant in connection with the Infringing Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

92.   Defendant's use of counterfeit marks is willful and deliberate.

93.   Penn State is entitled to statutory damages of up to $2 million per counterfeit mark per type of good, and attorneys' fees, trebled damages, and costs.

## COUNT III
## Federal Unfair Competition & False Designation of Origin
## (15 U.S.C. § 1125(a))

94.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

26

95.     Defendant's use of the Infringing Marks constitutes use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendant, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

96.     As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

97.     The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## Federal Trademark Dilution (15 U.S.C. § 1125(c))
### (the PENN STATE Mark)

98.     Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

99.     The PENN STATE Mark is a famous trademark within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendant began using the Infringing Marks.  The PENN STATE Mark is advertised and used extensively

throughout the United States and is highly recognized by the trade and consuming public.  Further, Penn State actively polices the use of the PENN STATE Mark by third parties.

100.   Defendant is engaged in commercial use of the Infringing PENN STATE Marks.

101.   Defendant's actions are disparaging and damaging and are likely to cause dilution of the PENN STATE Mark through, at the very least, blurring and tarnishing.

102.   Defendant's actions are likely to dilute the PENN STATE Mark by blurring the PENN STATE Mark by impairing the distinctiveness of that Mark.

103.   Defendant's actions are likely to dilute by tarnishing the PENN STATE Mark by, at least, using the Infringing PENN STATE Marks to sell goods that do not live up to the high standards set for goods and services offered under the PENN STATE Mark.

104.   As a result of Defendant's likely dilution, Penn State has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendant has been and will continue to be unjustly enriched.

105.   Upon information and belief, Defendant's dilution of the PENN STATE Mark is and was willful.

106.   The likely dilution of the PENN STATE Mark caused by Defendant violates section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT V
## Trademark Dilution Under 54 Pa. C.S.A. § 1124
### (the PENN STATE Mark)

107.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

108.   This claim is for dilution of trademarks and injury to business or reputation under 54 Pa. C.S.A. § 1124.

109.   The PENN STATE Mark is a famous mark in the Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124 and was famous prior to the date of Defendant's adoption and use of the Infringing PENN STATE Marks.

110.   Defendant's conduct, as described in this Complaint, is diluting and will dilute the PENN STATE Mark, thereby lessening the capacity of that Mark to identify and distinguish goods and services marketed and sold by Penn State under the PENN STATE Mark.

111.   Upon information and belief, Defendant's acts of trademark dilution have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made but for its unlawful conduct.

112.   Defendant's acts described above have caused injury and damages to Penn State, and have caused irreparable harm to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

## COUNT VI
## Common Law Trademark Infringement and Unfair Competition

113.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

114.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

115.   Defendant's use of the Infringing Marks constitutes common law trademark infringement and unfair competition in violation of common law.

116.   Upon information and belief, Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

117.   Defendant's willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

30

**WHEREFORE**, Penn State prays for judgment against Defendant as follows:

A.     Preliminarily and permanently enjoining and restraining Defendant, its directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, at first during the pendency of this action and thereafter perpetually:

i.     from committing any acts of trademark infringement, trademark dilution, and unfair competition, and from implying a false designation of origin or a false description or representation with respect to the Penn State Marks;

ii.    from using in any manner packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials, or other materials the Infringing PENN STATE Marks and the Infringing Marks, or any other marks, words, or names that are confusingly similar thereto;

iii.   from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship by, or connection to Penn State; and

iv.   from using any designation that is likely to disparage, tarnish or dilute the distinctive quality of the PENN STATE Mark.

B.   Requiring that Defendant deliver to Penn State any and all containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to the Infringing PENN STATE Marks, the Infringing Marks, or any of the University Marks.

C.   Requiring that Defendant, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Penn State's counsel a written report under oath setting forth details of the manner in which Defendant has complied with the Court's order pursuant to paragraphs A through B above.

D.   Requiring Defendant to account and pay over to Penn State all damages sustained by Penn State as a result of Defendant's willful infringement and unfair competition, including Penn State's actual damages, disgorgement of Defendant's profits, Penn State's attorney's fees and costs, and ordering that the amount of damages awarded Penn State be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(a) and 1125.

E.  Requiring Defendant pay statutory damages of up to $2 million per Infringing Mark per type of good sold, offered for sale or distributed pursuant to 15 U.S.C. § 1117(c).

F.  Ordering that Penn State recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

G.  Awarding Penn State such other and further relief as this Court deems just and proper.

Dated this 5th day of October, 2021.

Respectfully submitted,

**MCGUIREWOODS LLP**

By: /s/Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com
Email:  celler@mcguirewoods.com
Email:  mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue

33

Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using the CM/ECF system on this 5th day of October, 2021, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Equire (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com

By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*

35