IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE BRAND, LLC,<br><br>Defendant. | No. 4:21-CV-01091<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 14, 2022**

Nearing the end of discovery, The Pennsylvania State University seeks leave to amend its complaint in this trademark dispute with online retailer Vintage Brand, LLC. Penn State predicates this motion on two developments: first, new information adduced in discovery; and second, this Court's prior ruling denying Penn State's motion to dismiss a counterclaim to cancel certain Penn State trademarks. Consistent with the liberal strictures of Federal Rule of Civil Procedure 15, Penn State may amend its complaint to add defendants, claims, and allegations about additional marks; it cannot, however, excise all reference to a mark that Vintage Brand seeks to cancel in the counterclaim this Court refused to dismiss. Accordingly, Penn State's motion is granted in part, denied in part.

I.  **BACKGROUND**

On June 21, 2021, Penn State sued Vintage Brand, advancing claims of trademark infringement, counterfeiting, unfair competition, and trademark dilution.[1] In support of its allegations that Vintage Brand had been willfully infringing various Penn State trademarks by selling products emblazoned with those marks on its website "vintagebrand.com," Penn State provided screenshots from the website displaying various Penn State-related product offerings.[2] Vintage Brand moved to dismiss the original complaint on September 14, 2021,[3] prompting Penn State to file the First Amended Complaint—the operative complaint in this case.[4]

Vintage Brand filed its Answer and Counterclaims on October 19, 2021,[5] which it later amended.[6] Relevant here, the First Amended Counterclaim included a claim to cancel Penn State's registration of the PENN STATE, Pozniak Lion, and Penn State University Seal marks.[7] Penn State moved to dismiss this counterclaim,[8] but that motion was denied.[9]

---

[1] Doc. 1.
[2] *See id.* ¶¶ 38–39, 44–48, 52.
[3] Doc. 19.
[4] Doc. 23.
[5] Doc. 25.
[6] Doc. 31.
[7] *Id.* (Count IV).
[8] Doc. 37.
[9] Doc. 43; Doc. 44.

Discovery then commenced on November 19, 2021, with the parties' initial disclosures.[10] Shortly thereafter, Vintage Brand made two productions: the first on December 20, 2021; the second on March 4, 2022.[11] In these discovery responses, Vintage Brand provided a list of company co-founders, which included Chad and Erik Hartvigson and Michelle Young,[12] and described Chad Hartvigson as having "knowledge regarding Vintage Brand's general business practices, Vintage Brand's history and internal procedures including recordkeeping, and the customer experience when purchasing goods from Vintage Brand's website."[13] Vintage Brand also produced a Licensing and Fulfillment Agreement that it entered on November 6, 2017, with non-party Sportswear Inc., which does business as "Prep Sportswear."[14]

On July 21, 2022, Penn State held a Rule 30(b)(6) deposition of Vintage Brand's designated corporate representative, Chad Hartvigson.[15] During the deposition, Chad Hartvigson testified that Vintage Brand is owned by, and operated solely through, Erik Hartvigson, Michelle Young, and himself, all of whom work at Prep Sportswear.[16] He explained that Vintage Brand does not have a

---

[10]   *See* Doc. 49 at 4; Doc. 50 at 3.
[11]   Doc. 50 at 3.
[12]   Doc. 50-8, Ex. E (VINTAGE_PENN_ST_000051).
[13]   Doc. 50-6, Ex. C (Nov. 19, 2021, Vintage Brand Initial Disclosures) at 2–3.
[14]   *See* Doc. 50 at 7–8.
[15]   *See* Doc. 49-3, Ex. C (July 21, 2022, C. Hartvigson Dep.).
[16]   *Id*. at 71:18–21 ("Q. So Vintage Brand is still owned 70 percent by you, 30 percent by Erik Hartvigson, and—[r]emind me what the ownership structure is. A. It's 70, 20, and 10."), 72:12–20 ("Q. And does Erik Hartvigson have managerial control of Vintage Brand? A. Yes. Q. Okay. So in terms of making final decisions for the company, is he the one that does it? A.

