# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Plaintiff, | Case No. 4:21-cv-01091-MWB |
| v. | JURY TRIAL DEMANDED |
| VINTAGE BRAND, LLC; SPORTSWEAR INC. d/b/a PREP SPORTSWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; and MICHELLE YOUNG, | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff The Pennsylvania State University ("**Penn State**"), by and through its undersigned counsel, hereby alleges as follows for its Second Amended Complaint against Defendants Vintage Brand, LLC ("**Vintage Brand**"), Sportswear Inc. d/b/a Prep Sportswear ("**Sportswear**"), Chad Hartvigson, Erik Hartvigson, and Michelle Young (collectively, "**Defendants**"):

## I.     Introduction

1.     This is an action for trademark infringement of Penn State's trademarks; counterfeiting; unfair competition; false designation of origin; and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, trademark

dilution under Pennsylvania law, and trademark infringement and unfair competition under Pennsylvania common law.

2.     Vintage Brand, through its website at <vintagebrand.com>, sells counterfeit Penn State-branded clothing and accessories.  Sportswear is an affiliate of Vintage Brand responsible for manufacturing and distributing the Penn State-branded clothing and accessories sold through the Vintage Brand website.  Chad Hartvigson is the founder and CEO of Sportswear and the founder of Vintage Brand.  Erik Hartvigson is a cofounder and president of Vintage Brand and serves on the marketing team at Sportswear.  Michelle Young is a cofounder of Vintage Brand and serves as the creative director of Sportswear.

3.     Defendants do not have a license agreement or any permission by Penn State to use Penn State's valuable trademarks.  Instead, Defendants are serial infringers and blatantly use Vintage Brand's website to sell infringing merchandise from many colleges and universities.  Due to this persistent disregard for intellectual property rights, multiple colleges and universities have been forced to file suit against Defendants, including, but not limited to: Purdue University, Baylor University, The University of Arizona, Arizona State University, The University of California at Berkeley and Los Angeles, The University of Colorado Boulder, The University of Oregon, Oregon State University, The University of Southern

California, Leland Stanford Jr. University, University of Utah, University of Washington, Washington State University, and the University of Illinois.

4. Defendants are willfully infringing Penn State's trademarks by branding, marketing, manufacturing, shipping, and selling apparel and other goods through the website <vintagebrand.com> under the PENN STATE or THE PENNSYLVANIA STATE UNIVERSITY name and/or with at least one of the Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo, and/or the Penn State Seal. Defendants are further engaging in unfair competition, false advertising, false endorsement, and false designation of origin by using Penn State's logos in a manner that falsely states and/or implies approval, endorsement, or authorization by Penn State. Defendants are intentionally capitalizing on Penn State's name, marks, and goodwill to promote their business. As a result, Penn State brings this action for federal and state trademark infringement, unfair competition, false designation of origin, false advertisement/endorsement, and trademark dilution.

## II. The Parties

5. Plaintiff is The Pennsylvania State University, a not-for-profit, State-related institution of higher education, created under the statutory authority of the Commonwealth of Pennsylvania, and which operates as an instrumentality thereof. Penn State maintains a place of business at 208 Old Main, University Park, Centre County, Pennsylvania 16802.

6.     Upon information and belief, Defendant Vintage Brand, LLC, is a limited liability company organized under the laws of Washington, with its principal place of business at 6415 NE 135th Place, Kirkland, Washington 98034.

7.     Upon information and belief, Defendant Sportswear Inc. d/b/a Prep Sportswear is a Washington corporation with its principal place of business at 2211 Elliott Avenue, Suite 601, Seattle, Washington 98121.

8.     Upon information and belief, Defendant Chad Hartvigson is an individual residing at 5323 NE 42nd Street, Seattle, Washington 98105.

9.     Upon information and belief, Defendant Erik Hartvigson is an individual whose last known residence is at 3036 16th Avenue W, Apartment 324, Seattle, Washington 98119.

10.     Upon information and belief, Defendant Michelle Young is an individual residing at 2226 St. Clair Street, Bellingham, Washington 98229.


### III.     Jurisdiction and Venue

11.     This Court has original jurisdiction over this Complaint for infringement of a trademark, unfair competition, false designation of origin, and trademark dilution involving a famous mark, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a)

(Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

12.    This Court has jurisdiction over all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendants.

13.    Defendants are subject to personal jurisdiction in this Court, as they have transacted business in Pennsylvania by offering to sell, selling, and delivering goods featuring one or more of Penn State's trademarks within Pennsylvania and this judicial district.  Defendants have carried out their business and committed tortious acts and other wrongs within Pennsylvania and this judicial district.  Further, Defendants Chad Hartvigson, Erik Hartvigson, and Michelle Young have directed, participated in, and approved the tortious acts and wrongs conducted by the corporate Defendants.  These individual Defendants are corporate officers and are the moving, active, and conscious force behind the infringements and other wrongful acts at issue.

