# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE PENNSYLVANIA STATE UNIVERSITY,

Plaintiff,

v.

VINTAGE BRAND, LLC; SPORTSWEAR, INC., dba PREP SPORTSWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; MICHELLE YOUNG

Defendants.

Case No. 4:21-cv-01091-MWB
Hon. Matthew W. Brann

JURY TRIAL DEMANDED

## Brief in Support of Penn State's Partial Summary Judgment Motion

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................1

II.    STATEMENT OF MOST PERTINENT FACTS .......................................3

III.   PROCEDURAL HISTORY .......................................................................8

IV.   STANDARD OF REVIEW ......................................................................9

V.     ARGUMENT............................................................................................10

    A.    Judgment Should be Granted to Penn State on Penn State's
          Infringement, Unfair Competition, Counterfeiting, and False
          Endorsement Claims. ......................................................................10

          1.    Defendants Are Liable for Federal Trademark
                Infringement and Unfair Competition (Counts I, III, VII). .....10

                a.     Penn State Owns Valid and Legally Protected
                        Marks. ..................................................................12

                b.     Defendants are Using Identical Marks on
                        Competing Goods, Warranting Judgment as a
                        Matter of Law. ....................................................14

                c.     Though Unnecessary, Applying the Lapp Factors
                        Shows Penn State is Entitled to Summary
                        Judgment....................................................................19

          2.    Defendants Are Liable for Trademark Counterfeiting
                 (Count II)..............................................................................24

          3.    Defendants Are Liable for False Endorsement (Count IV) .....25

          4.    Defendants' Infringement is Willful .......................................30

    B.    Judgment Should be Granted to Penn State on the
          Counterclaims and Affirmative Defenses. .........................................33

          1.    Defendants Cannot Support Their Ornamentality
                Challenges (Affirmative Defenses 7-8; Counterclaim
                Count II) ...............................................................................33

                a.     Penn State's Incontestable Registrations Preclude
                        Defendants' Ornamentality Challenges........................34

b.  Defendants Offer No Evidence That the University
Marks Are Perceived as Mere Ornamentation ..............35

c.  Use of Trademarks on Merchandise to Indicate a
Secondary Source is not Mere Ornamentation..............36

d.  Respectfully, this Court Does Not Have
Jurisdiction to Cancel Penn State's Trademark
Registrations Based on an "As Applied"
Ornamentation Challenge .............................................38

2.  Defendants' Cancellation Counterclaim as to
Registrations for the University Seal is Insufficient as a
Matter of Law..........................................................................40

VI.  CONCLUSION.............................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) ........................................................................10, 11

*In Re Alabama Tourism Dep't*,
No. 87599292, 2020 WL 2301221 (TTAB May 6, 2020)................................41

*Am. Diabetes Ass'n v. Friskney Family Trust, LLC*,
177 F. Supp. 3d 855 (E.D. Pa. 2016) ..............................................................9

*Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*,
793 F.3d 313 (3d Cir. 2015) ..........................................................................20

*AVS Found. v. Eugene Berry Enters., LLC*,
No. 11-cv-01084, 2011 WL 6056903 (W.D. Pa. Dec. 6, 2011)............20, 23, 24

*Baker v. Master Printers Union*,
34 F. Supp. 808 (D.N.J.1940) ........................................................................17

*Bandag, Inc. v. Al Bolse's Tire Stores, Inc.*,
750 F.2d 903 (Fed. Cir. 1984) ......................................................................27

*Bd. of Supervisors for Louisiana State Univ. Ag. and Mech. College v.*
*Smack Apparel Co.*,
550 F.3d 465 (5th Cir. 2008) ........................................................................22

*Berner Int'l Corp. v. Mars Sales Co.*,
987 F.2d 975 (3d Cir. 1993) ..........................................................................12

*Brockum Co., A Div. of Krimson Corp. v. Blaylock*,
729 F. Supp. 438 (E.D. Pa. Jan. 31, 1990) ....................................................21

*Cartier Int'l A.G. v. Daniel Markus, Inc.*,
No. 10-1459, 2013 WL 5567150 (D.N.J. Oct. 8, 2013) ..................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................35, 41

*Century 21 Real Est. Corp. v. Century Life of Am.*,
    10 U.S.P.Q.2d 2034, 1989 WL 281901 (T.T.A.B. 1989)............................39, 40

*Chanel, Inc. v. Gordashevsky*,
    558 F. Supp. 2d 532 (D.N.J. 2008) ..............................................................24, 25

*City of New York v. Blue Rage, Inc.*,
    435 F. Supp. 3d 472 (E.D.N.Y. 2020) ...............................................................43

*Coach, Inc. v. Bag Place, Co.*,
    No. 10-6226, 2012 WL 13028160 (D.N.J. May 7, 2012)
    .......................................................................................................19, 25, 30, 31

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
    214 F.3d 432 (3d Cir. 2000) .............................................................................12

*Country Floors, Inc. v. Gepner*,
    930 F.2d 1056 (3d Cir. 1991) ...........................................................................14

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003).............................................................................................26

*David's Bridal, Inc. v. House of Brides, Inc.*,
    No. 06-cv-5660, 2010 WL 323306 (D.N.J. Jan 20, 2010) ................................33

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
    954 F.2d 869 (3d Cir. 1992) .......................................................................39, 40

*Dluhos v. Strasberg*,
    No. CIV.A. 00-3163 (JCL), 2005 WL 1683696 (D.N.J. June 24,
    2005) .................................................................................................................11

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008) .....................................................................26, 27

*Food Sciences Corp. v. Nagler*,
    No. CIV. 09-1798 JBS KMW, 2010 WL 4226531 (D.N.J. Oct. 20,
    2010) .........................................................................................................26, 27

*Giannone v. Giannone*,
    429 F. Supp. 3d 34 (E.D. Pa. 2019)..................................................................10

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016) ..............................................................11

*Interpace Corp. v. Lapp, Inc.*,
  721 F.2d 460 (3d Cir. 1983) ....................................................*passim*

*Kars 4 Kids Inc. v. America Can!*,
  8 F.4th 209 (3d Cir. 2021) .........................................................13, 14

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ..............................................................23

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) (Reed, Jr., J.) .........................24

*Macy's Inc. v. Strategic Marks, LLC*,
  No. 11-CV-06198-EMC, 2016 WL 374147 (N.D. Cal. Feb. 1, 2016) ...............................................................................................36

*March Madness Athletic Ass'n, LLC v. Netfire, Inc.*,
  310 F. Supp. 2d 786 (N.D. Tex. 2003) ..............................................29

*Marketquest Grp., Inc. v. BIC Corp.*,
  316 F. Supp. 3d 1234 (S.D. Cal. 2018) ..............................................34

*Marshak v. Treadwell*,
  240 F.3d 184 (3d Cir. 2001) ..............................................................39

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................9

*In re Mighty Leaf Tea*,
  601 F.3d 1342 (Fed. Cir. 2010) ........................................................15

*N.V.E., Inc. v. Famous*,
  No. CIV.A.08-1633(FLW), 2009 WL 2194538 (D.N.J. July 22, 2009) ................................................................................................35

*Nat'l Football League Props., Inc. v. New Jersey Giants, Inc.*,
  637 F. Supp. 507 (D.N.J. 1986) ........................................................23

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*,
    424 F. Supp. 3d 334 (D. Del. 2019)..............................................................12, 24

*Nike, Inc. (Substituted For Official Starter LLC) v. WNBA Enterprises, LLC*,
    85 U.S.P.Q.2d 1187, 2007 WL 763166 (T.T.A.B. 2007)....................................13

*Nike, Inc. v. E. Ports Custom Brokers, Inc.*,
    2018 WL 3472628 (D.N.J. July 19, 2018) ........................................................18

*In re Olin Corporation*,
    181 U.S.P.Q. 182, 1973 WL 19761 (T.T.A.B. 1973)........................................37

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
    143 F.3d 800 (3d Cir. 1998) ............................................................................19

*In re Paramount Pictures Corp.*,
    213 U.S.P.Q. 1111 (T.T.A.B. 1982) .................................................................37

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985)..........................................................................................34

*Pennsylvania State Univ. v. Vintage Brand, LLC*,
    614 F. Supp. 3d 101 (M.D. Pa. 2022)...............................................................38

*Pennzoil-Quaker State Co. v. Smith*,
    No. 2:05cv1505, 2008 WL 4107159 (W.D. Pa. Sept. 2, 2008)....................11, 21

