# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>       Plaintiff and<br>       Counter-Claim Defendant,<br><br>  v.<br><br>VINTAGE BRAND, LLC,<br><br>       Defendant and<br>       Counter-Claim Plaintiff,<br><br>and<br><br>SPORTSWEAR INC. d/b/a PREP SPORTWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; and MICHELLE YOUNG,<br><br>       Defendants. | Case No. 4:21-cv-01091-MWB<br>(Hon. Matthew W. Brann)<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' COUNTERSTATEMENT OF MATERIAL FACTS

Mark P. McKenna, Esq., *pro hac vice*
Illinois I.D. No. 6272699
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone:  (646) 898-2055
Fax:      (646) 906-8657
Mark@lex-lumina.com

Joshua D. Harms, Esq., *pro hac vice*
Washington I.D. No. 55679
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 626-6000
Fax:      (206) 464-1496
Joshua.Harms@stokeslaw.com

**<u>TABLE OF CONTENTS</u>**[*]                                        **Page**

I.     THE UNIVERSITY ................................................................2

       A.     The University's Purported Trademarks .............................9

              1.     The PENN STATE Text .....................................13

              2.     The Mark THE PENNSYLVANIA STATE UNIVERSITY ...19

              3.     The Lion Shrine Logo .............................................25

              4.     The Pozniak Lion Logo ..........................................32

              5.     The S Lion Logo ...................................................40

              6.     The University Seal ..............................................45

       B.     Penn State's Uses of and Investments in the University Marks .........52

       C.     Penn State's Licensing Program .......................................56

II.    DEFENDANTS ARE RESPONSIBLE FOR SALES OF THE
       VB PENN STATE MERCHANDISE ...................................................67

       A.     Vintage Brand LLC Owns the Vintage Brand Website .....................67

       B.     Chad Hartvigson, Erik Hartvigson, and Michelle Young Own
              and Operate Vintage Brand ................................................74

       C.     Sportswear, Inc. Manufactures and Distributes the VB Penn
              State Merchandise .........................................................76

III.   DEFENDANT'S UNAUTHORIZED USE OF PENN STATE'S
       TRADEMARKS ........................................................................77

       A.     Vintage Brand's Collection of Penn State-Related Memorabilia
              and their Related Digital Images .........................................79

       B.     Vintage Brand's Penn State Store .........................................85

       C.     Similarities Between Parties' Marks .......................................97

       D.     The University Marks Are Not Mere Ornamentation ........................102

       E.     Vintage Brand Has Used the TM Symbol on its Infringing
              Versions of the University Marks .........................................108

IV.    THE VB PENN STATE MERCHANDISE DIRECTLY COMPETES
       WITH PENN STATE'S AUTHORIZED MERCHANDISE .....................................110

---

[*] Defendants disagree with Plaintiff's argumentative headings but incorporate them
   herein for ease of reference.

|   | A. | Overlapping Products ........................................................110 |
|   | B. | Overlapping Customers and Channels of Trade ...............113 |
| V. | | CUSTOMER CONFUSION.......................................................122 |
| VI. | | DEFENDANTS' WILLFULNESS ............................................132 |
|   | A. | Defendants Know Their Use of the University Marks is Unauthorized ...................................................................132 |
|   | B. | Defendants Ignore Trademark Laws Even After the Eleventh Circuit Affirmed their Liability for Infringing Another School's Rights.................................................................134 |
|   | C. | Vintage Brand's Intent to Resume Using the University Marks ......139 |
|   | D. | Vintage Brand Ignores Penn State's Cease and Desist Letter ..........135 |
| VII. | | VINTAGE BRAND ITSELF PURPORTS TO OWN AND LICENSE A TRADEMARK FOR ITSELF.................................................136 |

# TABLE OF ABBREVIATIONS AND DEFINED TERMS

| Abbreviation / Defined Term | Definition |
|---|---|
| University | Plaintiff The Pennsylvania State University |
| Vintage Brand | Defendant Vintage Brand, LLC |
| Defendants | Defendants Vintage Brand, LLC, Sportswear Inc. d/b/a Prep Sportswear, Chad Hartvigson, Erik Hartvigson, and Michelle Young |
| Sportswear | Defendant Sportswear Inc. d/b/a Prep Sportswear |
| PSMF | The Pennsylvania State University's Local Rule 56.1 Statement of Undisputed Material Facts (Doc. 122) |
| VBSMF | Statement of Material Facts in Support of Vintage Brand, LLC's Motion for Summary Judgment (Doc. 116) |
| Counter PSMF | Defendants' Counterstatement of Facts |
| PEx. | The University's Exhibits |
| VBEx. | Vintage Brand's Exhibits |
| Hartvigson Decl. | The declaration of Chad Hartvigson appended to VBSMF (Doc. 116-2) |
| Supp. Hartvigson Decl. | The supplemental declaration of Chad Hartvigson appended to this Counterstatement. |
| 30(b)(6) Dep. | Excerpts from the transcript of the deposition of C. Thomas McGrath, the University's Rule 30(b)(6) designee, appended to VBSMF (Doc. 116-28) |
| Supp. 30(b)(6) Dep. | Supplemental excerpts from the transcript of the deposition of C. Thomas McGrath, the University's Rule 30(b)(6) designee, appended to this Counterstatement. |
| Maffey Dep. | Excerpts from the transcript of the deposition of Meghan Maffey, a potential witness identified by the University, appended to VBSMF (Doc. 116-29) |

| | |
|---|---|
| Franklyn Dep. | Excerpts from the transcript of the deposition of David Franklyn, The University's expert witness, appended to VBSMF (Doc. 116-32) |
| Erdem Report | Expert Report of Dr. Tülin Erdem (Doc. 94-7, also Doc. 96-3) |
| Neal Report | Expert Report of David Neal (Doc. 94-5) |
| Franklyn Report | Expert Report of David Franklyn (Doc. 94-2) |
| Franklyn Recognition Survey | Expert Report of David Franklyn (Doc. 94-2 at 4, 7–26, 46, 60–68, 74–85) |
| Franklyn LOC Survey | Expert Report of David Franklyn (Doc. 94-2 at 4, 26–46, 60–63, 68–73, 86–107) |
| Defendants' Motion to Exclude | Defendants' Brief in support of Defendants' Motion in Limine to Exclude the University's Expert Witness Testimony (Docs. 93, 94) |
| Defendants' Motion to Strike | Defendants' Vintage Brand, LLC et al. Motion to Strike from the Record Specified Portions of the University's Statement of Material Facts, Declaration in Support Thereof, and Exhibits (filed the same day as this Counterstatement) |
| CLC | Collegiate Licensing Company |
| TPSU text | "THE PENNSYLVANIA STATE UNIVERSITY" text |
| Nittany Lion Rock Design | <br>(The University refers to this and the below image as the "Lion Shrine Logo.") |
| Nittany Lion Frankfurter Design | <br>(The University refers to this and the above image as the "Lion Shrine Logo.") |

| | |
|---|---|
| Pozniak Lion Design | <br><br>(The University refers to this image as the "Pozniak Lion Logo.") |
| S-Lion Design | <br><br>(The University refers to this image as the "S Lion Logo.") |
| Seal Designs | <br><br>(The University refers to these images as the "University Seal." The left-most design is the old Seal Design. The right-most design is the new Seal Design.) |

<u>**COUNTERSTATEMENT OF FACTS**</u>

Pursuant to Local Rule 56.1, Defendants Vintage Brand, LLC ("Vintage Brand"), Sportswear Inc. d/b/a Prep Sportswear ("Sportswear"), Chad Hartvigson, Erik Hartvigson, and Michelle Young ("Defendants'") submit the following Counterstatement to The Pennsylvania State University's (the "University") Statement of Material Facts ("PMSF"). For the Court's convenience, Defendants include the University's numbered PMSF Statements herein, each followed by Defendants' response with supporting citations to the record.

To foster efficiency and avoid duplicative filings, where Defendants' responses to the PMSF Statements rely on evidence Vintage Brand previously submitted in support of its own Statement of Material Facts ("VBSMF") (Docs. 116 and 117),[1] Defendants will use the same exhibit number accompanied by a reference to the docket entry at which the exhibit appears, for example: **VBEx. 17 (Doc. 116-44)**. References to the University's exhibits will be styled similarly, for example: **PEx. 8 (Doc. 123-11)**. Finally, where Vintage Brand used defined terms for certain exhibits (*see* Doc. 116 at 1–2), the same will be used herein accompanied by a reference to the relevant docket entry, for example: **30(b)(6) Dep. (Doc. 116-28)**.

---

[1] Vintage Brand submitted exhibits in support of its Statement of Material Facts ("VBSMF") in two batches to comply with the ECF system's 350MB limit on merged documents. The first batch, appearing at Doc. 116, includes the declaration of Chad Hartvigson, Exhibits A–Y thereto, and Exhibits 1–50. The remainder, Exhibits 51–103, appear at Doc. 117.

Documents submitted for the first time with this Counterstatement are appended hereto and include the following:

- The supplemental declaration of Chad Hartvigson, which is referenced herein as "**Supp. Hartvigson Decl**."; and

- Exhibits submitted for the first time with this response, which are numbered sequentially beginning at **VBEx. 104**.

Vintage Brand further notes that PSMF ¶¶ 1, 5, 114 and PExs. 3, 5, 8, 14–16, 48, 57 (relied upon in PSMF ¶¶ 8, 13, 29, 39, 40, 53, 72, 126, 131, 162) are the subject of Defendants' separately noted Motion to Strike.

## I.    The University

1.      Penn State is the flagship public research university in the Commonwealth of Pennsylvania and is famous throughout the United States and the world for its educational programs, athletics programs, and many other goods and services that are offered and provided to students, alumni, and members of the general community. *See Exhibit 1, Declaration of Stephanie Petulla ("Petulla Decl."), ¶ 6.*

**RESPONSE:** *Disputed in part.* Undisputed that the University is a public research university in the Commonwealth of Pennsylvania.

Disputed that the University is famous throughout the United States for any goods and/or services. The only evidence cited by the University is the conclusory declaration testimony of Stephanie Petulla. (Doc. 123-1 ¶ 6). Further disputed to the extent the University claims this constitutes evidence of recognition of the University's purported marks. Whether any of the University's purported marks are

2

"famous" for purposes of this lawsuit is a legal conclusion. *See* 15 U.S.C. § 1125(c)(2)(A); 54 Pa. C.S.A. § 1124. Such a legal determination is not a proper subject for lay opinion testimony and, therefore, inadmissible. *See* Fed. R. Civ. P. 56(c).

Additionally, documentary evidence establishes that none of the University's marks meet the high threshold for fame, such as the University's social media accounts, which have an unremarkable number of followers/subscribers. *See, e.g.*, VBExs. 18–26 (Docs. 116-45–116-53). Likewise, the University's only evidence of promotional and advertising expenditures (VBEx. 102 (Doc. 117-52) at Interrogatory No. 12) is limited to a single document that shows minimal expenditures. VBEx. 74 (Doc. 117-24); *see also* Petulla Decl. (Doc. 123-1) ¶ 18 (referencing Exhibit 1 thereto, Doc. 123-2). Further, that document purportedly shows expenditures for fiscal year 2018 to fiscal year 2022, which does not pre-date the alleged infringement in this lawsuit, rendering such evidence irrelevant. Fed. R. Evid. 401, 402. Similarly, the revenues and royalties from the University's licensing programs do not suggest any of the University's purported marks are famous, because they are not remarkable, particularly in light of the fact that such numbers lag behind those of the University's "peer" institutions. VBEx. 62 (Doc. 117-12) at 8302; VBEx. 63 (Doc. 117-13) at 7898; VBEx. 70 (Doc. 117-20) at 8473; VBEx. 71

(Doc. 117-21) at 8096; VBEx. 72 (Doc. 117-22) at 8922; VBEx. 73 (Doc. 117-23) at 8867.

2.     Penn State enrolls approximately 100,000 students from across the United States and abroad each year and employs over 31,000 faculty and staff. See Petulla Decl. (Ex. 1), ¶ 6.

**RESPONSE:** *Undisputed*.

3.     Penn State has one of the largest living alumni bases among all U.S.-based universities. Almost one percent of all college graduates in the United States are Penn State alumni. See Petulla Decl. (Ex. 1), ¶ 6.

**RESPONSE:** *Disputed*. This Statement is supported solely by the conclusory declaration testimony of Stephanie Petulla. There is no indication that Ms. Petulla has personal knowledge of information pertaining to other colleges or universities, rendering such declaration testimony inadmissible. *See* Petulla Decl. (Doc. 123-1) ¶¶ 3–5; *see also* Fed. R. Evid. 602; Fed. R. Civ. P. 56(c)(2), (4); *Sears v. McCoy*, 2021 WL 254067, at *3 n.2 (M.D. Pa. Jan. 26, 2021) ("[T]he Court is not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question.") (internal quotation marks omitted).

4.     Penn State has more than 740,000 alumni in the United States and across the world, which is much higher than most other colleges. See Deposition Transcript of C. Thomas McGrath [Rule 30(b)(6) Witness for Penn State] (11-14-2022) (herein "Penn State Dep.") (Exhibit 2) at 42:19-24, 43:12-13.

**RESPONSE:** *Disputed*. This Statement is supported solely by portions of the deposition testimony of the University's 30(b)(6) designee, Thomas McGrath. The testimony merely reflects that the University believes its number of alumni is "high

amongst [its] peer group." PEx. 2 (Doc. 123-5) at 43:12–13. The University's "peer group" is not "most other colleges," as asserted in this Statement. *See* VBEx. 62 (Doc. 117-12) (listing 13 other institutions in the University's peer group) at PSU0008302. As such, there is no evidentiary support for this Statement. Fed. R. Civ. P. 56(c); *see also Sears*, 2021 WL 254067, at *3 n.2.

5.     These students, faculty, staff, and alumni, as well as the general public *nationwide, have come to recognize and associate the University Marks, as defined below, with goods sourced from or licensed by Penn State. See Petulla Decl. (Ex. 1), ¶ 15; Exhibit 12 [PSU0012335] at 6 (results from recent University engagement study conducted by Penn State showing that about 39% of the general adult population in Pennsylvania, Ohio, New York, Connecticut, New Jersey, Maryland, and Washington D.C. consider themselves avid or casual Penn State fans); id. 9-1 (noting that members of the Penn State community notice companies and brands that partner with Penn State and that this connection to Penn State can affect consumer decisions); Exhibit 41 [Expert Report of David Franklyn] at 9-11, 22-26 (results from consumer survey concluding that consumers recognize Penn State related images on t-shirts as being trademarks).*

**RESPONSE:** *Disputed*. This Statement is supported solely by inadmissible evidence. Fed. R. Civ. P. 56(c). ***First***, the University cites the conclusory declaration testimony of Stephanie Petulla. But Ms. Petulla cannot testify as to consumer perception because she lacks personal knowledge of same, because she has not conducted a consumer survey (and does not have the required expertise to do so), and because this evidence constitutes hearsay. Fed. R. Evid. 602, 701; *see also Solofill, LLC v. Rivera*, 2018 WL 3357497, at *5 (C.D. Cal., 2018) ("Testimony regarding consumer perception lies, by definition, outside of the scope of any one witness' personal knowledge and is therefore not proper for a lay witness."). ***Second***,

as set forth in Defendants' briefing in support of Defendants' Motion in Limine to Exclude the University's Expert Witness Testimony ("Defendants' Motion to Exclude") (Docs. 94, 99), the survey conducted by the University, PEx. 12 (Doc. 123-15), is plainly inadmissible. *See* Fed. R. Evid. 403, 702, 703. Additionally, this survey, despite purportedly being authored in November 2022, was not produced to Vintage Brand in discovery until April 11, 2023, well past the December 2022 deadline for fact discovery. Doc. 62; Defendants' Motion to Strike at 4 (Fetters Decl. ¶ 2). Further, even if admissible, this survey does not provide support for this Statement. It at most shows (1) less than half of residents of Pennsylvania and five surrounding states consider themselves to be "avid or casual fans" of the University (PEx. 12 (Doc. 123-15) at 6); (2) fans, students, alumni faculty and staff, and event-ticket buyers believe they would notice companies partnered with the University (without any indication of *why* they might make the connection) (PEx. 12 (Doc. 123-15) at 8); and (3) no more than 50% of the same group would be more likely to consider purchasing (much less prefer to purchase) the University's partner's products (*id*.). These survey results are not probative of whether consumers "have come to recognize and associate the University Marks … with goods sourced from or licensed by Penn State." **Third**, as stated in Vintage Brand's Motion to Exclude (Docs. 94, 99), David Franklyn's purported survey to test "trademark recognition" or "commercial impression" is inadmissible. Mr. Franklyn invented a methodology

that has never been validated by experts or accepted by courts, the survey does not ask relevant questions and has several fatal flaws that make it unreliable. It also creates a significant danger of confusing the issues and misleading the jury, and that, as a result, the risk of unfair prejudice substantially outweighs any probative value the survey could have. Further, even if admissible, the flaws in the survey mean it should receive no weight.

Contrary to this improperly supported Statement, the record is replete with evidence establishing that the University's purported trademarks do not serve a source- or quality-indicative function, at least when applied as decoration to consumer merchandise, such as apparel. As described more fully in VBSMF (Doc. 116) ¶¶ 94–100, the University, through the Collegiate Licensing Company ("CLC"), requires as a matter of its Standard Retail Licenses that licensees affix a holographic "Official Label" to all officially licensed goods. VBEx. 83 (Doc. 117-33) at 7490 (§ 11(a)–(b)); *id*. at 7479 (§ 1(t)); VBEx. 84 at 7563 (§ 10(a)–(b)); *see also* VBEx. 109 (web page referencing CLC's[2] holographic label requirement). The "Official Label" serves as the true designation that goods are officially licensed. VBEx. 85 (Doc. 117-35) at 10135–36 (CLC letter explaining its "Look for the Label" marketing program and noting that "the label is the symbol that the products

---

[2] As stated in VBSMF footnote one, "IMG COLLEGE LICENSING, LLC" is the previous name of CLC. Doc. 116 at 59.

bearing it are licensed."); VBEx. 87 (Doc. 117-37) at 7907 (CLC document regarding efforts to make Official Label "REDACTED");

VBEx. 104 (Trademark Status & Document Retrieval Printout for Registration No. 3,221,094, the subject of which is the Official Label registered for use as a source-designator for various consumer goods); *see also* VBEx. 110 (web page explaining CLC's "quick tips" for identifying what it describes as "counterfeit products," including the following: "counterfeit hangtag (poor quality, misspellings, etc.), counterfeit hologram (poor quality, lack of a holographic image, etc.), and counterfeit label (poor quality, misspellings, etc.)"). In addition to the Official Label, officially licensed merchandise is sold in contexts that include frequent and prominent references to the fact that the goods are "official" or "licensed." *E.g.*, VBEx. 75 (Doc. 117-25) at 342 ("Officially Licensed Penn State Clothing & Merchandise"); VBEx. 76 (Doc. 117-26) at 3 ("We pride ourselves on … carrying a large selection of officially licensed products …."); VBEx. 77 (Doc. 117-27) at 251 ("The Collegiate Licensing Company officially licenses every product we sell."); VBEx. 78 (Doc. 117-28) at 256 ("We're proud to be an Officially Licensed Distributor of top quality Penn State Clothing and Nittany Lions Merchandise …."); VBEx. 79 (Doc. 117-29) at 364 ("Whether you're looking for officially licensed mens, [sic] womens, [sic] or youth PSU jerseys, the Penn State University Penn State Nittany Lions Team Store has every fan covered."); VBEx. 80 (Doc. 117-30) at 744

8

("Whatever style or brand you're searching for, the Official Penn State Nittany Lions shop has a PSU T-shirt that is perfect."). The University concedes that such verbiage informs consumers that the goods are, in fact, licensed merchandise:

> Q: Do you know why there's any information at all stating that this -- these product offerings are officially licensed?
>    [objection]
> A: Probably because it's important for our fan base to know they're buying licensed merchandise.
> Q: And in the absence of this verbiage, would your consumers not know that?
>    [objection]
> A: Not necessarily.

30(b)(6) Dep. (Doc. 116-28) at 88:12–89:3; *see also* VBEx. 81 (Doc. 117-31). Finally, verbatim responses to Mr. Franklyn's second survey, which purports to gauge consumer confusion, make clear that decorative use is not source identifying but, rather, potentially a catalyst for a mistaken legal belief. VBSMF (Doc. 116) ¶ 115 (collecting 33 examples of verbatims evincing mistaken legal belief).

## A. The University's Purported Trademarks

6.    Penn State promotes its goods and services through a variety of valuable trademarks. *See Petulla Decl. (Ex. 1)*, ¶ 7.

**RESPONSE:** *Disputed in part*. Disputed whether the texts or designs the University's licensees' print as decoration on merchandise are trademarks as used on that merchandise. *See* Response to Statement 5, *supra*. Further, this Statement is supported solely by the declaration testimony of Stephanie Petulla. Whether text or an image constitutes a "trademark" is a legal conclusion and, therefore, not the

9

proper subject of lay witness testimony. *See* 15 U.S.C. § 1127; Fed. R. Civ. P. 56(c); *see also Sears*, 2021 WL 254067, at *3 n.2. Additionally, the cited testimony does not support this assertion; paragraph 7 of Ms. Petulla's declaration is simply a list of trademarks that the University purports to own.

Undisputed that the University promotes its educational and athletic services through two logos. 30(b)(6) Dep. (Doc. 116-28) at 45:8–15. Specifically, the "Lion Shield Design" (below left) is the University's logo for educational services (30(b)(6) Dep. (Doc. 116-28) at 22:11–16, 44:20–45:3; VBEx. 8 (Doc. 116-35) at 5755) and the "Lionhead Design" (below right) is the University's logo for its athletics ((30)(b)(6) Dep. (Doc. 116-28) at 46:20–47:10, 50:4–51:2; VBEx. 8 (Doc. 116-35) at 5756, 5791).



Because Vintage Brand limits its offerings to historic images, it has never made University's current logos (i.e., the Lion Shield Design and the Lionhead Design) available on the Vintage Brand website. Hartvigson Decl. (Doc. 116-2) ¶¶ 15, 34.

7.     The PENN STATE Mark, the TPSU Mark, the Lion Shrine Logo, the Pozniak Lion Logo, the S Lion Logo, and the University Seal (as defined below) are referred to collectively as "**the University Marks**". Penn State has been continuously using each of the University Marks since before 2017. *See Petulla Decl. (Ex. 1), ¶ 8.*

**RESPONSE:** *Disputed in part.* Undisputed that the University has been using the PENN STATE text and TPSU text as trademarks for educational and athletic services since before 2017. Further undisputed that the University has been using the Nittany Lion Frankfurter Design in connection with frankfurters since before 2017. Further undisputed that the University has used the Pozniak Lion Design in connection with the entertainment services listed in Registration No. 5,305,910 since before 2017.

Disputed that the University has "used"—in the trademark sense—its claimed marks in connection with goods (other than a single design in connection with frankfurters), before 2017 or otherwise. The admissible historical evidence with respect to the PENN STATE text, the TPSU text, the Nittany Lion Rock Design, and Seal Designs has been limited to the University's use of such claimed marks as decorative elements of merchandise. *See* VBEx. 9 (Doc. 116-36) at 10972, 11012, 11116, 11118, 11122, 11130 (1984 and 2014 specimens of use submitted in connection with Registration No. 1,308,610 (PENN STATE) showing decorative use); VBEx. 11 (Doc. 116-38) at 12072, 12076, 12077 (2017 specimens of use submitted in connection with Registration No. 5,766,698 (PENN STATE) showing decorative use); VBEx. 27 (Doc. 116-54) at 11224, 11234, 11487–89 (1985 and 2015 specimens of use submitted in connection with Registration No. 1,315,693 (TPSU text) showing decorative use); VBEx. 29 (Doc. 116-56) at 12000 (2018

specimen of use submitted in connection with Registration No. 5,399,989 (TPSU text) showing decorative use); VBEx. 31 (Doc. 116-58) at 12018–19 (2017 specimen of use submitted in connection with Registration No. 5,742,516 (TPSU text) showing decorative use); VBEx. 33 (Doc. 116-60) at 11550, 11768–70 (1982 and 2015 specimens of use submitted in connection with Registration No. 1,350,286 (Nittany Lion Rock Design) showing decorative use); VBEx. 49 (Doc. 116-76) at 10645, 10694, 10792, 10796, 10800 (1982 and 2014 specimens of use submitted in connection with Registration No. 1,276,712 (Seal Design) showing decorative use); VBEx. 52 (Doc. 117-2) at 12218, 12223, 12228 (2017 specimens of use submitted in connection with Registration No. 5,877,080 (Seal Design) showing decorative use). The only admissible evidence as to whether such decorative use serves a source- or quality-indicative function (and therefore constitutes use as a trademark) shows that it does not. *See* Response to Statement No. 5, *supra*.

There is no admissible evidence of historic use of the S-Lion Design. *See* Response to Statement 38, *infra*. The only evidence submitted by the University is in the form of current (*i.e.*, post-lawsuit) webpage captures and Wayback Machine captures, the latter of which is not admissible as set forth more specifically in Defendants' Motion to Strike. PExs. 14, 15 (Docs. 123-17, 123-18); Fed. R. Evid. 901.

Likewise, there is no admissible evidence of continuous trademark use of the Pozniak Lion Design, as set forth in Response to Statement No. 30, *infra*.

Other than the specimens submitted to the USPTO showing historical decorative use and inadmissible Wayback Machine captures, the University's claimed historical use is supported solely by the conclusory declaration testimony of Stephanie Petulla. *See* Petulla Decl. (Doc. 123-1) ¶ 8; *see also Sears*, 2021 WL 254067, at *3 n.2. When disclosing Ms. Petulla in response to Vintage Brand's discovery requests, the University noted that it "does not currently have information about what individuals have knowledge of past use of these marks." VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); *see also* VBEx. 105 (the University's Rule 26(a)(1) disclosures identifying C. Thomas McGrath but not Stephanie Petulla to testify as to the "history and development of the University Marks"). As such, the University has conceded that Ms. Petulla does not have personal knowledge sufficient to testify as to historical use of its purported marks. Fed. R. Evid. 602; Fed. R. Civ. P. 56(c). That is consistent with the fact she began her current role in 2022. Petulla Decl. (Doc. 123-1) ¶ 3. Finally, whether text or an image is being used as a trademark is a legal conclusion and, therefore, not the proper subject of lay witness testimony. *See* 15 U.S.C. § 1127.