physical office space,[17] and it does not itself manufacture or distribute products; Vintage Brand products are manufactured at, and distributed from, Sportswear's facility in Louisville, Kentucky.[18]

Following the July 2022 deposition, Penn State filed a motion for leave to amend its complaint,[19] which Vintage Brand opposed.[20] That motion has been fully briefed and is now ripe for disposition.[21]

## II. LAW

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading with leave of court, and that the court should "freely give leave when justice so requires."[22] When courts assess whether to grant or deny leave to amend,

---

He's not the only one. He has the ability to do that. Q. Okay. Who else has authority over—you know, final authority over actions by Vintage Brand? A. Myself and Michelle."), 73:11–13 ("Q. Okay. And does Erik have another job outside of his work for Vintage Brand? A. Sportswear Incorporated."), 74:7–8 ("Q. On a day-to-day basis do you go into any office? A. Yes. I go into my office at Sportswear."), 74:16–20 ("Q. Okay. And how about Michelle? Where does she work from? A. From home. Q. Okay. Does she ever go into the Sportswear office? A. She does.").

[17] *Id.* at 73:19–20 ("Does Vintage Brand have a physical office space? A. No."), 75:25–76:6 ("Q. And the Vintage Brand address, what is that? A. It's 6415 Northeast 135th Place. Q. Is that a physical office space? A. No. That's a residential home. Q. Whose home is that? A. That is my parents'.").

[18] *Id.* at 79:20–82:15 ("Q. Okay. And what service is Sportswear providing Vintage Brand? A. White-label product fulfillment. Q. And can you explain to me what 'white-label product fulfillment' means? A. Sure. That's when an entity contracts with another entity to manufacture on their behalf. Q. So does Sportswear manufacture products for Vintage Brand? A. Yes. Q. And does Sportswear actually manufacture products, or do they contract with a manufacture? A. So, Sportswear actually manufactures products. Q. Where is Sportswear's factory located? A. Louisville, Kentucky. Q. So are all of Vintage Brand's products produced at that factory in Louisville, Kentucky? A. That is correct.").

[19] Doc. 48.
[20] Doc. 50.
[21] *See* Doc. 49; Doc. 50; Doc. 52.
[22] Fed. R. Civ. P. 15(a)(2).

4

"prejudice to the non-moving party is the touchstone."[23] That said, "denial may also be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."[24]

## III. ANALYSIS

Penn State seeks leave to amend its complaint to address several issues presented either in discovery or in this Court's ruling denying Penn State's motion to dismiss. Specifically, Penn State wants to (a) name four additional defendants—Chad and Erik Hartvigson, Michelle Young, and Prep Sportswear; (b) include allegations regarding additional marks; (c) add a claim for false advertising and endorsement; and (d) remove allegations and claims concerning the Penn State Seal.[25] The Court addresses each proposed revision in turn.

### A. Additional Defendants

Penn State argues that it should be permitted to name four additional defendants at this time because it has good cause for the delay and the inclusion of these defendants will not unduly prejudice Vintage Brand.[26] Further, Penn State

---

[23] *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).
[24] *Chestnut v. Finck*, 722 F. App'x 115, 118 (3d Cir. 2018) (internal quotation marks and citation omitted).
[25] Doc. 49 at 1–3.
[26] *Id*. at 8–9, 12–15.

asserts that amending the operative complaint to include these defendants will not be futile.[27] The Court agrees on all fronts.