14.    The Middle District of Pennsylvania is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this judicial district.

### IV.    Penn State and its Protected Trademarks

15.    Penn State is the flagship public university of the Commonwealth of Pennsylvania.

16.    Penn State was founded in 1855 and began operating under the name "The Pennsylvania State University" in 1953.

17.    Penn State provides educational services, research, outreach, development and other related scholarly pursuits at multiple locations, within the Commonwealth of Pennsylvania, internationally, and online.  Since 1855, Penn State has grown to 24 campuses, 31,000 faculty and staff members, and over 100,000 students.

18.    Penn State is famous throughout the United States and the world for, among other things, its educational programs, athletics programs and services, and various and diverse student related services, such as entertainment services including sports exhibitions, theatrical productions, and musical concerts, as well as many goods and services related to the university, ranging from apparel to food items to alumni cruises.

19.    The goods Penn State markets and sells to consumers in connection with its trademarks (including the University Marks, as defined below) include t-shirts, sweatshirts, pennants, drinkware, socks, decals and magnets, kitchen and household products, coasters, pennants, and wall hangings.

20.     Penn State's athletic competitions are often televised to national and sometimes international audiences, and Penn State enjoys a large fan base throughout the country that is loyal to the University and its brand.

## A.     The PENN STATE and THE PENNSYLVANIA STATE UNIVERSITY Marks

21.     Penn State has been using PENN STATE as a word and design mark continuously since at least as early as 1908 for many goods and services. The PENN STATE trademark designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the trademark is attached.

22.     In addition, Penn State has been using THE PENNSYLVANIA STATE UNIVERSITY as a word and design mark continuously since at least as early as 1953 for many goods and services. The trademark THE PENNSYLVANIA STATE UNIVERSITY designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the trademark is attached.

23.     To protect its valuable marks, Penn State has obtained numerous United States Patent and Trademark Office (**"USPTO"**) registrations for PENN STATE and THE PENNSYLVANIA STATE UNIVERSITY and marks incorporating PENN STATE and THE PENNSYLVANIA STATE UNIVERSITY in the United States and around the world. Those United States registrations include those listed

in the following table, which sets out some (but not all) of the goods and services covered by these registrations:

| Mark | Services | Reg. No. and Date | Incontestable |
|------|----------|-------------------|---------------|
| PENN STATE | Int'l Cl. 16: Notebooks, looseleaf binders, notepads, writing paper and envelopes, pens, pencils, decals, stickers, playing cards, and printed publications<br><br>Int'l Cl. 21: Drinking mugs, tankards, glasses, cups, and tumblers<br><br>Int'l Cl. 24: Pennants and banners<br><br>Int'l Cl. 25: Night shirts, shirts, t-shirts, jerseys, sweat shirts, vests, sweaters, jackets, raincoats, golf gloves, ponchos, shorts, pants, athletic warm-up suits, socks, hats, and visors | 1,308,610 (Dec. 11, 1984) | Yes |

| | Int'l Cl. 27: Rugs and non-textile wall hangings | | |
|---|---|---|---|
| PENN STATE | Int'l Cl. 30:  Candy mints; Chocolate candies; Mustard; Salsa | 4,439,041 (Nov. 26, 2013) | Yes |
| PENN STATE | Int'l Cl. 30: Pretzels | 5,441,650 (Apr. 10, 2018) | No |
| PENN STATE | Int'l Cl. 9: Sunglasses, decorative magnets, blank USB flash drives, headphones, mouse pads, cell phone cases<br><br>Int'l Cl. 21: Manual toothbrushes, non-electric portable coolers, salt and pepper shakers, bottle openers, flasks, coasters, not of paper or textile, ceramic mugs, utensils for barbecues, namely, forks, tongs, turners, drinking glasses, cutting boards<br><br>Int'l Cl. 28: Jigsaw puzzles | 5,766,698 (June 4, 2019) | No |
| THE PENNSYLVANIA STATE UNIVERSITY | Int'l Cl. 16: Report covers, writing paper and envelopes, pencils, | 1,315,693 (Jan. 22, 1985) | Yes |

| | | | |
|---|---|---|---|
| | pen and pencil holders, decals, and book ends<br><br>Int'l Cl. 21: Drinking mugs, tankards, glasses, cups, and tumblers, plates, salt and pepper shakers, and vases | | |
| THE PENNSYLVANIA STATE UNIVERSITY | Int'l Cl. 25: Hats, shirts, shorts, sweat shirts, t-shirts, ties | 5,399,989 (Feb. 13, 2018) | No |
| THE PENNSYLVANIA STATE UNIVERSITY | Int'l Cl. 9: Decorative magnets<br>Int'l Cl. 24: Fabric flags | 5,742,516 (May 7, 2019) | No |