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
    514 U.S. 159 (1995)..........................................................................................32

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992) ............................................................................14

*Sabinsa Corp. v. Creative Compounds, LLC*,
    609 F.3d 175 (3d Cir. 2010) ............................................................................23

*Securacomm Consulting, Inc. v. Securacom Inc.*,
    166 F.3d 182 (3d Cir. 1999) ............................................................................30

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) ............................................................................13

*Sunquest Info. Sys., Inc. v. Park City Sol'ns, Inc.*,
    130 F. Supp. 2d 680 (W.D. Pa. 2000) ................................................................. 17

*Univ. of Ga. Athletic Ass'n v. Laite*,
    756 F.2d 1535 (11th Cir. 1985) ........................................................................ 23

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    275 F. Supp. 2d 543 (D.N.J. 2003) ................................................................... 21

*World Wrestling Fed'n Entm't. Inc. v. Big Dog Holdings, Inc.*,
    280 F. Supp. 2d 413 (E.D. Pa. Mar. 10, 2003) ................................................. 22

**Statutes**

15 U.S.C. § 1051 .................................................................................................... 40

15 U.S.C. § 1051(d) ............................................................................................... 38

15 U.S.C. § 1052(b) ......................................................................................... 42, 43

15 U.S.C. §§ 1052(b), 1064(3) .............................................................................. 41

15 U.S.C. § 1057(b) ............................................................................................... 35

15 U.S.C. § 1114(1)(a) ........................................................................................... 24

15 U.S.C. § 1115(b) ............................................................................................... 34

15 U.S.C. § 1119 ........................................................................................ 38, 39, 40

15 U.S.C. § 1125(a)(1)(A) ............................................................................ 11, 25, 26

15 U.S.C. § 1127 ............................................................................................... 17, 25

Lanham Act ................................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 2.56 .................................................................................................... 39

37 CFR § 2.52(a) ................................................................................................... 15

Fed. R. Civ. P. 5(b)(2)(E) ...................................................................................... 47

Fed. R. Civ. P. 56(c) ................................................................................................ 9

Mark A. Lemley & Mark McKenna, *Irrelevant Confusion*, 62 Stan. L. Rev. 413, 425 (2010) ........................................................... 32

Mark A. Lemley & Mark McKenna, *Owning Mark(et)s*, 109 Mich. L. Rev. 137, 139, 148 (2010) ................................................. 32

# I.   **INTRODUCTION**

This is a classic case of trademark infringement and counterfeiting.   Penn State owns long-established rights in well-known trademarks, and Defendants have used those same marks to sell the same merchandise to the same group of consumers as Penn State.  As shown by the below selection of genuine Penn State and infringing Vintage Brand merchandise, likelihood of confusion is unquestionable, because Defendants' products are visually indistinguishable from the real thing:



In fact, Plaintiff trusts that without further information, readers of this brief will be unable to tell which of the items above are genuine licensed Penn State merchandise, and which are copycats from Vintage Brand.[1]

---

[1] *See infra* p. 45 for an answer key distinguishing genuine Penn State merchandise from the infringing Vintage Brand merchandise.

Defendants try to complicate the uncomplicated with a variety of legal arguments and defenses, but in the past year of discovery, they have not adduced any evidence that would support their defenses or excuse their unlawful conduct. Nor can they—the use of identical versions of registered marks on the registered goods is counterfeiting, the most egregious form of trademark infringement, and Defendants' conduct runs squarely afoul of the plain language of the Lanham Act. Absent Congressional action amending that statute, Defendants' conduct is unlawful, and summary judgment as to liability should be granted.

Summary judgment should also be granted on Defendants' invalidity counterclaims and affirmative defenses. Penn State's trademarks are largely incontestable and fall squarely within the definitions of registrable trademarks set forth by the United States Patent and Trademark Office ("USPTO"). Yet despite bearing the burden of proof (and the requirement that they overcome the strong evidentiary presumptions that accompany registered marks), Defendants cannot point to any evidence of invalidity. Defendants have produced no evidence showing that Penn State does not own valid and enforceable trademark rights or showing that these marks are merely ornamental.

The relevant facts here are straightforward and undisputed. Judgment should be granted to Penn State as a matter of law on its claims for trademark infringement,

counterfeiting, unfair competition, and false endorsement, as well as on Vintage Brand's counterclaims, and related affirmative defenses.

## II.    STATEMENT OF MOST PERTINENT FACTS[2]

The Pennsylvania State University ("Penn State" or "the University") is Pennsylvania's flagship public research university.  (SMF ¶ 1).  Penn State educates approximately one-hundred thousand students each academic year across Pennsylvania and online and has one of the largest alumni bases in the country.  (SMF ¶¶ 2-4).  Penn State provides a top-quality education and through recognition of its educational and athletic services has developed a strong and loyal base of students, alumni, and fans who support the University.  (SMF ¶¶ 1-5).  For decades, Penn State has also sold branded merchandise at its bookstore and through local and national online and brick and mortar retailers.  (SMF ¶¶ 12-13, 18-19, 28-29, 35-41, 46-47, 51-54, 68).

Penn State has developed rights in a number of trademarks that it uses to distinguish its various goods and services.  (SMF ¶¶ 6-48).  Among these marks are the following, which are at issue in this case:

| MARK | ABBREVIATION | U.S. REGISTRATION NOS. |
|---|---|---|
| **PENN STATE** | ("PENN STATE Mark") | • 1308610 (incontestable) <br> • 5766698 |

---

[2] Penn State refers the Court to its Statement of Undisputed Material Facts ("SMF"). For the Court's convenience, it restates the core undisputed story here.

| MARK | ABBREVIATION | U.S. REGISTRATION NOS. |
|---|---|---|
| **THE PENNSYLVANIA STATE UNIVERSITY** | ("TPSU Mark") | • 1315693 (incontestable)<br>• 5399989<br>• 5742516 |
| | ("Lion Shrine Logo") | • 1350286 (incontestable)<br>• 1397810 (incontestable) |
| | ("Pozniak Lion Logo") | • 5305910 |
| | ("University Seal") | • 1276712 (incontestable)<br>• 5877080 |
| | ("S Lion Logo") | None (protected by common law rights) |

(collectively, the "**University Marks**"). (SMF ¶¶ 6-48). Penn State has been using each of the University Marks continuously in commerce for years, going back before 2018—when the infringement at issue began. (SMF ¶¶ 7-8, 14, 24, 30, 40, 42).

Penn State uses the University Marks for many different services and products, ranging from educational and alumni services to merchandise such as apparel and accessories, magnets, wall art, and other household accessories. (SMF ¶¶ 1-47). Penn State sells some of its merchandise directly and some through

licensees. (SMF ¶¶ 13, 19, 29, 37, 40, 47). Since developing its licensing program in the 1980s, Penn State has found that licensing has been an effective way to control and develop its brands and ensure that goods and services associated with its brands are of high quality. (SMF ¶¶ 55-67). Penn State is also able to receive a portion of the licensees' profits, which Penn State reinvests in student scholarships and other programs, further supporting the University's mission of providing top-notch education. (SMF ¶ 65).

Defendants here are Vintage Brand and its affiliated company (Sportswear, Inc.) and the three individuals who run and make decisions for Vintage Brand (Chad Hartvigson, Erik Hartvigson, and Michelle Young). (SMF ¶¶ 69-89). Vintage Brand is an e-commerce website that sells clothing and other merchandise related to various colleges and universities, as well as some professional sports teams. (SMF ¶¶ 69-73, 127). Vintage Brand's website, <vintagebrand.com>, is organized into different "stores" for specific colleges and sports teams. (SMF ¶¶ 70-73, 97-100, 127-129). Customers navigate the site to the "store" for their chosen team, and have the option to buy t-shirts, hats, glassware, magnets, and other merchandise that bear various logos from their school or team. (SMF ¶¶ 70-73). Vintage Brand admits that it uses virtually indistinguishable copies of logos and word marks (such as PENN STATE) that schools themselves have used and registered as trademarks. (SMF ¶¶ 74-80, 113). In fact, Vintage Brand sources its images directly from

genuine branded merchandise that its members have acquired. (SMF ¶¶ 74-80). Vintage Brand manually scans those items, producing digital images that are then put unchanged (with the exception of formatting changes necessary for printing) onto the website where customers can purchase merchandise bearing these copied images. *Id.*

Vintage Brand does not actually manufacture any products itself or distribute items to customers. (SMF ¶ 73). Those functions are provided, instead, by Sportswear. (SMF ¶ 87). Vintage Brand simply buys and scans pictures of collegiate and sports-related memorabilia, offers the products for sale on its website, and collects profits from sales of the products that Sportswear manufactures, and distributes. (SMF ¶¶ 69-80).