### 1) The PENN STATE Text

8.     Penn State has been using PENN STATE as a trademark continuously since at least as early as 1908 for many goods and services (the "PENN STATE

Mark"). See Petulla Decl. (Ex. 1), ¶¶ *7-8; see generally Exhibit 3 at 2-175 (composite examples of authorized products bearing the PENN STATE Mark); id. at 70-102 (examples of genuine merchandise bearing the PENN STATE Mark being sold from 2013-2017 through screen captures obtained through Wayback Machine); id. at 107 (article from Daily Collegian newspaper dated March 14, 1988 discussing licensed genuine Penn State merchandise being sold and including a picture of merchandise with the PENN STATE Mark for sale at the University bookstore); Ex. 4 at 3-4, 11-12 (registration certificates covering Penn State's federal registrations for the PENN STATE Marks and showing dates of first use for this mark); Second Amended Compl. (Dkt. 67), ¶ 25 & Answer (Dkt. 72), ¶ 25 (admitting that Penn State owns the cited registrations).*

**RESPONSE:** *Disputed in part.* Undisputed that the University has used the PENN STATE text as a service mark for educational services since 1908.

Disputed that the University has ever used the PENN STATE text as a trademark for goods at issue in this case. The cited declaration testimony of Stephanie Petulla does not support this Statement. *See* Petulla Decl. (Doc. 123-1) ¶¶ 7–8. Regardless, Ms. Petulla lacks personal knowledge as to the historical use of the PENN STATE text. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602. Further, whether text or an image constitutes a "trademark" is a legal conclusion and, therefore, not the proper subject of lay witness testimony. *See* 15 U.S.C. § 1127.

Additionally, the evidence only shows use of the PENN STATE text as a decorative element of goods. PEx. 3 (Doc. 123-6) (showing decorative use of the PENN STATE text); *see also* VBEx. 9 (Doc. 116-36) at 10972, 11012, 11116, 11118, 11122, 11130 (1984 and 2014 specimens of use submitted in connection with

Registration No. 1,308,610 (PENN STATE) showing decorative use); VBEx. 11 (Doc. 116-38) at 12072, 12076, 12077 (2017 specimens of use submitted in connection with Registration No. 5,766,698 (PENN STATE) showing decorative use). The only admissible evidence as to whether such decorative use serves a source- or quality-indicative function (and therefore constitutes use as a trademark) shows that it does not. *See* Response to Statement 5, *supra*. Additionally, the Wayback Machine captures (cited as pages 70–102 of PEx. 3 (Doc. 123-6)) are not admissible. Fed. R. Evid. 901.

Further, the University could not have used the PENN STATE text as a trademark with respect to goods until at least 1982 because the University freely allowed third parties to make and sell goods bearing the PENN STATE text. VBEx. 59 (Doc. 117-9) (1981 article explaining that the University was aware of but permitted third-party use of its claimed trademarks in connection with goods); VBEx. 60 (Doc. 117-10) at 10582–83 (¶ A) (1982 internal memorandum recognizing that, to the extent the University "established, in an informal way, a licensing program" there was "no … subsequent control over the permitted use ….").

Undisputed that the University owns Registration Nos. 1,308,610 and 5,766,698 but disputed that those Registrations are valid with respect to use of the claimed marks as ornamental features of merchandise because, for the reasons described above, the PENN STATE text applied as decoration to goods does not

serve a source- or quality-indicative purpose and therefore fails to function as a trademark.

9.      Penn State owns valid and subsisting United States federal trademark registrations with the United States Patent and Trademark Office (the "USPTO") covering the PENN STATE Mark including, among others, U.S. Registration No. 1308610 (registered 12/11/1984); and U.S. Registration No. 5766698 (registered 06/04/2019). *Ex. 4 at 2-17 (registration certificates for U.S. Reg. Nos. 1308610 and 5766698, along with Trademark Status Reports showing that these registrations remain valid for the listed goods and services); Second Amended Compl. (Dkt. 67), ¶ 25 & Answer (Dkt. 72), ¶ 25 (admitting that Penn State owns the above registrations).*

**RESPONSE:** *Disputed in part.* Undisputed that the University owns Registration Nos. 1,308,610 and 5,766,698 and that those Registrations are subsisting.

Disputed that Registration Nos. 1,308,610 and 5,766,698 are valid with respect to ornamental use on the goods described therein. The University cites no evidence of non-ornamental use. Vintage Brand submits that the Registrations are not valid with respect to ornamental use on goods because the University has not used the PENN STATE text as an indicator of source. *See* Response to Statement Nos. 5 and 8, *supra*.

10.      U.S. Registration No. 1308610 for the PENN STATE Mark is incontestable. *See Ex. 4 at 2-9 (registration certificate showing designation under Section 15); Lanham Act § 15, 15 U.S.C. § 1065 (provision setting out grant of incontestability for qualifying trademark registrations).*

**RESPONSE:** *Undisputed.*

11.    Penn State's registrations for the PENN STATE Mark cover a variety of goods and services including many different types of merchandise. U.S. Registration No. 1,308,610 covers, *inter alia*, decals, stickers, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, jerseys, shorts, sweat shirts, socks, hats, rugs and non-textile wall hangings. *See Ex.4 at 5-8 (Trademark Status Report for U.S. Reg. 1,308,610, showing the goods and services currently covered by this registration).* U.S. Registration No. 5,766,698 covers, *inter alia*, decorative magnets, drinking glasses, cutting boards, fabric flags, hooded sweatshirts, sweatpants, caps being headwear, coasters, and jigsaw puzzles. *See Ex. 4 at 14-16 (Trademark Status Report for U.S. Reg. 5,766,698, showing the goods and services currently covered by this registration).*

**RESPONSE:** *Undisputed*.

12.    Penn State uses the PENN State Mark with the registered goods including drinking mugs, tumblers, shirts, t-shirts, socks, hats, pennants, decals, sweatshirts, hoodies, decorative magnets, coasters, cutting boards, puzzles, and rugs and non-textile wall hangings. *See, e.g., Ex. 3 at 3-5, 8, 11, 16, 22, 28, 39, 50, 53, 57, 61, 64, 66 (composite examples showing the listed products being sold, with Penn State's permission, under the PENN STATE Mark)*; *Ex. 4 at 2-17 (registration certificates covering Penn State's federal registrations for the PENN STATE Marks); Second Amended Compl. (Dkt. 67), ¶ 25 & Answer (Dkt. 72), ¶ 25 (admitting that Penn State owns the above registrations).*

**RESPONSE:** *Disputed in part*. Undisputed that the University (via its licensees) uses the PENN STATE text as decoration on various types of goods, as shown by the cited pages of PEx. 3 (Doc. 123-6).

Disputed to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5 and 8, *supra*.

13.    A representative sample of genuine products that Penn State or its authorized licensees have sold bearing the PENN STATE Marks is shown below:



*See Ex. 3 at 3-5, 9, 11, 15, 23, 25, 28-29, 36, 38, 167 (composite examples of authorized products bearing the PENN STATE Mark including on goods manufactured or sold by Penn State Athletics Online Store, Lion's Pride, The Family Clothesline, The Penn State Bookstore, and McLanahans).  See also Petulla Decl.*

18

*(Ex. 1), ¶ 17 (Lions Pride, Family Clothesline, and McLanahans sell authorized Penn State merchandise); Penn State Dep. (Ex. 2) at 80:17-82.5, 85:5-87:6 (Penn State Athletics store and the Penn State Bookstore sell authorized merchandise).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the University claims the foregoing images all show merchandise bearing the PENN STATE text alone; all but two of the foregoing images show merchandise bearing the PENN STATE text in composite designs. Additionally, disputed to the extent the University claims that the word "genuine" conveys that these products represent trademark use.[3] Further disputed to the extent the University claims that authorization is required.[4] Otherwise undisputed.

### 2) The Mark THE PENNSYLVANIA STATE UNIVERSITY

14.    Penn State has been using THE PENNSYLVANIA STATE UNIVERSITY as a trademark continuously since at least as early as 1953 for many goods and services (the "TPSU Mark"). *See Petulla Decl. (Ex. 1), ¶¶ 7-8; Exhibit 5 at 2, 5, 24, 33 (composite examples of Penn State's authorized uses of the TPSU Mark); id. at 35-38 (example of 1985 advertisement for genuine Penn State merchandise available at the University's bookstore bearing the TPSU Mark); Ex.6 at 2-18 (registration certificates for the TPSU Marks).*

---

[3] Rather than repeat this potential, narrow dispute throughout, Defendants raise this with respect to all uses by the University of the word "genuine" in the PSMF, including Statements 13, 19, 29, 41, 47, 68, 74–75, 77–78, 91, 132.

[4] Rather than repeat this potential, narrow dispute throughout, Defendants raise this with respect to all uses by the University of the word "authorized" in the PSMF, including Statements 13, 19, 28–29, 37–38, 40–42, 47, 67, 123, 125–126, 131–133, 137, 151.

**RESPONSE:** *Disputed in part*. Undisputed that the University has used the TPSU text as a service mark for educational services since 1953.

Disputed that the University has ever used the TPSU text as a trademark for goods. The cited declaration testimony of Stephanie Petulla does not support this Statement. *See* Petulla Decl. (Doc. 123-1) ¶¶ 7–8. Regardless, Ms. Petulla lacks personal knowledge as to the historical use of the TPSU text and was not disclosed to provide testimony on that topic. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602. Further, whether text or an image constitutes a "trademark" is a legal conclusion and, therefore, not the proper subject of lay witness testimony. *See* 15 U.S.C. § 1127.

Additionally, the evidence only shows use of the TPSU text incorporated within composite images being used as decorative elements of goods, frequently the Seal Designs. PEx. 5 (Doc. 123-8) (showing decorative use of the TPSU text within composite designs); *see also* VBEx. 27 (Doc. 116-54) at 11224, 11234, 11487–89 (1985 and 2015 specimens of use submitted in connection with Registration No. 1,315,693 (TPSU text) showing decorative use); VBEx. 29 (Doc. 116-56) at 12000 (2018 specimen of use submitted in connection with Registration No. 5,399,989 (TPSU text) showing decorative use); VBEx. 31 (Doc. 116-58) at 12018–19 (2017 specimen of use submitted in connection with Registration No. 5,742,516 (TPSU text) showing decorative use). The only admissible evidence as to the function of

these images shows that they are ornamental and do not serve a source- or quality-indicative function (and therefore do not constitute use of those images as trademarks). *See* Response to Statement 5, *supra*. Additionally, the Wayback Machine capture (page 16 of PEx. 5 (Doc. 123-8)) is not admissible. Fed. R. Evid. 901.

Further, the TPSU text could not have functioned as a trademark for the University with respect to goods prior to 1982 because the University freely allowed third parties to make and sell goods bearing the TPSU text. VBEx. 59 (Doc. 117-9) (1981 article explaining that the University was aware of but permitted third-party use of its claimed trademarks in connection with goods); VBEx. 60 (Doc. 117-10) 10582–83 (¶ A) (1982 internal memorandum recognizing that, to the extent the University "established, in an informal way, a licensing program" there was "no … subsequent control over the permitted use ….").

Undisputed that the University owns Registration Nos. 1,315,693, 5,399,989, and 5,742,516 but disputed that those Registrations are valid with respect to goods because, for the reasons described above, the TPSU text applied as decoration to goods does not serve a source- or quality-indicative purpose and therefore fails to function as a trademark, and because there is no evidence of use of the TPSU text alone in connection with goods rather than incorporated within composite images, such as the Seal Designs.

15.    Penn State owns valid and subsisting United States federal trademark registrations covering the TPSU Mark, including U.S. Registration No. 1,315,693 (registered 01/22/1985); U.S. Registration No. 5,399,989 (registered 02/13/2018); and U.S. Registration No. 5,742,516 (registered 05/07/2019).  *See Ex. 6 at 2-18 (registration certificates for the TPSU Marks along with Trademark Status Reports showing that these registrations remain valid for the listed goods and services).*

**RESPONSE:** *Disputed in Part.* Undisputed that the University owns Registration Nos. 1,315,693, 5,399,989, and 5,742,516 and that those Registrations are subsisting.

Disputed that Registration Nos. 1,315,693, 5,399,989, and 5,742,516 are valid with respect to ornamental use on the goods described therein. The University cites no evidence of non-ornamental use. Vintage Brand submits that they are not valid with respect to ornamental use on goods because the University has not used the TPSU text as an indicator of source, and because the University has not used the TPSU text alone with respect to any goods but, rather, has incorporated it into composite designs such as the Seal Designs. *See* Response to Statement Nos. 5 and 14, *supra*.

16.    One of Penn State's registrations for the TPSU Mark (U.S. Registration No. 1,315,693) is incontestable. *See Ex. 6 at 8 (registration certificate showing Section 15 designation); Lanham Act § 15, 15 U.S.C. § 1065 (provision setting out grant of incontestability for qualifying trademark registrations).*

**RESPONSE:** *Undisputed.*

17.    Penn State's registrations for the TPSU Mark cover a variety of goods and services including many different types of merchandise. U.S. Registration No. 1,315,693 covers, *inter alia*, decals, drinking mugs, tankards, glasses, cups, and

tumblers. *See Ex. 6 at 10-12 (Trademark Status Report for U.S. Reg. 1,315,693, showing the goods and services currently covered by this registration).* U.S. Registration No. 5,399,989 covers, *inter alia*, hats, jackets, shirts, shorts, sweat shirts, and t-shirts. *See Ex. 6 at 17-18 (Trademark Status Report for U.S. Reg. 5,399,989, showing the goods and services currently covered by this registration).* U.S. Registration No. 5,742,516 covers decorative magnets and fabric flags. *See Ex. 6 at 5-6 (Trademark Status Report for U.S. Reg. 5,742,516, showing the goods and services currently covered by this registration).*

**RESPONSE:** *Undisputed.*

18.    Penn State uses the TPSU Mark in connection with these registered goods, including, inter alia, decals, drinking mugs, sweatshirts, t-shirts, and hats. *Ex. 5 at 2, 5, 24, 33 (composite examples of Penn State's authorized uses of the TPSU Mark); Ex. 6 at 2-18 (registration certificates for the TPSU Marks).*

**RESPONSE:** *Disputed in part.* Undisputed that the University (via its licensees) uses composited designs incorporating the TPSU text as decoration on various types of goods, as shown by the cited pages of PEx. 5 (Doc. 123-8).

Disputed to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5 and 14, *supra*.

19.    A representative sample of genuine products that Penn State or its authorized licensees have sold bearing the TPSU Marks is shown below:



*See Ex. 5 at 6-8, 10, 22, 28, 34, 52 (composite examples of Penn State's authorized uses of the TPSU Mark including on goods manufactured or sold by The Family Clothesline, Lions Pride, McLanahans, and The Penn State Bookstore). See also Petulla Decl. (Ex. 1), ¶ 17 (Lions Pride, Family Clothesline, and McLanahans sell authorized Penn State merchandise); Penn State Dep. (Ex. 2) at 81:17-82:5, 85:17-87:6 (Penn State bookstore at psu.spirit.bncollege.com sells authorized Penn State merchandise).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the University claims the foregoing images all show merchandise bearing the TPSU text alone; each of the foregoing images show merchandise bearing the TPSU text in composite designs.

Otherwise undisputed.

### 3) The Lion Shrine Logo

20.     Penn State's mascot is the "Nittany Lion". *See Declaration of Jackie R. Esposito (Exhibit 7) ("Esposito Decl."), ¶ 7.*

**RESPONSE:** *Undisputed*.

21.     The Nittany Lion is the most recognized symbol to Penn State students, alum, and fans. *Esposito Decl., (Ex. 7), ¶ 9.*

**RESPONSE:** *Disputed.* This Statement is premised solely on the declaration testimony of Jackie Esposito. Consumer perception is not the proper subject of lay witness testimony and, therefore, not admissible evidence. Fed. R. Civ. P. 56(c); Fed. R. Evid. 602, 701, 702; *see also Solofill, LLC*, 2018 WL 3357497, at *5. Further, even if this topic were proper for lay witness testimony, this particular Statement is extremely vague. It is unclear what the Nittany Lion is a symbol for, and it is unclear whether the characterization of "most recognized" was intended as a comparison to all symbols for anything or limited to some subset of symbols. Fed. R. Evid. 403.

22.     Penn State has used different logos over the years that feature different visual iterations of the Nittany Lion. *Esposito Decl., (Ex. 7), ¶ 9.*

**RESPONSE:** *Undisputed*.

23.     Among these are logos that depict the 600-pound limestone "shrine" of the Nittany Lion located on Penn State's campus, that was commissioned by the University as the Class of 1940 gift, carved by Heinz Warneke, and completed in October 1942. *Esposito Decl. (Ex. 7), ¶¶ 10-11*. The shrine is an icon at Penn State, and well known to the public as an important symbol signifying Penn State. *Id. ¶ 12*. It is the second most photographed landmark in Pennsylvania, surpassed only by the Liberty Bell. *Id. ¶ 12*.

**RESPONSE:** *Disputed in part.* Disputed to the extent that this Statement relies solely on the declaration testimony of Jackie Esposito to establish that the Nittany Lion shrine is "well known to the public as an important symbol signifying Penn State" and "is the second most photographed landmark in Pennsylvania" because Ms. Esposito lacks personal knowledge, is not offered as an expert witness, and cannot testify as to consumer perception. Fed. R. Civ. P. 56(c); Fed. R. Evid. 602, 701, 702; *see also Solofill, LLC*, 2018 WL 3357497, at *5.

24.     Based on the Nittany Lion's long association with Penn State, Penn State has adopted stylized logo versions of the Nittany Lion shrine as brands. Examples of Penn State's logos that depict the Nittany Lion Shrine, and which Penn State has been using continuously for decades, include:





(together, the "Lion Shrine Logo"). *Exhibit 8 at 3, 6, 10, 14, 40, 48 (composite*

*examples of Penn State's authorized uses of the Lion Shrine Logo); Ex. 8 at 2-3, 7-9 (registration certificates covering Penn State's federal registrations for the Lion Shrine Logo); Petulla Decl. (Ex. 1), ¶¶ 7-8.*

**RESPONSE:** *Disputed in part.* Undisputed to the extent that the University has used the bottom image (the "Nittany Lion Frankfurter Design") in connection with frankfurters. Further undisputed that the University owns Registration No. 1,397,810.

Disputed that the University has ever used the Nittany Lion Frankfurter Design in connection with clothing, much less in a source- or quality indicative way, because the University submits no evidence of that specific design appearing on clothing or any other goods, and certainly not appearing as a mark for those goods. *See generally* PEx. 8 (Doc. 123-11). For example, the Nittany Lion Frankfurter Design was not listed in a 2011 chart of the University's purported trademarks created by CLC, the University's exclusive licensing agent for retail merchandise. VBEx. 38 (Doc. 116-65). Further, the cited declaration testimony of Stephanie Petulla does not support this Statement. *See* Petulla Decl. (Doc. 123-1) ¶¶ 7–8. Regardless, Ms. Petulla lacks personal knowledge as to the historical use of the Nittany Lion Frankfurter Design and was not disclosed to provide testimony on that topic. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602. As such, there is no

pre-lawsuit evidence of use of the Nittany Lion Frankfurter Design in connection with any goods other than frankfurters.

Further disputed that the University has ever used the top image (the "Nittany Lion Rock Design") as a "brand," which Vintage Brand interprets to mean "trademark." Ms. Petulla's declaration does not establish that fact, nor could it, because she lacks personal knowledge as to the historical use of the Nittany Lion Rock Design, was not disclosed to provide testimony on that topic, and cannot testify to legal conclusions such as whether something constitutes a trademark. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶¶ 3, 7–8; Fed. R. Evid. 602. The evidence only shows use of the Nittany Lion Rock Design being used as a decorative element of goods. PEx. 8 (Doc. 123-11) (showing decorative use of the Nittany Lion Rock Design, almost invariably in composite images rather than alone); *see also* VBEx. 33 (Doc. 116-60) at 11550, 11768–70 (1982 and 2015 specimens of use submitted in connection with Registration No. 1,350,286 (Nittany Lion Rock Design) showing decorative use). The only admissible evidence as to the function of those features when used to decorate merchandise shows that it does not serve a source- or quality-indicative function (and therefore does not constitute use as a trademark). *See* Response to Statement 5, *supra*.

Undisputed that the University owns Registration No. 1,350,286 but disputed that such Registration is valid with respect to goods because, for the reasons described above, the Nittany Lion Rock Design applied as decoration to goods does not serve a source- or quality-indicative purpose and therefore fails to function as a trademark.

25.     Penn State owns valid and subsisting United States federal trademark registrations covering the Lion Shrine Logo, including U.S. Registration No. 1,350,286 (registered 07/23/1985); and U.S. Registration No. 1,397,810 (registered 06/17/1986). Ex. 9 at 2-14 *(registration certificates covering Penn State's federal registrations for the Lion Shrine Logo along with Trademark Status Reports showing that these registrations remain valid for the listed goods and services).*

**RESPONSE:** *Disputed in part.* Undisputed that the University owns Registration Nos. 1,350,286 and 1,397,810 and that those Registrations are subsisting. Further undisputed that Registration No. 1,397,810 is valid.

Disputed that Registration No. 1,350,286 is valid with respect to the goods described therein. The University cites no evidence in this Statement to support that this Registration is valid. Vintage Brand submits that this Registration is not valid with respect to goods because the University has not produced any evidence that is has used the Nittany Lion Rock Design as an indicator of source for the relevant goods. *See* Response to Statement Nos. 5 and 24, *supra*.

26.     Both of Penn State's federal registrations (Registration Nos. 1,350,286 and 1,397,810) that cover the Lion Shrine Logo are incontestable. *See Ex. 9 at 2-3, 7-9 (registration certificates covering Penn State's federal registrations for the Lion Shrine Logo showing Section 15 designation); Lanham Act § 15, 15 U.S.C. § 1065*

*(provision setting out grant of incontestability for qualifying trademark registrations).*

**RESPONSE:** *Undisputed.*

27. Penn State's U.S. Registration No. 1,350,286 for the Lion Shrine Logo covers a variety of different types of merchandise, including decorative magnetic stickers, decals, drinking mugs, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweatshirts, and hats. *See Ex. 9 at 11-13 (Trademark Status Report for U.S. Reg. 1,350,286 showing goods and services currently covered by this registration).*

**RESPONSE:** *Undisputed.*

28. Penn State and its authorized licensees use the Lion Shrine Logo in connection with goods covered by Penn State's registrations, including, inter alia, decorative magnetic stickers, drinking mugs, pennants, decals, t-shirts, sweatshirts, and hats. *See Ex. 8 at 3, 6, 10, 14, 38, 40, 48 (composite examples of Penn State's authorized uses of the Lion Shrine Logo); Ex. 9 at 2-3, 7-9 (registration certificates covering Penn State's federal registrations for the Lion Shrine Logo); Exhibit 10 [PSU0011530] at 94, 132, 141 (certified file wrapper for U.S. Reg. No. 1,350,286, showing specimens of use submitted to and accepted by the USPTO, including drinking mug, pennant, magnetic stickers, decals, t-shirts).*

**RESPONSE:** *Disputed in part.* Undisputed that the University (via its licensees) uses the Nittany Lion Rock Design as decoration on various types of goods, as shown by PEx. 8 (Doc. 123-11) and PEx. 10 (Doc. 123-13). Disputed to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5 and 24, *supra.*

Disputed that the University (via its licensees or otherwise) uses the Nittany Lion Frankfurter Design on the goods described in this Statement. The evidence cited in support of this Statement does not show any such use.

29. A representative sample of genuine products that Penn State or its authorized licensees have sold bearing the Lion Shrine Logo is shown below:



*See Ex. 8 at 3, 6, 8, 10, 14, 16, 17, 19, 31, 36, 40, 45, 48, 51 (composite examples of Penn State's authorized uses of the Lion Shrine Logo including on goods manufactured or sold by Lions Pride, McLanahans, and The Penn State Bookstore); Exhibit 10 [PSU0011530] at 94, 102, 128, 137, 244, 255 (certified file wrapper for U.S. Reg. No. 1350286, showing specimens of use submitted to and accepted by the USPTO, including the pennant, wall décor, decorative magnets, ceramic mug, hat*

*and clear drinkware pictured above). See also Petulla Decl. (Ex. 1), ¶ 17 (Lions Pride and McLanahans sell authorized Penn State merchandise); Penn State Dep. (Ex. 2) at 81:17-82:5, 85:17-87:6 (Penn State bookstore at psu.spirit.bncollege.com sells authorized Penn State merchandise).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the University claims the foregoing images all show merchandise bearing the Nittany Lion Rock Design alone; many of the foregoing images show merchandise bearing the Nittany Lion Rock Design in composite designs. Further disputed that the foregoing images show any merchandise bearing the Nittany Lion Frankfurter Design. Otherwise undisputed.

### 4) The Pozniak Lion Logo

30.     Penn State has used in commerce and owns a federal registration for the design mark referred to as the "Pozniak Lion Logo." *See Petulla Decl. (Ex. 1), ¶ 7.* This logo, shown here, has been continuously used for decades by Penn State and its predecessors in interest:



*See Ex. 11 at 2-3 (registration certificate covering Penn State's Pozniak Lion Logo and showing date of first use of May 31, 1983).*

**RESPONSE:** *Disputed in part.* Undisputed that the University owns Registration No. 5,305,910, the subject of which is the Pozniak Lion Design.

Disputed that the Pozniak Logo Design has been continuously used in commerce for decades by the University and its predecessors in interest. The Pozniak Lion Design was created in 1974 by Ray Pozniak, a graduate of the University. 30(b)(6) Dep. (Doc. 116-28) at 98:3–17; VBEx. 21 (Doc. 116-33) at 8412. The University used the Pozniak Lion Design in connection with athletics until 1986, when it was phased out ████████REDACTED████████. VBEx. 6 (Doc. 116-33) at 8412. ████████████REDACTED████████████ ████████REDACTED████████. *Id.* at 8412–13. However, in 2013 and for "█REDACTED█ ████████████REDACTED████████████ ████████████████████████████. *Id.* at 8412.