To demonstrate good cause for its delay, Penn State contends that until Chad Hartvigson's deposition on July 21, 2022, it "was not aware that Vintage Brand had no employees and relied instead on Prep Sportswear to manufacture all of its accused products," and similarly had no knowledge "that Vintage Brand acted solely through [Chad] Hartvigson, his cousin Erik Hartvigson, and their colleague at Prep Sportswear, Ms. Young."[28] According to Penn State, Vintage Brand "identified none of the [p]roposed [d]efendants in its initial disclosures or discovery responses, so Penn State had no knowledge of their relevance in this case until [the July 2022] deposition."[29]

Vintage Brand disputes this, asserting that it identified all proposed defendants by no later than December 2021—seven months before Chad Hartvigson's July 2022 deposition.[30] Specifically, Vintage Brand notes that that its initial disclosures and responses to Penn State's first discovery requests (dated November 19, 2021, and December 20, 2021, respectively) identified Chad Hartvigson as a senior Vintage Brand official knowledgeable about matters central

---

[27] *Id*. at 15–17.
[28] Doc. 49 at 8–9.
[29] *Id*. at 9.
[30] Doc. 50 at 6.

6

to this case.³¹ Vintage Brand states that it likewise disclosed Erik Hartvigson and Michelle Young's roles in the company its responses to Penn State's first discovery requests.³² And Vintage Brand believes that Penn State knew (or should have known) about Vintage Brand's relationship with Prep Sportswear, highlighting the Licensing and Fulfillment Agreement it produced on December 20, 2021, and the prior lawsuits against Vintage Brand (which Penn State cited in its initial complaint) that included Prep Sportswear as a defendant.³³

The Court finds these arguments unpersuasive. As Penn State explains, the disclosure about Chad Hartvigson's "purported knowledge says nothing about the extent of [Chad] Hartvigson's participation in the infringing conduct"—that is, the basis for holding Chad Hartvigson, a corporate officer, personally liable.³⁴ And the disclosures about Erik Hartvigson and Michelle Young are even less illuminating. They provide no information on Erik Hartvigson and Michelle Young's "responsibilities at Vintage Brand, let alone the extent of their involvement in the

---

31  *See* Doc. 50-6, Ex. C (Nov. 19, 2021 Vintage Brand Initial Disclosures) at 2–3 (identifying Chad Hartvigson as having "knowledge regarding Vintage Brand's general business practices, Vintage Brand's history and internal procedures including recordkeeping, and the customer experience when purchasing goods from Vintage Brand's website"); Doc. 50-7, Ex. D (Dec. 20, 2021 Vintage Brand's Responses to Penn State's First RFPs and Interrogatories) at 4 (listing Chad Hartvigson as "responsible for the 'Search Optimization' . . . of Vintage Brand's own webpages"), 8 (listing Chad Hartvigson as "responsible for the selection and procurement of memorabilia and the selection of images from said memorabilia for enhancement and placement on Vintage Brand's relevant webpages").
32  *See, e.g.*, 50-7, Ex. E (VINTAGE_PENN_ST_000051) (listing Erik Hartvigson and Michelle Young (née Beaumont) as "Co-Founders").
33  Doc. 50 at 7–8.
34  Doc. 52 at 4–5 (citing *Innovation Ventures, LLC v. Ultimate One Distribution Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016)).

specific infringing conduct in this case."[35] Accordingly, Penn State is correct in noting that it did not learn that Chad and Erik Hartvigson and Michelle Young were arguably the "active and conscious force[s] behind the infringing conduct" until the July 2022 deposition.[36]

Further, the Court finds that neither the License and Fulfillment Agreement nor the prior lawsuits establish that Penn State should have known about the true nature of the Vintage Brand-Prep Sportswear relationship prior to the July 2022 deposition. As Penn State argues, the License and Fulfillment Agreement does not detail the full relationship between these two entities.[37] Looking at this agreement, one would not know, for example, that Prep Sportswear employees "provid[e] all the functions for the Vintage Brand business."[38] And the Court credits Penn State's claim that prior to the July 2022 deposition, it believed that Prep Sportswear "was a separate and distinct company from Vintage Brand" that "halted its infringing conduct and removed goods bearing Penn State's trademarks from the prepsportswear.com website."[39] Accordingly, the Court concludes that Penn State had good cause for not moving to add these defendants until after the July 2022 deposition.