24.     Each of the registrations listed in Paragraph 23 is in full force and effect and have been since their respective dates of registration.  True and correct copies of the registration certificates for these marks are attached as **Exhibit A**.

25.     As noted in the chart above, two of the registered PENN STATE Marks (U.S. Reg. Nos. 1,308,610 and 4,439,041) and one of the registrations for THE PENNSYLVANIA STATE UNIVERSITY (U.S. Reg. No. 1,315,693) have obtained incontestable status under the Lanham Act, 15 U.S.C. § 1064, which is conclusive evidence of the validity of those marks, of Penn State's registration and ownership of those marks, and of Penn State's exclusive right to use those marks in the United States.

26.     Similarly, the remaining registrations for PENN STATE and for THE PENNSYLVANIA STATE UNIVERSITY are prima facie evidence of the validity of those marks, of Penn State's registration and ownership of those marks, and of Penn State's exclusive right to use those marks in the United States.

27.     In addition to its registrations, Penn State enjoys common law rights in the trademark PENN STATE and THE PENNSYLVANIA STATE UNIVERSITY through its extensive advertisement and use of those marks in connection with its goods and services continuously across the United States for decades.

28.     Penn State's rights in the trademark PENN STATE—including its common law rights and its rights covered by registrations—are collectively referred to as **the "PENN STATE Mark."**

29.     Penn State's rights in the trademark THE PENNSYLVANIA STATE UNIVERSITY—including its common law rights and its rights covered by registrations—are collectively referred to as **the "TPSU Mark."**

30.     Penn State consistently and prominently displays and advertises the PENN STATE Mark and TPSU Mark in connection with its goods and services in the United States and throughout the world.

31.     Penn State's PENN STATE Mark and TPSU Mark are inherently distinctive. In addition, as a result of Penn State's longstanding use and promotion of the PENN STATE Mark and TPSU Mark, those Marks have acquired secondary

meaning (and, for at least the PENN STATE Mark, become famous under the law), becoming widely recognized by the general consuming public as a designation identifying Penn State and its goods and services.

### B. The Lionhead, Nittany Lion, Pozniak Lion, and S Lion Logos

32. Penn State adopted a mascot called the "Nittany Lion" in approximately 1904. Since then, Penn State has adopted and used several different design marks depicting this mascot.

33. Penn State has been using the following Nittany Lion Logo



(**the "Lionhead Logo"**) for more than three decades in connection with, *inter alia*, "drinking glasses and ceramic mugs" and "t-shirts, sweat shirts, hooded sweat shirts, tennis shirts, and caps." U.S. Reg. No. 1,370,866 (incontestable). Penn State has also registered and used this Logo in connection with, *inter alia*, "decorative magnets," "cutting boards," and "ceramic mugs; tumblers; [and] cups." U.S. Reg. No. 5,548,988.

34. Additionally, Penn State uses in commerce and maintains a USPTO registration for the following design mark depicting its Nittany Lion mascot:



U.S. Reg. No. 1,350,286 (incontestable) (Nittany Lion on Rock Design covering, *inter alia*, "decorative magnetic stickers;" "notebooks, notepads, decals;" "drinking mugs, tankards, glasses, cups, tumblers;" "pennants," and "night shirts, shirts, t-shirts, jerseys, sweatshirts, sweaters, hats, visors, and men's ties").

35.     Penn State uses in commerce and maintains a USPTO registration for the following design marks depicting its Nittany Lion mascot:



U.S. Reg. No. 1,397,810 (incontestable) (NITTANY LION and Lion Design covering "frankfurters").

36.     The logos identified in Paragraphs 34-35 of this Complaint are collectively referred to as **the "Nittany Lion Logos."**

37.     Penn State uses in commerce and maintains a USPTO registration for the following design mark that is referred to as **the "Pozniak Lion Logo"**:



U.S. Reg. No. 5,305,910 (Pozniak Lion Design covering, *inter alia*, "clothing, namely, hats, T-shirts, sweat shirts, jackets, polo shirts").