Vintage Brand launched a store on the Vintage Brand Website featuring Penn State merchandise in 2018, all offered without authorization from Penn State. (SMF ¶¶ 90, 141). The webpage for this store is titled "Penn State Nittany Lions Vintage Designs for Apparel & Gear" and offers items such as:

   

(SMF ¶¶ 97-100, 113).

Vintage Brand's website is virtually indistinguishable from the e-commerce sites that sell licensed Penn State collegiate merchandise. (*Compare* SMF ¶ 132 *with* ¶¶ 100-101). Vintage Brand sells the exact same sort of merchandise that Penn State sells and authorizes. (SMF ¶¶ 121-134). Vintage Brand uses identical copies of Penn State's trademarks on its merchandise and throughout its website. (SMF ¶¶ 91-113, 162). Vintage Brand solicits customers through dynamic internet searching tools that will show links to their website when consumers search for collegiate merchandise and promotes its products at Penn State events alongside authorized merchandise. (SMF ¶¶ 83, 128, 135). And the Vintage Brand website is designed to include specific subpages (or "stores") for the various colleges for which Defendants sell related merchandise—much like how authorized collegiate sellers organize their sites. (*Compare* SMF ¶ 132 *with* ¶¶ 100-101). The difference here is that Vintage Brand has never asked for (or received) permission to use Penn State's marks, Penn State has no ability to control Vintage Brand's use of the Penn State trademarks, and Penn State does not receive any portion of Vintage Brand's revenues. (SMF ¶¶ 141-142).

Defendants' counterfeiting has, of course, caused actual confusion in the marketplace. Discovery showed that a Vintage Brand customer (and Penn State graduate) has already been confused by the Vintage Brand website, incorrectly believing that Penn State had licensed or authorized the merchandise. (SMF ¶¶ 136-

137).  While evidence of actual confusion is not required, when present it strongly supports liability.  In addition, expert David Franklyn tested the likelihood of confusion for two different t-shirt designs sold by Defendants and found significant net confusion levels, with 27-39% of respondents confused as to source, sponsorship, affiliation, or licensure.  (SMF ¶¶ 138-140).  Defendants' own expert acknowledges that Defendants' small print "disclaimer" has no impact on consumer confusion.  (SMF ¶ 111).

### III.  <u>**PROCEDURAL HISTORY**</u>

Penn State sent a cease and desist letter to Vintage Brand in December 2020.  (SMF ¶ 151).  After Defendants failed to stop infringing the University Marks, Penn State brought this action against Vintage Brand on June 21, 2021.  Dkt. 1.  During the pleading and discovery stages of this action, the parties have amended their claims and defenses.  The operative pleadings here are Penn State's Second Amended Complaint, filed October 21, 2022, which asserts claims for trademark infringement, counterfeiting, unfair competition, dilution, and false endorsement against Vintage Brand as well as Sportswear, Inc., Chad Hartvigson, Erik Hartvigson, and Michelle Young.  Dkt. 67.  Vintage Brand has asserted two counterclaims against Penn State, seeking to cancel three of Penn State's trademark registrations.  Dkt. 72.  The remaining Defendants have each filed Answers and Defenses matching those filed by Vintage Brand (*see* Dkt. 75, 76, 77, 78), but those

Defendants did not file counterclaims.[3]  The parties have now concluded fact and expert discovery, and each side has a *Daubert* motion pending, seeking to partially exclude the other's expert witnesses.  *See* Dkt. 93, 95.

Penn State now moves for summary judgment under FRCP 56 on its claims against all Defendants on trademark infringement, unfair competition, counterfeiting, and false endorsement, as well as on the counterclaims asserted by Vintage Brand, and on the Defendants' affirmative defenses for ornamentality, functionality, and fair use.

## IV.  STANDARD OF REVIEW

Summary judgment is proper where the record of pleadings, discovery material, and affidavits show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the court must draw reasonable inferences in the non-movants' favor, the motion is decided based on the evidence in the record.  *Am. Diabetes Ass'n v.*

---

[3] Given that the pleadings of Sportswear Inc., Chad Hartvigson, Erik Hartvigson, and Michelle Young are identical to the answers and defenses filed by Vintage Brand, for the purpose of simplicity, Penn State cites only to the responsive pleading filed by Vintage Brand.

*Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 865 (E.D. Pa. 2016) (summary judgment cannot be defeated by unsupported or conclusory allegations).

## V.    ARGUMENT

This case is ripe for summary judgment.  There is no disputed issue of material fact here, and judgment should be granted to Penn State as a matter of law on Counts I-IV, and VII of Penn State's Second Amended Complaint, as well as on Vintage Brand's Counterclaims and on Defendants' Affirmative Defenses 2-3 and 7-8.

### A. **Judgment Should be Granted to Penn State on Penn State's Infringement, Unfair Competition, Counterfeiting, and False Endorsement Claims.**

#### 1. **Defendants Are Liable for Federal Trademark Infringement and Unfair Competition (Counts I, III, VII).**

Summary judgment should be granted in Penn State's favor as to Counts I, III, and VII of the Second Amended Complaint, which allege trademark infringement and unfair competition.  These claims turn on whether Penn State owns valid marks and Defendants have used those marks in a manner likely to confuse consumers.  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (standard for federal trademark infringement and unfair competition claims); *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (applying standard to Pennsylvania common law unfair competition claims).[4]

_____

[4] The sole difference between the federal and Pennsylvania claims is that the federal trademark infringement and unfair competition claims contain an interstate

10

On the confusion element, the Lanham Act makes several types of consumer confusion actionable—including confusion as to who makes a product as well as confusion about who authorizes or sponsors a product. *See* 15 U.S.C. § 1125(a)(1)(A) (creating cause of action for using "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin" in a manner that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"); *see Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC, 823 F.3d 153, 161 (2d Cir. 2016)* (vacating summary judgment decision where district court held that only confusion as to source was actionable, stating "the Lanham Act protects against numerous types of confusion, including confusion regarding affiliation or sponsorship", and collecting cases); *A&H Sportswear, 237 F.3d at 216* ("Marks are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source,

_____

commerce requirement. *See Pennzoil-Quaker State Co. v. Smith*, No. 2:05cv1505, 2008 WL 4107159, *9 n.12 (W.D. Pa. Sept. 2, 2008) (noting this single difference in infringement inquiry, and further stating that analysis is otherwise identical). Under either claim, there is no dispute that Defendants sell merchandise bearing the Infringing Marks on the internet to customers throughout the United States, including in Pennsylvania. (SUMF ¶ 90). This constitutes use in commerce. *See Dluhos v. Strasberg*, No. CIV.A. 00-3163 (JCL), 2005 WL 1683696, at *7 (D.N.J. June 24, 2005) (defendant used infringing marks in commerce by operating website).

affiliation, connection or sponsorship.")  Here, the undisputed facts show that summary judgment is appropriate.

### a. Penn State Owns Valid and Legally Protected Marks.

There is no dispute that Penn State owns valid marks.  Ownership can be shown in two ways.  First, a federal registration creates a presumption of ownership, and where a registration is incontestable, the Lanham Act provides that the registration is conclusive proof of ownership.  *See Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) ("If the mark at issue is federally registered and has become incontestable, then validity, legal protectability, and ownership are proved.").  Second, even where a mark is not registered, ownership can be proved through evidence that the plaintiff has been continuously using a distinctive mark in commerce.  *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 979 (3d Cir. 1993).

Here, Penn State owns valid and incontestable trademark registrations for the PENN STATE Mark, the TPSU Mark, the Lion Shrine Logos, the Pozniak Lion Logo, and the University Seal (together, the **"Registered Marks"**).  (SMF ¶¶ 7, 9-11, 14-17, 24-27, 30-34, 42-45), *supra* at pp. 3-4. Therefore, the Registered Marks are presumed, by law, to belong to Penn State, satisfying the ownership element for Penn State's claims for trademark infringement and unfair competition.  *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334, 346 (D.

Del. 2019) (on summary judgment motion, finding ownership element satisfied where plaintiff showed evidence of incontestable federal registrations).