Following the 1986 phase out described above, the Pozniak Lion Design was used by the Nittany Lion Wrestling Club, the Lion Ambassadors, and a license plate program. 30(b)(6) Dep. (Doc. 116-28) at 98:18–99:11; *see also* VBEx. 21 (Doc. 116-33) at 7950, 8298, 8413. The University claims that the Pozniak Lion Design is part of its current retail merchandise licensing program. 30(b)(6) Dep. (Doc. 116-28) at 101:22–25. However, the Pozniak Lion Design does not appear in the University's licensing Art Sheets or Brand Book. *See generally* VBExs. 8 (Doc. 116-35), 51 (Doc.

117-1). And the University is only aware of it being used in connection with the Nittany Lion Wrestling Club, Lion Ambassadors, and license plate program. 30(b)(6) Dep. (Doc. 116-28) at 102:1–6. Disputed that such use is trademark use.

The Nittany Lion Wrestling Club and the University are separate entities. VBEx. 103 (Doc. 117-53) (Request for Admission No. 10). The University is not aware of any apparel emblazoned with the Pozniak Lion Design being made available for sale in connection with that club. 30(b)(6) Dep. (Doc. 116-28) at 100:13–21.

The Lion Ambassadors are students who serve as ambassadors on campus for visiting guests and partner with the alumni association. 30(b)(6) Dep. (Doc. 116-28) at 99:6–8; *see also* VBEx. 43 (Doc. 116-70). Although the Lion Ambassadors wear apparel such as t-shirts that make ornamental use of the Pozniak Lion Design, the Lion Ambassadors are provided with such apparel "as their uniform to perform their functions." 30(b)(6) Dep. (Doc. 116-28) at 99:16–100:3; *see also* VBEx. 43 (Doc. 116-70) (stating that ambassadors receive apparel from the Alumni Association). The University is not aware of any such t-shirts being made available for purchase to the public. 30(b)(6) Dep. (Doc. 116-28) at 100:4–8. Even the University's predecessor in interest recognized that the "Lion Ambassadors have used the mark for non-commercial purposes only …." VBEx. 6 (Doc. 116-33) at 8413; *see also* VBEx. 41 (Doc. 116-68) at 11970 (2017 t-shirt specimen of use in commerce is a

digital mockup of apparel worn by the Lion Ambassadors, as shown at VBEx. 47 (Doc. 116-74)).

The license plate program ceased in or around 2003. VBEx. 6 (Doc. 116-33) at 8409; *see also* VBEx. 41 (Doc. 116-68) at 11969 (2017 license plate specimen of use in commerce showing vehicle tags dated August 1994). Further, there is no evidence that either the University or its predecessor in interest ever exercised any quality control over license plates sold by various state agencies bearing an image of the Pozniak Lion.

Finally, the cited declaration testimony of Stephanie Petulla does not support this Statement. *See* Petulla Decl. (Doc. 123-1) ¶ 7. Regardless, Ms. Petulla lacks personal knowledge as to the historical use of the Pozniak Lion Design and was not disclosed to provide testimony on that topic. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602.

31.    This logo was designed by Ray Pozniak. *See Penn State Dep. (Ex. 2) at 98:7-17.* Mr. Pozniak's heirs transferred his intellectual property rights in this logo to Penn State around August 2014. *Id. at 101:12-18.*

**RESPONSE:** *Disputed in part.* Disputed that Mr. Pozniak's heirs owned any trademark rights to transfer as a result of the non-use/abandonment and naked licensing described above. *See* Response to Statement No. 30, *supra.* Otherwise undisputed.

32.     After acquiring all rights in the Pozniak Lion Logo in around 2014, Penn State obtained a federal registration with the USPTO covering the Pozniak Lion Logo, U.S. Registration No. 5,305,910 (registered 10/10/2017). *See Ex. 11 at 2-7 (registration certificate covering Pozniak Lion Logo along with Trademark Status Report showing that this registration remains valid for the listed goods)*.

**RESPONSE:** *Disputed in part*. Disputed to the extent the University claims it acquired any rights in the Pozniak Lion Design as a result of the purported 2014 transfer. *See* Response to Statement No. 30, *supra*. Otherwise undisputed.

33.     Penn State, itself and through its predecessors in interest, has used and promoted the Pozniak Lion Logo continuously throughout the United States for several decades. *Petulla Decl. (Ex. 1), ¶¶ 7-8. See generally Exhibit 13 at 2-39 (composite examples of Penn State's authorized uses of the Pozniak Lion Logo); id. at 31-39 (showing examples of historic uses of the Pozniak Lion Logo pulled from prior editions of the University's yearbook); Ex. 11 at 2-3 (registration certificate covering Pozniak Lion Logo).*

**RESPONSE:** *Disputed*. The University's claim of historical use of the Pozniak Lion Design is disputed for the same reasons set forth above. *See* Response to Statement No. 30, *supra*. With respect to the specific evidence identified by the University in this Statement, pages 2–19, 21, 23, 26, and 28–30 of PEx. 13 (Doc. 123-16 at 4738–4748, 4750, 4752–4753, 4766–4767, 4785–4786, 4791, 5000, 5006, 6878, 6994, and 7161) show non-commercial ornamental use of the Pozniak Lion Design by the Lion Ambassadors, pages 20 and 22 show non-commercial ornamental use by the Nittany Lion Wrestling Club (a separate entity), pages 24 and 25 show undated digital mockups of license plates (*see* C.F.R. § 2.56(c)), and page 27 shows a post-lawsuit capture of the Virginia Department of Motor Vehicle's

website. Even assuming there were ever valid trademark rights in the Pozniak Lion, which Vintage Brand disputes, the University has not produced any evidence demonstrating that the Pozniak Lion Design was used in commerce between the abandonment described above and this lawsuit. *See* Response to Statement No. 30, *supra*.

Further, pages 31–36 of the PEx. 13 (Doc. 123-16), show pre-phase out use of the Pozniak Lion Design, and the single remaining piece of evidence at pages 37–39 shows fans at a 1994 or 1995 football game wearing apparel bearing the Pozniak Lion Design as an ornamental feature.

34.    Penn State's U.S. Registration No. 5,305,910 for the Pozniak Lion covers, *inter alia*, metal novelty license plates, hats, t-shirts, and sweatshirts. *See Ex. 11 at 5-6 (Trademark Status Report for U.S. Reg. 5,305,910, showing the goods and services currently covered by this registration).*

**RESPONSE:** *Undisputed*.

35.    Penn State uses the Pozniak Lion Logo in connection with, *inter alia*, clothing hats, t-shirts, and license plates. *See Ex. 11 at 2-3 (Pozniak Lion registration certificate showing goods covered); Ex. 13 at 2, 5-7, 9-12, 15-21,24, 26 (composite examples of Penn State's authorized used of the Pozniak Lion Logo).*

**RESPONSE:** *Disputed in part*. Disputed for the reasons set forth above and also to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5, 30 and 33, *supra*. Otherwise undisputed.

36.     Penn State permits the Pozniak Lion to be used (1) by the University's wrestling booster club, (2) by the Lion Ambassadors student group who, through the

alumni association, serve as representatives on campus for visiting guests, and (3) on approved state license plates. *See Penn State Dep. (Ex. 2) at 98:7-99:11; Ex. 13 at 4-5, 7, 20, 24-25 (composite examples of Penn State's authorized uses of the Pozniak Lion Logo showing use by these three groups).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the University claims that permission is required. Otherwise undisputed.

37. A representative sample of images showing authorized uses of the Pozniak Lion Logo, including on merchandise such as hats and apparel, is shown below:

  

  

   

   

 



*See Ex. 13 at 4, 7-8, 15, 17, 20, 22-30 (composite examples of Penn State's authorized uses of the Pozniak Lion Logo, drawn almost entirely from social media*

*accounts for Penn State Lion Ambassadors Program (pp. 4, 7-8, 15, 23, 26, 28-29 and the Nittany Lion Wrestling Club (pp. 20, 22)).*

**RESPONSE:** *Undisputed.*

### 5) The S Lion Logo

38.     Since at least as early as 2015, Penn State has sold and authorized merchandise bearing the following brand, referred to as the "S LION Logo."



*See Petulla Decl. (Ex. 1), ¶¶ 7-8.*

**RESPONSE:** *Disputed.* Disputed that the University has ever used the above image (the "S-Lion Design") as a "brand," which Vintage Brand interprets to mean "trademark." The cited declaration testimony of Stephanie Petulla does not support this Statement. *See* Petulla Decl. (Doc. 123-1) ¶¶ 7–8. Further, whether text or an image constitutes a "trademark" is a legal conclusion and, therefore, not the proper subject of lay witness testimony. *See* 15 U.S.C. § 1127.

The evidence only shows use of the S-Lion Design as a decorative element of goods. PExs. 14 and 15 (Docs. 123-17, 123-18). The only admissible evidence as to

the function of the image on merchandise shows that it does not serve a source- or quality-indicative function (and therefore the use does not constitute use as a trademark). *See* Response to Statement 5, *supra*.

Further disputed that the University has been using the S-Lion Design "brand" since 2015. Ms. Petulla lacks personal knowledge as to the historical use of the S-Lion Design and was not disclosed to provide testimony on that topic. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602. Additionally, the only evidence of purported pre-lawsuit decorative use are in the form of Wayback Machine captures (pages 51–64 of PEx. 14 (Doc. 123-17) and the entirety of the PEx. 15 (Doc. 123-18)), which are not admissible. Fed. R. Evid. 901.

Further, whatever use of the S-Lion Design has occurred has been the subject of CLC's College Vault trademark maintenance program. VBEx. 51 (Doc. 117-1) at 8656; 30(b)(6) Dep. (Doc. 116-28) at 67:25–68:25. As described by CLC, the " REDACTED " program " REDACTED ," including " REDACTED REDACTED ." VBEx. 68 (Doc. 117-18) at 8889, 8891–92. The University cannot explain how the historic designs that are licensed through its College Vault program were used other than in connection with that program. 30(b)(6) Dep. (Doc. 116-28) at 63:6–17. Nor can the University identify any purpose for the separate College Vault program other than to maintain/manufacture

purported trademark rights in historical designs associated with the University. 30(b)(6) Dep. (Doc. 116-28) at 64:13–65:8.

39.    Penn State has sold the different goods bearing the S Lion Logo, including *inter alia*: clothing, hats, drink koozies, decorative wall art, coasters, mugs, magnets, drinking glasses, and food-related items that bear this logo. *See Exhibit 14 at 2-6, 9-11, 14, 40-42, 53-57 (composite examples of Penn State's authorized uses of the S Lion Logo).*

**RESPONSE:** *Disputed in part.* Undisputed that the University (via its licensees) uses the S-Lion Design as decoration on various types of goods, as shown in the admissible portion of PEx.14 (Doc. 123-17).

Disputed to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5 and 38, *supra*. Further disputed that pages 53–57 of PEx. 14 (Doc. 123-17) establish anything because they are inadmissible Wayback Machine captures. Fed. R. Evid. 901.

40.    Website captures from 2011-2017 obtained through the Wayback Machine show that Penn State—itself and through authorized licensees—was selling products bearing the S Lion Logo prior to 2018. *See generally Exhibit 15 at 2-67 (collection of Wayback Machine captures showing, prior to 2018, webpages advertising and offering merchandise such as t-shirts and sweatshirts that bear the S Lion Logo).* Examples of the goods that are shown on these pre-2018 webpages include the following:



*Id. at 9, 14, 26, 29-30, 36, 37, 51 (webpage captures prior to 2018 showing products listed for sale on Penn State's website <gopsusports.com> and on licensees' webpages).*

**RESPONSE:** *Disputed.* This Statement is premised solely on Wayback Machine captures, which are not admissible evidence. Fed. R. Evid. 901. Further disputed as to whether these images show use of a "logo."

41. A representative sample of genuine products that Penn State or its authorized licensees have sold bearing the S Lion Logo is shown below:



*See Exhibit 14 at 7, 10-11, 14, 31, 35, 37-38, 40-41, 43, 46, 48 (composite examples of Penn State's authorized uses of the S Lion Logo including on goods manufactured or sold by Penn State Athletics Online Store, The Penn State Bookstore, McLanahans, Hex Head Art, 19NINE, '47 brand, and Hillflint). See also Petulla Decl. (Ex. 1), ¶ 17 (Lions Pride, Family Clothesline, and McLanahans sell authorized Penn State merchandise); Penn State Dep. (Ex. 2) at 80:17-82.5, 85:5-87:6 (Penn State Athletics store and the Penn State Bookstore sell authorized merchandise); Exhibit 18 at 3-4, 9 (list of authorized Penn State licensees showing that 19NINE, '47 brand, Hex Head (business name of Cobalt Design) and Hillflint (denominated as TL x HF LLC) are Penn State licensees); Exhibit 47 at 27 (search for Penn State licensees showing TL x HF LLC listed as an authorized licensee that operates at website hillflint.com).*

**RESPONSE:** *Undisputed.*

### 6) The University Seal

42.     Since at least as early as 1984, Penn State, directly and through authorized licensees, has promoted and sold goods and services throughout the United States using the following logos:

 

(collectively, the "University Seal"). *See Petulla Decl. (Ex. 1), ¶¶ 7-8; Exhibit 16 at 3, 8, 25-26, 28, 36-40 (composite examples of Penn State's authorized uses of the University Seal); Exhibit 17 at 2-4, 10-12 (registration certificates covering the University Seal).*

**RESPONSE:** *Disputed*. The University has no evidence that it has ever used the Seal Designs as trademarks for goods and offers no evidence or explanation of the Seal Designs being used in connection with services. The cited declaration testimony of Stephanie Petulla does not support use as a trademark. *See* Petulla Decl. (Doc. 123-1) ¶¶ 7–8. Further, Ms. Petulla lacks personal knowledge as to the historical use of Seal Designs and was not disclosed to provide testimony on that topic. VBEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602.

The evidence shows only use of the Seal Designs as a decorative elements of goods. PEx. 16 (Doc. 123-19); *see also* VBEx. 49 (Doc. 116-76) at 10645, 10694, 10792, 10796, 10800 (1982 and 2014 specimens of use submitted in connection with Registration No. 1,276,712 (Seal Design) showing decorative use); PEx. 52 (Doc.

117-2) at 12218, 12223, 12228 (2017 specimens of use submitted in connection with Registration No. 5,877,080 (Seal Design) showing decorative use). The only admissible evidence as to the function of those designs on merchandise shows that it does not serve a source- or quality-indicative function (and the use therefore does not constitute use as a trademark). *See* Response to Statement 5, *supra*. Additionally, the Wayback Machine capture at PEx. 16 (page 18 of Doc. 123-19) at 6774 is not admissible. Fed. R. Evid. 901.

Undisputed that the University owns Registration Nos. 1,276,712 and 5,877,080 but disputed that those Registrations are valid because, for the reasons described above, the Seal Designs applied as decoration to goods do not serve a source- or quality-indicative purpose and therefore fail to function as trademarks. The University has not offered any evidence of use of the Seal Designs as trademarks for the claimed goods and services.

43.    Penn State owns valid and subsisting United States federal trademark registrations covering the University Seal including U.S. Registration No. 1,276,712 (registered 05/08/1984); and U.S. Registration No. 5,877,080 (registered 10/08/2019). *See Ex. 17 at 2-18 (registration certificates covering the University Seal along with Trademark Status Reports showing that these registrations remain valid for the listed goods and services).*

**RESPONSE:** *Disputed in part.* Undisputed that the University owns Registration Nos. 1,276,712 and 5,877,080 and that those Registrations are subsisting.

Disputed that Registration Nos. 1,276,712 and 5,877,080 are valid with respect to the goods described therein. The University cites no evidence in this Statement to support that these Registrations are valid. Vintage Brand submits that they are not valid with respect to goods because the University has no evidence that it has used the Seal Designs as indicators of source of the relevant goods. *See* Response to Statement Nos. 5 and 42, *supra*.

44.    One of Penn State's registrations for the University Seal (U.S. Registration No. 1,276,712) is incontestable. *Ex. 17 at 2-9 (registration certificate covering U.S. Registration No. 1,276,712 for the University Seal showing Section 15 designation); Lanham Act § 15, 15 U.S.C. § 1065 (provision setting out grant of incontestability for qualifying trademark registrations).*

**RESPONSE:** *Undisputed.*

45.    Penn State's registrations for the University Seal cover a variety of goods and services including different types of merchandise. U.S. Registration No. 1,276,712 covers*, inter alia*, decorative magnetic stickers, decals, stickers, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweat shirts, shorts, and hats*. See Ex. 17 at 5-7 (Trademark Status Report for U.S. Reg. 1,276,712, showing the goods and services currently covered by this registration).* U.S. Registration No. 5,877,080 covers, inter alia, coasters, ceramic mugs, fabric flags, banners of textile, and hooded sweatshirts. *See Ex. 17 at 14-15 (Trademark Status Report for U.S. Reg. 5,877,080, showing the goods and services currently covered by this registration).*

**RESPONSE:** *Undisputed.*

46.    Penn State uses the University Seal in connection with these registered goods, including, inter alia, decorative magnetic stickers, pennants, t-shirts, sweatshirts, hats, coasters, ceramic mugs, and hooded sweatshirts. *See Ex. 17 at 2-18 (registration certificates covering the University Seal); Ex. 16 at 3, 8, 25-26, 28, 36-40 (examples of Penn State's authorized uses of the University Seal).*

**RESPONSE:** *Disputed in part.* Undisputed that the University (via its licensees) uses the Seal Designs as decorative features of various types of goods, as shown by the cited pages of PEx. 16 (Doc. 123-19).

Disputed to the extent that the University claims such use constitutes "use" in the trademark sense. *See* Response to Statement Nos. 5 and 42, *supra*.

47. A representative sample of genuine products that Penn State or its authorized licensees have sold bearing the University Seal is shown below:

   

   

 

*See Ex. 16 at 5, 7, 8-12, 26, 28, 41 (examples of Penn State's authorized uses of the University Seal on genuine goods including t-shirts, sweatshirts, decals, stickers, magnets, drinkware, and pennants being offered for sale through Lions Pride, Gameday Couture, and The Family Clothesline). See also Petulla Decl. (Ex. 1), ¶ 17 (Lions Pride and Family Clothesline sell authorized merchandise); Ex. 18 [PSU0007593] at 4 (list of authorized Penn State licensees under standard license through CLC, showing Gameday Couture is authorized).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the foregoing images

show products bearing only the new iteration of the Seal Design, which is the subject

of Registration No. 5,877,080. None of the foregoing show products bearing the old

Seal Design, which is the subject of Registration No. 1,276,712.

48.     In prosecuting and maintaining its registrations for the University Seal, Penn State has submitted specimens of use, which the USPTO has accepted. *See, e.g., Ex. 19 [PSU0010628] at 19-103, 125-134, 161-183 & Ex. 20 [PSU0012206] at 14-25, 81-91, 106-129 (certified file wrappers showing USPTO files for University Seal registrations).*

**RESPONSE:** *Undisputed*.

49.     The specimens of use using showing products bearing the University Seal show that the Seal is generally shown in a single color, often engraved onto the product. *See, e.g., Ex. 19 [PSU0010628] at 19-103, 125-134, 161-183 & Ex. 20 [PSU0012206] at 14-25, 81-91, 106-129 (certified file wrappers showing USPTO files for University Seal registrations).*

**RESPONSE:** *Disputed in part*. Disputed to the extent the cited pages of the

filed wrappers of Registration Nos. 1,276,712 and 5,877,080 show that the Seal

Designs are "often" engraved onto the products submitted as specimens of use.

Further disputed to the extent that the University claims its use constitutes "use" in

the trademark sense. Otherwise undisputed.

50.     Penn State's branding guidelines restrict against any alterations to the University Seal, including the following specific prohibition: "Do not isolate the interior portion of the seal." *See Ex. 21 at 2-6 (Penn State's art sheets from 2011-2022, setting out the guidelines for uses of the University Seal).*

**RESPONSE:** *Undisputed*.

## B. Penn State's Uses of and Investments in the University Marks

51.     Penn State has been selling merchandise featuring the University Marks continuously going back prior to 2017, which is before Vintage Brand started its business or began operating the website. *See Petulla Decl. (Ex. 1), ¶ 8.*

**RESPONSE:** *Disputed in part.* Disputed that the merchandise featured the alleged marks as trademarks. This Statement is supported solely by the conclusory declaration testimony of Stephanie Petulla (Doc. 123-1). *Sears*, 2021 WL 254067, at *3 n.2 ("[T]he Court is not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."). Even if such conclusory declaration testimony was sufficient to establish a fact, Ms. Petulla lacks personal knowledge as to the historical use, if any, of the University's purported trademarks and was not disclosed to provide testimony on that topic. PEx. 102 (Doc. 117-52) (Interrogatory No. 1); VBEx. 105 (Rule 26(a)(1) disclosures); Petulla Decl. (Doc. 123-1) ¶ 3; Fed. R. Evid. 602.

To the extent this Statement was more specifically set forth in Statement Nos. 8, 14, 24, 30, 38, and 42 with supporting evidence beyond the declaration testimony of Ms. Petulla, Vintage Brand hereby incorporates its Responses to same by reference.

52.     Penn State uses the University Marks on a range of goods and services, ranging from educational and alumni services to apparel and accessories, among many other items. *See, e.g. Exs. 4, 6, 9, 11, 17 (registration certificates for each of the Registered Marks, showing some of the goods and services for which Penn State has obtained federal registrations); Exs. 3, 5, 8, 13, 14, 16 (exhibits showing composite examples of authorized use for each of the University Marks).*

**RESPONSE:** *Disputed in part*. This Statement provides a highly summarized recitation of facts more specifically set forth at Statement Nos. 12, 18, 28, 35, 39, and 46, and Vintage Brand hereby incorporates its Responses to same by reference. *See also* Local Rule 56.1 (directing that a statement of material facts be "short and concise").

53.     Merchandise bearing the University Marks has been sold through Penn State's official athletic department website (gopsusports.com) for more than a decade. *See Penn State Dep. (Ex. 2) at 80:17-81:16 (testimony about gopsusports.com website and its e-commerce subpage, and that Penn State has operated this e-commerce site for more than a decade); Ex. 3 at 3-5, 7-24 (recent screenshots of gopsusports.com pages selling merchandise bearing the PENN STATE Mark); id. at 70-90, 93-102 (screen captures from Wayback Machine showing genuine merchandise being sold through gopsusports.com page going back to 2013); Ex. 5 at 2-3, 11-14 (screenshots of gopsusports.com pages selling merchandise bearing the TPSU Mark); Ex. 14 at 2-4, 7-10, 12-13 (screenshots of gopsusports.com pages selling merchandise bearing the S Lion Logo).*

**RESPONSE:** *Disputed in part*. The evidence does not establish any pre-lawsuit use of any of the University's purported marks. The cited testimony of the University's 30(b)(6) designee merely establishes that the official athletic department website includes an e-commerce website managed by one of the University's licensees, and that the same has been active for "at least 12 years." PEx. 2 (Doc. 123-5) at 80:17–81:16. That testimony does not establish that items bearing all (or even any) of the University's purported marks have been sold on that website, let alone that they have been sold for more than a decade. Indeed, when asked about a Wayback Machine capture appearing to show a t-shirt bearing the S-Lion design,

the University's designee could not answer any questions about that item. VBEx. 108 (Supp. 30(b)(6) Dep.) at 83:13–84:22.

Disputed that pages 2–3 and 11–14 of PEx. 5 (Doc. 123-8) show merchandise bearing the TPSU text to the extent the University contends such text has appeared outside of a composite image. Each of those images show post-lawsuit captures of items bearing the Seal Design, a composite image which incorporates the TPSU text, on merchandise being sold on the specified website.

Undisputed that pages 3–5 and 7–24 of PEx. 3 (Doc. 123-6) are post-lawsuit captures of items bearing the PENN STATE text, often incorporated into a composite image, on merchandise being sold on the specified website.

Disputed that the Wayback Machine captures at pages 70–102 of PEx. 3 (Doc. 123-6) are evidence of anything, because Wayback Machine captures are not admissible. Fed. R. Evid. 901.

Undisputed that pages 2–4, 7–10, and 12–13 of PEx. 14 (Doc. 123-17) are post-lawsuit captures of items bearing the S-Lion Design on merchandise being sold on the specified website.

54.    Merchandise bearing the University Marks has been sold by Penn State's official bookstore online (psu.spirit.bncollege.com). *See Penn State Dep. (Ex. 2) at 81:17-82:5, 85:17-87:6 (testimony about psu.spirit.bncollege.com and products bearing Penn State logos offered for sale through that site). See also, e.g., Ex. 3 at 25, 68 (screenshots of psu.spirit.bncollege.com pages selling merchandise bearing the PENN STATE Mark); Ex. 14 at 3-4, 10, 14, (screenshots of psu.spirit.bncollege.com pages selling merchandise bearing the S Lion Logo); Ex. 5*

*at 34 (screenshots of psu.spirit.bncollege.com pages selling merchandise bearing the TPSU Mark).*

**RESPONSE:** *Disputed in part.* The evidence does not establish any pre-lawsuit use of any of the University's purported marks. The cited testimony of the University's 30(b)(6) designee merely establishes that this website currently exists, is administered by one of the University's licensees, and includes products "decorated with Penn State logos[.]" PEx. 2 (Doc. 123-5) at 81:17–82:5, 85:17–87:6.

Undisputed that pages 25 and 68 of PEx. 3 (Doc. 123-6) are post-lawsuit captures of items bearing the PENN STATE text, as incorporated into composite images, on merchandise being sold on the specified website.

Disputed that pages 3–4 and 10 of PEx. 14 (Doc. 123-17 at 96, 105, and 803) show the S-Lion Design on the specified website. The domain on those webpages is *<shop.gopsusports.com>*. Undisputed that page 14 of PEx. 14 (Doc. 123-17 at 6736) is a post-lawsuit capture of an item bearing the S-Lion Design, as incorporated into composite images, on merchandise being sold on the specified website.

Disputed that page 34 of PEx. 5 (Doc. 123-8) shows merchandise bearing the TPSU text to the extent the University contends such text has appeared outside of a composite image. That image shows a post-lawsuit capture of a hat bearing a composite image, which incorporates the TPSU text, on merchandise being sold on the specified website.