---

[35] *Id*. at 7.
[36] *Id*. at 5.
[37] *Id*. at 8 (citing Doc. 52-2, Ex. F (Nov. 6, 2017, Licensing & Fulfillment Agreement) (SEALED)).
[38] *Id*.
[39] *Id*. at 9–10 (citing Doc. 52-1, Ex. E (Sept. 20, 2022, L. Wheatley Declaration) ¶¶ 3–9).

Nevertheless, Vintage Brand argues that Penn State's motion to amend the operative complaint to add these defendants should be denied because this amendment would result in prejudice and delay.[40] Specifically, Vintage Brand states that it "anticipates" that some or all of the proposed parties would "file Rule 12 motions, engage in discovery, and explore the need for expert opinions," thus requiring a "significant extension to the case schedule, including a new trial date."[41]

The Court finds these claims of prejudice unpersuasive. There is little concern about duplicative work—Vintage Brand has yet to depose any Penn State witnesses, so there will be no need to re-do depositions. And the Court accepts Penn State's position that the addition of the proposed defendants will not "require extensive additional discovery that would not already be required based on the operative First Amended Complaint," as information from and about the proposed individual defendants and Prep Sportswear would be relevant to this case absent their participation as named defendants.[42]

Lastly, the Court finds that adding the proposed defendants would not be futile. Noting that the doctrine of joint tortfeasors applies to claims of trademark

---

[40] Doc. 50 at 15–16.
[41] *Id.*
[42] Doc. 52 at 16–17.

infringement,[43] Penn State argues that the Hartvigsons, Young, and Prep Sportswear are "equally as liable" as Vintage Brand because they were "active participants in and the conscious force behind Vintage Brand's infringing conduct."[44] The Court concurs.

Accordingly, the Court grants Penn State's motion to amend its complaint insofar as it concerns the four proposed additional defendants.

### B. Additional Marks

Along with the additional defendants, Penn State seeks to amend its complaint to include allegations about additional marks—specifically, THE PENNSYLVANIA STATE UNIVERSITY trademark, additional PENN STATE registrations, and the S Lion Logo.[45] The parties again dispute whether the delay in amending the complaint is excused by good faith, though this time the Court is inclined to agree with Vintage Brand. That said, because Vintage Brand has not shown a reasonable probability of prejudice or undue delay, the Court will permit these amendments as well.

Penn State argues that for the marks it seeks to add, as with the proposed additional defendants, it did not have "complete information as to [the] Defendant's infringing products until [it] produced images of those products

---

[43] Doc. 49 at 15–16 (citing *Smithkline Beckman Corp. v. Pennex Products Co., Inc.*, 103 F.R.D. 539, 540 (E.D. Pa. 1984); *Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991)).
[44] *Id.* at 16.
[45] Doc. 49 at 2.

through discovery, and this production occurred after the deadline to amend."[46] But on this, the Court is not convinced. Noting that Penn State's original complaint contained screenshots from Vintage Brand's website showing "product offerings decorated ornamentally" with the marks Penn State now seeks to add, Vintage Brand argues that Penn State's claim that "it was not aware of facts giving rise to its new claims . . . strains credulity."[47] Further, Vintage Brand notes that even if Penn State was initially unaware of the product offerings emblazoned with the additional marks Penn State seeks to add, by Penn State's own admission, it learned of Vintage Brand's use of these marks by no later than March 4, 2022—the date of Vintage Brand's production "containing screenshots of Vintage Brand's online product offerings."[48] Offered an opportunity to contest this account in its reply brief, Penn State presented no rebuttal.[49]

However, that does not settle the matter. As explained, for motions to amend the pleadings, "prejudice to the non-moving party is the touchstone."[50] And here, the Court sees no prejudice.

To be sure, Vintage Brand argues otherwise: "The University's proposed amendments would require Vintage Brand to amend its own Counterclaims and Answer to adjust for the revised scope of trademark rights being asserted" and

---

[46] *Id.* at 9.
[47] *Id.* at 10–11.
[48] *Id.* at 11.
[49] *See* Doc. 52.
[50] *Lorenz*, 1 F.3d at 1414.