38. Penn State uses in commerce the following design mark that is referred to as **the "S Lion Logo":**



39. Penn State has been using the S Lion Logo in United States commerce to sell apparel, hats, drinkware, and other goods continuously since at least as early as 2015.

40. Penn State has established common law rights in the Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo and the S Lion Logo by using those marks continuously in United States commerce in connection with a range of goods and services, including clothing, coasters, mugs, magnets, drinking glasses, and food-related items.

41. The Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo, and the S Lion Logo each designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the marks are attached.

42. True and correct copies of registration certificates for the Nittany Lion Logos and the Pozniak Lion Logo are attached as **Exhibit B**.

## C. <u>The Penn State Seal</u>

43.     Since 1984, Penn State has also promoted and sold its goods and services under the Penn State seal (shown below), which it has registered to cover, *inter alia*, "decorative magnetic stickers;" "drinking mugs, tankards, glasses, cups, and tumblers;" "pennants," and "shirts, t-shirts, sweat shirts, jackets, shorts, hats, and men's ties."



U.S. Reg. No. 1,276,712 (incontestable).

44.     And Penn State has registered the following trademark comprising the same seal in connection with, *inter alia*, "decanters; coasters; ceramic mugs;" "sweaters; cardigans; tennis shorts; ponchos; raincoats; hooded sweatshirts; sweatpants; [and] pants":



U.S. Reg. No. 5,877,080 .

45.     Penn State has also established common law rights in the logos shown in Paragraphs 43-44 by using these marks in United States commerce in connection

with a range of goods and services, including clothing, hats, pennants, coasters, mugs, magnets, drinking glasses.

46.     The design marks referred to in Paragraphs 43-45 of this Complaint are referred to herein as **the "Penn State Seal."**

47.     The Penn State Seal designates Penn State as the source, provider, licensor, or sponsor of the goods or services to which the marks are attached.

48.     True and correct copies of registration certificates for the Penn State Seal are attached as **Exhibit C**.

49.     The PENN STATE Mark, the TPSU Mark, the Lionhead Logo, the Nittany Lion Logos, the Pozniak Lion Logo, the S Lion Logo, and the Penn State Seal are referred to collectively in this Complaint as **"the University Marks."**

### D.     Penn State's Uses of its Protected Marks

50.     Penn State's football program is one of the most successful sporting programs of all-time, with its games seen worldwide. Substantially all, if not all, of the games of Penn State's team are nationally televised and watched in areas outside of the United States as well.

51.     Penn State uses the University Marks prominently in connection with its football games, including on athletic uniforms, athletic equipment, advertising, and promotional items.

52.     Penn State's football stadium is one of the largest stadiums in college football.  With a seating capacity of 106,572, typically well over 100,000 people travel to and park near Penn State's football stadium for football games.

53.     Penn State also uses the University Marks in connection with its other athletic programs, including its nationally recognized men's and women's basketball programs.

54.     The University Marks are frequently used by Penn State with a navy blue and white color scheme.

55.     Additionally, Penn State uses the University Marks in connection with its educational and research programs provided through its 24 campuses and its online programs.

56.     Penn State's programs have achieved national and worldwide recognition, including in the U.S. News & World Report rankings for the best undergraduate business and engineering programs and the best graduate programs in business, engineering, education, nursing, health disciplines, humanities, sciences, and law.

57.     As of the fall of 2020, Penn State had an enrollment of over 100,000 students across its programs.  Penn State also employs over 31,000 faculty and staff. These students, faculty, and staff comprise individuals from all fifty U.S. states, all U.S. territories, and every continent except Antarctica.

58.     Penn State also has an estimated 700,000 living alumni residing across the United States and globally.

59.     These students, faculty, staff, and alumni, as well as the general public nationwide, have come to recognize and associate the University Marks exclusively with Penn State's high-quality goods and services.

60.     The goodwill and recognition Penn State has built in its athletics and educational programs over many decades has become associated with the University Marks.  Penn State, either directly or through its licensees, advertises and sells goods and services in connection with these Marks, including clothing, headwear, drinkware, household goods, pennants, decals and magnets, and wall hangings (the **"Penn State Goods"**).

61.     Representative examples of these products include, but are not limited to, the following:
















62.     As a result of Penn State's extensive advertising and promotion of its goods and services using the University Marks, and through favorable industry acceptance and recognition, the relevant consuming public has come to recognize and identify Penn State as the source of the high quality goods and services offered in connection with those trademarks.