The only mark at issue which is not protected by a federal registration is the S Lion Logo. *Supra* at p. 4. Penn State has been using the S Lion Logo continuously since at least 2015 in connection with t-shirts, sweatshirts, hats, wall hangings, mugs, koozies, glassware, and other products. (SUMF ¶¶ 38-41). Penn State therefore owns valid and enforceable rights in this mark. *See Kars 4 Kids Inc. v. America Can!, 8 F.4th 209, 219 (3d Cir. 2021)* (common law ownership of a trademark is shown through continuous use of that mark in commerce). Further, the S Lion Logo is inherently distinctive as it combines multiple elements that are themselves distinctive (such as the word "Penn State" and an image of an African lion), against the background of a stylized "S". (SMF ¶ 38). *See Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 382 (2d Cir. 2005)* (stating that logos comprising separate elements which are themselves inherently distinctive along with stylized shapes or letters can be inherently distinctive); *Nike, Inc. (Substituted For Official Starter LLC) v. WNBA Enterprises, LLC, 85 U.S.P.Q.2d 1187, 2007 WL 763166 (T.T.A.B. 2007)* (finding that a composite logo of a star and the letter "S" was strong in context of a likelihood of confusion analysis). Given that Penn State's continuous use of the S Lion Logo predates when Vintage Brand was even founded or started its website (SMF ¶ 40), Penn State has priority and is entitled to enforce its common law rights

in this Logo here.  *See* [*Kars 4 Kids*, 8 F.4th at 219](#) (upholding ruling that party who had continuously used mark first owned common law trademark rights).

Thus, there is no genuine dispute that Penn State owns valid and enforceable rights in each of the University Marks.

### b. Defendants are Using Identical Marks on Competing Goods, Warranting Judgment as a Matter of Law.

There is similarly no genuine dispute that the parties are in direct competition here.  Where parties directly compete with respect to the goods in question, "the court need rarely look beyond the mark itself" in assessing trademark infringement. [*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)](#).  The likelihood of confusion turns on whether the marks at issue are "confusingly similar" in appearance. [*Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1063 (3d Cir. 1991)](#). *See also* [*S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992)](#) ("We have held that 'there is a great likelihood of confusion when an infringer uses the exact trademark' as the plaintiff") (internal citations omitted); [*Cartier Int'l A.G. v. Daniel Markus, Inc.*, No. 10-1459, 2013 WL 5567150, at *8 (D.N.J. Oct. 8, 2013)](#) (likelihood of confusion "clearly" established where marks on counterfeit products were identical to registered marks).

***Direct Competition.***  Here, the evidence shows that Penn State and Vintage Brand directly compete sales of the merchandise at issue.  Defendants have advertised, offered, and sold t-shirts, sweatshirts, hats, socks, mugs, tumblers,

drinkware, koozies, coasters, water bottles, posters, wall art, magnets, cutting boards, and puzzles. (SMF ¶¶ 71, 162). Penn State sells these same products. (SMF ¶¶ 12-13, 18-19, 28, 37, 39-41, 46, 121-123, 162). And the parties are selling to an overlapping set of customers——people looking to buy Penn State-related merchandise online. (SMF ¶¶ 53-54, 124, 127-129). To this end, Defendants have conceded that their primary competitors are companies like Fanatics and Homefield, both of which sell authorized Penn State merchandise, including merchandise with a "vintage" style. (SMF ¶¶ 126, 131-134). Thus there is no dispute that the parties here directly compete.

***Similarity of Marks.*** Similarly, the evidence is clear that Defendants use the University Marks—or nearly identical versions—on their merchandise.

First, for the two word marks at issue (the PENN STATE and TPSU Marks), Defendants have clearly used these exact marks. Penn State owns rights in those marks regardless of the color, font, or stylization used. (SMF ¶¶ 9-11, 14-17); *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348 (Fed. Cir. 2010) (affirming decision that trademark registration for words in standard character format applied to various renditions of that mark); 37 CFR § 2.52(a) (describing meaning of standard character marks). Defendants have used both word marks on many of the designs they sell, using identical copies of Penn State's trademarks "PENN STATE" and "THE PENNSYLVANIA STATE UNIVERSITY". (SMF ¶¶ 113, 162). Examples of the

images that Defendants have applied to merchandise bearing the PENN STATE and TPSU Marks are included here:



(SMF ¶ 92).

Second, Defendants have used nearly identical iterations of the University Seal. (SMF ¶ 113 at pp. 59, 61, ¶ 162 at pp. 88-91). The Seal also appears on many of the Penn State-related designs Defendants used, with minimal if any alteration. (SMF ¶¶ 92, 113, 162). The only apparent visual differences in Defendants' use is that in one version, they removed the year "1855" from the bottom of the Seal, while in other versions, they left this year in place but with the Seal appearing partially behind an image of a lion, as seen in the following close-ups of Defendants' designs:

 

(SMF ¶ 113 at p. 59, ¶ 162 at p. 89). Those renderings of the Seal used by Defendants are nearly indistinguishable from the University Seal. Given that Defendants' version includes the same wording, shape, series of concentric circles,

fluting, and intricate imagery at the center of the seal, the marks provide the same commercial impression. *See Sunquest Info. Sys., Inc. v. Park City Sol'ns, Inc.*, 130 F. Supp. 2d 680, 693 (W.D. Pa. 2000) ("No doubt a discerning lawyer or calculating consumer could parse these marks until they appear to have little in common, but it is not my charge to perform such legal surgery." (internal quotation marks omitted)). Defendants are not saved by their tweaks to Penn State's mark. *See Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J.1940) ("Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.").

With respect to the S Lion and Pozniak Lion Logos, Vintage Brand has used identical versions of these marks, as seen here:

 

(SMF ¶¶ 95, 113 at pp. 48, 59, 61). There is no dispute that Defendants are using marks that are "substantially indistinguishable" from Penn State's registered and unregistered trademarks. 15 U.S.C. § 1127.

Finally, Defendants' uses of pictures of the Lion Shrine are also highly similar to the Lion Shrine Logo owned by Penn State. Penn State owns two incontestable registrations covering this logo that it has continuously used for decades, each showing the profile of the Nittany Lion Shrine that is iconic to the Penn State community. (SMF ¶¶ 24-26). The image Defendants use is a near identical iteration, showing the Nittany lion in profile, on the rock.

| Lion Shrine Logo | Defendants' Infringing Merchandise and Image |
|---|---|
|  | |

(SMF ¶ 100, ¶ 113 at p. 60). Because these logos are near identical, they too weigh in favor of a likelihood of confusion. *See Nike, Inc. v. E. Ports Custom Brokers, Inc.*, 2018 WL 3472628, at *4 (D.N.J. July 19, 2018) (where direct competitor of Nike sold shoes bearing marks that were "near-identical" to Nike's shoes and marks, likelihood of confusion was established).

It's no surprise that Vintage Brand is using identical or nearly identical copies of the University Marks, given that they simply scan Penn State merchandise to extract images, and then copy the images onto their own merchandise. (SMF ¶¶ 74-80). They start with Penn State trademarks, and they put out products with Penn State trademarks.

Given that Defendants are using identical or nearly identical marks on competing goods, no further analysis is necessary for Penn State's counterfeiting (Count II), trademark infringement (Counts I and VII) and unfair competition (Count III) claims: Defendants are liable on Penn State's trademark infringement and unfair competition claims. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("where the identical mark is used concurrently by unrelated entities, a likelihood of confusion is inevitable"); *Coach, Inc. v. Bag Place, Co.*, No. 10-6226, 2012 WL 13028160, *3-4 (D.N.J. May 7, 2012) (granting summary judgment where defendant used plaintiff's trademarks on products that directly competed with plaintiff's products).