### C. Penn State's Licensing Program

55.     Penn State licenses the University Marks to other entities for use on merchandise such as clothing, hats, drinkware, decals, pennants, magnets, wall art, and other household accessories. *Petulla Decl. (Ex. 1), ¶¶ 13-14. See also Exhibit 2 to Petulla Decl. at 2-3 (showing range of retailers that sell licensed Penn State merchandise); Exhibit 3 to Petulla Decl. (showing breakdown of Penn State's licensed products by product type from 2018 forward).*

**RESPONSE:** *Disputed in part.* Disputed that the merchandise featured the alleged marks as trademarks. CLC is the University's exclusive licensing agent for retail merchandise. 30(b)(6) Dep. (Doc. 116-28) at 54:4–18. The Pozniak Lion Design is not part of the University's licensing program with CLC. 30(b)(6) Dep. (Doc. 116-28) at 101:22–102:6 (claiming that the Pozniak Lion Design is part of the University's licensing program but then admitting it is only used in connection with the Lion Ambassadors, Nittany Lion Wrestling club, and license plate program, as discussed in the Response to Statement No. 30); *see also* VBEx. 8 (Doc. 116-35) (the University's Brand Book makes no mention of the Pozniak Lion Design); VBEx. 51 (Doc. 117-1) (the University's licensing Art Sheets make no reference to the Pozniak Lion Design).

56.     Penn State implemented a formal licensing program in 1983. *See Penn State Dep. (Ex. 2) at 53:24-54:3; Esposito Decl. (Ex. 7), ¶¶ 14-16.* This program was developed because in the early 1980s, Penn State personnel were noticing an uptick in people selling counterfeit apparel. *Esposito Decl. (Ex. 7), ¶ 16; Exhibit 22 [PSU0010582] at 2-3 (memo from University Archives dated August 5, 1982, noting that "[i]n the last few years" there had been increasing use and requests to use Penn State's name and identifying marks and symbols by third parties); Exhibit 23 [PSU0007220] at 2-4 (article dated September 23, 1982 from the Daily Collegian*

*newspaper at Penn State reporting on decision to seek trademark registrations for the University's name and identifying symbols).*

**RESPONSE:** *Disputed in part.* Undisputed that the University implemented a formal licensing program in 1983, making the decision to do so only a few years after the Fifth Circuit's decision in *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir. 1975).

Disputed that the program was developed because in the early 1980s the University noticed an uptick in "counterfeit" apparel. Disputed to the extent the University's use of the word "counterfeit" implies that the University had rights in the alleged marks. Additionally, the sole direct support for this fact is the declaration testimony of Jackie Esposito, but Ms. Esposito "began serving Penn State in the fall of 1986," three years *after* the program was implemented. Esposito Decl. (Doc. 123-10) ¶ 5. As such, the declaration testimony is not admissible because she lacks the requisite personal knowledge. Fed. R. Evid. 602. Indeed, Ms. Esposito's testimony is contrary to the record, including the documents cited by the University in support, which include an internal memorandum that acknowledges the University freely granted naked licensees to numerous third parties:

> [T]he University has already established, in an informal way, a licensing program. There has been, however, no consistency of response or subsequent control over the permitted use, factors which are essential if unauthorized use is to be prevented.

PEx. 22 (Doc. 123-25) at 3. The memorandum goes on to suggest a licensing program for two reasons (a. and b., below), neither of which refers to an uptick in "counterfeit" apparel:

> a. Enable the University to stop the unauthorized use, by any person or company, of the University's marks, names or symbols:
>
> (1) Stop such use on goods or services for which the use is not authorized by a license agreement.
>
> (2) Stop use on goods or services with which the University does not wish to be associated under any conditions.
>
> (a) Goods that are inherently hazardous and represent too high a risk for licensing, such as firearms and certain kinds of athletic equipment.
>
> (b) Goods that are inappropriate, such as alcoholic beverages, tobacco products, or pornographic literature.
>
> (c) Services that are inappropriate, such as academic coaching or unauthorized assistance in the writing of papers or theses.
>
> b. Enable the University to derive revenue from fees for the use under license of the marks, names, and symbols on goods and services that meet the University's standards of appropriateness and quality.

PEx. 22 (Doc. 123-25) at 4–5. The cited 1983 Daily Collegian article quotes George Lovette, then-associate senior vice president for finance and operations, who expressed the concern that "[i]f people use the name of the University for a while, they can eventually get the rights to it," and Richard Grubb, then-senior vice president for administration, cited concerns that "the University's name could be used on such items as firearms" or the like. PEx. 23 (Doc. 123-26). The article also notes Grubb expressing "a dramatic increase in the number of requests to use the Penn State name and symbols for commercial goods and services," which Lovette attributed to mistaken legal belief: "We were getting so many requests for licenses

from people because the other universities require them and they figured we did too…." PEx. 23 (Doc. 123-26). Presciently, the then-owner of McLanahan's, a current licensee of the University (Petulla Decl. (Doc. 123-1) ¶ 17), expressed concerns:

> Roy Agostinelli, owner of McLanahan Drug Store, said if royalties exist, prices will have to go up because the manufacturers just pass on the increased cost to the retailer.
> "The NFL has that kind of thing (royalties), and it puts a higher price tag on everything," he said. "We're against it from that standpoint; it's going to drive prices out of sight."

PEx. 23 (Doc. 123-26).

Indeed, one year before the internal memorandum suggesting a license program, a different Daily Collegian article was published, in which the University's then-intellectual property counsel explained the University's intent to *not* seek a license program was that doing so would raise prices for consumers:

> Since the only people who buy the products are students and alumni, we get more goodwill from not charging than we would money by charging for it.

VBEx. 59 (Doc. 117-9). At that time, only one year before the internal memorandum, the University did not plan on implementing a licensing program despite knowing of unauthorized uses of its name and designs. VBEx. 59 (Doc. 117-9) ("Although Penn State allows just about everyone to use its service marks without paying for them, the University would fight any attempt to register its service marks by anyone else ….").

57.     Today Penn State has a Licensing Committee that has responsibility for overseeing and enforcing the University's trademarks and licensing. *See Petulla Decl. (Ex. 1), ¶ 4.* Even prior to the creation of a formal Licensing Committee at Penn State, the University received dozens of requests and notices from third parties seeking to use Penn State's name and other trademarks in connection with clothing, alcoholic beverages, foodstuffs, and more. *Ex. 22 [PSU0010582] at 2.*

**RESPONSE:** *Disputed in part.* Disputed to the extent that the reference to "Penn State's name and other trademarks" implies that particular purported marks already functioned as trademarks for the University in connection with goods. Otherwise undisputed. As set forth in Vintage Brand's response to Statement No. 56, *supra*, the reason the University received pre-licensing program requests to use its name and other purported marks was the result of mistaken legal beliefs caused by other institutions' licensing programs. PEx. 23 (Doc. 123-26) ("We were getting so many requests for licenses from people because the other universities require them and they figured we did too ….").

58.     Documents pulled from the University Archives show that the University's reasons for implementing the formal licensing program included preventing others from using Penn State's trademarks "on goods and services of inferior quality or of a nature which the University would find distasteful," such as inherently hazardous products like firearms, inappropriate items like alcohol and pornography, and inappropriate services like academic coaching or giving unpermitted academic help. *Ex. 22 [PSU0010582] at 4-5.* The University also recognized that licensing the University's trademarks on acceptable goods and services would allow Penn State to derive revenue. *Id. at 5.*

**RESPONSE:** *Disputed in part.* Disputed to the extent that the reference to "Penn State's trademarks" and "the University's trademarks" implies that particular

purported marks already functioned as trademarks for the University in connection with goods. Otherwise undisputed.

59. The Licensing Committee has implemented and followed procedures to ensure that Penn State's trademarks were licensed only for high-quality products that would not tarnish the University's reputation. *Esposito Decl. (Ex. 7), ¶ 17.* Potential licensees were required to submit examples of their products for the University to review. *Id., ¶ 17.*

**RESPONSE:** *Disputed in part.* Undisputed that the University at some point created procedures for the purpose of limiting use of the University's claimed marks. Disputed that the Licensing Committee attempted to implement those procedures in earnest and disputed that such procedures were actually followed. By 1988, no more than six years after the University adopted a trademark licensing program, it had granted licenses to more than *785* entities for retail items. VBEx. 64 (Doc. 117-14). And as the University recognized in 2011:



REDACTED

VBEx. 66 (Doc 117-16) at 8440. That same year the University entered into an Agency Agreement with CLC REDACTED

**REDACTED**." VBEx. 106 § 3(b). Additionally, the CLC Standard Retail

License defines **REDACTED**

**REDACTED**

**REDACTED**. VBEx. 83 (Doc. 117-33) at 7478, 7510. Moreover, the University has

elsewhere acknowledged that its distribution channels range from **REDACTED**

**REDACTED**; this vast range reflects

indiscriminate licensing, inconsistent with the assertion that the University licenses

only high-quality products. VBEx. 66 (Doc. 117-16) at 8449.

60.    The University Marks were among the trademarks that Penn State was
using and/or licensing dating back to when the Committee was first formed. *See
Esposito Decl. (Ex. 7), ¶¶ 15, 17 (declaration from Jackie Esposito that she was a
member of the University Licensing Committee beginning in 1986 and that the
University Marks are among the marks that Penn State was using and protecting);
Ex. 22 [PSU0010582] at 3 (August 1982 memorandum retrieved from Penn State's
University Archives recommending that the University implement a formal licensing
program to protect marks specifically including THE PENNSYLVANIA STATE
UNIVERSITY, PENN STATE, the University Seal, and designs featuring the Lion,
all in connection with various goods and services).*

**RESPONSE:** *Disputed in part.* Disputed that the alleged marks functioned as

trademarks as applied to merchandise. Undisputed that the PENN STATE text, the

TPSU text, the Seal Design, and the Nittany Lion Rock Design were part of the

University's licensing program for several decades. Disputed as to the Pozniak Lion

Design, the S-Lion Design, and the Nittany Lion Frankfurter Design:

- *Pozniak Lion Design*: Ms. Esposito's testimony, the only direct "evidence" to

  support this Statement, is in conflict with the University's own Statement No.

32, where it claims to have acquired rights in the Pozniak Lion Design in 2014 (not pre-1983) via a transfer by Ray Pozniak's heirs. *See also* Response to Statement No. 30, *supra*. Indeed, this Pozniak Lion Design has never appeared in any of the University's licensing Art Sheets or Brand Book (VBEx. 8 (Doc. 116-35), VBEx. 51 (Doc. 117-1)), including the Art Sheet appended to the 2011 Agency Agreement with CLC. VBEx. 106. Nor is any such licensing referenced in the detailed history of the design that Mr. Pozniak's heirs presented to the University in 2013. VBEx. 6 (Doc. 116-33) at 8412–14. The University has adduced no evidence to support licensing of this design in the 1980s other than Ms. Esposito's conclusory testimony concerning a committee she sat on 40 years ago. *Sears*, 2021 WL 254067, at *3 n.2.

- *Nittany Lion Frankfurter Design*. This design has never appeared in any of the University's licensing Art Sheets or Brand Book (VBEx. 8 (Doc. 116-35), Ex. 51 (Doc. 117-1)), including the Art Sheet appended to the 2011 Agency Agreement with CLC. VBEx. 106. Further, the UPSTO issued Registration No. 1,397,810 in 1986, yet the only goods the University listed in the description for that registration is "frankfurters." VBEx. 40 (Doc. 116-67). The University has adduced no evidence to support licensing of this design in the 1980s other than Ms. Esposito's conclusory testimony concerning a committee she sat on 40 years ago. *Sears*, 2021 WL 254067, at *3 n.2.

- *S-Lion Design*. This design has never appeared in the University's Brand Book (VBEx. 8 (Doc. 116-35)), and it was only included in a single licensing Art Sheet dated January 24, 2011. Ex. VB51 (Doc. 117-1) at 8656. The design was not, however, appended to the May 2011 Agency Agreement with CLC, VBEx. 106, nor was it included in the May 2011 Art Sheet or other Art Sheets. VBEx. 51 (Doc. 117-1) at 7941, 7969, 8382, 7591, 7589, 7592. The University's 30(b)(6) designee is unaware of any other use or sales of items bearing that design. 30(b)(6) Dep. (Doc. 116-28) at 67:25–68:25.

61.     Currently, Penn State's Office of Licensing Programs manages Penn State's licensing program. *See Penn State Dep. (Ex. 2) at 14:15-20; Petulla Decl. (Ex. 1), ¶ 4.*

**RESPONSE:** *Undisputed.*

62.     Penn State continues employing quality control measures to ensure that its trademarks are licensed to entities that satisfy the University's standards with respect to product quality and business practices. For example, Penn State employs quality control measures to ensure that its licensees follow high standards for sourcing, human working conditions, and regulatory compliance. *See Petulla Decl. (Ex. 1), ¶ 13.*

**RESPONSE:** *Disputed in part*. Undisputed that the University has created procedures for the purpose of limiting use of its claimed trademarks. Disputed that the University attempted to implement those procedures in earnest and disputed that such procedures were actually followed. *See* Response to Statement No. 59, *supra*.

63.     Penn State's Office of Licensing Programs works with its exclusive licensing agent, the Collegiate Licensing Company ("CLC"), to operate the

University's merchandise licensing program. *Penn State Dep. (Ex. 2) at 54:15-18, 60:12-14 (CLC is Penn State's current licensing agent); Petulla Decl. (Ex. 1), ¶ 12.*

**RESPONSE:** *Undisputed.*

64.    CLC facilitates agreements between the University and potential licensees, helps review and evaluate prospective licensees' merchandise to determine quality, and helps enforce Penn State's rights against counterfeiters. *See Deposition Transcript of Nicole Armentrout (12-14-2022) (herein "Armentrout Dep.") (Exhibit 24) at 16:22-17:16, 20:2-7, 21:9-12 (Armentrout, who is a senior director of marketing at CLC, giving testimony about CLC's role as a licensing agency).*

**RESPONSE:** *Undisputed.*

65.    Revenue that Penn State receives through its licensing program has always been and continues to be used to support a variety of endeavors including student scholarships. *See Esposito Decl. (Ex. 7), ¶¶ 19-20; Petulla Decl. (Ex. 1), ¶¶ 15, 21.*

**RESPONSE:** *Undisputed.*

66.    Penn State has, for years, put out standards for how the University Marks may be used by licensees, setting rules for the visual appearance of these Marks as well as how the Marks may or may not be used. *See Penn State Dep. (Ex. 2) at 36:12-37:1, 37:5-9, 51:16-53:23 (testimony regarding development and importance of brand standards and art sheets); Ex. 25 [PSU0005718] at 39-78 (Penn State brand book retrieved on August 3, 2022, with cited pages specifically setting out standards for use of Penn State trademarks, including color schemes, spacing, trademark identifiers, and other elements to create and maintain consistency); Ex. 21 at 2-6 (collection of art sheets put out by Penn State between 2011-2022); Ex. 26 [PSU0008656] at 2 (art sheet put out by Penn State specifically for trademarks used in the College Vault program).*

**RESPONSE:** *Undisputed.*

67.    Penn State (both itself and through CLC) actively polices for infringing uses of the University Marks, taking steps to stop unauthorized uses by for instance issuing cease and desist letters, initiating action against pending trademark applications at the USPTO, bringing federal lawsuits, and pursuing arbitration

actions to have infringing domain names transferred to the University. *See Petulla Case Decl. (Ex. 1), ¶ 16; Exhibit 27 [PSU0008847-8856, PSU0010197] at 2-12 (representative examples of the University's past cease and desist letters); Ex. 28 [PSU0007274] at 2-21 (same); Ex. 29 [PSU0007297] at 2-20 (same); see also The Pennsylvania State University v. Parshall, Civil Dkt. 4:19-cv-01299-JPW (M.D. Pa.), ECF 133 (Report and Recommendation Granting Penn State's Motion for Summary Judgment entered 02/17/2022) and ECF 134 (Order adopting ECF 133 Report and Recommendation, entered 03/31/2022).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the Statement implies

that all of the offered examples of policing "for infringing uses" actually involved

infringing uses. Otherwise undisputed.

68.     Genuine Penn State merchandise is sold by Penn State and its licensees in brick and mortar stores as well as online. *See, e.g., Ex. 5 at 27-29 (pictures of genuine Penn State merchandise bearing the TPSU Logo taken inside Lion's Pride store in State College, PA); Ex. 8 at 40, 46 (specimen of use showing genuine Penn State merchandise bearing the Lion Shrine Logo where pictures show the products for sale on store shelf); Ex. 3 at 169-75 (advertisements from 1985 for genuine Penn State merchandise available at Penn State's book store and at Lions Pride); Armentrout Dep. (Ex. 24) at 36:14-39:14 (testimony specifically about merchandise offered through the College Vault segment of Penn State's licensing program through CLC, with Ms. Armentrout explaining that the genuine Penn State merchandise offered through the College Vault licensing is sold in Penn State's brick and mortar bookstore, and that certain retailers such as Dick's Sporting Goods are recommended for the College Vault program specifically because of attributes related to their physical store layouts); Petulla Decl. (Ex. 1), ¶ 19 & Ex. 2 to Petulla Decl. at 2-3 (stating that genuine Penn State merchandise is sold in many types of stores and exhibit providing information about categories of retailers that sell authorized Penn State merchandise, showing retailers across many different channels, including grocery stores, specialty mass stores, department stores, boutiques, and amusement parks).*

**RESPONSE:** *Undisputed.*

## II. Defendants Are Responsible for Sales of the VB Penn State Merchandise.[5]

### A. Vintage Brand LLC Owns the Vintage Brand Website.

69.     In September 2017, Chad Hartvigson, Erik Hartvigson, and Michelle Young co-founded the entity Vintage Brand as an e-commerce company operating at the website vintagebrand.com ("Vintage Brand Website") that sold Penn State-related merchandise ("VB Penn State Merchandise"). *See Second Amended Compl. (Dkt. 67), ¶ 65 & Answer (Dkt. 72), ¶ 65; Deposition Transcript of Chad A. Hartvigson (07-21-2022) (herein "Vintage Brand Dep.") (Ex. 30) at 34:21-35:8 (Vintage Brand LLC was formed in September 2017 by Chad Hartvigson, Erik Hartvigson, and Michelle Young). See Exhibit 31 [PSU0007325], Exhibit 32 [VINTAGE_PENN_ST_000063], and Exhibit 33 [VINTAGE_PENN_ST_000296] (2021 and 2022 screenshots of the Vintage Brand Website offering various Penn State-related merchandise for sale). See Deposition Transcript of Michelle Young (9-13-2022) (herein "Young Dep.") (Ex. 34) at 117:10-19 (testimony from Michelle Young confirming that the screenshots shown in Exhibit 31 are images of the Vintage Brand Website); Vintage Brand Dep. (Ex. 30) at 133:20-134:7, 155:16-159:9 (testimony from Chad Hartvigson confirming that the website screenshots shown in Exhibits 32 and 33 are images of the Vintage Brand Website).*

**RESPONSE:** *Undisputed.*

70.     Vintage Brand sells all of its merchandise across the United States, through the vintagebrand.com domain. *See Vintage Brand Dep. (Ex. 30) at 81:4-13, 231:7-232:8 (all products are sold through vintagebrand.com, Vintage Brand sells products in the United States and to Canada, and there are no states to which Vintage Brand would not sell merchandise).*

**RESPONSE:** *Undisputed.*

71.     Through this website, Defendants offer, advertise, and sell merchandise such as t-shirts, sweatshirts, hats, pennants, drinkware, koozies, mugs, tumblers, water bottles, coasters, posters, magnets, canvases, wall art, socks, puzzles, and cutting boards. *See Second Amended Compl. (Dkt. 67), ¶ 73 & Answer*

---

[5] The University does not define the term "VB Penn State Merchandise" but uses it throughout its Statement of Facts. For purposes of this Counterstatement, Vintage Brand in good faith interprets that term to mean the digital mockups of goods ornamentally bearing historic composite images derived from memorabilia.

*(Dkt. 72), ¶ 73. See also generally Exhibit 31 [PSU0007325], Exhibit 32 [VINTAGE_PENN_ST_000063], and Exhibit 33 [VINTAGE_PENN_ST_000296] (2021 and 2022 screenshots of the VB Penn State Store offering these categories of merchandise for sale with the University Marks).*

**RESPONSE:** *Disputed in part.* Disputed to the extent this Statement refers to all Defendants rather than only Vintage Brand, which is a valid and subsisting limited liability company that is separate and distinct from Sportswear. Hartvigson Decl. (Doc. 116-2) ¶¶ 2–8. The University's citation to Paragraph 73 of its Second Amended Complaint does not support that conflation, because in response Vintage Brand answered:

> 73. Admitted in part, denied in part. Denied to the extent Paragraph 73 of the Second Amended Complaint uses the term "Defendants." Admitted with respect to the allegations directed at Vintage Brand.

Doc. 72 ¶ 73.

72. The Vintage Brand Website displays a banner across each page, which lists a row of categories for specific sports and leagues, one of which is "College", as shown here:



*See, e.g., Ex. 32 [VINTAGE_PENN_ST_000063] at 8 (example of the banner that has appeared at the top of the pages on the Vintage Brand website).* Consumers who are on the Vintage Brand Website can navigate these drop-down menus to see the names of different universities or can use the search box to query specific college

names. An example of the drop-down menu that appears under the "College" link, captured from 2018, is shown here:



*See Ex. 57 at 2 (screenshot obtained through Wayback Machine showing the view when clicking the drop-down "College" menu on the Vintage Brand Website, captured from August 22, 2018); Second Amended Compl. (Dkt. 67), ¶ 74 & Answer (Dkt. 72), ¶ 74 (agreeing that using the drop-down menu or the search bar are among the ways to navigate the Vintage Brand Website); Maffey Dep. (Ex. 37) at 40:13-42:11 (testimony from a Vintage Brand customer identified through Vintage Brand's discovery recounting that she recalled navigating the Vintage Brand website by finding a list of colleges on the site and then clicking on "Penn State").*

**RESPONSE:** *Disputed in part*. Disputed to the extent that Vintage Brand website's "College" tab creates a drop down menu with "the names of different universities." *First*, the second image set forth in this statement (and at PEx. 57, (Doc. 123-60)) are Wayback machine captures and, therefore, not admissible. Fed.

R. Evid. 901. *Second*, this assertion is not supported by the cited portion of the University's Second Amended Complaint, which provides:

> 74. Customers Visiting Defendants' website can navigate to a series of drop-down menus that link to the names of different universities, including "*Penn State Nittany Lions*," or can search for "Penn State using the website's search bar.

Doc. 67 ¶ 74 (Emphasis added); *see also* Doc. 72 ¶ 74. *Third*, in Meghan Maffey's deposition testimony she colloquially referred to "Penn State" and "Penn State University" to refer to the University-related text she purportedly clicked in the College dropdown menu. Maffey Dep. (Doc. 116-29 (also Doc. 123-40)) at 40:13–42:11. And as set forth in the Responses to Statement Nos. 112 and 137, *infra*, Ms. Maffey's deposition testimony appears to be mistaken. *Finally*, the College dropdown menu does not display the *names* of colleges but, rather, the words preceding "VINTAGE DESIGNS" in the title of each team page, for example "PENN STATE NITTANY LIONS VINTAGE DESIGNS." Supp. Hartvigson Decl. ¶¶ 2–3. For example, below is a screenshot of the current College dropdown menu.



Supp. Hartvigson Decl. ¶ 2. As such, the text appearing on the College dropdown menu would have been "Penn State Nittany Lions," as the University alleged in its pleading. Supp. Hartvigson Decl. ¶ 3; Doc. 67 ¶ 74; *see also* PEx. 32 (Doc. 123-35) at 3 (showing "College" and then "Penn State Nittany Lions" under the "Your Selection" portion of the University-related landing page).

73.    The Vintage Brand Website shows images of merchandise featuring various logos and images, and customers can purchase those products through the Vintage Brand website. *See Vintage Brand Dep. (Ex. 30) at 81:14-20 (description of shopping process); id. at 134:3-7 (testimony from Chad Hartvigson that Vintage Brand offered the products shown on the VB Penn State Store for sale to the public).* Those orders are then manufactured and distributed by Sportswear. *Id. at 81:21-82:5 (explanation that once an order is placed through vintagebrand.com, the information is sent to Sportswear, which has a separate manufacturing process and dedicated team for Vintage Brand items).*

**RESPONSE:** *Disputed in part*. Disputed that the Vintage Brand website shows images of actual "merchandise." The images appearing on Vintage Brand's

website are digital mockups of blank goods emblazoned with the public domain historic imagery from Vintage Brand's collection. Hartvigson Decl. (Doc. 116-2) ¶¶ 14–15, 22, 25. Further disputed to the extent the word "logos" wrongly implies that Vintage Brand is using the designs as trademarks. Otherwise undisputed.

74.     Vintage Brand purchases genuine Penn State sports collectibles from shows and collections, scans those physical items to create digital images, and then uses those images (with enhancements for quality and printing considerations) on the VB Penn State Merchandise. *See Vintage Brand Dep. (Ex. 30) at 98:17-25, 99:2-3, 115:12-25.*

**RESPONSE:** *Undisputed.*

75.     Vintage Brand has sold goods with the images scanned from the genuine Penn State sports collectibles through the Vintage Brand Website and derived profits from those sales. *See Ex. 46 at 3-20 (Vintage Brand's supplemental response to Interrogatory 7 listing information on the sales that Defendants have made of VB Penn State Merchandise, including quantities of merchandise sold, and information on dates of use and revenues); Vintage Brand Dep. (Ex. 30) at 134:3-7 (testimony from Chad Hartvigson that Vintage Brand offered the products shown on the VB Penn State Store for sale to the public).*

**RESPONSE:** *Undisputed.*

76.     The scanned image files are edited in order to clean up the image if necessary, reduce blurriness, and ensure that the image will be capable of printing in a high-quality format. *See Young Dep. (Ex. 34) at 43:13-44:17 ("[s]ometimes these are old products or assets ... they might have ketchup on them or something, so we remove that"); Vintage Brand Dep. (Ex. 30) at 115:10-25 (Chad Hartvigson testimony that digital images are "enhanced" to "make sure that it can be reproduced in a printing format that produces a high quality image and product").*

**RESPONSE:** *Undisputed.*

77.     Defendants store the collection of genuine Penn State memorabilia purchased for the Vintage Brand business in Chad Hartvigson's basement. *See Vintage Brand Dep. (Ex. 30) at 114:6-16.*

**RESPONSE:** *Disputed in part.* Disputed to the extent this Statement refers to all Defendants rather than only Vintage Brand, which is a valid and subsisting limited liability company that is separate and distinct from Sportswear. Hartvigson Decl. (Doc. 116-2) ¶¶ 2–8. Otherwise undisputed.