11

leave Vintage Brand with "very little time to complete extensive discovery concerning the University's proposed new claims based on previously unasserted trademark rights."[51] But the Court again finds this claim of prejudice unavailing. Vintage Brand's assertions about "extensive discovery" connected to the proposed additional marks is overblown; it has already produced information about these marks, and it offers no explanation about what additional discovery it expects and why such efforts would be so onerous.

Given that the Court is already permitting Penn State to amend its pleadings to include additional defendants, and the lack of any discernable prejudice associated with the proposed additional marks, the Court will permit Penn State to include in its amended complaint allegations about these marks as well.

### C. Claim for False Advertising and Endorsement

Next, Penn State argues that it should be permitted to amend its complaint to add a claim for false advertising and endorsement. Specifically, Penn State asserts that "the addition of a false advertising/endorsement claim in Count IV does not introduce a new legal theory but responds to the Court's request in its July 14, 2022 memorandum opinion that Penn State be prepared to address criticisms that universities should not be allowed to challenge the unauthorized use of trademarks on apparel for falsely designating the origin of these goods."[52] Penn State

---

[51] Doc. 50 at 15.
[52] Doc. 49 at 11 (citing Doc. 43).

12

emphasizes that the additional claim simply "confirms that the false endorsement caused by [the] Defendants' conduct is a separate wrong to the false designation of origin caused by the same conduct."[53] In its opposition brief, Vintage Brand offers no response.[54] The Court will thus permit this amendment as well.

### D.   Excising the Penn State Seal Allegations

Lastly, Penn State seeks to amend the operative complaint to remove all allegations about the Penn State Seal mark.[55] This request comes on the heels of this Court's refusal to dismiss Vintage Brand's counterclaim to, among other things, cancel Penn State's trademark registration of the Penn State Seal.[56] Vintage Brand objects to this proposed amendment, arguing that Penn State is now seeking to accomplish that which it could not through its motion to dismiss: "having lost its motion to dismiss Vintage Brand's fourth counterclaim, and realizing that the University Seal mark is particularly vulnerable to cancellation, [Penn State] now seeks to deprive this Court of jurisdiction to avoid this result."[57] According to Vintage Brand, this purpose constitutes bad faith.[58] On this, the Court agrees with Vintage Brand.

---

[53]  *Id*. at 11–12.
[54]  *See* Doc. 50.
[55]  Doc. 49 at 2.
[56]  Doc. 43; Doc. 44.
[57]  Doc. 50 at 14 (internal citations omitted).
[58]  Doc. 50 at 16–18.

Generally, plaintiffs are entitled to drop claims they no longer wish to pursue, as "[d]efendants cannot force [p]laintiff[s] to pursue at trial every cause of action pleaded in the[ir] complaint[s]."[59] That said, "[a]n amended pleading may have been brought in bad faith where the party is attempting to deprive a court of jurisdiction."[60]

As Vintage Brand argues, this Court's jurisdiction over the counterclaim in question is based on 15 U.S.C. § 1119, which provides that "[i]n any action involving a registered mark the court may . . . order the cancel of registrations." But this statute does not provide an independent source of federal jurisdiction.[61] Accordingly, absent a properly pleaded claim involving the Penn State Seal mark, the Court lacks jurisdiction to hear Vintage Brand's counterclaim to cancel the mark's registration.

---

[59] *Lister v. City of Los Angeles*, 2011 WL 3420665, at *2 (C.D. Cal. Aug. 4, 2011) (granting plaintiff leave to voluntary dismiss two counts over defendants' objection that they will be prejudiced because they "based their entire defense upon Plaintiff's complaint and the claims set forth within it").