63.     Accordingly, the University Marks are assets of incalculable value as identifiers of Penn State and its high quality goods and services, as well as symbols of Penn State's extensive goodwill.

## V.     Defendants' Corporate Structure

64.     Since its founding in around 2005, Defendant Sportswear Inc. has manufactured and sold apparel and other products featuring the brands and trademarks of K-12 schools and youth sports programs in the United States through its website hosted at <prepsportswear.com>. Sportswear has employed as many as 80 individuals and operates a factory in Louisville, Kentucky, at which it manufactures the goods sold through its website.

65.     Defendant Chad Hartvigson is a founder and has an ownership interest in Sportswear. In 2017, Chad Hartvigson founded Vintage Brand along with Erik Hartvigson and Michelle Young. Like Sportswear, Vintage Brand sells apparel and other products featuring the brands and trademarks of colleges, universities, and professional sports teams.

66.     Although Vintage Brand was established as a separate entity from Sportswear, Vintage Brand's actual business operations are conducted largely through Sportswear, by Sportswear employees. Sportswear manufactures and distributes all of the goods sold through Vintage Brand's website. Vintage Brand does not independently manufacture or distribute any of those goods it sells. Rather, Sportswear performs those functions, and is responsible for applying the Infringing Marks to Defendants' Goods (as those terms are defined below) and shipping Defendants' Goods to customers. Vintage Brand does not have any customer service employees, and Sportswear provides all customer service support to Vintage Brand's customers.

67.     On information and belief, the corporate defendants are affiliated companies.

68.     Chad Hartvigson is the CEO of Sportswear and is a founder and co-owner of Vintage Brand. Since founding the business in 2017, his role has encompassed all aspects of the business. He manages Vintage Brand's finances and curates sports collectibles on behalf of the company. He, along with Erik Hartvigson and Michelle Young, has final authority over Vintage Brand's actions.

69.     Erik Hartvigson is a cofounder and co-owner of Vintage Brand. He serves and acts as President of the company. He, along with Chad Hartvigson and Michelle Young, has managerial control of Vintage Brand and he has the ability to

make final decisions for Vintage Brand. Erik Hartvigson has executed contracts on behalf of Vintage Brand concerning the business's operations and intellectual property. In addition, Erik Hartvigson is responsible for conducting marketing campaigns and handling customer service inquiries for Vintage Brand. He and Michelle Young share responsibilities for updating the Vintage Brand website. Erik Hartvigson is also employed by Sportswear where he performs marketing.

70. Michelle Young is a co-owner of Vintage Brand. She, together with Chad and Erik Hartvigson, also has authority for actions by Vintage Brand. She is responsible for the company's products, including creative, graphics, and marketing, and also was responsible for helping build the Vintage Brand website. She and Erik Hartvigson share responsibilities for updating the Vintage Brand website. Ms. Young is the creative director at Sportswear.

71. Upon information and belief, Defendants Sportswear, Chad Hartvigson, Erik Hartvigson, and Michelle Young directly participate in, and are the active, conscious force behind Vintage Brand's infringement. Defendants Chad Hartvigson, Erik Hartvigson, and Michelle Young are the only members of Vintage Brand and make all decisions regarding Vintage Brand's operations, including the selection of the designs and selection of the goods sold through Vintage Brand's website—including, that is, the use of the Infringing Marks on Defendants' Goods.

72.     Vintage Brand does not have a separate business address is instead registered at the residence of Chad Hartvigson's parents.  However, no significant business activities are carried out at this address.  Defendants Chad Hartvigson, Erik Hartvigson, and Michelle Young neither reside at nor work out of the business address for Vintage Brand on a day-to-day basis.  They are each employees of Sportswear and work out of Sportswear's office and/or their own residences.  Each also performs work for Vintage Brand from Sportswear's office.

## VI.     Defendants' Infringing Uses of the University Marks

73.     Defendants operate a website at the domain <vintagebrand.com>, through which Defendants offer, advertise, and sell, *inter alia*, t-shirts, sweatshirts, hats, pennants, drinkware, koozies, mugs, tumblers, water bottles, coasters, posters, magnets, canvases, wall art, socks, puzzles, and cutting boards (**"Defendants' Goods"**).

74.     Customers visiting Defendants' website can navigate to a series of drop-down menus that link to the names of different universities, including "Penn State Nittany Lions," or can search for "Penn State" using the website's search bar.