### c. Though Unnecessary, Applying the **Lapp** *Factors Shows Penn State is Entitled to Summary Judgment.*

While it is not necessary here to apply the traditional multi-factor test for likelihood of confusion, if the Court were to apply that analysis, the result would still be that Penn State is entitled to judgment as a matter of law on infringement and unfair competition. This Circuit applies the *Lapp* factors to gauge likelihood of confusion, looking at (1) the similarity of the marks; (2) the strength of the owner's mark; (3) the price of goods and amount of care purchasers will exercise; (4) & (6) actual confusion and length of time that the goods have been sold without confusion arising; (5) defendant's intent in adopting the mark; (7) marketing channels; (8) overlapping markets; (9) similarity of goods; and (10) evidence that

owner might expand markets. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (3d Cir. 2015); *see also Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

These factors weigh heavily in Penn State's favor. As explained above, Vintage Brand is using marks that are identical or nearly identical to the University Marks, sells the same goods as Penn State, and the parties share the same customer base. *See supra*, § V.A.1.b. Therefore, *Lapp* **factor 1** (similarity of the marks), **factor 8** (overlapping markets), and **factor 9** (similarity of the goods) all weigh strongly in favor of Penn State, and **factor 10** (potential expansion) is not relevant given that Penn State is already in the same market as Vintage Brand. *See AVS Found. v. Eugene Berry Enters., LLC*, No. 11-cv-01084, 2011 WL 6056903, at *7 (W.D. Pa. Dec. 6, 2011) (finding likelihood of confusion where defendant sold shirts bearing plaintiff's TERRIBLE TOWEL-related marks because those products were targeted to the same Pittsburgh Steelers fans as were plaintiff's products). And *Lapp* **factor 3** (price of goods and purchaser care), **factor 4** (actual confusion), and **factor 6** (length of time without confusion) similarly support Penn State here because the parties' merchandise is comparably priced and t-shirts are not complex purchases (SMF ¶ 130), and because within just a few years of sales, evidence has arisen of customer confusion and a consumer survey shows actual confusion. (SMF ¶¶ 136-140).

Further, Penn State's marks are strong (***Lapp* factor 2**) as they have all been used exclusively by Penn State for decades, Penn State invests in developing and promoting those marks, and nearly all of the marks are protected by federal registrations, many of them incontestable.  (SMF ¶¶ 7, 9-11, 14-17, 24-27, 30-34, 42-45), *supra* at pp. 3-4.  *See* Pennzoil-Quaker, 2008 WL 4107159, *12 (marks protected by incontestable registrations are entitled to strong protection); *see also* *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 571 (D.N.J. 2003) (marks were considered strong where they were used continuously for years and were well-known in relevant customer group).  And the strength of the University Marks was confirmed by the consumer surveys constructed by Plaintiff's expert David Franklyn.  (SMF ¶¶ 114-117, 138-140).  In both surveys, consumers recognized the University Marks as trademarks signifying Penn State. *Id.*; *see also* *Video Pipeline*, 275 F. Supp. 2d at 571.

The price of the goods (**factor 3**) here is low, with both parties selling merchandise at modest prices within the same price brackets—for instance, t-shirts and hats for under $30; koozies and magnets for under $10; and sweatshirts for under $50 per item. (SMF ¶ 130).  These goods are inexpensive, and customers purchasing such products are unlikely to pay close attention or spend significant time during the purchase process.  *See* *Brockum Co., A Div. of Krimson Corp. v. Blaylock*, 729 F. Supp. 438 (E.D. Pa. Jan. 31, 1990) ("T-shirts are relatively inexpensive items of

apparel and, as such, are unlikely to be the object of careful and intensive scrutiny by a prospective purchaser"); *World Wrestling Fed'n Entm't. Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413 (E.D. Pa. Mar. 10, 2003); *Bd. of Supervisors for Louisiana State Univ. Ag. and Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008) (accepting the district court's determination that "a likelihood of confusion existed because the shirts, which are relatively inexpensive, are not purchased with a high degree of care by consumers").

*Lapp* **factor 5** (Defendants' intent) also indicates confusion. Under this factor, "evidence of intentional, willful and admitted adoption of a mark closely similar to the existing marks weighs strongly in favor of finding the likelihood of confusion." *Checkpoint*, 269 F.3d at 286 (internal quotation marks omitted). Defendants have conceded that they conducted preclearance trademark searches, looking at records from the United States Patent and Trademark Office and searching websites like fanatics.com to see some of the products Penn State sells and to learn about the University's actual use. (SMF ¶¶ 144-146). Thus, by their own admission, Defendants knew that they were using Penn State's registered trademarks and chose to willfully infringe. Similarly, Vintage Brand continued selling Penn State merchandise even after receiving a cease and desist letter from Penn State, and did not stop until Penn State brought a lawsuit. (SMF ¶¶ 151-156). This further indicates bad intent, driving up the burden on Penn State before they would respect

Penn State's rights. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 721 (3d Cir. 2004) (in examining intent, it is relevant to consider whether defendant persisted in adopting mark after being warned of potential infringement); *Nat'l Football League Props., Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 518 (D.N.J. 1986) (continued use of marks after receiving cease and desist letters and defendant's hope to be bought out by plaintiff manifested bad faith).

The evidence of Defendants' bad intent (*Lapp* factor 5) goes on. Defendants' business strategy is to use Penn State's trademarks to attract customers and purchases, and to not to stop unless forced. This shows an intent to infringe. *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1536-37, 1545 (11th Cir. 1985) (finding bad intent where defendant offered beer under brands and logos similar to those of many college football teams, and defendant's marketing plan reflected that sales would come "not because the beer tastes great, but because the cans would catch the attention of University of Georgia football fans."); *AVS Found.*, 2011 WL 6056903, at *7 (finding bad intent by defendant under *Lapp* analysis where defendant printed t-shirts bearing the mark THE TERRIBLE T-SHIRT A PITTSBURGH ORIGINAL even though he knew he lacked permission from the Pittsburgh Steelers and "kn[ew] that the targeted market of Pittsburgh Steelers fans might view this as a authorized product"). Furthermore, Defendants are serial infringers (SMF ¶¶ 147-155), which also evidences bad faith. *See Sabinsa Corp. v.*

*Creative Compounds, LLC*, 609 F.3d 175, 187-88 (3d Cir. 2010) (bad intent can be shown where evidence is defendant sought to intentionally confuse consumers "and thereby capitalize on the senior user's goodwill").

In all, given that the *Lapp* factors tip so heavily in favor of a likelihood of confusion, summary judgment should be granted to Penn State. *See, e.g.*, *AVS Found.*, 2011 WL 6056903, at *1-8 (analyzing likelihood of confusion under the *Lapp* factors and granting summary judgment on Lanham Act trademark infringement claims); *see also New Balance*, 424 F. Supp. 3d at 349-50 (same).

### 2. Defendants Are Liable for Trademark Counterfeiting (Count II)

Summary judgment should also be granted to Penn State on Count II for counterfeiting the Registered Marks. Counterfeiting is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 581 (E.D. Pa. 2002) (Reed, Jr., J.) (quoting *Playboy Enters., Inc.*, 1998 WL 767440, at *7). To establish trademark counterfeiting, a plaintiff must show that: "(1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit or was willfully blind to such use." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (footnote omitted). For purposes of a trademark counterfeiting claim, a "counterfeit" is "a

spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *id.* § 1116(d)(1)(B)(ii). A finding of intentional trademark infringement using an identical or near identical mark is sufficient to show counterfeiting. *Chanel*, 558 F. Supp. 2d at 536-37 (D.N.J. 2008); *Coach, Inc. v. Bag Place, Co.*, No. 10-6226, 2012 WL 13028160, *5 (D.N.J. May 7, 2012) (finding first element of counterfeiting established based on prior conclusion that summary judgment would be granted on trademark infringement). Therefore, Penn State incorporates its analysis *supra* regarding Defendants' intentional use of identical or nearly identical marks on merchandise that they sell in direct competition with Penn State. *See supra*, § V.A.1 and SMF ¶ 162 (showing use of University Marks on registered goods on Vintage Brand merchandise). As Defendants quite literally copied and scanned Penn State's trademarks appearing on legitimate merchandise over onto their own unauthorized merchandise (SMF ¶¶ 74-80), there is no dispute that Defendants intentionally used a counterfeit mark, and are thus liable, as a matter of law, for counterfeiting.

### 3. Defendants Are Liable for False Endorsement (Count IV)

Judgment should be granted to Penn State as a matter of law on Count IV. This claim, brought under 15 U.S.C. § 1125(a)(1)(A), differs from Penn State's other claims for infringement and unfair competition, which are claims for trademark infringement through which a plaintiff can recover for infringement of unregistered

marks provided it proves common law ownership of a protectable mark.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (one function of § 1125(a) is to "create[e] a federal cause of action for traditional trademark infringement of unregistered marks" but noting that this section "is one of the few provisions [of the Lanham Act] that goes beyond trademark protection" as well).