78.     In her deposition, Defendant Michelle Young was shown a genuine Penn State pennant that Vintage Brand purchased second-hand and had scanned, along with a picture of the product that Vintage Brand offered for sale on its website corresponding to that pennant. *See Young Dep. (Ex. 34) at 139:10-143:13 (testimony from Michelle Young comparing these images). The images that Ms. Young compared are set out here:*

| Memorabilia: | Vintage Brand Product: |
|:---:|:---:|
|  | |

*See Ex. 38 [VB_MEM_PSU_001] at 3 (image of pennant produced for inspection by Vintage Brand, which was introduced as Exhibit 16 at deposition of Michelle Young); Ex. 45 at 31 (Deposition Exhibit 6, with cited page containing image that Ms. Young compared to the memorabilia).*

**RESPONSE:** *Undisputed.*

79.     When asked to identify what changes Vintage Brand had made to the scanned image Ms. Young noted that the phrase "Nittany Lions" had been shortened

to just "Nittany"; the font of the word "Nittany" had been modified; and the year "1855" had been removed from the portion of the image depicting the University Seal. *See Young Dep. (Ex. 34) at 139:10-143:13 (testimony from Michelle Young comparing these images).*

**RESPONSE:** *Undisputed.* This Statement is not material to the outcome of the University's Motion for Partial Summary Judgment. Fed. R. Civ. P. 56(c); Fed. R. Evid. 401.

80.    When asked to visually compare the portion of images picturing the lion and the rock, Ms. Young identified only that the rock on the Vintage website "has less extra little creases than this pennant does". *See Young Dep. (Ex. 34) at 140:13-142:8 (testimony from Michelle Young comparing these images).*

**RESPONSE:** *Undisputed.*

## B. Chad Hartvigson, Erik Hartvigson, and Michelle Young Own and Operate Vintage Brand.

81.    Chad Hartvigson, Erik Hartvigson, and Michelle Young make all decisions regarding Vintage Brand's operations, including selecting all images used on the merchandise to be sold through the Vintage Brand website. *See Vintage Brand Dep. (Ex. 30) at (testimony discussing that Vintage Brand has zero employees and that all work is performed by its three co-founders.); Vintage Brand Dep. (Ex. 30) at 37:14-19, 46:11-18 (testimony discussing that the three co-founders are responsible for maintaining the Vintage Brand website and making all updates); id. at 72:12-25 (Chad Hartvigson, Erik Hartvigson, and Michelle Young have managerial control over Vintage Brand and each has the authority to make final decisions for the company).*

**RESPONSE:** *Undisputed.*

82.    Chad Hartvigson is a founder and co-owner of Vintage Brand. Vintage Brand Dep. (Ex. 30) at 34:21-35:8. He selects the physical memorabilia that Vintage Brand uses in its business. *See Second Amended Compl. (Dkt. 67), ¶ 68 & Answer (Dkt. 72), ¶ 68.*

**RESPONSE:** *Undisputed.*

83.    Erik Hartvigson is a founder, co-owner, and President of Vintage Brand. *See Second Amended Compl. (Dkt. 67), ¶ 69 & Answer (Dkt. 72), ¶ 69; Vintage Brand Dep. (Ex. 30) at 36:2-11 (testimony that Erik Hartvigson is listed as the president of Vintage Brand and that he acts as president of the company).* Erik Hartvigson has managerial control of Vintage Brand and has the ability to make final decisions for the company. *Id. at 72:12-17.* Erik Hartvigson's role at Vintage Brand has entailed executing contracts in his capacity as President, scanning images from Vintage Brand's collection of memorabilia to be used on merchandise, e-mail marketing, overseeing Google advertising programs, and occasionally assisting with customer service. *Second Amended Compl. (Dkt. 67), ¶ 69 & Answer (Dkt. 72), ¶ 69.* Erik Hartvigson oversees the Dynamic Search Advertising that Vintage Brand conducts through Google to promote its products through sponsored ads for Vintage Brand appearing in search results, linking to the Vintage Brand Website. *See E. Hartvigson Dep. (Ex. 50) at 24:2-27:22, 34:17-37:4, 106:15-109:17 (description of Dynamic Search Advertising Erik Hartvigson performs for Vintage Brand, including that he supplies copy for the consumer-facing advertising).*

   **RESPONSE:** *Undisputed.*

84.    Michelle Young is a founder and co-owner of Vintage Brand. *See Vintage Brand Dep. (Ex. 30) at 34:21-35:8 (Vintage Brand LLC was formed in September 2017 by Chad Hartvigson, Erik Hartvigson, and Michelle Young).* She has final authority, along with Chad and Erik Hartvigson, over Vintage Brand's decisions. *Id. at 72:15-25.* Her work at Vintage Brand involves the company's visual design and marketing, including work on website and marketing emails, and processing the images that Vintage Brand applies to its merchandise. *Second Amended Compl. (Dkt. 67), ¶ 70 & Answer (Dkt. 72), ¶ 70.*

   **RESPONSE:** *Undisputed.*

85.    Michelle Young has been in charge of "everything product related, creative, graphics, marketing, and was really the liaison with our technology team to build the website" for Vintage Brand. *See Vintage Brand Dep. (Ex. 30) at 36:12-17.*

   **RESPONSE:** *Undisputed.*

86.     Chad Hartvigson, Erik Hartvigson, and Michelle Young have each been working for Sportswear for at least ten years. *Sportswear Dep. (Vol. 2) (Ex. 36) at 45:23-46:4; Vintage Brand Dep. (Ex. 30) at 73:11-16 (Erik Hartvigson works in the marketing department at Sportswear); id at 32:11-18, 37:2-6 (Michelle Young is the creative director at Sportswear and has known Chad Hartvigson for around twelve years); id. at 26:22-27:13 (Chad Hartvigson founded Sportswear in 2005 along with his father and brother, and is currently CEO); M. Young Dep. (Ex. 34) at 15:10-21 (Michelle Young has worked at Sportswear since 2010); E. Hartvigson Dep. (Ex. 50) at 12:10-14 (Erik Hartvigson has been working at Sportswear since 2012).*

**RESPONSE:** *Undisputed.* This Statement is not material to the outcome of

the University's Motion for Partial Summary Judgment. Fed. R. Civ. P. 56(c); Fed.

R. Evid. 401.

## C. Sportswear, Inc. Manufactures and Distributes the VB Penn State Merchandise.

87.     Sportswear (not Vintage Brand) manufactures and distributes all of the goods sold through Vintage Brand's website. *See Second Amended Compl. (Dkt. 67), ¶ 66 & Answer (Dkt. 72), ¶ 66 (admitting that Sportswear is responsible for manufacturing and shipping of clothes sold by Vintage Brand); Deposition Transcript of Chad A. Hartvigson (9-13-2022) (herein "Sportswear Dep. (Vol. 1)") (Exhibit 35) at 17:5-15; Vintage Brand Dep. (Ex. 30) at 81:21-82:5 (explanation that once an order is placed through vintagebrand.com, the information is sent to Sportswear, which has a separate manufacturing process and dedicated team for Vintage Brand items).*

**RESPONSE:** *Undisputed.* Sportswear and Vintage Brand are separate and

distinct companies. Hartvigson Decl. (Doc. 116-2) ¶¶ 3–7. The manufacturing and

distribution referenced in this Statement is done pursuant to the terms of the

Fulfillment Agreement. Hartvigson Decl. (Doc. 116-2) ¶ 8; *see also* VBEx. C (Doc.

116-5) (Fulfillment Agreement).

88.     Sportswear provides all customer service for Vintage Brand, which itself has no customer service personnel. *See Deposition Transcript of Chad A. Hartvigson (11-02-2022) (herein "Sportswear Dep. (Vol. 2)") (Ex. 36) at 33:3-17 (testimony that Vintage Brand has no customer service personnel, and that Sportswear employees handle customer service inquiries for Vintage Brand).*

**RESPONSE:** *Disputed in part*. Undisputed that Vintage Brand has no dedicated customer service personnel, but disputed that Sportswear provides all customer service for Vintage Brand. The cited testimony of Sportswear's 30(b)(6) designee only establishes that one Sportswear customer service representative handles Vintage Brand-related inquiries, and that Vintage Brand does not have any dedicated customer service personnel. PEx. 36 (Doc. 123-39) at 33:3–17. But as the University asserted at Statement No. 83, Erik Hartvigson assists with customer service for Vintage Brand. *See also* Supp. Hartvigson Decl. ¶ 4.

89.     Sportswear is also an e-commerce company that sells apparel online with designs related to K-12 schools around the country through its website at <prepsportswear.com>. *See Vintage Brand Dep. (Ex. 30) at 18:17-25, 19:5-12, 25:17-26:2.*

**RESPONSE:** *Undisputed*. This Statement is not material to the outcome of the University's Motion for Partial Summary Judgment. Fed. R. Civ. P. 56(c); Fed. R. Evid. 401.

## III. Defendants' Unauthorized Use of Penn State's Trademarks

90.     Beginning in 2018, the vintagebrand.com website advertised and sold merchandise that bore the University Marks and other references to Penn State. *See Vintage Brand Dep. (Ex. 30) at 161:4-11.* Vintage Brand has offered this merchandise across the United States. *See id. at 231:7-232:8 (testimony that Vintage*

*Brand sells products in the United States and to Canada, and that there are no states to which Vintage Brand would not sell merchandise).*

**RESPONSE:** *Disputed in part.* Disputed to the extent the Statement implies that any Vintage Brand merchandise used any purported University mark as a trademark. Vintage Brand never sold merchandise bearing the University's purported trademarks alone, with the exception of a small number of products bearing the S-Lion Design. Hartvigson Decl. (Doc. 116-2) ¶¶ 35–37. All of the other merchandise Vintage Brand sold bore composite historic University-related images (right), which incorporate text or design that the University claims are trademarks (left). Vintage Brand used all of the at-issue images as ornamental features of its merchandise.

| Asserted Marks | Vintage Brand's Historic Images |
|---|---|
| PENN STATE<br><br>(*supra*, Paragraphs 8–13) | VBExs. H, I and X (Docs. 116-10, -11 and -26) |
| THE PENNSYLVANIA STATE UNIVERSITY<br><br>(*supra*, Paragraphs 14–19) | VBEx. G (Doc. 116-9) |
|  |  |



| (*supra*, Paragraphs 20–29) | VBEx. X (Doc. 116-26) |
| (*supra*, Paragraphs 20–29) | VBEx. G (Doc. 116-9) |
| (*supra*, Paragraphs 30–37) | VBExs. W (Doc. 116-25) |
| (*supra*, Paragraphs 42–50) | VBExs. G and H (Doc. 116-9 and -10) |

### A. Vintage Brand's Collection of Penn State-Related Memorabilia and their Related Digital Images

91.    Vintage Brand produced for inspection all of the Penn State-related "memorabilia" in their collection, which are genuine second-hand or used Penn State merchandise that Defendants physically scan to derive the logos they then use on the VB Penn State Merchandise. *See Ex. 38 [VB_MEM_PSU_001] at 2-87 (pictures of the complete set of memorabilia produced for inspection here, bearing Bates label*

*VB_MEM_PSU_001-075)*. Examples of the Penn State-related memorabilia in Vintage Brand's collection include:

 

  

   

 

*See Ex. 38 [VB_MEM_PSU_001] at 4, 26, 30-32, 69, 74-80 (pictures of some items of the Penn State-related memorabilia produced for inspection by Vintage Brand).*

**RESPONSE:** *Disputed in part*. Disputed to the extent this Statement refers to all Defendants rather than only Vintage Brand, which is a valid and subsisting limited liability company that is separate and distinct from Sportswear. Hartvigson Decl. (Doc. 116-2) ¶¶ 2–8. Further disputed to the extent the University intends the word "logos" to mean that Vintage Brand is using the designs as trademarks. Otherwise undisputed.

92. After scanning the second-hand or used Penn State memorabilia Defendants collect, Vintage Brand uses the following images derived from scanning that memorabilia, on the VB Penn State Merchandise offered and sold on the VB Penn State Store:



*See Exhibit 39 [VINTAGE_PENN_ST_001428] at 9, 10, 16-20, 22-25 (examples of images produced by Vintage Brand containing designs applied to their merchandise).*

**RESPONSE:** *Undisputed*.

93.     Vintage Brand did not produce memorabilia that includes images corresponding to some of the digital images they have used on their website related to Penn State. For example, the memorabilia Vintage Brand produced for inspection did not include the following images that appear on the VB Penn State Merchandise: *Compare Ex. 38 [VB_MEM_PSU_001] at 2-87 (full set of memorabilia produced*



*for inspection by Vintage Brand), with Ex. 39 [VINTAGE_PENN_ST_001428] at 18-19 (images from Vintage Brand's digital files related to Penn State). See also, e.g., Ex. 32 at 3 (screenshot of the VB Penn State Store showing Vintage Brand offering merchandise using the two images shown in this paragraph).*

**RESPONSE:** *Disputed in part.* Undisputed that Vintage Brand did not produce memorabilia that includes the historic art corresponding to the two images set forth above.

Disputed to the extent this Statement implies such images were not scanned from historic memorabilia. The top-right image was sourced from a historic ticket for the 1929 *Penn State v. University of Pennsylvania*, a scan of which was produced in discovery:



VBEx. 107. The underlying tangible ticket was not produced in discovery because Vintage Brand was unable to locate it. Supp. Hartvigson Decl. ¶ 5. Similarly, the underlying memorabilia related to the S-Lion Design was not produced in discovery because Vintage Brand was unable to locate it. *Id.* However, both designs were scanned by Vintage Brand from historic memorabilia. *Id.*

94.     The Vintage Brand website (including on the VB Penn State Store) shows the digital images it copies from Penn State memorabilia on products and offers those products for sale. *See Vintage Brand Dep. (Ex. 30) at 115:10-116:4. See also, e.g., Exhibit 31 [PSU0007325], Exhibit 32 [VINTAGE_PENN_ST_000063], and Exhibit 33 [VINTAGE_PENN_ST_000296] (2021 and 2022 screenshots of the Vintage Brand website offering various Penn State-related merchandise for sale).*

**RESPONSE:** *Disputed in part.* Disputed that the Vintage Brand website shows images of finished "products." The images appearing on Vintage Brand's website are digital mockups of blank goods emblazoned with public domain historic imagery from Vintage Brand's collection. Hartvigson Decl. (Doc. 116-2) ¶¶ 14–15, 22, 25. Otherwise undisputed.

95.     As of January 2021, Vintage Brand offered merchandise bearing the Pozniak Lion Logo along with the PENN STATE Mark. Examples of products that were previously available for sale on Vintage Brand's website using this image include:



*See, e.g., Ex. 31 [PSU0007325] at 17.*

**RESPONSE:** *Disputed in part.* Disputed that the Vintage Brand website shows images of finished "merchandise." The images appearing on Vintage Brand's website are digital mockups of blank goods emblazoned with public domain historic imagery from Vintage Brand's collection. Hartvigson Decl. (Doc. 116-2) ¶¶ 14–15, 22, 25. Further disputed that the digital mock-ups show the Pozniak Lion Design alone; the mock-ups show a shirt bearing a composite image. Otherwise undisputed.

96. On the Vintage Brand website, customers can select from different VB Penn State Merchandise bearing the University Marks. *See Ex. 32 [VINTAGE_PENN_ST_000063-295] (examples of Vintage Brand website showing different products for sale).*

**RESPONSE:** *Disputed in part.* Vintage Brand never made any of the University's purported trademarks available alone with the exception of the S-Lion Design. *See* Response to Statement No. 90, *supra.* Otherwise undisputed.

**B. Vintage Brand's Penn State Store**

97.    The subpage on the Vintage Brand website that feature VB Penn State Merchandise is referred to herein as "the VB Penn State Store". *See, e.g., Deposition Transcript of Dominic DeLong (9-12-2022) (herein "DeLong Dep.") (Ex. 40) at 18:9-22 (testimony from Dominic DeLong referring to the specific pages within the Vintage Brand website related to specific schools as "stores").*

**RESPONSE:** No response required.

98.    The VB Penn State Store on the Vintage Brand website was titled "Penn State Nittany Lions Vintage Designs". *See Ex. 32 [VINTAGE_PENN_ST_000063] at 3 (example screenshot of website, showing title on the VB Penn State Store).*

**RESPONSE:** *Undisputed*.

99.    The VB Penn State Store included a "landing page" showing pictures of VB Penn State Merchandise with the VB Penn State Marks. *See, e.g., Ex. 32 [VINTAGE_PENN_ST_000063] at 3 (example screenshot of website, showing title on the VB Penn State Store).*

**RESPONSE:** *Disputed in part*. The University does not define the term "VB Penn State Merchandise" but uses it throughout its Statement of Facts. For purposes of this Counterstatement, Vintage Brand in good faith interprets that term to mean the historic composite images derived from Vintage Brand's University-related memorabilia. The University also does not define the term "VB Penn State Marks" but uses it throughout its Statement of Facts. For purposes of this Counterstatement, Vintage Brand in good faith interprets the term to mean those images identified in Statement 92. Vintage Brand disputes the characterization of those images as "marks." Otherwise undisputed.

84

100.    A representative screen capture of this landing page for the VB Penn State Store is shown here:



*See Ex. 32 at 3.*

**RESPONSE:** *Undisputed*.

101.    The Vintage Brand website features specific pages for each product offered for sale. S*ee, e.g., Ex. 32 at 23-36 (examples of product pages for various t-*

*shirts sold by Vintage Brand).* An image of the top of an example product page is shown here:



*Ex. 32 at 173 (example product page from VB Penn State Store).*

**RESPONSE:** *Disputed in part.* Disputed that the Vintage Brand website shows images of finished "products." The images appearing on Vintage Brand's website are digital mockups of blank goods emblazoned with public domain historic imagery from Vintage Brand's collection. Hartvigson Decl. (Doc. 116-2) ¶¶ 14–15, 22, 25. Otherwise undisputed.

102.     The product pages under the VB Penn State Store include text at the top left of the screen, showing the pathway to the specific product, including "LEAGUES / COLLEGE / TEAMS / PENN STATE NITTANY LIONS / [Name of specific product]." An enlarged view of this is shown here:



*Ex. 32 at 173 (product page example).*

**RESPONSE:** *Undisputed.*

103.     The name of the product on the product page also references "Penn State Nittany Lions" and often includes a paragraph giving information about Penn State and the Nittany Lion mascot. For example:

## 1929 PENN STATE NITTANY LIONS MEN'S DRI-POWER T-SHIRT

By Vintage Brand™ not affiliated with or sponsored by Penn State Nittany Lions

The Nittany Lion is the mascot of the Penn State Nittany Lions—the athletic teams of the Pennsylvania State University, located in University Park, Pennsylvania, USA. It is an eastern mountain lion, the "Nittany" forename referring to the local Mount Nittany, which overlooks the university. The mascot was the creation of Penn State senior H. D. "Joe" Mason in 1907. While on a 1904 trip to Princeton University, Mason had been embarrassed that Penn State did not have a mascot. Mason did not let that deter him: he fabricated the Nittany Lion on the spot and proclaimed that it would easily defeat the Princeton Bengal Tiger. The Lion's primary means of attack against the Tiger would be its strong right arm, capable of slaying any foes (this is now traditionally exemplified through cumulative one-armed push-ups after the team scores a touchdown). There is a song played during sporting events on campus entitled "The Nittany Lion". Many fans know this song as "Hail to the Lion". The Nittany Lion is essentially an ordinary mountain lion (also known as a cougar, puma, or panther), a creature that roamed central Pennsylvania until the 1880s.

*Ex. 32 at 173 (example product page, which comes from the document that was produced in this case bearing Bates No. VB_PENN_ST_000234).*

**RESPONSE:** *Undisputed.*

104.    Many of the product pages on the VB Penn State Store contain paragraphs of text related to Penn State, like the paragraph shown above. This text highlighted above was drafted by Chad Hartvigson and Erik Hartvigson. *See Sportswear Dep. (Vol. 2) (Ex. 36) at 46:5-18 (discussing the text noted in the above paragraph, which appears on the page bearing Bates No. VB_PENN_ST_0000234).*

**RESPONSE:** *Undisputed.*

105.    Chad and Erik Hartvigson drafted the noted paragraph of website copy by pulling from "public domain internet sources" and included this copy to provide "historical perspective" for the product. *See Sportswear Dep. (Vol. 2) (Ex. 36) at 46:5-48:4.*

    **RESPONSE:** *Undisputed*.

106.    Every one of the product pages on the VB Penn State Store include textual references to Penn State. *See generally, Ex. 32-33 (screen captures of the VB Penn State Store, showing various product pages for different items).* Even where the VB Penn State Mark does not directly incorporate one of the University Marks, the product page on the Penn State website repeatedly references Penn State. The following webpage provides an illustration:



*Ex. 32 at 59. See also, e.g., Ex. 32 at 85.*

**RESPONSE:** *Disputed in part.* Disputed that any page of the VB Penn State Store incorporates a University Mark. Otherwise, undisputed.

107. Defendants have posted "disclaimers" on their website, which either (1) appear in several rows of text with only the first two lines visible, meaning that a user must voluntarily scroll through in order to get to the disclaimer, or (2) appear elsewhere in print smaller and lighter in tone than surrounding text. *See, e.g., Ex. 32 at 23.*

**RESPONSE:** *Disputed in part.* Undisputed that Vintage Brand has posted disclaimers on its website. Disputed as to the University's description of the disclaimers.

On the bottom of the Home Page, as well as every Team Page, Product Page, and page appearing during the checkout process, the following disclaimer appears in contrasting colors (*i.e.*, white text on a black background):

> Our products are not affiliated with, licensed, sponsored, or endorsed by any college, team, league, event or licensing entity…. All products are designed by Vintage Brand® and manufactured for Vintage Brand®.

VBEx. M (Doc. 116-15) at 21; Ex. N (Doc. 116-16) at 4. When visitors navigate to a Team Page, they are presented with another disclosure in the first visual field of the page, beneath the descriptive header:



**PENN STATE NITTANY LIONS VINTAGE DESIGNS**
Vintage designs not affiliated with, licensed, or sponsored by any college, team or league

VBEx. M (Doc. 116-15) at 3. The same text also appears when the Team Page is narrowed to a type of product, such as "Cutting Boards." VBEx. O (Doc. 116-17) at 3.

As the University notes, there are also scrollable text boxes at the top and bottom of each Team Page, which contain an additional disclaimer of licensure, sponsorship, or endorsement. VBEx. M (Doc. 116-15) at 3, 21. Whether the

disclaimer appears in the first two lines of those text boxes depends on the size of the customer's browser window; in most cases, including that shown above at Statement No. 100, the disclaimer will appear. PEx. 32 (Doc. 123-35) at 3 (second line of text contains "Vintage Brand is not affiliated with the Penn State Nittany Lions Bookstore or the Penn State Nittany Lions."); *see also* VBEx. M (Doc. 116-15) at 3 (same text split between the first and second line of the text box).

If a visitor selects an item from a Team Page, she is taken to a Product Page, which displays a digital mockup of the product bearing the historic image the customer chose from the Team Page. Hartvigson Decl. (Doc. 116-2) ¶ 22. For example:



VBEx. M (Doc. 116-15) at 3 (red annotation added).



VBEx. Q (Doc. 116-19) at 3.

Like each Team Page, a disclaimer appears under the descriptive header of

each Product Page:

# 1929 PENN STATE NITTANY LIONS MEN'S
# PREMIUM BLEND RING-SPUN T-SHIRT

By Vintage Brand™ not affiliated with or sponsored by Penn State Nittany Lions

*Id.* And the space below the description of the product contains yet another

disclaimer:

> …. Vintage Brand® and its products are not affiliated with, licensed,
> sponsored, or endorsed by any college, university, professional team,
> league, event, or licensing entity. All designs are derived from actual
> historic works of art existing in the public domain.

*Id.*

108.    In his deposition, Mr. DeLong (who creates the user interface for the Vintage Brand website) testified that Vintage Brand only makes 2 lines of its "disclaimer" visible (rather than making more lines visible) because "for … a user experience perspective, it's just that you want to hide some of it just so it doesn't take up a lot of the priority … screen space at the top." *DeLong Dep. (Ex. 40) at 13:23-16:2 (testimony with reference to a deposition exhibit bearing Bates label VINTAGE_PENN_ST_000202); Ex. 32 at 141 (screenshot bearing same Bates label, showing what Mr. DeLong is referencing in the cited deposition excerpt).*

**RESPONSE:** *Disputed in part.* Disputed that Mr. Delong testified that Vintage Brand only makes two lines of its disclaimer visible. Mr. Delong merely acknowledged that he saw two lines of text in the screenshot he was shown. Mr. Delong was not shown an active webpage, merely a screenshot. *See* PEx. 32 at 141 (Doc 123-35). Otherwise undisputed.

109.    Mr. DeLong further testified about the "disclaimer" language appearing at the bottom of the pages on the VB Penn State Store. *See DeLong Dep. (Ex. 40) at 20:9-21:12 (DeLong testimony regarding the deposition exhibit page bearing Bates label VINTAGE_PENN_ST_000205); Ex. 32 at 144 (screenshot of Vintage Brand website reviewed by Mr. DeLong during his testimony).* Mr. DeLong confirmed that only a line and a half of the disclaimer is visible, and that the subsequent lines of the "disclaimer" do not appear unless "they … put their cursor over it and kept scrolling." *DeLong Dep. (Ex. 40) at 20:20-24.*

**RESPONSE:** *Disputed in part.* Undisputed that Mr. Delong testified about the text in the scrollable text box at the bottom of the Team Page.

Disputed that Mr. Delong confirmed that the disclaimer does not appear unless customers scroll through the text box. That assertion is not supported by the cited testimony, which concerns all of the "legal copy" contained in the scrollable

text box rather than the disclaimer itself. DeLong Dep. (Doc. 123-43) at 20:9–24;

*see also* VBEx. P (Doc. 116-18) (showing the entirety of the legal copy contained in

the scrollable text boxes). The document referenced in this testimony is the

University's PEx. 32 (Doc. 123-35) at page 144, which shows that the visible portion

of the scrollable text box includes "Vintage Brand products are not affiliated with,

licensed, sponsored, or endorsed by any college, university, professional team,

league, event, or licensing entity."