[60] *U.S. ex rel. Jajdelski v. Kaplan, Inc.*, 2010 WL 2326069, at *3 (D. Nev. June 7, 2010) (citing *Sorosky v. Burroughs*, 826 F.2d 794 (9th Cir. 1987)); *see also Bouie v. Equistar Chemicals LP*, 188 F. App'x 233, 238–39 (5th Cir. 2006) (affirming denial of plaintiff's request to amend, finding bad faith where plaintiff's "intention was to defeat federal jurisdiction"); *Evans v. Groom*, 2017 WL 2779645, at *2 (E.D.N.C. June 26, 2017) (denying plaintiff's request to amend its complaint when the "plaintiff does not offer another basis in support of amendment other than his contention that by dismissing his federal claims he would be permitted to return to state court").

[61] *See Beasley v. Howard*, 14 F.4th 226, 235 (3d Cir. 2021) ("[A] district court's power to grant cancellation to a plaintiff is remedial, rather than an independent basis for federal jurisdiction.") (internal quotation marks and citation omitted).

Giving the timing of this motion to amend—i.e., immediately following this Court's denial of Penn State's motion to dismiss the counterclaim—the Court agrees with Vintage Brand that the amendment is designed to divest the Court of jurisdiction over the counterclaim and avoid the possible cancellation of Penn State's registration of the Penn State Seal mark. Indeed, in its reply brief, Penn State effectively admits as much.[62] This does not constitute good cause for amending a pleading; to the contrary, the Court considers this proof of bad faith.[63]

Moreover, even were the Court to credit Penn State's argument that excising all allegations regarding the Penn State Seal is simply a good faith effort to "streamline the issues in dispute,"[64] the interests of judicial economy would nevertheless weigh in Vintage Brand's favor. As Penn State notes, when conducting the "good cause" analysis for amending pleadings, courts consider whether permitting amendments will avoid the need for separate, related litigation that could be consolidated with the instant action.[65] In *Astellas Institute for Regenerative Medicine v. ImStem Biotechnology, Inc.* (a case Penn State cites

---

[62] Doc. 52 at 14 ("[The] proposed amendments will in fact result in fewer legal disputes by, as Vintage Brand recognizes, mooting Vintage Brand's counterclaims for cancellation of the Penn State Seal registrations.").

[63] Penn State argues that absent a showing that the proposed amendment would "deprive the court of jurisdiction *entirely* as [a] means of forum shopping," there is no bad faith. Doc. 52 at 19. The Court disagrees. Although the cited legal authority concerns efforts the nullify jurisdiction over the matter as a whole, *see Jajdelski*, 2010 WL 2326069; *Bouie*, 188 F. App'x at 238–39; *Evans*, 2017 WL 2779645; the principle these cases advance logically extends to the present circumstances as well: a court may infer bad faith based on a proposed amendment designed to divest the court of jurisdiction to preside over claims otherwise appropriately before it.

[64] Doc. 52 at 12.

[65] *See id*. at 13–14.

15

favorably), the United States District Court for the District of Massachusetts found good cause to allow the defendant to add a counterclaim because the defendant's alternative to doing so was to "initiate a new action, which might have invited a greater expenditure of judicial resources than the present motion practice."[66]

Here, Vintage Brand filed counterclaim Count IV, which would, among other things, cancel the Penn State Seal mark; Penn State moved to dismiss the counterclaim; and the Court denied that motion. Allowing Penn State to withdraw these allegations at this juncture simply to "moot" the counterclaim would require Vintage Brand to initiate a new, separate action designed to accomplish the same purpose as the counterclaim. As the court held in *Astellas*, this would be an unnecessary waste of judicial resources; we are better off letting this counterclaim proceed and resolving the issue in this indisputably related litigation.

## IV. CONCLUSION

Given courts' general willingness to allow parties to amend their pleadings—and the absence of any unfair prejudice—the Court grants Penn State leave to amend its complaint. That said, the permitted amendments shall be narrowly prescribed: Penn State can add the four proposed defendants, allegations about additional marks, and the false advertising and endorsement claim; it cannot excise from the complaint all allegations about the Penn State Seal. The Court will

---

[66] 2019 WL 9096049, at *4 (D. Mass Aug. 21, 2019).

not approbate Penn State's efforts to divest it of jurisdiction over Vintage Brand's counterclaim simply because Penn State fears an adverse ruling.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