75.     As shown below, once customers click on the "Penn State Nittany Lions" page, they are directed to a listing of Defendants' Goods sold in connection with the University Marks and other, confusingly similar marks that Defendants portray as "vintage":



76.     As advertised on the above page, Defendants' Goods include several products that prominently feature the University Marks, including, but not limited to, the following:



77.    Defendants' uses of PENN STATE on goods that currently are or previously were offered, advertised, and/or sold through the website <vintagebrand.com> are referred to as **the "Infringing PENN STATE Marks"**).

78.    On information and belief, Defendants have previously offered, advertised, and/or sold goods through the website <vintagebrand.com> bearing a mark that is identical to and/or confusingly similar to the Lionhead Logo.

79.    Defendants also offer, advertise, and sell Defendants' Goods prominently featuring at least one of the Nittany Lion Logos, the Pozniak Lion Logo, the S Lion Logo, the TPSU Mark, and the Penn State Seal as shown by the representative examples below:





80.     The marks that are identical to and/or confusingly similar to the University Marks and which have been and/or are currently used by Defendants to sell, advertise, and/or offer goods are referred to collectively as **the "Infringing Marks."**

81.     As shown in the examples set forth in the above paragraphs, many of the Defendants' Goods include combinations of several of the University Marks. For instance, the examples shown in Paragraph 79 include a t-shirt that uses both one of the Nittany Lion Logos as well as the TPSU Mark, and a magnet that includes the PENN STATE Mark along with one of the Nittany Lion Logos.

82.     On information and belief, Defendants have previously offered, advertised, and/or sold goods that are no longer available through the

<vintagebrand.com> website, and which had born the Infringing Marks or other marks that are identical to and/or confusingly similar to the University Marks.

83.    On the <vintagebrand.com> website, customers can select from multiple goods under each of the Infringing Marks, and Defendants offer, advertise, and sell each of Defendants' Goods in connection with each of the Infringing Marks.

84.    Defendants attempt to evade liability by purporting to offer Defendants' Goods in connection with "vintage" sports brands reproduced from historic memorabilia but ultimately designed by Defendants.

85.    In reality, Defendants' Goods bear the University Marks or marks that are virtually identical to the University Marks and are a deliberate attempt to take advantage of and capitalize upon the tremendous goodwill associated with Penn State and the University Marks.

86.    Defendants' Infringing Marks are identical to or confusingly similar in sight and commercial impression to the University Marks, as shown by the following representative examples:

| University Mark | Defendants' Infringing Marks |
|---|---|
|    |     |

PENN STATE

THE PENNSYLVANIA STATE UNIVERSITY











87.    Although Defendants combine the University Marks with other elements, that combination does not reduce the likelihood of confusion. The University Marks are prominently featured in the Infringing Marks and any additional elements—namely, images of lions and other references to Penn State's history—only confirm to the consuming public that Defendants' Goods are purportedly associated with, or endorsed or sponsored by, Penn State.

88.    Indeed, Penn State and its licensees sell similar or identical vintage-style designs, as shown below, which only increases the likelihood of confusion, mistake, or deception of the relevant trade and public:



89.    The Infringing Marks are counterfeits of the University Marks. The Infringing Marks so closely resemble the relevant University Marks that, when used in connection with Defendants' Goods, which are the identical with and substantially indistinguishable from the Penn State Goods in connection with which the

University Marks are registered, they are highly likely to cause confusion, mistake, or deception of the relevant consuming public.  Consumers likely will believe that Defendants' Goods are in some way associated with or connected with Penn State, or approved, sponsored, or authorized by Penn State, when that is not the case.  In addition, post-sale confusion is likely to occur because individuals who encounter Defendants' Goods after they have been purchased are likely to mistakenly believe that those Goods have been approved, sponsored, or authorized by Penn State.

90.    Defendants also target Defendants' Goods at the same consumers as Penn State, stating on its website that "[t]he Vintage Brand Penn State Nittany Lion Shop at VintageBrand.com is the ultimate destination for die-hard Penn State Nittany Lions fans and alumni . . . ."

91.    Additionally, Defendants' webpage for Penn State is titled "Penn State Nittany Lions Vintage Designs for Apparel & Gear," in a clear attempt to associate Defendants' Goods with Penn State and the goodwill Penn State has built over decades, as embodied in the University Marks.

92.    Defendants' Goods also overlap with, or are natural extensions of, the Penn State Goods and are directly competitive with those goods.

93.    Penn State's rights in the University Marks predate Defendants' use of the Infringing Marks.

94.     Penn State has not authorized Defendants' use in commerce, either directly or indirectly, of its valuable University Marks in connection with Defendants' Goods.  Penn State has no affiliation or connection with Defendants.