Section 1125(a)(1)(A) is broader than just trademark infringement claims, however, and extends to the use of other indicia that falsely suggests a connection or endorsement.  *See id*.; *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019-20 (3d Cir. 2008) (articulating modified set of *Lapp* factors to apply in claim that defendant used plaintiff's voice to falsely convey that plaintiff sponsored the product); *Food Sciences Corp. v. Nagler*, No. CIV. 09-1798 JBS KMW, 2010 WL 4226531, at *5 (D.N.J. Oct. 20, 2010) (modified factors in claim that a former authorized distributor of plaintiff's products was selling remaining stock through an infringing website that falsely conveyed plaintiff's sponsorship).  The case law shows that the *Lapp* factors should be modified as appropriate to fit the type of claim, and on a false endorsement claims (such as here), the factors focus on looking at: (1) similarity between the way the parties market their goods; (2) similarities between the goods and whether consumers would associate them; (3) whether any confusion has occurred; (4) defendant's intent; (5) extent to which defendant's target customers recognize plaintiff; and (6) extent to which the plaintiff's fame and success is necessary for the

defendant's goods.  *See* [Facienda, 542 F.3d at 1019-20](#); [Food Sciences, 2010 WL 4226531, at *5](#).  *See also* [Bandag, Inc. v. Al Bolse's Tire Stores, Inc., 750 F.2d 903, 912 (Fed. Cir. 1984)](#).

Applying these factors here, the evidence shows that—much like the analysis of the traditional *Lapp* factors—Defendants' website and uses of the University Marks free ride off of the University's fame and reputation and mislead consumers about whether Penn State has endorsed or sponsored those goods.  In particular, Defendants use indicia associated with the University both on their products and throughout their website (as well as verbiage about the University) to falsely suggests an endorsement by the University.  This deceives consumers, as consumers looking for Penn State merchandise who land on Vintage Brand's website are likely to believe that they are perusing genuine merchandise.  Examples are shown below:



**VINTAGE BRAND**

COLLEGE    BASEBALL    FOOTBALL    BASKETBALL    MORE

Search

30% Off | Use Code: BYESUMMER

Shop Penn State Nittany Lions vintage designs for apparel, clothing, gear, and merchandise for all sports fanatics at the Penn State Nittany Lions Shop on VintageBrand.com. Vintage Brand is not affiliated with the Penn State Nittany Lions Bookstore or the Penn State Nittany Lions. Shop historic Penn State Nittany Lions fan gear and vintage college apparel to...

## PENN STATE NITTANY LIONS VINTAGE DESIGNS

Vintage designs not affiliated with, licensed, or sponsored by any college, team or league

Sort    Top Selling

**32 PRODUCTS**    Clear All

YOUR SELECTIONS
- College  ✕
- Penn State Nittany Li...  ✕

**PRODUCTS**    –
- T-Shirts
- Sweatshirts
- Hats
- Koozies
- Pennants
- Drinkware
- Coaster
- Posters
- Magnets
- Canvas
- Aluminum Wall Art
- Socks
- Puzzles
- Cutting Boards
- – Less

TRENDING T-SHIRTS

SHOP NOW

TOP SELLING SWEATSHIRTS

SHOP NOW

28



(SMF ¶¶ 100-101). *See March Madness Athletic Ass'n, LLC v. Netfire, Inc.*, 310 F. Supp. 2d 786, 812-13 (N.D. Tex. 2003) (finding likely confusion caused by defendant using domain marchmadness.com because website was likely to give consumers impression that it was affiliated with or authorized by NCAA).

Defendants will likely point to "disclaimer" language appearing on their website to argue in defense. But this language is of no help here because the undisputed evidence shows that consumers do not read this language, by design.

Dominic DeLong, who designs the user interface for the Vintage Brand website, explained that the site follows "best practice[s]" of "usually hid[ing] at least half of it", referring to Vintage Brand's legalese, and why the website requires users to actually click small boxes in read disclaimers. (SMF ¶¶ 107-110). Similarly, a customer identified through Vintage Brand's discovery testified that she has shopped on Vintage Brand's website and never noticed any disclaimer language. (SMF ¶ 112). And the consumer survey conducted by Vintage Brand's own expert showed that disclaimers had no meaningful impact on confusion rates. (SMF ¶ 111). All of the evidence on record, then, shows that the disclaimer language on Vintage Brand's site has no material bearing here, and does not ameliorate confusion.

As Defendants' conduct extends beyond trademark infringement to encompass false endorsement and unfair competition, summary judgment should be granted on Count IV of Plaintiff's claims.

### 4. Defendants' Infringement is Willful

There is no reasonable dispute regarding Defendants' willful and intentional use of the University Marks. "Willful conduct can be established through 'deliberate and unnecessary duplicating of a plaintiff's mark … in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff nurtured.'" *Coach, Inc.*, 2012 WL 13028160, at *5 (quoting *Securacomm Consulting, Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999).

Here, Defendants physically copied and applied exact or nearly exact duplicates of Penn State's Registered Marks to their merchandise. *Supra* § V.A.1.b. And many of the items that Defendants sell contain multiple trademarks owned by Penn State, (such as images with both the PENN STATE word mark and the Pozniak Lion Logo (SMF ¶ 113 at pp. 58-59)), which underscores that Defendants' intent is to appropriate the University's goodwill. *See Coach, Inc.*, 2012 WL 13028160, *5 (granting summary judgment to plaintiff on counterfeiting, stating: "Here, the fact that the Infringing Products contained multiple Coach Trademarks demonstrates that such was calculated to appropriate the good will nurtured by Plaintiff.").

In addition, Defendants' business model highlights their ill intent. Vintage Brand's founders and owners all worked at Sportswear for years before founding their new venture. (SMF ¶ 86). Sportswear has engaged in licensing deals with universities, and Chad Hartvigson testified that he is familiar generally with the process for collegiate licensing. (SMF ¶¶ 143). Simply put—Defendants knew they were required to get permission to use university trademarks, but they got tired of doing so and paying the requisite licensing fees, so they decided to steal those trademarks instead. Equally offensive, Defendants have not limited their predatory conduct to large universities. Defendants have sold counterfeit merchandise from small colleges, religious high schools, and cash-strapped public school systems, all of which have been forced to sue the Defendants to protect their names from

exploitation. (SUMF ¶¶ 147-149). Defendants' conduct is entirely willful. (SMF ¶¶ 74-80, 141-162).

Defendants chose to flout trademark law in running the Vintage Brand business. Defendants have expressed their personal opinions that intellectual property protections in the collegiate space are "monopolistic antitrust violations", suggesting that Defendants' motivation in pursuing Vintage Brand's no-licensing business plan reflect Defendants' own opinions about what the law should be.[5] (SMF ¶¶ 144, 150). This is no matter. Trademark law, as codified by Congress through the Lanham Act, is designed in part to ensure that trademark owners "'and not an imitating competitor[] will reap the financial, reputation-related rewards' of their products." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995). Defendants deliberately chose to use usurp those rights, and to use Penn

---

[5] Defendants' opinions about what the law should be appear to echo the opinions put out by some of Defendants' attorneys. Their attorneys—including Mark McKenna who has appeared (Dkt. 106) and others from Lex Lumina who have not entered appearances, like Chris Sprigman, actively publish articles in law reviews. And while these professors routinely cite each other (and themselves) for support, they also regularly recognize that their opinions do not reflect the current state of the law. *See, e.g.*, Mark A. Lemley & Mark McKenna, *Irrelevant Confusion*, 62 Stan. L. Rev. 413, 425 (2010) (in article advocating for more restrictive views of trademark protection, recognizing that Congressional amendments to the Lanham Act and case law provide broader trademark protection such as protection against confusion as to sponsorship and affiliation); Mark A. Lemley & Mark McKenna, *Owning Mark(et)s*, 109 Mich. L. Rev. 137, 139, 148 (2010) (in article seeking to restrict scope of trademark rights, recognizing that "courts have accepted that sports teams should have such exclusive licensing rights" but advocating to adopt a new analysis).

State's marks, without permission, to generate profit. This is textbook counterfeiting.