110.    Mr. DeLong testified as follows regarding the viewability of the "disclaimer" language on Vintage Brand's website: "I would say it's kind of like best practice. If you go to a lot of other e-commerce shops, they always have just paragraphs of legal stuff at the bottom, so … and they usually hide at least half of it or something." *DeLong Dep. (Ex. 40) at 21:7-12.*

**RESPONSE:** *Disputed in part.* Mr. Delong was not testifying about the

"disclaimer," he was testifying about the entirety of the "legal copy" contained in

the scrollable text box. DeLong Dep. (Doc. 123-43) at 20:9–21:12; *see also* VBEx.

P (Doc. 116-18) (showing the entirety of the legal copy contained in the scrollable

text boxes). Otherwise undisputed.

111.    A consumer survey conducted by Vintage Brand's retained expert Tülin Erdem tested for the effect of disclaimers on the Vintage Brand website by presenting her survey using differing disclaimers or removing all disclaimers. Her survey results showed high confusion rates across all of the conditions, showing Vintage Brand's disclaimers do not have appreciable impacts on consumer confusion. *See Exhibit 56 [Rebuttal Report of David Franklyn]* at 32. Dr. Erdem herself has not offered any opinions for Vintage Brand relating to disclaimers, despite her survey's testing of the impact of adding versus removing a disclaimer. *See also Exhibit 42 [Erdem Report] at 31-45 (written report of Tülin Erdem,*

*excluding data and exhibits, showing no opinions indicating that the presence or absence of disclaimer language affects consumer confusion rates).*

**RESPONSE:** *Disputed in part*. Disputed to the extent the University opines that Dr. Tülin Erdem's survey showed "high confusion rates across all of the conditions" and showed that "Vintage Brand's disclaimers do not have appreciable impacts on consumer confusion. To the contrary, Dr. Erdem's survey showed remarkably low net confusion rates, rates that were even lower among respondents with greater certainty about their answers, which is why the effect of the disclaimers to further dispel confusion was difficult to test. Erdem Report (Doc. ¶¶ 49, 52, 55, 57, 60, 62).

112.    Meghan Maffey, a Vintage Brand customer identified through Defendants' discovery responses, testified that she has been on Vintage Brand's website and does not recall noticing any language on the website speaking to whether Vintage Brand has any affiliation or relationship to Penn State, or any type of legalese or disclaimer language on the website. *See Maffey Dep. (Ex. 37) at 54:25-55:10.*

**RESPONSE:** *Disputed in part*. Undisputed that Ms. Maffey testified to not seeing "any language that [she] might consider legalese or a disclaimer on the website." However, as set forth in the Response to Statement No. 137 *infra*, Ms. Maffey's deposition testimony appears to be mistaken and there is reason to believe she never viewed Vintage Brand's website.

### C. Similarities Between Parties' Marks

113.    The VB Penn State Merchandise features designs and logos that are identical or nearly identical to the University Marks:

| The University Marks | VB Penn State Merchandise |
|---|---|
| PENN STATE<br><br>*Ex. 4 at 3, 11 (United States federal trademark registration certificate for the PENN STATE Mark).* | <br><br>*See Ex. 31 [PSU0007325] at 2, 14, 44, 53.* |

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY<br><br>*Ex. 6 at 3, 9, 15 (United States federal trademark registration certificate for the TPSU Mark).* |  <br> <br><br>*See Ex. 31 [PSU0007325] at 23, 30 (images of products with close-ups of the images showing the use of the TPSU Mark on the VB Penn State Merchandise).* |
| <br><br>*Ex. 11 at 3 (United States federal trademark registration certificate for Pozniak Lion Logo).* |  <br><br>*See Ex. 31 [PSU0007325] at 17.* |





| | |
|---|---|
| *Ex. 17 at 3, 11 (United States federal registration certificates for the University Seal Marks).* |  *See Ex. 31 [PSU0007325] at 10, 23; Ex. 43 [PSU0008828] at 2 (image of a Vintage Brand pennant specimen produced through discovery).* |
|   *Ex. 9 at 3, 8 (United States federal trademark registrations for the Lion Shrine Logos).* |   *See Ex. 43 [PSU0008828] at 2 (image of a Vintage Brand pennant specimen produced through discovery]; Ex. 31 [PSU0007325] at 10.* |



*Petulla Decl. (Ex. 1), ¶ 7.*

*Ex. 31 [PSU0007325] at 5; Ex. 44 [PSU0008723-725] at 2.*

**RESPONSE:** *Disputed in part*. Vintage Brand never sold merchandise bearing the University's purported trademarks alone, with the exception of the S-Lion Design. Hartvigson Decl. (Doc. 116-2) ¶¶ 35–37. All of the other University-related merchandise Vintage Brand sold bore composite historic images, which incorporate text or design that the University claims are trademarks. *See* Response to Statement No. 90, *supra*.

### D. The University Marks Are Not Mere Ornamentation.

114.   Consumers perceive the merchandise sold by Vintage Brand bearing the University Marks as being trademarks. *See Franklyn Report (Ex. 41) at 9-26.*

**RESPONSE:** *Disputed*. The University offers no admissible evidence to support this Statement. *See* Response to Statement No. 5, *supra*. The cited portions of the Franklyn Report are inadmissible for the reasons discussed in Defendants' Motion to Exclude (Docs. 93, 94) and Motion to Strike (filed the same day as this Counterstatement). The Franklyn Recognition Survey (referred to as Survey 1 in the

Motion to Exclude and Motion to Strike) is inadmissible for multiple independent reasons including the following: (i) the survey does not fit this case; (ii) Mr. Franklyn invented the survey methodology, which has never been used or tested by any survey expert inside or outside of litigation; (iii) the survey contains fatal flaws rendering its output unreliable; and (iv) the survey's flawed design carries extreme risk that it will confuse factual and legal issues and mislead the jury, usurping this Court's role of saying what the law is. *See* Docs. 93–94.

But even if the Franklyn Recognition Survey were admissible, it does not support Statement 114 because it does not match an alleged source identifier (i.e. an alleged trademark) with a specific product. Its design is akin to showing a consumer a painting of a branded soup can and asking if he or she sees a trademark. *See* Franklyn Report (Doc. 94-2 at 13) (describing question asking if the image contained trademarks but not whether the respondent regarded the images as trademarks that designated the University as the source, provider, licensor, or sponsor *of the apparel itself*); Doc. 94 at 8 (explaining why a consumer's identification of a trademark would be meaningless in this context); Neal Report (Doc. 94-5 at 12) ¶ 2.4.2 (explaining why Mr. Franklyn fails to measure the relevant research question); Doc. 94-4 at 132:17–135:4, 16:7–21:15 (Mr. Franklyn testifying to the different variables that go into answering whether an image contains a trademark).

Finally, there is overwhelming evidence that consumers do not perceive the historic images prominently displayed on merchandise sold by Vintage Brand as trademarks that identify the source of the products on which they appear. *See* Erdem Report (Doc. 94-7 at 8–9) ¶¶ 17.a.–b (summarizing expert opinion that confusion as to source or business relationship is insubstantial and that few consumers identify the University as the entity responsible for the quality of Vintage Brand products).

115. In a survey conducted by Penn State's expert David Franklyn, respondents were shown an image of a t-shirt—either a Vintage Brand t-shirt featuring the University Marks or a control—and were then given the definition of a trademark set forth in the Lanham Act and asked a series of questions about whether they believed that image contained any trademarks. *See Franklyn Report (Ex. 41) at 9-26, 63-68*. Respondents who indicated they did believe the image contained a trademark were given options to identify what trademarks they perceived, along with another chance to indicate that they were unsure or that no trademark was present. *Id. at 67-68.*

**RESPONSE:** *Disputed in part*. Defendants do not dispute that the Franklyn Recognition Survey was conducted, but they dispute its admissibility and the legal and factual conclusions that the University purports to draw from it. *See* Response to Statement 114, *supra.*

Also, the Franklyn Recognition Survey specifically altered the definition of "trademark" that appears in the Lanham Act. *See* Franklyn Report (Doc. 94-2 at 13, n.2).

116. The survey showed that 45-70% of respondents indicated that each of the University Marks was a trademark. *Id. at 22-26.*

**RESPONSE:** *Disputed*. The cited portions of the Franklyn Report are inadmissible for the reasons discussed in Defendants' Motion to Exclude (Docs. 93, 94) and Motion to Strike (filed the same day as this Counterstatement). The Franklyn Recognition Survey is inadmissible for multiple independent reasons including the following: (i) the survey does not fit this case; (ii) Mr. Franklyn invented the survey methodology, which has never been used or tested by any survey expert inside or outside of litigation; (iii) the survey contains fatal flaws rendering its output unreliable; and (iv) the survey's flawed design carries extreme risk that it will confuse factual and legal issues and mislead the jury, usurping this Court's role of saying what the law is. *See* Docs. 93–94; Response to Statement 114, *supra*.

But even if the Franklyn Recognition Survey were admissible, it does not support Statement 116 because it does not match an alleged source identifier (i.e. an alleged trademark) with a specific product.

Additionally, the survey does not test "each of the University Marks." For example, the University claims that the S-Lion Design is one of the University Marks, but it was not a part of the survey. *See* Franklyn Report (Doc. 94-2 at 10–13, 64–66).

117.    The University Seal showed the highest level of trademark perception, with 70% of all respondents who viewed the product image including that mark indicating that this seal was a trademark. *Id. at 24.* For reference, only 7% of respondents viewing that product identified the color of the shirt as a trademark. *Id.*

| The Test and Control Images | | |
|---|---|---|
|  |  |  |
| Nittany Rock Image | Penn State Basketball Image | Control Image |

| The Survey Results | | | |
|---|---|---|---|

Please select all parts of the image, if any, that you believe are trademarks.

| | Cell A – Nittany Rock<br><br>n = 243 | Cell B – Penn State Basketball<br><br>n = 242 | Cell C – Control Cell<br><br>n = 189 |
|---|---|---|---|
| The image of the lion on a rock | 45% | | |
| The image of a seal with the words "The Pennsylvania State University" | 70% | | |
| The phrase "The Pennsylvania State University" | 45% | | |
| The word "Nittany" | 44% | | |
| The color of the shirt | 7% | | |
| Don't know/no opinion | 0% | | |
| The face of the lion | | 65% | |
| The phrase "Penn State" | | 65% | |
| The word "Basketball" | | 11% | |
| The color of the shirt | | 6% | |
| Don't know/no opinion | | 0% | |
| The phrase "Game Day" | | | 20% |
| The image of the football | | | 14% |
| The color of the shirt | | | 3% |
| Don't know/no opinion | | | 0% |

*See Franklyn Report (Ex. 41) at 24-25 (survey results highlighting consumer perceptions regarding trademark presence).*

**RESPONSE:** *Disputed.* The cited portions of the Franklyn Report are inadmissible for the reasons discussed in Defendants' Motion to Exclude (Docs. 93, 94) and Motion to Strike (filed the same day as this Counterstatement). The Franklyn Recognition Survey is inadmissible for multiple independent reasons including the following: (i) the survey does not fit this case; (ii) Mr. Franklyn invented the survey methodology, which has never been used or tested by any survey expert inside or outside of litigation; (iii) the survey contains fatal flaws rendering its output unreliable; and (iv) the survey's flawed design carries extreme risk that it will confuse factual and legal issues and mislead the jury, usurping this Court's role of saying what the law is. *See* Docs. 93–94; Response to Statement 114, *supra.*

But even if the Franklyn Recognition Survey were admissible, it does not support Statement 117 because it does not match an alleged source identifier (i.e. an alleged trademark) with a specific product. The Franklyn Recognition Survey did not show that 70% of respondents perceived the "University Seal" as a trademark for t-shirts or any other specific product.

Finally, there is overwhelming evidence that consumers do not perceive the historic images prominently displayed on merchandise sold by Vintage Brand as trademarks that identify the source of the products on which they appear. *See* Erdem Report (Doc. 94-7 at 8–9) ¶¶ 17.a.–b (summarizing expert opinion that confusion as

to source or business relationship is insubstantial and that few consumers identify the University as the entity responsible for the quality of Vintage Brand products).

### E. Vintage Brand Has Used the TM Symbol on its Infringing Versions of the University Marks.

118. Vintage Brand also produced for inspection the following hooded sweatshirt:



*See Ex. 44 [PSU0008723] at 2.*

**RESPONSE:** *Undisputed.*

119. This sweatshirt includes a trademark designator ™ placed next to the image, as shown in this close-up of the image:



*See Ex. 44 [PSU0008723] at 2.*

**RESPONSE:** *Undisputed.* The trademark designator ™ was included in the underlying memorabilia and inadvertently not removed from the image when Vintage Brand made this image available on its website. Supp. Hartvigson Decl. ¶ 6. Vintage Brand did not add the TM designator and does not contend the S-Lion Design acts as a trademark when applied as a decorative element to merchandise, such as the sweatshirt shown in this Statement. *Id.*

120.     The corresponding digital image that Vintage Brand produced for this image similarly shows that Vintage Brand includes the ™ trademark designator with this image:



*See Ex. 39 at 18.*

**RESPONSE:** *Undisputed.* The trademark designator ™ was included in the underlying memorabilia and inadvertently not removed from the image when Vintage Brand made this image available on its website. Supp. Hartvigson Decl. ¶ 6. Vintage Brand did not add the TM designator and does not contend the S-Lion Design acts as a trademark when applied as a decorative element to merchandise. *Id.*

## IV. The VB Penn State Merchandise Directly Competes with Penn State's Authorized Merchandise

### A. Overlapping Products

121. Vintage Brand has offered and sold the following VB Penn State Merchandise: t-shirts, sweatshirts, hats, drinkware, puzzles, wall decorations, koozies, cutting boards, and magnets. *See Exhibit 46 at 4-20 (Vintage Brand's Supplemental Confidential Response to Interrogatory 7 setting out the different types of merchandise that Vintage Brand sold with the VB Penn State Marks).*

**RESPONSE:** *Undisputed*.

122. Penn State and its licensees use the University Marks to sell the same merchandise (t-shirts, sweatshirts, hats, drinkware, puzzles, wall decorations, koozies, cutting boards, and magnets) among other goods and services. *See, e.g., Ex. 3 at 3-5, 8, 11, 16, 28, 39, 50, 53, 57, 61, 64, 66 (composite evidence of authorized uses of PENN STATE Mark showing use of these goods); Ex. 5 at 2, 5, 24, 33 (same for the TPSU Mark); Ex. 14 at 3, 6, 10, 14, 40, 48 (same for S Lion Logo).*

**RESPONSE:** *Disputed in part*. Disputed to the extent that this Statement

asserts the University and its licensees use the University's purported marks as

trademarks for the specified goods, rather than as decorative elements of the goods.

*See* Response to Statement Nos. 12, 18, 28, 35, 39, and 46, *supra*.

123. Several of the products offered by Vintage Brand are nearly indistinguishable from Penn State's authorized merchandise, such as the following:

| Authorized Penn State Merchandise | Vintage Brand's Unauthorized Merchandise |
|---|---|
|  *Ex. 14 at 4.* |  *Ex. 44 [PSU0008723] at 2 (image of a Vintage Brand sweatshirt specimen produced through discovery).* |
|  |  *Ex. 31 [PSU0007325] at 5.* |

| | |
|---|---|
|  *Ex. 14 at 7, 8.* |  *Ex. 33 [VINTAGE_PENN_ST_000296] at 255.* |
|  *Ex. 13 at 6, 15.* |  *Ex. 31 [PSU0007325] at 17.* |

**RESPONSE:** *Disputed*. None of the product comparisons set forth above show "nearly indistinguishable" products. Further disputed to the extent the statement suggests consumers are not able to readily distinguish officially licensed merchandise based on explicit statements of authorization and the use of the mandatory Official Label.

## B. Overlapping Customers and Channels of Trade

124.     Penn State's target consumers for merchandise bearing the University Marks include students, alumni, and fans of Penn State throughout Pennsylvania and the entire United States. *See Petulla Decl. (Ex. 1.), ¶ 11.*

**RESPONSE:** *Undisputed.*

125.     A list of authorized Penn State licensees is available through CLC's website, at <https://clc.com/license-search/>. *See Exhibit 47 at 2-30 (results of search for Penn State licensees performed on August 3, 2022); Petulla Decl. (Ex. 1), ¶ 12 (CLC administers Penn State's licensing program).*

**RESPONSE:** *Undisputed.*

126.     Some of Penn State's authorized licensees include: Nike USA, New Era Cap, Lululemon USA, '47 brand, Shop the Soho, Homefield, Hillfint, and Fanatics Group. *See Ex. 18 at 2-8 (representative 2022 Penn State Standard licensee list); id. at 9 (2022 Penn State list of licensees under College Vault program focused on vintage merchandise); Ex. 48 at 2-134 (webpages put out by licensees including 19nine, '47 brand, Nike, Hillflint, and Homefield ); Ex. 47 at 2-30 (listing of Penn State licensees).*

**RESPONSE:** *Undisputed.*

127.     The core demographic of Vintage Brand's customers are fans of the specific schools that have dedicated stores on the Vintage Brand Website. *Delong Dep. (Ex. 40) at 18:9-17.* The VB Penn State Store from Vintage Brand's website states: "[t]he Vintage Brand Penn State Nittany Lion Shop at VintageBrand.com is the ultimate destination for die-hard Penn State Nittany Lions fans and alumni ...." *See Second Amended Compl. (Dkt. 67), ¶ 90 & Answer (Dkt. 72), ¶ 90 (admitting that the Vintage Brand website previously displayed the quoted text).*

**RESPONSE:** *Undisputed.*

128.     Dominic DeLong, who does user interface visual design for Vintage Brand, works on designing the Vintage Brand website and with Vintage Brand marketing emails. *DeLong Dep. (Ex. 40) at 11:3-12:23, 12:9-13.* Mr. DeLong testified that Vintage Brand's target customer is "someone who's 40 to 55, passionate about sports…it's an alumni from a college." *See id. at 44:2-11.* Vintage

Brand further uses dynamic searching tools through Google that operate by crawling the Vintage Brand Website and then showing ads to consumers who search for related terms, with promotional language from Vintage Brand and a link to the Vintage Brand website. *See E. Hartvigson Dep. (Ex. 50) at 24:2-27:22, 34:17-37:4, 106:15-109:17 (Erik Hartvigson manages Dynamic Search Advertising (DSA) for Vintage Brand through which Google displays text advertisements linking to the Vintage Brand Website when internet users are using the Google search platform, and testifying that he provides text copy for Google to include in these advertisements).*

**RESPONSE:** *Undisputed.*

129.    Mr. DeLong testified that Vintage Brand's core demographic is "a die-hard fan" who comes looking to buy merchandise related to their favorite sports team, rather than to search among the different school pages to find a product they like*. See id. at 18:9-17.*

**RESPONSE:** *Disputed.* Mr. Delong testified that consumers will shop for merchandise related to their "favorite schools" (plural). Delong Dep. (Doc. 123-43) at 18:2–22; *see also id*. at 44:2–11 (testifying that consumers might be interested in merchandise related to school of which they are an alumni, or professional football or baseball teams they support); *see also* Supp. Hartvigson Decl. ¶ 7 (stating that "consumers typically browse or purchase merchandise from multiple teams") .

130.    Vintage Brand and Penn State offer merchandise at similar price points. *See, e.g., Ex. 31 [PSU0007325] at 2-24 (examples of Vintage Brand selling t-shirts priced under $30); id. at 25-28 (Vintage Brand sweatshirts priced under $50); id. at 29-31 (Vintage Brand hats priced under $30); id. at 31-32 (Vintage Brand koozies priced at or under $10); id. at 54-59 (Vintage Brand magnets priced under $10). See also Ex. 3 at 9-10, 25, 35, 37 (examples of genuine Penn State-authorized t-shirts priced under $30); id. at 6, 14, 63 (genuine Penn State sweatshirts priced under $50); id. at 5, 7, 23-24, 26 (genuine Penn State hats priced under $30); id. at 2, 40, 48-49 (genuine Penn State koozies priced at or under $10); id. at 28, 50 (genuine Penn State magnets priced under $10).*

**RESPONSE:** *Disputed.* The documents cited by the University do not support this assertion. Rather, as set forth below, they show that Vintage Brand typically offers merchandise at significantly reduced prices compared to the merchandise offered by the University's licensees.

T-Shirts:
- PEx. 31 (Doc. 123-34) at pages 2–24 shows all Vintage Brand t-shirts are $17.99 or $17.40.
- PEx. 3 (Doc. 123-6) at pages 9–10, 25 and 35 show t-shirts for sale by the University's licensees for $29.99, $21.99, $29.99, and $28.00, respectively. Only page 37 of that exhibit shows t-shirts for sale at a price comparable to the price of Vintage Brand merchandise. And pages not referenced by the University show even higher prices for "official" t-shirts. *E.g.*, PEx. 3 (Doc. 123-6) at 16 ($32.99), 20 ($34.99), 21 ($39.99), 22 ($42.99).

Sweatshirts:
- PEx. 31 (Doc. 123-34) at pages 25–28 shows all Vintage Brand sweatshirts and hoodies range from $23.99 to $29.99.
- PEx. 3 (Doc. 123-6) at pages 6, 14 and 63 shows sweatshirts and hoodies for sale by the University's licensees for $33.75, $39.99, and $29.97, respectively. Pages of Exhibit 3 not referenced by the University show even higher prices for "official" sweatshirts and hoodies. *E.g.*, PEx. 3 (Doc. 123-6) at 8 ($74.99), 11 ($44.99), 13 ($69.99), 14 ($39.99), 15 ($49.99), 17 ($59.99), 19 ($45.49), 46 ($55.00).

Hats:
- PEx. 31 (Doc. 123-34) at pages 29–31 shows all Vintage Brand hats are $14.39.
- PEx. 3 (Doc. 123-6) at pages 5, 7, 23–24, and 26 shows hats for sale by the University's licensees for $17.99, $27.99, $25.99, $24.99, and $23.99, respectively.

Koozies:
- PEx. 31 (Doc. 123-34) at pages 31–32 shows all Vintage Brand Koozies are $3.89.
- PEx. 3 (Doc. 123-6) at pages 2, 40, and 48–49 shows koozies for sale by the University's licensees for $8.00 (page 2) and $4.99 (pages 40, 48–49).

Magnets:
- PEx. 31 (Doc. 123-34) at pages 54–59 shows all Vintage Brand magnets are $2.99.

- PEx. 3 (Doc. 123-6) at pages 28 and 50 shows magnets for sale by the University's licensees for $6.99.

131. For many years, Penn State and its authorized licensees have been selling merchandise designed to evoke the same "retro" or "vintage" feel as Vintage Brand promotes. *See, e.g., Exhibit 48 at 2-232 (composite examples of Penn State's authorized licensees selling vintage-trend apparel); Ex. 3 at 25, 55, 60, 61 (examples of authorized uses of the PENN STATE Mark and S Lion Logo that feature and are advertised as having a vintage or retro design); id at 72-90 (web captures from 2015 retrieved through the Wayback Machine website for a subpage of the Penn State Athletics online store that specifically offered vintage clothing, taken of the URL <shop.gopsusports.com/Penn_State_Nittany_Lions_Vintage_Clothing>).*

**RESPONSE:** *Disputed in part.* Undisputed that the University's licensees have been selling the identified products, except those identified using Wayback machine captures. The Wayback machine captures cited in support of this statement are not admissible. Fed. R. Evid. 901. As such, there is no support for the assertion that the University's licensees have been selling such products "[f]or many years."