95.     Defendants' egregious misuse of the University Marks has caused, or is likely to cause, great and irreparable injury to Penn State, including irreparable injury to the goodwill and reputation embodied in those marks, for which Penn State has no adequate remedy at law.

96.     Upon information and belief, Defendants will continue to commit the acts complained of unless enjoined.

97.     Upon information and belief, Defendants' acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to Penn State's rights in the University Marks for the purpose of trading on Penn State's reputation embodied in those marks and diluting those marks.

98.     The willful nature of Defendants' unlawful acts renders this an "exceptional case," entitling Penn State to an award of statutory damages, profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

**COUNT I**
**Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)**
**(The PENN STATE Mark; the TPSU Mark; the Nittany Lion Logos; the Pozniak Lion Logo; and the Penn State Seal)**

99.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

100.   Defendants are using the Infringing Marks in commerce, in connection with the sale, offering for sale, and distribution of goods and services that do not originate with and are not sponsored by or affiliated with Penn State.

101.   Defendants are using the Infringing Marks in advertisements for goods and services that do not originate with, and are not sponsored by or affiliated with, Penn State.

102.   Defendants' actions, including without limitation selling goods that are similar to goods or services sold by Penn State or within the natural zone of expansion of those goods and services, are likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendants in connection with the Infringing Marks, in that customers and potential customers are likely to believe that those goods offered by Defendants in connection with the Infringing Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

103.   Defendants' use of the Infringing Marks is willful.

104. As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

105. The likely confusion, mistake, or deception caused by Defendants is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

**COUNT II**
**Counterfeiting under the Lanham Act (15 U.S.C. §§ 1114, 1116(d), 1117)**
**(The PENN STATE Mark; the TPSU Mark; the Nittany Lion Logos; the Pozniak Lion Logo; and the Penn State Seal)**

106. Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

107. The Infringing Marks used by Defendants are spurious and are identical or substantially indistinguishable from Penn State's registered trademarks.

108. Penn State's trademarks are registered on the Principal Register, and are in use in commerce.

109. The Infringing Marks are used in connection with goods and types of goods listed in Penn State's relevant trademark registrations.

110. Defendants' use of the Infringing Marks is likely to cause confusion, mistake, or deception as to the source of origin of the goods offered by Defendant in connection with the Infringing Marks, in that customers and potential customers are likely to believe that those goods offered by Defendant in connection with the

Infringing Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

111. Defendants' use of counterfeit marks is willful and deliberate.

112. Penn State is entitled to statutory damages of up to $2 million per counterfeit mark per type of good, and attorneys' fees, trebled damages, and costs.

**COUNT III**
**Federal Unfair Competition & False Designation of Origin**
**(15 U.S.C. § 1125(a))**
**(All Infringing Marks)**

113. Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

114. Defendants' use of the Infringing Marks constitutes use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendants, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Penn State, when there is no such relationship.

115.   As a direct and proximate result of the likely confusion, mistake, or deception, Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

116.   The likely confusion, mistake, or deception caused by Defendants is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

<u>**COUNT IV**</u>
<u>**Federal False Advertising & Endorsement (15 U.S.C. § 1125(a))**</u>
**(All Infringing Marks)**

117.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

118.   Defendants' use in commercial advertising and promotions of the Infringing Marks in connection with Defendants' Goods constitutes a false or misleading representation of fact regarding the affiliation, connection, or association of Defendants with Penn State, or as to the sponsorship or approval by Penn State of Defendants' Goods.

119.   Defendants' use of the Infringing Marks is likely to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers, regarding the affiliation, connection, or association of Defendants with Penn State, or as to the sponsorship or approval by Penn State of Defendants' Goods.

120.   Defendants' false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers.

121.   Defendants' Goods are advertised, promoted, sold, and distributed in interstate commerce.

122.   Penn State has been and continues to be injured by Defendants' false or misleading representations of fact through the diversion of sales or loss of goodwill.

123.   Defendants know that their representations of fact are false or misleading.

124.   As a direct and proximate result of the false or misleading representations of fact made by Defendants, Penn State has suffered and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

125.   The false or misleading representations of fact made by Defendants are willful and are in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT V**
**Federal Trademark Dilution (15 U.S.C. § 1125(c))**
**(the PENN STATE Mark)**

126.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

127.   The PENN STATE Mark is a famous trademark within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendants began using the Infringing PENN STATE Marks.  The PENN STATE Mark is advertised and used extensively throughout the United States and is highly recognized by the trade and

consuming public. Further, Penn State actively polices the use of the PENN STATE Mark by third parties.