## B. Judgment Should be Granted to Penn State on the Counterclaims and Affirmative Defenses.

### 1. Defendants Cannot Support Their Ornamentality Challenges (Affirmative Defenses 7-8; Counterclaim Count II)

Defendants assert in affirmative defenses that the University Marks at issue in this case are merely ornamental and "do[] not engender the commercial impression of a source-identifying trademark" both as they are used by Penn State and by Vintage Brand. *See* Dkt. 72 at 40. Along the same lines, Vintage Brand also brings a counterclaim to cancel Penn State's two contestable registrations for PENN STATE (Registration No. 5,766,698) and the University Seal (Registration No. 5,877,080) as being merely ornamental. *Id.* at 47-50.

Defendants bear the burden of proof on their affirmative defenses and their invalidity Counterclaim. *See David's Bridal, Inc. v. House of Brides, Inc.*, No. 06-cv-5660, 2010 WL 323306, at *7 (D.N.J. Jan 20, 2010) (defendant bears burden to prove affirmative defenses on Lanham Act claims and plaintiff moving for summary judgment satisfies its own burden as moving party by simply asserting absence of evidence supporting defense). Defendants have not met this burden, therefore judgment should be granted to Penn State on these defenses and counterclaim for multiple independent grounds.

### a. Penn State's Incontestable Registrations Preclude Defendants' Ornamentality Challenges

First, Defendants are barred from asserting invalidity based on "mere ornamentation" for those University Marks where Penn State owns incontestable registrations. Incontestable registrations are "conclusive evidence of the validity of the registered mark" and cannot be invalidated based on ornamentality. *15 U.S.C. § 1115(b)*; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) (holding that in infringement suit, defendant may not challenge incontestable registration on a ground not enumerated in *15 U.S.C. § 1115(b)*). This provision similarly bars Defendants from challenging Penn State's contestable registrations as merely ornamental where those marks are identical to incontestably registered marks. *See supra* pp. 3-4; *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1264 (S.D. Cal. 2018) ("It is an 'idle' act to cancel a contestable registration when the party holding it has an incontestable registration which protects 'the most salient feature' of the contestable registration." (and collecting cases)). Specifically, Penn State's contestable registration for PENN STATE in connection with various types of apparel and merchandise (Reg. No. 5,766,698) is for the same types of goods as Penn State's earlier federal Registration No. 1,308,610 for PENN STATE, which is incontestable. (SMF ¶¶ 9-11). Similarly, Penn State's Registration No. 5,877,080, for the University Seal in connection with various merchandise is for the same types of goods as Penn State's earlier incontestable federal Registration No.

1,276,712 for the University Seal. (SMF ¶¶ 43-45). Thus, Defendants' affirmative defense of mere ornamentation fails with regards to the TPSU Mark, Penn State Mark, Lion Shrine Logo, and the University Seal, all of which are protected by incontestable registrations. *See supra* pp. 3-4.

### b. Defendants Offer No Evidence That the University Marks Are Perceived as Mere Ornamentation

Second, judgment should be granted as a matter of law to Penn State on these defenses and Count II of the Counterclaims because there is no evidence here that Defendants could use to show the marks are merely ornamental. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). With respect to Plaintiff's registered trademarks, those trademarks are presumed valid (*see* 15 U.S.C. § 1057(b)), and Defendants bear the burden to overcome that presumption. *N.V.E., Inc. v. Famous*, No. CIV.A.08-1633(FLW), 2009 WL 2194538, at *3 (D.N.J. July 22, 2009) (where plaintiff owns trademark registrations, defendant bears burden to rebut presumed validity of registrations). The United States Patent and Trademark Office ("USPTO") already found, by issuing the registrations, that all of the registered University Marks are not ornamental as applied to merchandise. *See* TMEP § 1202.03 (directing that examining attorney evaluating registrability of a trademark application must consider the proposed mark "*as applied to the goods*, to determine whether ornamental matter serves a trademark function" and can be protectable (emphasis added)).

Given the presumption that the University Marks are not merely ornamental, in order for Defendants to prevail on this defense, they would need to cite to evidence in the record that consumers do not perceive the University Marks as source-identifiers when used on merchandise. *See Macy's Inc. v. Strategic Marks, LLC, No. 11-CV-06198-EMC, 2016 WL 374147, at *5 (N.D. Cal. Feb. 1, 2016)* (defendant must present factual evidence to show that consumers do not perceive a mark as serving any source-identifying function in order to succeed on defense that mark is merely ornamental). This, Defendants cannot do. The only evidence in the record directly related to how consumers view the University Marks here shows that they are viewed as trademarks. A consumer survey conducted by expert David Franklyn directly probed whether relevant consumers view the University Marks, as used on merchandise, to be trademarks. That survey found a significant percentage of consumers—45% to 70%—perceived these marks to be trademarks. (SMF ¶¶ 114-117). There is no evidence in the record indicating that consumers view these marks as decorative elements, and Defendants cannot prevail on their second counterclaim or seventh and eighth affirmative defenses.

### c. Use of Trademarks on Merchandise to Indicate a Secondary Source is not Mere Ornamentation

Defendants do not even attempt to argue (because they cannot) that the University Marks are merely ornamental as registered for educational services. Dkt. 72, ¶¶ 15-22. In fact, the University Marks are widely recognized by the consuming

public as signifying the University and its educational and athletics programs. (SMF ¶¶ 1, 5, 114-117). It is well established that when ornamental matter serves as an identifier of a "secondary source," it is registrable (and not merely ornamental) in connection with those goods and services. *In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111, 1112 (T.T.A.B. 1982) ("The 'ornamentation' of a T-shirt can be of a special nature which is [sic] inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source.") (*citing In re Olin Corporation*, 181 U.S.P.Q. 182, 1973 WL 19761 (T.T.A.B. 1973) ("Thus, the name "New York University" and an illustration of the Hall of Fame, albeit it will serve as ornamentation on a T-shirt will also advise the purchaser that the university is the secondary source of that shirt.")). The Trademark Manual of Examining Procedure ("TMEP") specifically contemplates that marks for educational services such as the University Marks are valid and registrable in connection with merchandise. TMEP § 1202.03 (stating that marks that serve source-identifying functions when used with educational services are non-ornamental and registrable when applied to merchandise). All of the surveys conducted by the University in this case further confirm that consumers readily assume that the University is, if not the source, at a minimum the sponsor of, merchandise which bears the University Marks. (SMF ¶ 114-117, 138-140). Because the University Marks serve as indicators of secondary source, they cannot, as a matter of law, be deemed "merely ornamental."

### d. Respectfully, this Court Does Not Have Jurisdiction to Cancel Penn State's Trademark Registrations Based on an "As Applied" Ornamentation Challenge

As the Court previously acknowledged, Vintage Brand's Counterclaim II, to cancel the Penn State Mark Registration No. 5,766,698 and the University Seal Registration No. 5,877,080 is an "as applied" challenge, not an allegation that the word mark PENN STATE or the University Seal are so inherently ornamental that they could never be perceived as trademarks in any context (in contrast, for example, to a checkered pattern on a tablecloth). *Pennsylvania State Univ. v. Vintage Brand, LLC*, 614 F. Supp. 3d 101, 104 n.17 (M.D. Pa. 2022). However, by seeking to cancel Penn State's registrations in their entirety based on an "as applied" challenge, Vintage Brand improperly asks the Court to exceed its jurisdiction under the Lanham Act and to invade the exclusive province of the examining attorney at the USPTO. While district courts are empowered to cancel registrations, the Lanham Act only authorizes the examiner at the USPTO to decide if the mark 'as applied' to a particular specimen is trademark use sufficient to support registration. *See* 15 U.S.C. § 1051(d) (directing USPTO to examine statements of use); § 1119 (describing authority of district court over registrations).

Vintage Brand's Counterclaim expressly details that it is alleging that the use of the aforementioned marks on the specimens accepted by the USPTO in support of Registration Nos. 5,766,698 and 5,877,080 is merely ornamental. *See* Dkt. 72

¶¶ 19 (challenging PENN STATE specimens), 21 (challenging University Seal specimens). However, the examination of specimens is the province of an examining attorney, guided by the applicable regulatory guidelines. *See* 37 C.F.R. § 2.56 (setting requirements for how specimen may show use). For example, the examination process specifically contemplates that an applicant can "cure" a specimen that is deemed ornamental, by submitting an alternate specimen to the examiner in order to support the registration. *Id.* § 2.59 (permitting substitute specimens to evidence trademark use).