132. Sample screenshots from websites featuring genuine authorized Penn State vintage-trend apparel are shown below:



Home / Penn State Nittany Lions

Everything
Headwear
Apparel

'47 CLEAN UP
'47 HITCH
'47 KNIT
'47 MVP
'47 TRUCKER
ROPE HATS
OVERHAND SCRIPT
HARRIS COLLECTION

## PENN STATE NITTANY LIONS

All Filters

42 Products   Sort ⌄

PENN STATE NITTANY LIONS VINTAGE NO HUDDLE '47 CUFF KNIT
$32.00

PENN STATE NITTANY LIONS CROSSTOWN BASIC SCRIPT '47 HITCH
$34.00

PENN STATE NITTANY LIONS VINTAGE GRIT '47 SCRUM TEE
$42.00

PENN STATE NITTANY LIONS VINTAGE LINE PRESS '47 FRANKLIN TEE
$35.00

PENN STATE NITTANY LIONS VINTAGE GRIT '47 SCRUM TEE
$42.00

PENN STATE NITTANY LIONS VINTAGE PREMIER '47 FRANKLIN TEE
$35.00



Search for team

# PENN STATE

SORT BY   Sort

**FILTERS**   Clear Filters

Style                    +

Size                     +

Penn State Classic Crewneck Sweatshirt
$65.00

Penn State Vintage Crewneck Sweatshirt
(Blue)
$45.00

Penn State Vintage Crewneck Sweatshirt
(White)
$45.00

Penn State Regional Sweater
$90.00

Penn State Vintage Crewneck Sweatshirt
(Gray)
$45.00

Penn State Vintage Triple Stripe
Crewneck Sweatshirt
$45.00



*See, e.g., Ex. 48 at 6, 115, 123 (screenshots of (1) '47 brand website, (2) Homefield brand website, and (3) Hillflint brand website, all selling "vintage" Penn State designs). See also Ex. 18 at 2, 7, 9 (showing '47 brand, TL x HF LLC, and Homefield are authorized Penn State licensees); Exhibit 47 at 27 (search for Penn State licensees showing TL x HF LLC listed as an authorized licensee that operates at website hillflint.com).*

**RESPONSE:** *Undisputed.*

133. Vintage Brand considers its competitors to include authorized Penn State licensees such as Fanatics, Nike, Homefield, and Gameday Couture. *See DeLong Dep. (Ex. 40) at 50:23-56:10 (testimony about who Vintage Brand's competitors are); Ex. 18 at 3-5, 9 (list of authorized Penn State licensees, including these same companies).*

**RESPONSE:** *Undisputed.*

134.   Mr. DeLong testified that he has gone to the Homefield website and observed that they sell vintage-style apparel, including designs that "look similar" to what Vintage Brand sells. *DeLong Dep. (Ex. 40) at 52:3-53:9.*

   **RESPONSE:** *Undisputed.*

135.   Defendants have attended Penn State football games to hand out merchandise like koozies, in order to market their business. *See Defendant Vintage Brand, LLC's Responses to Plaintiff Pennsylvania State University's Second Set of Interrogatories (served 11-20-2022) (herein "Defendants' Second INT Responses") (Exhibit 49) at 5 (INT 1) (Chad Hartvigson and Erik Hartvigson attended a Penn State home football game in September 2019 to pass out drink koozies); Vintage Brand Dep. (Ex. 30) at 226:18-25, 227:2-22 (testimony from Chad Hartvigson stating that Vintage Brand representatives attended a football tailgating event at Penn State's Beaver Stadium to hand out Vintage Brand merchandise to Penn State tailgaters); Deposition Transcript of Erik Hartvigson (10-24-2022) (herein "E. Hartvigson Dep.") (Exhibit 50) at 19:18-24 (testimony from Erik Hartvigson stating that drink koozie he and other Vintage Brand representatives distributed to Penn State fans contained Penn State-related designs).*

## DEFENDANTS PROMOTING AND ADVERTISING AT PENN STATE






*See Exhibit 51 [PSU0005684] at 2-5 (images retrieved from Vintage Brand's website and social media showing Defendants advertising the VB Penn State Merchandise at Penn State).*

**RESPONSE:** *Undisputed.*

## V. Customer Confusion

136.    Megan Maffey, a Penn State alum, testified that she frequently researches, and reaches out to, companies to seek items to be donated and thereafter raffled off to Penn State alumni to raise funds for Penn State students who need financial aid and reside in the Washington D.C. metro area. *See Maffey Dep. (Ex. 37) at 20:13-15, 27:3-6; Ex. 52 SPORTSWEAR_PSU_000147 (Meghan Maffey's email message to Vintage Brand seeking product donation).*

**RESPONSE:** *Undisputed.*

137.    Meghan Maffey testified that when researching and reaching out to Vintage Brand for a donation, she believed Vintage Brand was authorized to sell Penn State related goods. *See Maffey Dep. (Ex. 37) at 54:25-55-13 (Meghan Maffey did not see any language on the Vintage Brands website speaking to whether Vintage Brand has any affiliation or relationship to Penn State and that it was her impression that Vintage Brand was authorized to use Penn State's trademarks).*

**RESPONSE:** *Disputed.* On behalf of the D.C. Chapter of the Alumni Association, Ms. Maffey sent an e-mail to Vintage Brand in August, 2022, soliciting a donation. VBEx. 101 (Doc. 117-51). Ms. Maffey reached out to "over a hundred" websites during that solicitation process. Maffey Dep. (Doc. 116-29) 42:22–43:5. She sent the "[e]xact same email" to solicit each such company. *Id*. at 48:19–49:2. Upon receiving a copy of that e-mail in discovery, counsel for the University contacted Ms. Maffey to discuss her potentially acting as a witness. *Id*. at 9:4–12:9. Prior to being contacted by the University's counsel, Ms. Maffey "did not think about" whether Vintage Brand was a licensee of the University. *Id*. at 15:8–14.

Ms. Maffey testified that she "specifically recall[ed] looking at product offerings" on the Vintage Brand website. *Id*. at 38:13–15. However, when asked

what University-related designs she recalled seeing on the Vintage Brand Website, she testified "[t]he paw print and the chipmunk logo." *Id.* at 39:11. Ms. Maffey described the paw print:

> Q: … can you describe what the paw print logo looks like?
> A: It is the Penn State paw print. It's navy and white, as every Penn State logo is. It has a slash or a white -- the line, rounded line in the left, I believe the left side. But it is the Penn State paw print.

*Id.* at 39:15–19. That description is consistent with the "Nittany Lion Paw Print" shown in the University's Brand Book as well as its licensing Art Sheets:



VBEx. 51 (Doc. 117-1); *see also* VBEx. 8 (Doc. 116-35) at 74–75. However, that image has never appeared on the Vintage Brand website. Hartvigson Decl. (Doc. 116-2) ¶ 40.

The University's "Lionhead Design" is sometimes colloquially referred to as the "Chipmunk." *See* Maffey Dep. (Doc. 116-29) at 39:20–40:2; *see also* Hartvigson Decl. (Doc. 116-2) ¶ 39. That is consistent with Ms. Maffey's description:

> Q: And the other one you mentioned was the chipmunk logo, I think. What's that one look like?
> A: It is the lion head, it is the Penn State lion head.
> Q: It's like a profile of the lion head; is that right?
> A: Correct.

Maffey Dep. (Doc. 116-29) at 39:20–40:2. The Lionhead Design—a/k/a the "Chipmunk"—<u>never</u> appeared on the Vintage Brand website. Hartvigson Decl. (Doc. 116-2) ¶ 40.

As such, the two designs Ms. Maffey recalled appearing on Vintage Brand's website did not, in fact, appear on the website at any time. Upon questioning by the University's counsel, Ms. Maffey could not recall any products with the PENN STATE text, the Seal Designs, or any of the University's other claimed marks appearing on the website. Maffey Dep. (Doc. 116-29) at 54:9–22, 56:10–17.

Perhaps even more telling of Ms. Maffey's clearly mistaken testimony is that she stated unequivocally that she visited and reviewed the Vintage Brand website in late July, 2022, or on August 1, 2022, the latter being the date on which she sent the solicitation e-mail. *Id*. at 38:3–9. She had not looked at Vintage Brand's website prior to that time. *Id*. at 52:21–53:6. She testified to reviewing a University-specific page:

> Q: When you visited it, there was -- you've testified -- I want to make clear. When you visited it, there was a page for Penn State gear available?
> A: Yes.
> Q: Is that right?
> A: Yes.

*Id*. at 54:3–8. Ms. Maffey testified to navigating the Vintage Brand website to that University-specific webpage. *Id*. at 40:9–41:11. However, her declared action was impossible, because Vintage Brand had taken down the University-related pages

during the pendency of this lawsuit, disabling it in mid-August, 2021, and enabling it only for a brief period in February, 2022, in order to capture images of webpages to produce in discovery. Hartvigson Decl. (Doc. 116-2) ¶¶ 28, 41.

Ms. Maffey testified that she learned about Vintage Brand from another Big Ten alumni chapter in Washington D.C. Maffey Dep. (Doc. 116-29) at 12:20–13:2. Ms. Maffey could not recall if she received Vintage Brand's e-mail address from the Vintage Brand website. *Id*. at 41:12–15. However, she testified that she possibly received Vintage Brand's contact information from the member of the Big Ten alumni chapter that informed her of Vintage Brand. *Id*. at 42:5–15.

Regardless of whether Ms. Maffey actually visited Vintage Brand's website to get contact information and review available products, she testified firmly that her views about use of alleged University marks were based entirely on her assumptions about the legal requirements for printing of those marks:

> Q: … [W]e talked about how [the University's counsel] mentioned on the phone that Vintage brand wasn't authorized to sell Penn State products. And I asked before she said that on the phone, is that something that you even thought about, and I believe you said no.
> A: I — with my knowledge of Penn State and Penn State athletics, and spending four years a -- at the University, apologies, I in good faith would -- and -- can I rephrase everything I just said?
> Q: Sure.
> A: I, I did not -- you're correct, I did not think about the licensing, as my experience with Penn State licensing is that if it has the logo on it, it's trademarked through the University.
> Q: So is it fair to say, and correct me if it's not accurate, is it fair to say that you have an assumption that if an item of apparel makes reference to Penn State, that Penn State owns that reference and it

must be licensed; is that sort of your operating assumption?
A: Yes.

*Id*. at 57:4–58:2.

138.    The University's expert report establishes actual confusion as to source, sponsorship, approval, or licensure among survey respondents who observed two Vintage Brand webpages selling products bearing the VB Penn State Marks. *See Franklyn Report (Ex. 41) at 6 ("[a]fter viewing the Penn State apparel as offered on the Vintage Brand website, a significant percentage of consumers are confused as to source, sponsorship, approval, or licensure of the products.").*

**RESPONSE:** *Disputed*. The Franklyn LOC Survey improperly primes respondents to refer to the University, uses an improper control, improperly removes important commercial context from the test image, and improperly counts as confused responses that do not specifically refer to the University. Neal Report at 9–10, 12–18, 26–36, ¶¶ 2.3.1, 2.5.1, 2.5.2., 2.5.4, 3.1, § 5. The Franklyn LOC Survey also makes no attempt to determine whether any "confusion" is a result of consumers' beliefs that use of University-related imagery on merchandise requires the University's permission. *See* Franklyn Report; *see also* Doc. 43 at 23 (Court asking whether consumer confusion or beliefs were impacted by "their belief that the law requires Penn State's permission"); Neal Report at 36–37, ¶¶ 6.1–6.2 (noting Mr. Franklyn's surveys' silence on this key issue); Franklyn Dep. (Doc. 116-32) at 224:7–232:13. Verbatim responses to follow-up questions in the Franklyn LOC Survey demonstrate that many of the "confused" responses were attributable to respondents' beliefs that anyone referencing the University must have legal

permission. *See, e.g.*, Doc. 101-1 (Appendix D to Mr. Franklyn's Report, which the University provided via USB) at Respondent ID Nos. 51 (Q206 and Q212), 70 (Q212), 102 (Q205, Q206 and Q212), 104 (Q209 and Q212), 119 (Q206), 249 (Q206 and Q212), 262 (Q206), 280 (Q208), 341 (Q212), 345 (Q206 and Q212), 543 (Q205, Q206, Q211 and Q212), 607 (Q205), 677 (Q206), 772 (Q212), 801 (Q209), 808 (Q206), 848 (Q211 and Q212), 864 (Q206 and Q212), 876 (Q206), 931 (Q206 and Q212), 1083 (Q206), 1193 (Q206 and Q212), 1214 (Q205, Q206, Q211 and Q212), 1216 (Q206 and Q212), 1276 (Q206), 1295 (Q206 and Q212), 1406 (Q212), 1429 (Q206, Q209, and Q212), 1443 (Q206), 1457 (Q205 and Q209), 1570 (Q205 and Q206), 1589 (Q209 and Q212), 1680 (Q211 and Q212), 1766 (Q212), 1813 (Q206 and Q212).

Mr. Franklyn also included the following "screening" question in the Franklyn LOC Survey:

Franklyn Report (Doc. 94-2 at 88). But Mr. Franklyn did not actually use the responses to this question to screen survey participants. Neal Report at 17, ¶ 3.1.5; Franklyn Dep. (Doc. 116-32) at 126:15–128:24.

For his Franklyn LOC Survey, Mr. Franklyn selected the following "control" stimulus:



Franklyn Report at 27; *see also* Franklyn Dep. (Doc. 116-32) at 233:9–239:14.

The test stimuli used in the Franklyn LOC Survey were the following:



Franklyn Report at 25–26. The test stimulus that Mr. Franklyn used, a screenshot of the Vintage Brand website, removed the vintagebrand.com URL. Neal Report at 13, ¶ 2.5.2 ("Mr. Franklyn cropped out a critical and prominent source-identifying cue"); Franklyn Dep. (Doc. 116-32) at 189:6–191:4.

Finally, Mr. Franklyn coded as "confused" responses that did not specifically refer to "Penn State" but instead referred only to "college" or "university" or "NCAA." Neal Report at 35, ¶ 5.7; *see also* Franklyn Dep. (Doc. 116-32) at 192:16–195:3.

139. The first product page tested, shown below, resulted in a net 27% of consumers being confused as to source, sponsorship, affiliation, or licensure. These consumers identified "Penn State" or the pictured "college, university, NCAA" as the source of sponsor of the shirt shown below:



*See Franklyn Report (Ex. 41) at 44-45.*

**RESPONSE:** *Disputed in part.* Undisputed that the product page referenced

was tested. Otherwise disputed. *See* Response to Statement No. 138, *supra*.

140.    The second image tested, shown below, resulted in a net 39% of
consumers being confused as to source, sponsorship, affiliation, or licensure and
identifying "Penn State" or the pictured "college, university, NCAA" as the source
of sponsor of the shirt below:



*See Franklyn Report (Ex. 41) at 44-45.*

**RESPONSE:** *Disputed in part.* Undisputed that the product page referenced was tested. Otherwise disputed. *See* Response to Statement No. 138, *supra.*

## VI. Defendants' Willfulness

### A. Defendants Know Their Use of the University Marks is Unauthorized

141.  Penn State has never granted Defendants permission to use the University Marks in connection with goods sold on the Vintage Brand website. *See Second Amended Compl. (Dkt. 67), ¶¶ 3, 94 & Answer (Dkt. 72), ¶¶ 3, 94 (admitting that Vintage Brand has not received authorization to use Penn State's trademarks); Vintage Brand Dep. (Ex. 30) at 121:3-15 (Vintage Brand has never requested permission or license to use the words "Penn State" on merchandise).*

**RESPONSE:** *Undisputed*.

142.  Penn State has no affiliation or connection with Defendants. *See Petulla Decl. (Ex. 1), ¶¶ 22-24; Sportswear Dep. (Vol. 2) (Ex. 36) at 25:16-22 (Sportswear has never had a relationship or license agreement with Penn State).*

**RESPONSE:** *Undisputed*. Vintage Brand makes it abundantly clear on its website that it is not affiliated with the University.

143.  Sportswear has previously licensed collegiate trademarks (not including marks owned by Penn State) through CLC. *See Sportswear Dep. (Vol. 2) (Ex. 36) at 25:23-26:17.*

**RESPONSE:** *Undisputed*.

144.  In around 2018, Chad Hartvigson performed trademark preclearance searches to see whether there were any registered trademarks that might be similar to the images shown on Vintage Brand's Penn State-related merchandise. *See Vintage Brand Dep. (Ex. 30) at 149:18-150:5.* Mr. Hartvigson testified that he is familiar with the companies like CLC that handle licensing for different universities and complained that licensing creates "monopolistic antitrust violations going along with collusion to control that marketplace." *Id. at 116:16-118:11 (testimony of Chad Hartvigson concerning his concerns about antitrust issues, in response to a question about whether he determined if Penn State was using any of the marks that have been applied to the VB Penn State Merchandise).*

**RESPONSE:** *Disputed in part.* The characterization of what Mr. Hartvigson did in 2018 is disputed. Rather than what might be traditionally considered a "trademark clearance" search, Mr. Hartvigson performed searches to confirm that the historic University-related images met the four criteria necessary for appearing on Vintage Brand's website: The first criteria is that the images must appear on memorabilia created before 1989. Hartvigson Decl. (Doc. 116-2) ¶ 15. The second selection criteria is that there is no copyright symbol © on any image. *Id.* The third selection criteria is that the image is not currently being used in connection with educational services or athletic teams by the college or team from which the memorabilia originated. *Id.* The fourth criteria is that the historic image is both unique (not widely available from collectors) and has artistic value. *Id.* That Mr. Hartvigson reviews trademark databases when performing this review does not render it a "trademark clearance" search in the traditional sense. Additionally, when Mr. Hartvigson conducts searches, he considers the images as a whole. Supp. Hartvigson Decl. ¶ 8.

145. In this preclearance search, Chad Hartvigson "checked the trademark database", "checked Fanatics.com for what was currently being sold in the marketplace", and then "ran a Google search on products that were being sold." *See Vintage Brand Dep. (Ex. 30) at 150:8-151:6.*

**RESPONSE:** *Undisputed. See* Response to Statement No. 144, *supra.*

146. Through his search of USPTO records, Chad Hartvigson saw that Penn State owns federal trademark registrations for the PENN STATE Mark. *Vintage Brand Dep. (Ex. 30) at 165:16-21.*

**RESPONSE:** *Undisputed. See* Response to Statement No. 144, *supra*.

## B. Defendants Ignore Trademark Laws Even After the Eleventh Circuit Affirmed their Liability for Infringing Another School's Rights.

147.    Other colleges and universities have brought lawsuits against Vintage Brand, alleging that Vintage Brand has infringed the schools' trademark rights. *See Second Amended Compl. (Dkt. 67), ¶ 3 & Answer (Dkt. 72), ¶ 3 (admitting same); Vintage Brand Dep. (Ex. 30) at 49:23-25, 58:13-18, 64:6-9, 66:23-25, 67:2-10 (Vintage Brand has been sued for trademark infringement around five times).*

**RESPONSE:** *Undisputed.*

148.    Sportswear has also been sued several times for trademark infringement. *Vintage Brand Dep. (Ex. 30) at 58:13-18.*

**RESPONSE:** *Undisputed.*

149.    In a lawsuit brought by the Savannah College of Art and Design ("SCAD"), Sportswear was enjoined from selling merchandise related to SCAD following litigation in which the Court of Appeals for the Eleventh Circuit reversed a decision in Sportswear's favor and then, following additional proceedings, affirmed judgment against Sportswear. The Supreme Court declined to review the Court of Appeals' decision. *Vintage Brand Dep. (Ex. 30) at 61:6-64:5.*

**RESPONSE:** *Undisputed.*

## C. Vintage Brand's Intent to Resume Using the University Marks

150.    Vintage Brand "intends to re-enable the [VB Penn State Store] webpage [on the Vintage Brand website], which will not include the Pozniak Lion [Logo], when this lawsuit is resolved." *See Answer (Dkt. 72), ¶ 96.* Chad Hartvigson has expressed his skepticism of collegiate licensing, which he referred to as involving "monopolistic antitrust violations" because CLC facilitates licensing agreements *Vintage Brand Dep. (Ex. 30) at 116:16-118:11.* Mr. Hartvigson also testified that he has never asked Penn State for permission to use the PENN STATE Mark. *Id. at 121:3-15.*

**RESPONSE:** *Undisputed.*

**D. Vintage Brand Ignores Penn State's Cease and Desist Letter**

151.    On December 17, 2020, Penn State sent a cease and desist letter to Vintage Brand regarding its unauthorized use of Penn State's marks. In this letter, Penn State reviewed its rights in different marks and demanded that Vintage Brand immediately cease all use of Penn State's trademarks. *See Ex. 28 [PSU0007274] at 2-4 (cease and desist letter). See also Ex. 53 [PSU0007266] at 2-9 (screenshots of Vintage Brand website selling Penn State merchandise, taken December 9, 2020).*

**RESPONSE:** *Undisputed.*

152.    Vintage Brand did not comply with Penn State's demands to stop using the University Marks on the Vintage Brand Website other than removing merchandise using the Pozniak Lion Logo. *See Petulla Decl. (Ex. 1), ¶ 23; Sportswear Dep. (Vol. 2) (Ex. 36) at 11:20-14:15 (Defendants removed VB Penn State Merchandise bearing the Pozniak Lion Logo after receiving cease and desist letter from Penn State).*

**RESPONSE:** *Undisputed.*

153.    Screenshots of the Vintage Brand website taken on January 11, 2021, show that the VB Penn State Store remained active following the December 17, 2020 cease and desist letter. *See Ex. 31 [PSU0007325] at 2-78 (screenshots of the VB Penn State Store on Vintage Brand website taken January 11, 2021).*

**RESPONSE:** *Undisputed.*

154.    Around this same time, Sportswear was similarly infringing Penn State's trademarks by selling apparel connected to Penn State under a subpage titled "Pennsylvania Milton S Hershey Med Nittany Lions Apparel Store." *See Ex. 54 [PSU0007294] at 2-4 (screenshots of Penn State store on prepsportswear.com, taken December 17, 2020).*

**RESPONSE:** *Disputed in part.* Undisputed that as of December 17, 2020,

Sportswear's website included a subpage titled "Pennsylvania Milton S. Hershey

Med Nittany Lions Apparel Store." Disputed that Sportswear's decorative use of the text PSMS and NITTANY LIONS on apparel constitutes trademark infringement.

155.    A few days later, on December 21, 2020, Penn State sent Sportswear a cease and desist concerning its use of trademarks belonging to Penn State. In this letter, Penn State again reviewed its trademark rights and demanded that Sportswear stop selling goods using those marks on <prepsportswear.com>. *See Ex. 29 [PSU0007297] at 2-4 (cease and desist letter to Sportswear).*

**RESPONSE:** *Undisputed.*

156.    In response to this cease and desist, Sportswear removed all products related to Penn State from the preprsportswear.com website. *See Sportswear Dep. (Vol. 2) (Ex. 36) at 28:4-29:19 (testimony that Sportswear took down apparel related to Penn State's medical school in response to the Penn State cease and desist, and that since those products were taken down, Prep Sportswear has not since had any products with Penn State-related imagery on its website).* Despite taking down the Penn State-related products on its own website, Sportswear continued to manufacture the VB Penn State Merchandise for Vintage Brand subsequent to its receipt of the cease and desist letter from Penn State. *Ex. 46 at 3-20 (Vintage Brand's supplemental response to Interrogatory 7 listing with information on the sales that Defendants have made of VB Penn State Merchandise, including quantities of merchandise sold, and information on dates of use and revenues).*

**RESPONSE:** *Undisputed.*

## VII. Vintage Brand Itself Purports to Own and License a Trademark for Itself

157.    Vintage Brand owns a federal trademark registration for a logo that includes a design and the words "Vintage Brand". *See Vintage Brand Dep. (Ex. 30) at 96:3-16.*

**RESPONSE:** *Undisputed.*

158.    Vintage Brand has entered into a Licensing & Fulfillment Agreement with Sportswear which provides that Vintage Brand owns a number of trademarks, and licenses those marks to Sportswear for use on specific goods. *See Exhibit 55 at 2-3, 17-20, 34-35 (Licensing and Fulfillment Agreement and Renewed Licensing and Fulfillment Agreement, both entered between Sportswear and Vintage Brand,*

*covering the period of November 1, 2017 through December 31, 2023 including both agreements).*

**RESPONSE:** *Undisputed.*

159. In the original and renewed Licensing and Fulfillment Agreements, Vintage Brand claims to own and to be licensing to Sportswear the word mark VINTAGE BRAND and a separate mark referred to as "VINTAGE BRAND LOGO". *See Exhibit 55 at 18, 35 (Exhibit B to Licensing and Fulfillment Agreements, listing the trademarks that Vintage Brand asserts to own and to be licensing); Sportswear Dep. (Vol. 1) (Ex. 35) at 16:5-22 (confirming marks and goods covered by licensing agreement).*

**RESPONSE:** *Undisputed*.

160. In the original and renewed Licensing and Fulfillment Agreements, Vintage Brand licenses to Sportswear the right to use Vintage Brand's marks in connection with: Canvas Art; Posters or Prints; Wall Graphics; Coasters; Mugs; Drinkware; Magnets; Home Décor; T-Shirts; Hats; Fleece; Shorts; Stickers; Towels; Blankets; Pillows; and Tote Bags. *See Exhibit 55 at 17, 34 (Exhibit A to Licensing and Fulfillment Agreements, listing the goods on which Sportswear may use Vintage Brand's marks under this license); Sportswear Dep. (Vol. 1) (Ex. 35) at 16:5-22 (confirming marks and goods covered by licensing agreement).*

**RESPONSE:** *Undisputed.*

161. Because Sportswear's products (such as t-shirts) are manufactured by third parties, the License and Fulfillment Agreement between Sportswear and Vintage Brand allows Sportswear to use Vintage Brand's trademarks on the front of a t-shirt, as shown below:



*See Ex. 41 at 92 (screenshot of t-shirt using Vintage Brand logo taken from survey of David Franklyn where the image was used as a control image); Exhibit 55 at 17, 34 (Exhibit A to Licensing and Fulfillment Agreements, listing the goods on which Sportswear may use Vintage Brand's marks under this license, including t-shirts); DeLong Dep. (Ex. 40) at 47:10-48:15 (testifying that Vintage Brand sells a t-shirt bearing this logo on the Vintage Brand website); Sportswear Dep. (Vol. 1) (Ex. 35) at 16:5-22 (confirming that the licensing and fulfillment agreement cover the word mark VINTAGE BRAND and the company's logo, and that the list of goods in Exhibit A to the agreement contains the list of items on which Sportswear can apply the marks).*

**RESPONSE:** *Disputed*. The purpose of the license Vintage Brand granted to Sportswear in the Fulfillment Agreement is to permit Sportswear to print Vintage Brand's trademarks as a source indicator on the products it creates pursuant to the Fulfillment Agreement, such as on the inside-collar of a t-shirt:



VBEx. V (Doc. 116-24); *see also* Supp. Hartvigson Decl. ¶ 9.

162.    Vintage Brand has used the University Marks to offer and sell goods covered by Penn State's federal registrations. *See Ex. 46 at 3-20.* In response to Penn State's Interrogatory No. 7, Vintage Brand produced a chart containing images used on the VB Penn State Merchandise, along with information about the types of merchandise sold and information about actual sales. *Id.* Vintage Brand supplemented this information in February *2023, identifying additional images that had been used on VB Penn State Merchandise. Id. (Vintage Brand's supplemental response to Interrogatory No. 7, listing VB Penn State Merchandise that it has sold, setting out quantities of items sold and revenue information). See also generally, Exs. 31, 32, 33 (screenshots of the VB Penn State Store on the Vintage Brand Website showing VB Penn State Merchandise offered by Defendants).* A chart showing the VB Penn State Merchandise that Defendants have sold, alongside the corresponding University Mark, is shown here:

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 1 | 

Ex. 33 at 3 (T-Shirt)

Vintage Brand offers the same design on:
• T-Shirts: Ex. 32 at 173
• Sweatshirts: Ex. 32 at 146 (bottom left)
• Hats: Ex. 32 at 41
• Socks: Ex. 32 at 224 (second row right)
• Koozies: Ex. 31 at 31 (top center)
• Coasters: Ex. 33 at 5
• Mugs: Ex. 32 at 71 (third row right)
• Drinkware: Tumblers: Ex. 33 at 15 (fifth row center); Water Bottles: Ex. 32 at 71 (third row left)
• Decorative Wall Plaques: Metal Wall Art: Ex. 32 at 94
• Magnets: Ex. 32 at 146 (second row left)
• Cutting Boards: Ex. 32 at 109 | PENN STATE | U.S. Reg. 1308610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts. *See* Ex. 4 at 5-8.