128. Defendants are engaged in commercial use of the Infringing PENN STATE Marks.

129. Defendants' actions are disparaging and damaging and are likely to cause dilution of the PENN STATE Mark through, at the very least, blurring and tarnishing.

130. Defendants' actions are likely to dilute the PENN STATE Mark by blurring the PENN STATE Mark and impairing the distinctiveness of that Mark.

131. Defendants' actions are likely to dilute by tarnishing the PENN STATE Mark by, at least, using the Infringing PENN STATE Marks to sell goods that do not live up to the high standards set for goods and services offered under the PENN STATE Mark.

132. As a result of Defendants' likely dilution, Penn State has suffered, and will continue to suffer, irreparable injury and substantial damages, while Defendants have been and will continue to be unjustly enriched.

133. Upon information and belief, Defendants' dilution of the PENN STATE Mark is and was willful.

134. The likely dilution of the PENN STATE Mark caused by Defendants violates section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT VI
## Trademark Dilution Under 54 Pa. C.S.A. § 1124
### (the PENN STATE Mark)

135.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

136.   This claim is for dilution of trademarks and injury to business or reputation under 54 Pa. C.S.A. § 1124.

137.   The PENN STATE Mark is a famous mark in the Commonwealth of Pennsylvania within the meaning of 54 Pa. C.S.A. § 1124 and was famous prior to the date of Defendants' adoption and use of the Infringing PENN STATE Marks.

138.   Defendants' conduct, as described in this Complaint, is diluting and will dilute the PENN STATE Mark, thereby lessening the capacity of that Mark to identify and distinguish goods and services marketed and sold by Penn State under the PENN STATE Mark.

139.   Upon information and belief, Defendants' acts of trademark dilution have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made but for its unlawful conduct.

140.   Defendants' acts described above have caused injury and damages to Penn State and have caused irreparable harm to Penn State's goodwill and reputation

and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

**COUNT VII**
**Common Law Trademark Infringement and Unfair Competition**
**(All Infringing Marks)**

141.   Plaintiff Penn State hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

142.   This cause of action arises under the Commonwealth of Pennsylvania's common law of trademark infringement and unfair competition.

143.   Defendants' use of the Infringing Marks constitutes common law trademark infringement and unfair competition in violation of common law.

144.   Upon information and belief, Defendants' acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made if not for its unlawful conduct.

145.   Defendants' willful and deliberate acts described above have caused injury and damages to Penn State, and have caused irreparable injury to Penn State's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Penn State has no adequate remedy at law.

**Jury Demand**

Penn State demands a triable by jury on all issues so triable.

## Prayer for Relief

**WHEREFORE**, Penn State prays for judgment against Defendants as follows:

A.    Preliminarily and permanently enjoining and restraining Defendants, their directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under them, at first during the pendency of this action and thereafter perpetually:

    i.    from committing any acts of trademark infringement, trademark dilution, and unfair competition, and from implying a false designation of origin or a false description or representation with respect to the University Marks;

    ii.    from using in any manner packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials, or other materials the Infringing PENN STATE Marks and the Infringing Marks, or any other marks, words, or names that are confusingly similar thereto;

    iii.    from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship by, or connection to Penn State; and

iv. from using any designation that is likely to disparage, tarnish or dilute the distinctive quality of the PENN STATE Mark.

B. Requiring that Defendants deliver to Penn State any and all containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used in the preparation thereof, which in any way unlawfully use or make reference to the Infringing PENN STATE Marks, the Infringing Marks, or any of the University Marks.

C. Requiring that Defendants, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Penn State's counsel a written report under oath setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs A through B above.

D. Requiring Defendants to account and pay over to Penn State all damages sustained by Penn State as a result of Defendants' willful infringement and unfair competition, including Penn State's actual damages, lost licensing fees and royalties, disgorgement of Defendants' profits, Penn State's attorney's fees and costs, and ordering that the amount of damages awarded Penn State be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(a) and 1125.

E.  Requiring Defendants pay statutory damages of up to $2 million per Infringing Mark per type of good sold, offered for sale or distributed pursuant to 15 U.S.C. § 1117(c).

F.  Ordering that Penn State recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

G.  Awarding Penn State such other and further relief as this Court deems just and proper.

Dated this 21st day of October, 2022.

Respectfully submitted,

**MCGUIREWOODS LLP**

By: /s/Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com
Email:  celler@mcguirewoods.com
Email:  mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue

Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*