Unlike the examining attorney, a district court is not charged with examining trademarks in the first instance. A district court's power to cancel registered marks is restrained, under 15 U.S.C. § 1119, to determining the "right to registration", and does not exceed the authority granted to the USPTO. *See Marshak v. Treadwell, 240 F.3d 184, 193 (3d Cir. 2001)* (determining that district court's authority over a cancellation proceeding may not be broader than the USPTO's authority); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 874 (3d Cir. 1992). Whether or not specimens are acceptable, however, is not reviewable by the USPTO (or by the district court). *See Century 21 Real Est. Corp. v. Century Life of Am.*, 10 U.S.P.Q.2d 2034, 1989 WL 281901, at *1-2 (T.T.A.B. 1989). In the process of examining a trademark, specimens are used "to show the mark as it is actually used, so that it can be determined whether the matter for which registration is sought is

being used as a trademark or service mark." *Id.* at *2 (citing 15 U.S.C. § 1051). Where the examining attorney has accepted the specimens and found they showed trademark use, the TTAB (which serves as the judicial arm of the USPTO) may not review this decision. *Id.* ("[F]or both legal and equitable reasons, we reaffirm our prior decision that unacceptable specimens are not a proper ground for opposition" and noting that reviewing this decision would be unfairly prejudicial to the registrant who would now lack the ability to submit substitute specimens of use).

Respectfully, the Court here is similarly limited. *Ditri*, 954 F.2d at 874. Vintage Brand is asking the Court to exceed the specific authority granted to district courts under the Lanham Act with respect to registered marks. *See* 15 U.S.C. § 1119. Vintage Brand's as-applied challenge is not a determination of whether Penn State has "the right to registration" for the PENN STATE Mark and the University Seal; it is simply an attack on the examining attorney's decision about whether the specimens submitted show trademark use. Because Vintage Brand's counterclaim here seek relief outside the scope of the Court's authority, judgment should be granted to Penn State as a matter of law.

### 2. Defendants' Cancellation Counterclaim as to Registrations for the University Seal is Insufficient as a Matter of Law

Vintage Brand also sets out a counterclaim that Penn State's registrations for the Penn State Seal (U.S. Reg. Nos. 1276712 and 5877080) should be cancelled because the Seal incorporates the Pennsylvania Coat of Arms. Dkt. 72 at 45-47. To

succeed on this claim, Vintage Brand bears the burden of showing that the Lanham Act prohibits the registrations in question because the marks consist of or comprise "the flag or coat of arms or other insignia" belonging to Pennsylvania, "or any simulation thereof." 15 U.S.C. §§ 1052(b), 1064(3).  In comparing the registered or applied-for mark (whether registered in color or in black and white) and the purported government insignia, the focus should be on: "(1) color; (2) presentation of the mark; (3) words or other designs on the drawing; and (4) use of the mark on the specimen(s)." *In Re Alabama Tourism Dep't*, No. 87599292, 2020 WL 2301221, at *3 (TTAB May 6, 2020) (citing TMEP §1204.01(a)).

Here, the record does not contain evidence that would support Vintage Brand's claim, meaning that judgment should be granted to Penn State.  *Celotex Corp.,* 477 U.S. at 325.  The visual differences between the University Seal and the Pennsylvania Coat of Arms means that the Seal is not subject to the government insignia prohibition.  The Coat of Arms, which appears on the Pennsylvania flag, is square in shape, features black, brown, light blue, green, gold, and yellow elements against a rich blue background.  *See* Dkt. 72 at 46.  The University Seal, by contrast, has an overall different appearance in that it contains several concentric circles, with fluting along the outer circle, the words "THE PENNYSLVANIA STATE UNIVERSITY" (the same as the incontestable TPSU Mark) and the date "1855", and specimens and other evidence of actual use show that the Seal is not used with

different colors. (SMF ¶¶ 42, 47). Evidence of actual use shows that the University Seal is nearly always used in solid colors, often engraved onto an item. (SMF ¶ 47). Further, Penn State's branding guidelines expressly prohibit isolating the interior portion of the Seal, ensuring that the inner elements similar to the Coat of Arms are not dominant. (SMF ¶ 50). These visual differences between the Coat of Arms and the University Seal mean that the Seal does not fall within the scope of 15 U.S.C. § 1052(b).

| Pennsylvania Coat of Arms | University Seal |
|---|---|
|  | |

In its Answer—which is the only place where Vintage Brand has submitted information to support this counterclaim—Vintage Brand confuses the issues by including images of seals that are used by various governmental units and departments in Pennsylvania and alleges that the University Mark is visually similar to those. Dkt. 72 at 47. However, those allegations are insufficient to avoid summary judgment here, because those seals from state agencies are not the government insignia at issue here. *See id.* (stating that the University Seal registrations should be cancelled because their "primary feature [is] the Coat of

Arms"). The Lanham Act's prohibition on registering insignia is not so broad as to cover seals or marks from state departments or agencies. *City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 487 (E.D.N.Y. 2020) (interpreting scope of 15 U.S.C. § 1052(b)). Therefore, Vintage Brand's references to similarities between the University Seal and seals from departments and agencies within the Pennsylvania government are irrelevant. *Id.*

The *Blue Rage* case is instructive here. There (as here), an alleged trademark infringer asserted counterclaims seeking to cancel registrations used by the New York Police Department, relying on the government insignia bar. *Id.* at 477-79, 487-88. One of the registered marks (the NYPD shield) was accused of being improperly registered because it bore similarities to a seal for the City of New York, which the court found did fall within the government insignia ban. *Id.* at 487-88. Nonetheless, the *Blue Rage* court found that the NYPD shield was not improperly registered because while that Shield bore elements in common with the City seal, it had differences too—the overall mark was a different shape than the seal and added elements that were not present in the seal. *Id.* at 488. The Court noted that "[m]ere use of select elements from the City Seal does not convert the NYPD Shield into an "insignia" within the meaning of the Lanham Act." *Id.* at 488.

The University Seal is visually distinct from the Pennsylvania Coat of Arms, and thus is valid, and cannot be cancelled under the Lanham Act. Count I of Defendants' Counterclaims should be dismissed as a matter of law.

## VI.    CONCLUSION

Defendants are serial infringers and counterfeiters who have spent years profiting off of the hard-earned reputations of educational institutions of all sizes. They have often gotten away with it, because intellectual property litigation is a cost that many educational institutions cannot afford.  Even so, with respect to those few institutions that have had the resources to fight, Defendants have repeatedly been found liable for trademark infringement.  And yet Defendants brazenly continue on, in hopes that they can convince a court to ignore the Lanham Act's statutory prohibitions and create a new judicially sanctioned avenue for misappropriation of intellectual property.

However, Defendants' novel legal arguments cannot overcome the mountain of evidence that they have used Penn State's exact registered marks on the registered goods without permission.  Nor have Defendants ever been able to adduce any evidence to show that Penn State's marks are invalid, as the consuming public unquestionably views the University Marks as famous trademarks, belonging exclusively to Penn State.  Defendants are garden-variety counterfeiters,[6] unique

---

[6] Returning to the quiz Penn State set out in the beginning, the answers are:

only in their willingness to drag these cases through the courts. Summary judgment should be granted for Penn State on Counts I-IV, and VII of its Second Amended Complaint, and Defendants' Counterclaims 2-3[7] and 7-8 should be stricken.

Dated: June 2, 2023

Respectfully submitted,

MCGUIREWOODS LLP

By: /s/*Lucy Jewett Wheatley*
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130

Penn State (via its bookstore) (Ex. 3 at 25)

Penn State (via licensee Homefield) (Ex. 8 at 16)

Vintage Brand (Ex. 32 at 7)

Vintage Brand (Ex. 32 at 8)

Penn State (via licensee College Vault) (Ex. 3 at 144)

Vintage Brand (Ex. 32 at 173)

[7] Defendants consent to Penn State's motion for judgment as a matter of law on their affirmative defenses based on the statute of limitations and laches.

Email: lwheatley@mcguirewoods.com
Email: celler@mcguirewoods.com
Email: mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief in Support of Penn State's Partial Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system on June 2, 2023, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Esquire (Pro Hac Vice)
Bradford J. Axel (Pro Hac Vice)
Joshua D. Harms (Pro Hac Vice)
Valerie A. Walker (Pro Hac Vice)
Theresa H. Wang (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
josh.harms@stokeslaw.com
valerie.walker@stokeslaw.com
bja@stokeslaw.com
Theresa.wang@stokeslaw.com

By: */s/ Lucy Jewett Wheatley*
Lucy Jewett Wheatley (*Pro Hac Vice*)

McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*