U.S. Reg. 5766698 (PENN STATE), covering, inter alia, decorative magnets, ceramic mugs, drinking glasses, cutting boards, hooded sweatshirts, caps being headwear, coasters. *See* Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|-----|-----------------------------------|----------------------------------------------------|-----------------------------------|
| 2 |   Ex. 33 at 13 (Magnets)  Vintage Brand offers the same design on: <br>• T-Shirts: Ex. 32 at 32 <br>• Sweatshirts: Ex. 32 at 33 <br>• Hats: Ex. 32 at 47 <br>• Socks: Ex. 32 at 224 (top left) <br>• Koozies: Ex. 31 at 31 (bottom left) <br>• Coasters: Ex. 31 at 47 (bottom left) <br>• Drinkware: Tumblers: Ex. 33 at 15 (fifth row left); Water Bottles: Ex. 32 at 72 (third row left) <br>• Decorative Wall Plaques: Metal Wall Art: Ex. 32 at 88 (second row right) <br>• Magnets: Ex. 33 at 13 <br>• Cutting Boards: Ex. 32 at 112 | **PENN STATE**   | U.S. Registration No. 1308610 (PENN STATE), covering, inter alia, decals, stickers, decorative wall plaques, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweat shirts, socks, hats. *See* Ex. 4 at 5-8.  U.S. Registration No. 5766698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, cutting boards, hooded sweatshirts, sweatpants, caps being headwear, coasters. *See* Ex. 4 at 14-16.  S Lion Logo: No federal registration; covered by Penn State's common law trademark rights. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 3 | <br>Ex. 32 at 44 (Hats)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 32 at 23<br>• Sweatshirts: Ex. 32 at 24<br>• Socks: Ex. 32 at 232<br>• Koozies: Ex. 33 at 121<br>• Coasters: Ex. 32 at 143 (middle)<br>• Mugs: Ex. 32 at 76<br>• Drinkware: Tumblers: Ex. 32 at 71 (top right)<br>• Decorative Wall Plaques: Metal Wall Art: Ex. 32 at 97<br>• Magnets: Ex. 32 at 149 (top right)<br>• Cutting Boards: Ex. 32 at 104 | <br><br>**PENN STATE**<br><br>THE PENNSYLVANIA STATE UNIVERSITY<br><br> | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, cutting boards, hooded sweatshirts, caps being headwear, coasters. *See* Ex. 4 at 14-16.<br><br>U.S. Registration No. 1,315,693 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, drinking mugs, tankards, glasses, cups, and tumblers. See Ex. 6 at 10-12.<br><br>U.S. Registration No. 5,399,989 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, hats, shirts, sweat shirts, and t-shirts. See Ex. 6 at 17-18.<br><br>U.S. Registration No. 5,742,516 (THE PENNSYLVANIA STATE UNIVERSITY), covering decorative magnets. See Ex. 6 at 5-6.<br><br>U.S. Registration No. 1,276,712 (University Seal), covering, inter alia, decorative magnetic stickers, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts, and hats. See Ex. 17 at 5-7.<br><br>U.S. Registration No. 5,877,080 (University Seal), covering, inter |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
|  |  |  | alia, coasters, ceramic mugs, hooded sweatshirts. See Ex. 17 at 14-15. |
| 4 |   Ex. 33 at 36 (Tumbler)  Vintage Brand offers the same design on: <br>• T-Shirts: Ex. 32 at 35 <br>• Sweatshirts: Ex. 32 at 36 <br>• Hats: Ex. 32 at 56 <br>• Socks: Ex. 32 at 224 (top middle) <br>• Koozies: Ex. 31 at 31 (top left) <br>• Coasters: Ex. 32 at 217 (right) <br>• Mugs: Ex. 32 at 79 <br>• Drinkware: Water Bottles: Ex. 32 at 72 (third row right) <br>• Decorative Wall Plaques: Posters: Ex. 32 at 216; Metal Wall Art: Ex. 32 at 88 (top middle); Canvas Wall Art: Ex. 32 at 132 <br>• Magnets: Ex. 32 at 6 (top left) <br>• Cutting Boards: Ex. 32 at 106 <br>• Puzzles: Ex. 31 at 72 (bottom center) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.  U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, cutting boards, hooded sweatshirts, caps being headwear, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 5 | \n\nEx. 33 at 38 (Mug)\n\nVintage Brand offers the same design on:\n- T-Shirts: Ex. 32 at 26\n- Sweatshirts: Ex. 32 at 26 (right)\n- Hats: Ex. 32 at 68\n- Socks: Ex. 32 at 228\n- Koozies: Ex. 33 at 73\n- Coasters: Ex. 33 at 115\n- Mugs: Ex. 32 at 82\n- Drinkware: Water Bottles: Ex. 33 at 125\n- Magnets: Ex. 31 at 59 (bottom right) | THE PENNSYLVANIA STATE UNIVERSITY\n\n\n\n | U.S. Registration No. 1,315,693 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, drinking mugs, tankards, glasses, cups, and tumblers. See Ex. 6 at 10-12.\n\nU.S. Registration No. 5,399,989 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, hats, shirts, sweat shirts, and t-shirts. See Ex. 6 at 17-18.\n\nU.S. Registration No. 5,742,516 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, decorative magnets. See Ex. 6 at 5-6.\n\nU.S. Registration No. 1,276,712 (University Seal), covering, inter alia, decorative magnetic stickers, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts, hats. See Ex. 17 at 5-7.\n\nU.S. Registration No. 5,877,080 (University Seal), covering, inter alia, coasters, ceramic mugs, hooded sweatshirts. See Ex. 17 at 14-15.\n\nU.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, decorative magnetic stickers, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweatshirts, and hats. See Ex. 9 at 11-13. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 6 | <br><br>Ex. 33 at 41 (Koozies) (second row left)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 33 at 127<br>• Sweatshirts: Ex. 33 at 77<br>• Hats: Ex. 32 at 50<br>• Socks: Ex. 33 at 85<br>• Coasters: Ex. 31 at 48 (top center)<br>• Mugs: Ex. 33 at 87<br>• Drinkware: Tumblers: Ex. 33 at 95; Water Bottles: Ex. 32 at 72 (bottom right)<br>• Magnets: Ex. 33 at 14 (second row right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, hooded sweatshirts, caps being headwear, coasters. See Ex. 4 at 14-16. |
| 7 | <br><br>Ex. 33 at 71 (Sweatshirt)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 32 at 177<br>• Hats: Ex. 32 at 53 | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, drinking mugs, tankards, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, hooded sweatshirts, caps being headwear, coasters. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | • Socks: Ex. 32 at 224 (third row right)<br>• Coasters: Ex. 31 at 47 (bottom center)<br>• Mugs: Ex. 32 at 72 (top right)<br>• Drinkware: Water Bottles: Ex. 32 at 73 (first full row middle)<br>• Magnets: Ex. 33 at 14 (second full row left) | | |
| 8 | <br>Ex. 33 at 67 (bottom middle) (Puzzle)<br><br>Vintage Brand offers the same design on:<br>• Coasters: Ex. 33 at 75<br>• Posters: Ex. 32 at 206 (bottom center)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 32 at 116 (third row right)<br>• Magnets: Ex. 32 at 149 (top middle right)<br>• Cutting Boards: Ex. 32 at 103 (third row left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |
| 9 |  | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
|  | Ex. 32 at 143 (top left) (Hats)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 32 at 6 (second row left)<br>• Hats: Ex. 32 at 62<br>• Socks: Ex. 32 at 224 (bottom right)<br>• Koozies: Ex. 32 at 74 (top left)<br>• Coasters: Ex. 31 at 49 (center)<br>• Mugs: Ex. 32 at 194 (second full row left)<br>• Tumblers: Ex. 32 at 73 (second full row right)<br>• Water Bottles: Ex. 32 at 202<br>• Magnets: Ex. 32 at 4 (bottom left) |  | alia, decorative magnets, drinking glasses, caps being headwear, coasters. *See* Ex. 4 at 14-16. |
| 10 | <br><br>Ex. 32 at 5 (t-shirt)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 32 at 12 (bottom middle)<br>• Sweatshirts: Ex. 32 at 149 (top left)<br>• Socks: Ex. 31 at 68 (top center)<br>• Drinkware: Water Bottles: Ex. 31 at 44 (top right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, tankards, glasses, cups, t-shirts, sweat shirts, socks. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, drinking glasses, hooded sweatshirts. *See* Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 11 |  Ex. 32 at 120 (Cutting Board)<br><br>Vintage Brand offers the same design on:<br>• Decorative Wall Plaques: Posters: Ex. 32 at 120; Metal Wall Art: Ex. 32 at 91; Canvas Wall Art: Ex. 32 at 120<br>• Puzzles: Ex. 32 at 120 | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, cutting boards, jigsaw puzzles. See Ex. 4 at 14-16. |
| 12 |  Ex. 32 at 143 (canvas wall art) (top right)<br><br>Vintage Brand offers the same design on:<br>• Coasters: Ex. 31 at 47 (middle center)<br>• Mugs: Ex. 32 at 193 (bottom middle)<br>• Decorative Wall Plaques: Posters: Ex. 32 at 206 (second row right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs, tankards, glasses, cups,. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, drinking glasses, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | • Puzzles: Puzzles: Ex. 31 at 71 (top center) | | |
| 13 | <br>Ex. 32 at 143 (second row right) (Poster) | PENN STATE<br> | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, banners. See Ex. 9 at 11-13. |
| 14 | <br>Ex. 32 at 117 (first full row middle) (Canvas Wall Art)<br><br>Vintage Brand offers the same design on:<br>• Decorative Wall Plaques: Posters: Ex. 32 at 208 (third full row center)<br>• Magnets: Ex. 32 at 213 | PENN STATE<br> | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets. See Ex. 4 at 14-16.<br><br>U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, decorative magnetic stickers, banners. See Ex. 9 at 11-13. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 15 | Ex. 32 at 123 (Canvas Wall Art)<br><br>Vintage Brand offers the same design on:<br>• Decorative Wall Plaques: Posters: Ex. 32 at 212<br>• Puzzles: Ex. 32 at 213 | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, jigsaw puzzles. See Ex. 4 at 14-16. |
| 16 | Ex. 32 at 143 (bottom right) (wall art)<br><br>Vintage Brand offers the same design on:<br>• Coasters: Ex. 31 at 49 (bottom center)<br>• Decorative Wall Plaques: Posters: Ex. 32 at 206 (bottom left); Metal Wall Art: Ex. 32 at 88 (middle left); Canvas Wall Art: Ex. 32 at 126<br>• Magnets: Ex. 32 at 5 (second row middle) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques,. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | • Cutting Boards: Ex. 32 at 103 (second row left)<br>• Puzzles: Ex. 31 at 72 (top right) | | |
| 17 | <br>Ex. 32 at 74 (top right) (Mug)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 32 at 157 (bottom right)<br>• Sweatshirts (Ex. 32 at 166) (middle)<br>• Hats: Ex. 32 at 65<br>• Socks: Ex. 32 at 226 (right)<br>• Koozies: Ex. 32 at 150<br>• Coasters: Ex. 31 at 48 (bottom center)<br>• Mugs: Ex. 32 at 72 (second row middle)<br>• Drinkware: Tumblers: Ex. 32 at 73 (third full row left); Water Bottles: Ex. 32 at 73 (second full row left)<br>• Magnets: Ex. 31 at 55 (top center) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, drinking mugs, tankards, glasses, cups, tumblers, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, hooded sweatshirts, caps being headwear, coasters. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 18 | <br>Ex. 32 at 206 (second row left) (Poster)<br><br>Vintage Brand offers the same design on:<br>• Decorative Wall Plaques: Posters: Ex. 32 at 206 (middle left); Canvas Wall Art: Ex. 32 at 116 (second row right)<br>• Magnets: Ex. 31 at 56 (center bottom)<br>• Puzzles: Ex. 31 at 73 (top left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, jigsaw puzzles. See Ex. 4 at 14-16. |
| 19 | <br>Ex. 32 at 5 (third row middle) (pennant) | THE PENNSYLVANIA STATE UNIVERSITY<br><br><br><br> | U.S. Registration No. 5,742,516 (THE PENNSYLVANIA STATE UNIVERSITY), covering, inter alia, fabric flags. See Ex. 6 at 5-6.<br><br>U.S. Registration No. 1,276,712 (University Seal), covering, inter alia, pennants. See Ex. 17 at 5-7.<br><br>U.S. Registration No. 5,877,080 (University Seal), covering, inter alia, fabric flags, banners of textile. See Ex. 17 at 14-15.<br><br>U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, pennants, banners. See Ex. 9 at 11-13. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 20 |  Ex. 32 at 220 (top middle) (Poster)<br><br>Vintage Brand offers the same design on:<br>• Coasters: Ex. 33 at 47 (second row center)<br>• Decorative Wall Plaques: Posters: Ex. 32 at 6 (top middle); Canvas Wall Art: Ex. 32 at 129<br>• Magnets: Ex. 32 at 149 (center)<br>• Puzzles: Ex. 32 at 221 | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques,. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |
| 21 |  Ex. 32 at 138 (Pennant) | PENN STATE  | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, pennants. Ex. 4 at 5-8.<br><br>U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, pennants, banners. See Ex. 9 at 11-13. |
| 22 |  Ex. 32 at 116 (bottom center) (Canvas Wall Art) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | Vintage Brand offers the same design on:<br>• Mugs: Ex. 31 at 43 (bottom center)<br>• Decorative Wall Plaques: Posters: Ex. 32 at 208 (first full row center)<br>• Magnets: Ex. 32 at 4 (third row center) | | |
| 23 | Ex. 31 at 26 (bottom left) (Water Bottle)<br><br>Vintage Brand offers the same design on:<br>• T-Shirts: Ex. 31 at 13 (bottom left)<br>• Sweatshirts: Ex. 31 at 27 (top left)<br>• Hats: Ex. 31 at 30 (top right)<br>• Socks: Ex. 31 at 68 (top right)<br>• Koozies: Ex. 33 at 13 (top middle)<br>• Drinkware: Tumblers: Ex. 33 at 15 (fourth row right); Water Bottles: Ex. 33 at 12 (fourth row left)<br>• Decorative Wall Plaques: Posters: Ex. 31 at 53 (top right); Metal Wall Art: Ex. 31 at 66 (top left); Canvas Wall Art: Ex. 31 at 62 (bottom right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, drinking glasses, cutting boards, hooded sweatshirts, caps being headwear, jigsaw puzzles. See Ex. 4 at 14-16.<br><br>U.S. Registration No. 5,305,910 (Pozniak Lion Logo), covering, inter alia, hats, t-shirts, and sweatshirts. See Ex. 11 at 5-6. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | • Puzzles: Ex. 31 at 71 (bottom left)<br>• Cutting Board: Ex. 31 at 76 (bottom right)<br>• Magnets: Ex. 31 at 58 (bottom left)<br>• Coasters: Ex. 31 at 48 (top left) | | |
| 24 | <br>Ex. 31 at 39 (bottom center) (Mug) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, drinking glasses. See Ex. 4 at 14-16. |
| 25 | <br>Ex. 31 at 51 (center right) (Poster)<br><br>Vintage Brand uses this same design on:<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 61 (top right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8. |
| 26 |  | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| | Ex. 31 at 48 (bottom left) (Coasters)<br><br>Vintage Brand offers this design on:<br>• Magnets: Ex. 31 at 56 (bottom right)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 60 (top right); Metal Wall Art: Ex. 31 at 64 (bottom center)<br>• Cutting Board: Ex. 31 at 74 (center) | | alia, decorative magnets, cutting boards. *See* Ex. 4 at 14-16. |
| 27 |  | PENN STATE | N/A (This image was provided by Vintage Brand in its Interrogatory Response but Penn State has been unable to find a information about its use on the VB Penn State Store. *See* Ex. 46 at 14, 17. |
| 28 |  | PENN STATE | N/A (This image was provided by Vintage Brand in its Interrogatory Response but Penn State has been unable to find information about its use on the VB Penn State Store. *See* Ex. 46 at 14, 16. |
| 29 | <br>Ex. 31 at 35 (top right) (Mug)<br>Vintage Brand offers this design on:<br><br>• Magnets: Ex. 31 at 55 (top right)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, jigsaw puzzles. *See* Ex. 4 at 14-16. |

156

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|-----|-----------------------------------|---------------------------------------------------|-----------------------------------|
| | 62 (bottom left); Metal Wall Art: Ex. 31 at 65 (top center); Posters: Ex. 31 at 53 (top left)<br>• Puzzles: Ex. 31 at 70 (bottom right)<br>• Cutting Board: Ex. 31 at 75 (top right) | | |
| 30 | <br>Ex. 31 at 37 (center left) (Mug)<br><br>Vintage Brand offers this design on:<br>• Magnets: Ex. 31 at 55 (bottom left)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 64 (top right); Posters: Ex. 31 at 54 (top right)<br>• Puzzles: Ex. 31 at 71 (bottom right)<br>• Cutting Board: Ex. 31 at 74 (bottom left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, and jigsaw puzzles. See Ex. 4 at 14-16. |
| 31 | <br>Ex. 31 at 33 (bottom center) (Mug)<br><br>Vintage Brand also uses this design on: | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, jigsaw puzzles. See Ex. 4 at 14-16. |

157

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|-----|-----------------------------------|---------------------------------------------------|-----------------------------------|
| | • Decorative Wall Plaques: Posters: Ex. 31 at 53 (center right); Canvas Wall Art: Ex. 31 at 63 (top right)<br>• Puzzles: Ex. 31 at 71 (top left) | | |
| 32 | <br>Ex. 31 at 51 (bottom left) (Poster)<br><br>Vintage Brand offers this same design on:<br>• Magnets: Ex. 31 at 57 (center)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 61 (bottom left)<br>• Puzzles: Ex. 31 at 71 (center left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, jigsaw puzzles. See Ex. 4 at 14-16. |
| 33 | <br>Ex. 31 at 56 (bottom right) (Magnets)<br><br>Vintage Brand uses this same design on:<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 61 (top center) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 34 |   Ex. 31 at 49 (center left) (Coasters)  Vintage Brand offers this design on: <br>• Mugs: Ex. 31 at 36 (top right) <br>• Magnets: Ex. 31 at 59 (bottom center) <br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 60 (bottom left); Posters: Ex. 31 at 51 (top left) <br>• Puzzles: Ex. 31 at 72 (top left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs.  Ex. 4 at 5-8.  U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, coasters, and jigsaw puzzles. *See* Ex. 4 at 14-16. |
| 35 |   Ex. 31 at 52 (bottom right) (Poster)  Vintage Brand uses this same design on: <br>• Mugs: Ex. 31 at 38 (center right) <br>• Magnets: Ex. 31 at 57 (top right) <br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 62 (center right); Metal Wall Art: Ex. 31 at 67 (top left) <br>• Puzzles: Ex. 31 at 73 (top right) <br>• Cutting Board: Ex. 31 at 74 (bottom right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs.  Ex. 4 at 5-8.  U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, and jigsaw puzzles. *See* Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|-----|-----------------------------------|----------------------------------------------------|-----------------------------------|
| 36 | <br><br>Ex. 31 at 52 (top left) (Poster)<br><br>Vintage Brand uses this same design on:<br>• Mugs: Ex. 31 at 40 (center right)<br>• Magnets: Ex. 31 at 55 (bottom right)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 62 (top left); Metal Wall Art: Ex. 31 at 66 (bottom center)<br>• Puzzles: Ex. 31 at 73 (bottom left)<br>• Cutting Board: Ex. 31 at 76 (center right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs.  Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, jigsaw puzzles.  See Ex. 4 at 14-16. |
| 37 | <br><br>Ex. 31 at 50 (top center) (Poster)<br><br>Vintage Brand offers this same design on:<br>• Mugs: Ex. 31 at 42 (bottom center)<br>• Magnets: Ex. 31 at 55 (center)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 60 (top center) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs.  Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets.  See Ex. 4 at 14-16. |

160

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 38 |  Ex. 31 at 64 (top center) (Canvas Wall Art)<br><br>Vintage Brand offers this same design on:<br>• Mugs: Ex. 31 at 46 (top right)<br>• Decorative Wall Plaques: Posters: Ex. 31 at 54 (top center)<br>• Puzzles: Ex. 31 at 70 (bottom center) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, jigsaw puzzles. See Ex. 4 at 14-16. |
| 39 |  Ex. 31 at 46 (bottom center) (Mug)<br><br>Vintage Brand offers the same design on:<br>• Coasters: Ex. 31 at 47 (center)<br>• Magnets: Ex. 31 at 59 (top right)<br>• Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 61 (bottom center); Metal Wall Art: Ex. 31 at 66 (top right); Poster: Ex. 31 at 51 (bottom center)<br>• Cutting Board: Ex. 31 at 76 (top right) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, coasters. See Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 40 |  Ex. 31 at 49 (top center) (Coasters) <br><br> Vintage Brand offers the same design on: <br> • Magnets: Ex. 31 at 58 (top center) <br> • Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 61 (top left); Posters: Ex. 31 at 51 (center left) <br> • Puzzles: Ex. 31 at 72 (bottom left) | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques. Ex. 4 at 5-8. <br><br> U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, coasters, and jigsaw puzzles. See Ex. 4 at 14-16. |
| 41 |  Ex. 31 at 50 (bottom left) (Posters) <br><br> Vintage Brand offers this same design on: <br> • Magnets: Ex. 31 at 58 (top right) <br> • Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 60 (middle left) <br> • Puzzles: Ex. 31 at 71 (top right) <br> • Cutting Board: Ex. 31 at 76 (top center) |  | U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, decorative magnetic stickers, banners. See Ex. 9 at 11-13. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 42 |  Ex. 31 at 50 (bottom right) (Posters) <br><br> Vintage Brand offers this same design on: <br> • Mug: Ex. 31 at 37 (center) <br> • Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 60 (middle right); Metal Wall Art: Ex. 31 at 66 (top center) <br> • Cutting Board: Ex. 31 at 77 | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs. Ex. 4 at 5-8. <br><br> U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, cutting boards. See Ex. 4 at 14-16. |
| 43 |  Ex. 31 at 53 (bottom center) (Posters) <br><br> Vintage Brand offers this same design on: <br> • Magnets: Ex. 31 at 54 (bottom center) <br> • Decorative Wall Plaques: Canvas Wall Art: Ex. 31 at 63 (bottom center); Metal Wall Art: Ex. 31 at 65 (top left) <br> • Puzzles: Ex. 31 at 71 (bottom center) <br> • Cutting Board: Ex. 31 at 74 (bottom center) | PENN STATE <br><br>  | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques,. Ex. 4 at 5-8. <br><br> U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, cutting boards, and jigsaw puzzles. See Ex. 4 at 14-16. <br><br> U.S. Registration No. 1,350,286 (Lion Shrine Logo), covering, inter alia, decorative magnetic stickers, banners. See Ex. 9 at 11-13. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|---|---|---|---|
| 44 | <br>Ex. 31 at 59 (bottom left) (Magnets) | PENN STATE | U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets. *See* Ex. 4 at 14-16. |
| 45 | <br>Ex. 57 at 2 (showing College drop-down menu from Vintage Brand Website, with list of colleges including Penn State appearing, in screen capture from 2018).<br><br><br>Ex. 32 at 3 (example of a landing page on the VB Penn State Store, with the numerous references to PENN STATE NITTANY LIONS highlighted). | PENN STATE | U.S. Registration No. 1,308,610 (PENN STATE), covering, inter alia, decorative wall plaques, drinking mugs, tankards, glasses, cups, tumblers, pennants, shirts, t-shirts, sweat shirts, socks, hats. Ex. 4 at 5-8.<br><br>U.S. Registration No. 5,766,698 (PENN STATE), covering, inter alia, decorative magnets, drinking glasses, cutting boards, hooded sweatshirts, caps being headwear, coasters, and jigsaw puzzles. *See* Ex. 4 at 14-16. |

| No. | Vintage Brand Infringing Products | University Registered or Common Law Mark Infringed | Penn State Registration Infringed |
|-----|-----------------------------------|----------------------------------------------------|-----------------------------------|
| |  Ex. 32 at 173 (example product page from VB Penn State Store). This same format— with multiple references to PENN STATE NITTANY LIONS—is used on the product pages for every piece of merchandise offered through the VB Penn State Store. | | |

**RESPONSE:** *Disputed in part.* Undisputed that Vintage Brand sold the identified products and that the University alleges that these products are infringing. Disputed that Vintage Brand has used all of the alleged marks. Some of the images above were never put on Vintage Brand's website (e.g., Row Nos. 27–28). Further disputed that Vintage Brand has used any of the alleged marks in a trademark sense. Vintage Brand has only applied composite historic images decoratively to goods. Further, the Wayback Machine captures (Row No. 45, citing Ex. 57) are not admissible. Fed. R. Evid. 901.

Dated:  June 23, 2023

Respectfully submitted,

By: /s/ *Joshua D. Harms*

Joshua D. Harms, Esq., *pro hac vice*
Leslie Vander Griend, Esq., *pro hac vice*
John T. Fetters, Esq., *pro hac vice*
Valerie A. Walker, Esq., *pro hac vice*
Washington I.D. Nos. 55679, 28090, 40800, 52584
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone:   (206) 626-6000
Fax:       (206) 464-1496
Joshua.Harms@stokeslaw.com
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
Valerie.Walker@stokeslaw.com

Mark P. McKenna, Esq., *pro hac vice*
Illinois I.D. No. 6272699
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone:   (646) 898-2055
Fax:       (646) 906-8657
Mark@lex-lumina.com

Jodi S. Wilenzik, Esq.
Mark H. Perry, Esq.
PA Supreme Court I.D. Nos. 89205, 68610
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
Phone:  (215) 587-1101
Fax:       (215) 320-4159
jwilenzik@postschell.com
mperry@postschell.com

*Attorneys for Defendants*

166

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system on this 23rd day of June 2023, which

constitutes service on Plaintiff pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Allison L. Ebeck, Esquire
McGuire Woods LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA  15222-3142

Claire H. Eller, Esquire (admitted pro hac)
Lucy J. Wheatley, Esquire (admitted pro hac)
Matthew G. Rosendahl, Esquire (admitted pro hac)
McGuire Woods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219-3916
Attorneys for Plaintiff,
The Pennsylvania State University

Dated:  June 23, 2023          By: /s/ *Joshua D. Harms*
                             Joshua D. Harms, Esq., *pro hac vice*
                             Washington I.D. No. 55679
                             STOKES LAWRENCE, P.S.
                             1420 Fifth Avenue, Suite 3000
                             Seattle, WA 98101
                             Phone:  (206) 626-6000
                             Fax:     (206) 464-1496
                             Joshua.Harms@stokeslaw.com