# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br>Plaintiff,<br><br>v.<br><br>VINTAGE BRAND, LLC; SPORTSWEAR, INC., dba PREP SPORTSWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; MICHELLE YOUNG,<br><br>Defendants. | Case No. 4:21-cv-01091-MWB<br>Hon. Matthew W. Brann<br><br>JURY TRIAL DEMANDED |

## Plaintiff Penn State's Brief in Opposition to Defendants' Motion for Summary Judgment

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................1

II.   DISPUTES TO VINTAGE BRAND'S FACTUAL ASSERTIONS .............1

III.  LEGAL STANDARD .................................................5

IV.  ARGUMENT............................................................6

    A.   Penn State Owns Valid and Enforceable Rights in the University Marks. ...............................................6

        1.   The University Marks Are Presumptively Valid. .....................6

        2.   The University Marks are Not Merely Ornamental..................8

           a)   The University Marks Meet the Definition of a Trademark.................................................8

           b)   Vintage Brand's Arguments on Ornamentality Are Legally Incorrect and Unsupported by Any Evidence. ...............................................10

        3.   The University Seal is Registrable..........................14

    B.   The University Marks Are Not Unprotectable as Aesthetically Functional..............................................16

    C.   Vintage Brand is Using Confusingly Similar Marks and Should Not Be Granted Judgment on the Infringement and Unfair Competition Claims.............................................19

        1.   Vintage Brand's Infringing Merchandise is Confusingly Similar to Penn State's Genuine Merchandise. ......................19

           a)   Vintage Brand's Argument that the Court Should Consider Only Two of the Lapp Factors is Legally Unsupported.................................................19

           b)   Vintage Brand Asks This Court to Disregard Actionable Confusion as to Affiliation, Connection and Association.............................................20

           c)   Proper Application of the Lapp Factors Shows that Confusion is Likely; Vintage Brand is Not Entitled to Summary Judgment. .................................21

               i.   Similarity of the Marks ......................21

ii. Strength of the University Marks........................25

iii. Similarity of Goods, Price, and Degree of Care............................................................26

iv. Overlapping Markets..........................................27

v. Actual Confusion...............................................27

vi. Defendants' Intent ..............................................33

2. Vintage Brand's Arguments Premised on "Public Domain" Rights and *Dastar* Are Unsupported and Legally Erroneous. ..................................35

D. Vintage Brand Offers and Sells Counterfeit Penn State Merchandise. .......................................................39

E. Defendants Have Diluted the PENN STATE Mark...........................40

F. Defendants' Conduct Constitutes False Endorsement. ......................44

V. CONCLUSION..........................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    166 F.3d 191 (3d Cir. 1999) ...............................................................26

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000) ........................................................21, 24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................5

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015).............................................................................7

*Baker v. Master Printers Union*,
    34 F. Supp. 808 (D.N.J. 1940) ..........................................................23

*Board of Supervisors for Louisiana State University Agricultural &*
    *Mechanical College v. Smack Apparel*,
    550 F.3d 465 (5th Cir. 2008) ......................................................18, 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................6

*Chanel, Inc. v. Gordashevsky*,
    558 F. Supp. 2d 532 (D.N.J. 2008)....................................................39

*City of New York v. Blue Rage, Inc.*,
    435 F. Supp. 3d 472 (E.D.N.Y. 2020) ....................................15, 17, 18

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
    214 F.3d 432 (3d Cir. 2000) ................................................................7

*Concord Music Grp. Inc. v. STAX. PTY Ltd.*,
    2023 WL 2977495 (C.D. Cal. Apr. 6, 2023) .....................................13

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
    930 F.2d 1056 (3d Cir. 1991) ............................................................22

*In re County of Orange*,
 2022 WL 3137036 (T.T.A.B. 2022) ............................................................14, 15

*Dastar v. Twentieth Century Fox Film Corp.*,
 539 U.S. 23 (2003).....................................................................................*passim*

*Ducks Unlimited, Inc. v. Boondux, LLC*,
 2017 WL 3579215 (W.D. Tenn. Aug. 18, 2017)..............................................14

*Facenda v. N.F.L. Films, Inc.*,
 542 F.3d 1007 (3d Cir. 2008) ...........................................................................45

*In re Family Emergency Room LLC*,
 2017 WL 1345063 (T.T.A.B. 2017) ..................................................................15

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
 30 F.3d 466 (3d Cir. 1994) ..................................................................20, 21, 22

*Fujifilm N. Am. Corp. v. PLR IP Holdings*,
 2019 WL 274967 (S.D.N.Y. 2019)....................................................................40

*Go Pro Ltd. v. River Graphics, Inc.*,
 2006 WL 898147 (D. Col. Apr. 5, 2006) ..........................................................14

*Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*,
 776 F. Supp. 1454 (W.D. Wash. 1991) .............................................................27

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
 599 U.S. __, 2023 WL 3872519 (2023) .....................................................*passim*

*Keene Corp. v. Paraflex Indus., Inc.*,
 653 3d Cir. 822, 825 (3d Cir. 1981) ...................................................................9

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*,
 369 F.3d 700 (3d Cir. 2004) ..............................................................................20

*Macy's Inc. v. Strategic Marks, LLC*,
 No. 11-CV-06198-EMC, 2016 WL 374147 (N.D. Cal. Feb. 1,
 2016) ............................................................................................................13, 14

*Marketquest Grp., Inc. v. BIC Corp.*,
 316 F. Supp. 3d 1234 (S.D. Cal. 2018)..............................................................11

*In Re McDonald's Corp.*,
1978 WL 21263 (BNA) ...................................................................................7

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*,
424 F. Supp. 3d 334 (D. Del. 2019)...................................................................43

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmas. Co.*, 290 F.3d 578, 599 (3d Cir. 2002)............................24

*Ohio State Univ. v. Skreened Ltd.*,
16 F. Supp. 3d 905 (S.D. Ohio 2014) ................................................................17

*Parikh Worldwide Media, LLC v. Sheth*,
No. 20-cv-01185, 2021 WL 856901 (D.N.J. Mar. 8, 2021) ...............................37

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189 (1985)...........................................................................................10

*Pennzoil-Quaker State Co. v. Smith*,
No. 2:05-cv-1505, 2008 WL 4107159 (W.D. Pa. Sept. 2, 2008) ................25, 40

*SmartVent, Inc. v. USA Floodair Vents, Ltd.*,
193 F. Supp. 3d 395 (D.N.J. 2016) ......................................................................2

*Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*,
69 F. Supp. 3d 530 (E.D. Pa. 2014) ...................................................................16

*Texas Tech Univ. v. Spiegelberg*,
461 F. Supp. 2d 510 (N.D. Tex. 2006) ...............................................................17

*In re: The Pennsylvania State Univ.*
(T.T.A.B. 2021) ..................................................................................................41

*The Pennsylvania State University v. Parshall*,
2022 WL 2712051 (M.D. Pa. Feb. 17, 2022)...............................................26, 42

*Thomas v. Lawler*,
No. 1:CV-10-2437, 2015 WL 5567921 (M.D. Pa. Sept. 22, 2015) ...................13

*Tiffany & Co. v. Costco Wholesale Corp.*,
971 F.3d 74 (2d Cir. 2020) ................................................................................40

*Times Mirror Magazines, Inc. v. Las Vegas Sports News*,
212 F.3d 157 (3d Cir. 2000) ........................................................41, 42

*Turner v. State Farm Fire & Cas. Co.*,
260 F. Supp. 3d 419 (M.D. Pa. 2017) ............................................28, 29

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992) ........................................................................38

*U.S. Jaycees v. Philadelphia Jaycees*,
639 F.2d 134 (3d Cir. 1981) ..........................................................24

*University of Pittsburgh v. Champion Products, Inc.*,
566 F. Supp. 711 (W.D. Pa. 1983) ..................................................20

*Valley Forge Military Academy Found. v. Valley Forge Old Guard,
Inc.*,
24 F. Supp. 3d 451 (E.D. Pa. 2014) ................................................42

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
275 F. Supp. 2d 543 (D.N.J. 2003) ................................................25

*WickFire, LLC v. Woodruff*,
989 F.3d 343 (5th Cir. 2021) ....................................................36, 37, 39

*Wishkin v. Potter*,
476 F.3d 180 (3d Cir. 2007) ..........................................................6

**Statutes**

54 Pa. C.S.A. § 1124 ..........................................................................40, 41

15 U.S.C. § 1052 ................................................................................41

15 U.S.C. § 1052(b) ..........................................................................14, 15, 16

15 U.S.C. § 1055 ................................................................................26, 38

15 U.S.C. § 1065 ................................................................................7

15 U.S.C. § 1115(a) ..........................................................................16

15 U.S.C. § 1115(a)-(b) ....................................................................7

15 U.S.C. § 1115(b) ...............................................................................10

15 U.S.C. § 1116(d) ...............................................................................39

15 U.S.C. § 1125(a) ...........................................................................36, 45

15 U.S.C. § 1125(a)(1)...................................................................20, 21, 44, 45

15 U.S.C. § 1125(c)(2)(A) .......................................................................40

15 U.S.C. § 1127 ...........................................................................*passim*

Lanham Act ...................................................................................*passim*

## Other Authorities

Fed. R. Civ. P. 5(b)(2)(E) .......................................................................48

Fed. R. Civ. P. 56(a)...............................................................................5

Jacob Jacoby, *Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys*, Trademark Reporter, 92 TMR 890, 931-32 (2002)...............................................32

Mark A. Lemley & Mark McKenna, *Irrelevant Confusion*, 62 Stan. L. Rev. 413, 426 n.52 (2010) .....................................................................38

Trademark Manual of Examining Procedure § 1202.03 ...................................11, 12

# I.    INTRODUCTION

Vintage Brand's Motion for Summary Judgment (joined by all Defendants) (herein, **"Mem."**), asks this Court to disregard the plain language of the Lanham Act and the Supreme Court's recent decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, and authorize counterfeit collegiate merchandise. However, even if this Court were inclined to do so, Defendants still come up short because there is no record evidence to substantiate their arguments. Defendants fail to validate that any of the University Marks they use are in the "public domain" or that consumers perceive those marks as "ornamental" or purely "expressive." In fact, the record developed through discovery undermines their position at every turn: the "public domain images" Vintage Brand uses match Penn State's registered trademarks, and consumer surveys demonstrate clear source confusion and prove that the University Marks are perceived as trademarks. Defendants cannot justify clearcut counterfeiting via novel legal arguments, and certainly can't do so without evidence. Vintage Brand's motion for summary judgment should be denied.

# II.    DISPUTES TO VINTAGE BRAND'S FACTUAL ASSERTIONS

Penn State incorporates its Response in Opposition to Defendants' Statement of Undisputed Material Facts **("PRSMF")**, filed simultaneously herewith, which outlines the genuine disputes of material fact and additional facts that preclude

Defendants' requested relief. In addition to the issues identified therein, there are three unsupported assertions made by Defendants that are worth clarifying.

*First*, although Vintage Brand uses copyright-related terminology throughout its brief—referring to "historic" images that are in the "public domain"— it has no evidence to show that these concepts actually apply here. (Mem. 12, 16, 20-21, 24). Vintage Brand concedes that the memorabilia it uses to acquire images for the VB Penn State Merchandise was put out as recently as 1989. (DSMF ¶ 8). There is no reasonable inference that materials not even forty years old are "historic" or within the public domain under copyright law. *SmartVent, Inc. v. USA Floodair Vents, Ltd.*, 193 F. Supp. 3d 395, 424-25 (D.N.J. 2016) (partial evidence and self-serving declarations are insufficient to support asserted facts).

*Second*, though Defendants assert, without evidence, that the University Marks are mere "decorative elements," the evidentiary record demonstrates that the University Marks are trademarks. Penn State owns registrations for the PENN STATE Mark, the TPSU Mark, the Lion Shrine Logo, the Pozniak Lion Logo, and the University Seal (the "**Registered Marks**") and Penn State has been using those Marks and the S Lion Logo continuously since before 2018. (PSMF ¶¶ 9-11, 15-17, 25-27, 32, 34, 40-41, 43-45, 90). *See also infra,* § IV.A.1 (discussing evidentiary

effect of registrations under Lanham Act).[1]  And the evidence further shows that Penn State has used the University Marks in a variety of ways, with the Marks appearing in different sizes and locations on its merchandise, as shown below:



(PRSMF ¶ 101).  The Lanham Act expressly states that "a mark shall be deemed to be in use in commerce…on goods when…it is placed *in any manner* on the goods".

---

[1] Vintage Brand points to additional trademarks that Penn State owns and currently uses as its primary marks for educational and athletic services.  (Mem. 16, DSMF ¶¶ 31-34).  They assert that Vintage Brand does not use either of those logos (*id.*), but this has no bearing on Vintage Brand's motion.  That Vintage Brand has not used two *different* trademarks does not negate its infringement of the marks at issue.

15 U.S.C. § 1127 (emphasis added).  Vintage Brand's asserted facts that the marks are mere "decorative elements" based on their size and placement are unsupported.

**_Third_**, Vintage Brand makes much ado about the "College Vault" program run by Penn State's exclusive licensing agent, Collegiate Licensing Corporation (**"CLC"**).  (Mem. 17-18, 21 n.2, 37).  College Vault is a program, through which select marks (usually retro logos) are licensed by CLC only to "premium" retailers, at a higher price point, and with more expensive advertising.  (PRSMF ¶ 86).  Vintage Brand portrays the College Vault program as a sham, going so far as to say that Penn State uses this program to "manufacture" trademark rights.  (DSMF ¶ 88).  However, the evidence contradicts this, as genuine merchandise is offered for sale through the College Vault program using the University Marks:





(PRSMF ¶ 88).  This use is sufficient to create and maintain trademark rights.

## III.  LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party" based on the evidence.  *Id.*  The moving party "bears the initial responsibility of informing the district court of the

basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At summary judgment, the court is required to examine the evidence "in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## IV.    ARGUMENT

Defendants seek summary judgment on only a portion of the claims and defenses at issue, but each of their arguments fails for the reasons set out below.

**A. <u>Penn State Owns Valid and Enforceable Rights in the University Marks.</u>**

Vintage Brand argues that it is entitled to summary judgment on the basis that Penn State does not own valid and enforceable trademarks, including assertions that the University Marks are merely ornamental and not source identifiers when used on merchandise, and a specific attack that the University Seal is not registrable under the Lanham Act. However, as explained below, the evidence shows conclusively that the University Marks are valid and enforceable.

**1.  The University Marks Are Presumptively Valid.**

Penn State owns federal registrations covering the Penn State Mark, the TPSU Mark, the Lion Shrine Logo, the Pozniak Lion Logo, and the University Seal. (PSMF ¶¶ 9-11, 15-17, 25-27, 32, 34, 43-45). And Penn State owns incontestable registrations for all of those marks other than the Pozniak Lion Logo—and even that registration now satisfies the criteria for incontestability. (PRSMF ¶¶ 37-39, 45, 52-

53, 57, 71-72); 15 U.S.C. § 1065 (criteria for a registration to become incontestable).

Under the Lanham Act, incontestable registrations are "conclusive evidence," and contestable registrations are "prima facie evidence" that the registered mark is valid, that the registrant owns the mark, and that the registrant has the exclusive right to use the registered mark in connection with the covered goods and services. *See* 15 U.S.C. § 1115(a)-(b). The Third Circuit recognizes this conclusive effect: "If the mark at issue is federally registered and has become incontestable, then validity, legal protectability, and ownership are proved." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000); s*ee also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2015); (confirming that contestable registrations are prima facie evidence of validity). The Registered Marks cover the same types of merchandise that Vintage Brand sells, further precluding Vintage Brand's challenge to Penn State's ownership rights. (PSMF ¶¶ 11, 17, 27, 34, 45, 71). Vintage Brand would need to present strong evidence to overcome the effect of Penn State's registrations at summary judgment, which it has not done.[2]

---

[2] Vintage Brand suggests that Penn State has not made bona fide use of the Pozniak Lion Logo. (Mem. 21 n.3). However, this Logo is used on apparel and merchandise for the Lion Ambassadors student group, Penn State's student alumni corps, under a license to the Penn State Alumni Association. (DSMF ¶¶ 57-68). This is "use" akin to a McDonald's employee wearing a shirt with the golden arches logo. *In Re McDonald's Corp.*, 1978 WL 21263, *1-3 (BNA) ¶ 702 (T.T.A.B. July 25, 1978) (reversing refusal to register logo for use on employee clothing). Second, the Pozniak Lion Logo is not included on Penn State's licensing art sheets because Penn State limits this Logo to just a few groups and purposes. (PSMF ¶ 36; PRSMF ¶ 63).

The only trademark at issue that is not covered by a federal registration is the S Lion Logo. But here too, there is ample evidence of Penn State's rights in this mark based on Penn State's continuous use of this mark on merchandise just like that sold by Vintage Brand. (PRSMF ¶¶ 78-79). Vintage Brand asserts otherwise, stating that there is no evidence of Penn State using the S Lion Logo prior to filing this lawsuit. (Mem. 21). Vintage Brand is mistaken, as there are many examples of Penn State and its licensees selling genuine merchandise bearing the S Lion Logo going back to 2013 and continuing through the present. (PRSMF ¶¶ 78-79, 86-88). This shows Penn State's valid and enforceable rights in the S Lion Logo.

### 2. The University Marks are Not Merely Ornamental.

#### a) The University Marks Meet the Definition of a Trademark.

Contrary to Vintage Brand's arguments, the fact that the University Marks are used as decorative elements does not render them "merely ornamental" and invalid. A trademark is a phrase or design that indicates source, including secondary source, such as a licensor. 15 U.S.C. § 1127 (statutory definition of "trademark"); *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. __, 2023 WL 3872519, *3 (2023) ("[A] mark tells the public who is responsible for a product."). Trademarks can serve multiple functions, indicating source while also being aesthetically pleasing or conveying a message. *Id.*; *Keene Corp. v. Paraflex Indus., Inc.*, 653 F.2d 822, 825 (3d Cir. 1981) (trademark status not determined by whether design is

visually pleasing, otherwise "[t]he more appealing the design, the less protection it would receive").

The evidence shows that consumers perceive the University Marks to be trademarks when used on clothing. The trademark recognition survey conducted by Professor David Franklyn addressed this issue head-on, measuring whether consumers looking at the University Marks employed decoratively on Vintage Brand's apparel identified them as trademarks. (PSMF ¶¶ 114-117). The survey results were that a significant percentage of consumers (ranging from 45% to 70%) perceived each of the University Marks as trademarks. *Id.* And despite bearing the burden of proof on invalidity, Vintage Brand has produced no evidence to the contrary, and did not conduct (or at least did not produce) any survey indicating that consumers perceive the University Marks as mere ornamentation. Other evidence further supports the trademark status of the University Marks, including that the Marks are used with trademark symbols. (PRSMF ¶ 101). Vintage Brand itself uses the ™ symbol with Penn State's S Lion Logo, compelling evidence that, regardless of its position in this lawsuit, Vintage Brand views the University Marks as trademarks:

 

(PSMF ¶¶ 118-119).

### b) *Vintage Brand's Arguments on Ornamentality Are Legally Incorrect and Unsupported by Any Evidence.*

Vintage Brand asserts at every turn that the University Marks are ornamental features of the merchandise, not trademarks. (Mem. 19, 21 n.3, 22, 30, 31, 34, 37, 45, 53). Vintage Brand's position is incorrect as a matter of proof and of law.

*First*, Vintage Brand's ornamentality challenge is largely barred because Penn State owns incontestable registrations covering the PENN STATE Mark, the TPSU Mark, the Lion Shrine Logo, and the University Seal in connection with apparel and the other types of merchandise at issue. (PSMF ¶¶ 10-11, 16-17, 26-27, 44-45). Incontestable registrations can only be challenged based on specific grounds enumerated in the Lanham Act, and these grounds do not include ornamentality. 15 U.S.C. § 1115(b) (listing the grounds on which incontestable registration may be challenged, which do not include a challenge based on ornamentality); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) (confirming that Lanham Act's limits on grounds to challenge incontestable registration limit defenses that may be asserted in civil action)*; see also Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1264 (S.D. Cal. 2018) (contestable registration protecting the same "salient feature" of an incontestable registration cannot be attacked on a defense unavailable for the incontestable registration).

Further, Vintage Brand ignores that, as a matter of law, a trademark can be *both* a source indicator *and* ornamental. *See Jack Daniel's*, 2023 WL 3872519 at *3 (discussing that trademarks can serve multiple functions, including identifying source while still appealing to customers' fancies or conveying messages). Only when a design is *merely* ornamental is that design not a trademark. McCarthy, § 7:24; Trademark Manual of Examining Procedure ("TMEP") § 1202.03. Vintage Brand's assertions regarding ornamentality—rather than *mere* ornamentality—are irrelevant. *Jack Daniel's*, 2023 WL 3872519 at *3.

***Second***, even if Vintage Brand could challenge the University Marks on the basis of ornamentality, Vintage Brand cannot establish as a matter of law that the University Marks are <u>merely</u> ornamental—or even just ornamental—because there is no record evidence to support this claim. Tellingly, while "ornamental" and variations thereof appear 11 times in Vintage Brand's brief, there is just 1 such appearance in its Statements of Fact—and no real attempt to cite evidence supporting that assertion. *See* (Mem. 19, 21 n.3, 22, 30, 31, 34, 37, 45, 53; DSMF ¶ 65 (Statement of Fact relying on passing attorney reference to t-shirts using the Pozniak Lion Logo "ornamentally", with the cited evidence including only the referenced deposition testimony and not pertaining to ornamentality descriptor). Vintage Brand's evidence in support its brief's 11 claims of ornamentality includes only Penn State trademark registrations, specimens of use, and images of Penn State products

for sale.  (Mem. 21; DSMF ¶¶ 36-40, 44-47, 51-53, 57, 64, 67, 70-71, 73-74).  This evidence does not prove how consumers perceive the Marks and cannot support the conclusory assertions Vintage Brand makes that the marks are purely ornamental.[3]

The absence of evidence here is striking.  Vintage Brand argued extensively at the motion to dismiss stage that the assessment of whether designs are merely ornamental requires a fact intensive determination as to consumer perception.  (Dkt. 39 at 2, 11-15).  And yet, while Vintage Brand proclaimed the need to "develop[] a robust record", a year and a half later Vintage Brand does not point to any evidence beyond unsupported conclusions and attorney ipse dixit to show how consumers actually perceive the marks, or that they view them as ornamental on merchandise. *See* (Dkt. 39 at 11).  *See Thomas v. Lawler*, No. 1:CV-10-2437, 2015 WL 5567921, at *1-2 (M.D. Pa. Sept. 22, 2015) (reviewing movant's burden to establish facts through citations to evidence); *Macy's Inc. v. Strategic Marks, LLC*, No. 11-CV-06198-EMC, 2016 WL 374147, at *5 (N.D. Cal. Feb. 1, 2016) (defendant must

---

[3] If anything, this evidence *contradicts* Vintage Brand's view because this evidence of Penn State's specimens and trademark registrations demonstrates that (i)  Penn State submitted those specimens of use to the USPTO, and (ii)  the Examining Attorney accepted those specimens, leading to the registrations being issued and maintained—which means that the Examining Attorney determined that, under applicable law, these specimens show use as a trademark.  *See* TMEP § 1202.03 (examining attorney evaluating registrability of trademark application must consider proposed mark "*as applied to the goods*, to determine whether ornamental matter serves a trademark function" and can be protectable (emphasis added)).

present evidence to show that consumers do not perceive any source-identifying function in order to succeed on defense that mark is merely ornamental).

**Third**, the law regarding secondary source means that Vintage Brand cannot show here that the University Marks are merely ornamental when used on Vintage Brand's counterfeit Penn State merchandise. There is no genuine dispute here that the University Marks function as trademarks in connection with other goods and services, such as educational and sports services. (PSMF ¶¶ 1, 5, 114-117; DSMF ¶¶ 24, 36, 44; (Mem. 38). The law establishes that otherwise ornamental matter can identify a "secondary source" of other goods and services, and thereby constitute a trademark. *See* McCarthy, § 24:8. The rationale underlying this doctrine is that when a service provider puts its mark on goods like apparel, this "serve[s] the function of advertising the company's primary goods or services and thus have more than a mere incidental function." McCarthy § 19:87 (discussing application of this concept in in the specific context of promotional goods). Courts have long recognized and applied this concept in various contexts beyond just colleges and sports teams. *See, e.g.*, *Concord Music Grp. Inc. v. STAX. PTY Ltd.*, 2023 WL 2977495, *3 (C.D. Cal. Apr. 6, 2023)* (rejecting mere ornamentality defense where defendant used plaintiff recording label's STAX mark on a shirt, because the mark could indicate plaintiff as secondary source); *Ducks Unlimited, Inc. v. Boondux, LLC*, 2017 WL 3579215, *23 (W.D. Tenn. Aug. 18, 2017)* (rejecting ornamentality defense for apparel and noting

"Sources include secondary sources such as licensors who authorize licensees to use the licensor's trademark in a manner that indicates sponsorship or authorization of the product."); *Macy's Inc.*, 2016 WL 374147, at *3 (discussing secondary source doctrine and noting its applicability in collegiate apparel); *Go Pro Ltd. v. River Graphics, Inc.*, 2006 WL 898147, *4 (D. Col. Apr. 5, 2006) (reviewing that trademark protection covers apparel that uses marks decoratively but indicates secondary source). Secondary source doctrine requires that Vintage Brand's ornamentality arguments be rejected.

### 3. The University Seal is Registrable.

Vintage Brand has also not substantiated its counterclaim seeking to cancel Penn State's registrations for the University Seal pursuant to 15 U.S.C. § 1052(b). The cases cited by Vintage Brand show that Section 1052(b) turns on consumer perception of whether the mark at hand will be perceived as a governmental designation. For example, in *In re County of Orange*, 2022 WL 3137036 (T.T.A.B. 2022), the Trademark Trial and Appeal Board ("TTAB") emphasized that consumer perception is determinative in applying § 1052(b) and refused to apply that provision without a properly developed record on how consumers perceive a given mark. *See* 2022 WL 3137036, at *10; *see also* *id.* at *11-12 (applying Section 1052(b) to preclude registration where the record was fully developed). In *In re Family Emergency Room LLC*, 2017 WL 1345063 (T.T.A.B. 2017), the TTAB similarly

was unequivocal that Section 1052(b) requires evidence of consumer perception. *See* 2017 WL 1345063, *2 ("Thus, the relevant question is whether consumers will perceive matter in the mark as a flag."). The test is whether consumers perceive the mark as creating a distinct commercial impression, which can turn on stylization or the addition of other elements. *Id.*

Vintage Brand does not meet this burden. It does not point to any evidence showing how consumers perceive the University Seal. (Mem. 55-56). And even if Vintage Brand could point to any such evidence, factual disputes would preclude summary judgment given that in Franklyn's trademark recognition survey, 70% of consumers perceive the University Marks to be a trademark. (PSMF ¶ 117). Further, the evidence shows visual differences in the coloring, shape, and pattern, with additional elements that create a distinct commercial impression. (PSMF ¶¶ 42, 47, 50). It is reasonable to infer that these distinctions would impact how consumers perceive the University Seal. *See City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 487 (E.D.N.Y. 2020) (Section 1052(b) did not bar registration where mark included distinguishing elements and created separate commercial impression from government seal). The USPTO twice granted registrations to the University Seal (DSMF ¶¶ 70, 73), and Vintage Brand has not shown as a matter of law that Section 1052(b) of the Lanham Act requires that those registrations be cancelled.

**B. The University Marks Are Not Unprotectable as Aesthetically Functional.**

Vintage Brand argues that summary judgment should be granted in its favor because the University Marks are aesthetically functional and not subject to traditional likelihood of confusion analysis. (Mem. 38-39). This theory is unsupported.

**First**, the undisputed evidence is that Penn State owns registrations—many of which are incontestable—for all but one of the University Marks, which creates an evidentiary presumption of validity. (PSMF ¶¶ 9-11, 15-17, 25-27, 32, 34, 43-45); 15 U.S.C. § 1115(a) (any registration on the principal register "shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark...."); *Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530, 542 (E.D. Pa. 2014) ("[R]egistration is prima facie evidence of validity and non-functionality, shifting the burden of showing that the registered trademark is functional to the accused infringer.").

**Second**, Vintage Brand misconstrues the law on aesthetic functionality. In its telling, consumers want to purchase the VB Penn State Merchandise in order to express their support for Penn State. (Mem. 38-39). This expressive feature, they argue, means that the trademarks are aesthetically functional and so likelihood of confusion analysis is unnecessary. But the Supreme Court's recent decision in *Jack Daniel's* says otherwise. There, the Supreme Court repeatedly touched on the

multiple functions that trademarks can play—both acting as source indicators and serving expressive purposes. *Jack Daniel's*, 2023 WL 3872519, at *3. Even where, as in *Jack Daniel's*, the allegedly infringing marks were on non-competing products, and used to send a message (in that case, parody), the Supreme Court was clear: "[T]he infringement claim . . . rises or falls on likelihood of confusion" and this analysis takes into account any purportedly expressive message intended by the defendant. *Id.* at *6. Even if the University Marks are used by Vintage Brand to express allegiance to the University, such use still constitutes infringement when it creates a likelihood of confusion. *See Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 917 (S.D. Ohio 2014) (granting summary judgment of infringement and rejecting defense that there was no infringement because purchase of defendant's goods was "to express fan identification with and support for The Ohio State University."); *Texas Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 520 (N.D. Tex. 2006) (Rejecting defense that college marks on wearing apparel are functional: "The fact that a knit cap is scarlet and black or bears a 'Double T' does not affect the quality of the cap or its ability to keep one's head warm."); *City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 491 (E.D.N.Y. 2020) ("By defendant's reasoning, any logo or emblem would be precluded from trademark protection once it was used to 'decorate' or provide 'ornamentation' to an item of merchandise.") (granting summary judgment of infringement and holding that defendant's use on wearing

apparel of valid marks such as NYPD, FDNY, and the New York Police Department shield design as "decoration" was no defense).

This case is distinguishable from *LTTB LLC v. Redbubble*, cited by Defendants, in which the Ninth Circuit found that the mark LETTUCE TURN UP THE BEET was not used to identify the plaintiff as the source of the goods, but was used to serve "an aesthetic purpose wholly independent of a source-identifying function." 840 F. App'x 148, 151 (9th Cir. 2021). There, LTTB LLC presented no evidence that LETTUCE TURN UP THE BEET served a source-identifying function and that consumers viewed it as a trademark, rather than as an amusing phrase. *Id.* In contrast, the University Marks have no humorous meaning, and there is ample evidence these marks are associated solely with the University.

Vintage Brand's arguments rely on erroneous statements of law that have been rejected by other courts. On point here is *Board of Supervisors for Louisiana State University Agricultural & Mechanical College v. Smack Apparel*, 550 F.3d 465 (5th Cir. 2008). The defendant in that case sold merchandise such as t-shirts that incorporated university color schemes, including that of the plaintiff Louisiana State. 550 F.3d at 472-73. Like Vintage Brand, the *Smack Apparel* defendant argued that it did not infringe Louisiana State's rights in its color scheme because using those colors on t-shirts allowed consumers to express support for the school. *Id.* at 486-87. The court rejected the defendant's arguments and affirmed that the marks used on t-

shirts were nonfunctional. *Id.* at 488 ("Smack's alleged competitive disadvantage in the ability to sell game day apparel relates solely to an inability to take advantage of the Universities' reputation . . .[t]his is not an advantage to which it is entitled under the rubric of legitimate competition.").

**Third**, Vintage Brand's arguments must fail because there is no evidence that consumers perceive the University Marks as expression rather than as trademarks. *See supra*, pp. 8-9. In contrast, the record contains survey evidence that consumers perceive the University Marks, as applied to Vintage Brand's infringing merchandise, to be trademarks. (PRSMF ¶¶ 101, 111).

## C. **Vintage Brand is Using Confusingly Similar Marks and Should Not Be Granted Judgment on the Infringement and Unfair Competition Claims.**

Vintage Brand's motion for summary judgment as to Penn State's claims for trademark infringement and unfair competition should be denied.

### 1. **Vintage Brand's Infringing Merchandise is Confusingly Similar to Penn State's Genuine Merchandise.**

#### a) *Vintage Brand's Argument that the Court Should Consider Only Two of the Lapp Factors is Legally Unsupported.*

Rather than consider the range of factors applicable to likelihood of confusion under Third Circuit precedent, Vintage Brand urges this Court to look only at two factors: actual confusion and defendants' intent. (Mem. 34). Doing so, however, would likely be a misapplication of binding precedent, as the law in this Circuit is clear that courts should consider the various *Lapp* factors. *Fisons Horticulture, Inc.*

*v. Vigoro Indus., Inc.*, 30 F.3d 466, 481 (3d Cir. 1994) (reversing where "the district court misapplied some and did not consider others"). The likelihood of confusion analysis is flexible but does not stretch so far that a district court can look only at two factors. *Id.*; *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 709-12, 732 (3d Cir. 2004) (reversing order denying motion for preliminary injunction where court failed to analyze each *Lapp* factor and too narrowly defined confusion).

Vintage Brand's authority for this proposed legal standard comes only from the vacated decision in *University of Pittsburgh v. Champion Products, Inc.*, 566 F. Supp. 711 (W.D. Pa. 1983), which is entirely distinguishable. *Champion* carefully limited its analysis based on evidence showing that the University of Pittsburgh had stopped selling the apparel in question for a decade—a fact that severely curtailed meaningful analysis of the *Lapp* factors. 566 F. Supp. at 713, 717-18, 720. The evidence here permits a full review of the *Lapp* factors, and as a result looking at only two of those factors would constitute legal error. *Kos*, 369 F.3d at 709-12.

### b) Vintage Brand Asks This Court to Disregard Actionable Confusion as to Affiliation, Connection and Association.

Vintage Brand also asks this Court to disregard the full scope of the Lanham Act. Section 1125(a)(1)(A) of the Lanham Act bars any conduct which "is likely to cause confusion, or to cause mistake, or to deceive **as to the affiliation, connection, or association** of such person with another person, or as to the origin, **sponsorship, or approval** of his or her goods, services, or commercial activities by another person

. . ..” 15 U.S.C. § 1125(a)(1)(A) (emphasis added).  Yet Vintage Brand repeatedly

argues that the University is required to prove confusion as to "source." (Mem. 22-

25). Under the plain language of the Lanham Act, the fact that the University Marks

will cause consumers to (falsely) believe that Vintage Brand is affiliated, connected,

or in any manner associated with the University is alone sufficient to find likelihood

of confusion and liability under the Lanham Act. *A & H Sportswear, Inc. v.*

*Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000) ("Marks are

confusingly similar if ordinary consumers would likely conclude that [the two

products] share a common source, affiliation, connection or sponsorship.");

McCarthy § 24:6 (collecting cases).

### c) Proper Application of the Lapp Factors Shows that Confusion is Likely; Vintage Brand is Not Entitled to Summary Judgment.

#### i. Similarity of the Marks

Similarity of the marks is often the most important factor for determining

confusion.  *Fisons*, 30 F.3d at 476-78 ("degree of similarity of the marks may be the

most important of the ten factors in *Lapp*").  Here, Vintage Brand uses identical or

nearly identical iterations of each of the University Marks.  (PSMF ¶ 113).  The close

similarity is unsurprising given that Vintage Brand sources its images directly from

genuine Penn State merchandise.  (PSMF ¶ 74-80).  And where Vintage Brand has

modified the scanned images from genuine Penn State merchandise the differences

are minor and difficult for even their own personnel to identify.  (PSMF ¶¶ 76, 78).

Vintage Brand tries in vain to argue that the marks at issue are not confusingly similar because Vintage Brand uses "composites", just one portion of which contains any given University Mark. (Mem. 37-38). This is incorrect, given that Vintage Brand has used the S Lion Logo in complete form with no additional elements— even including the ™ trademark designation that appears on genuine Penn State merchandise. (PSMF ¶¶ 41, 118-119). And even beyond that, Vintage Brand's position is untenable. Vintage Brand does not and cannot dispute that every element of these "composite" images pertains to Penn State. (PRSMF ¶¶ 74-78, 113). The Third Circuit has rejected arguments that minor changes or the addition of generic or descriptive material to a trademark negates a finding that the marks are confusingly similar. *Fisons*, 30 F.3d at 477. This applies here, and with added force—Vintage Brand's use of multiple trademarks and features relating to Penn State, if anything, heightens the likelihood for confusion. *Id.*

Vintage Brand also argues that Penn State has never used the precise images shown on the Vintage Brand's infringing merchandise. (Mem. 14, 20-21). However, it is axiomatic that trademark rights extend to preclude the use of confusingly similar, and not just identical, marks. *See Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1063-64 (3d Cir. 1991) (vacating award of summary judgment to defendant and stating that similarity of COUNTRY FLOORS and COUNTRY TILES marks alone raised genuine factual dispute

precluding summary judgment on trademark infringement); 15 U.S.C. § 1127 (defining "counterfeit" as including marks that are "substantially indistinguishable"). Vintage Brand's suggested standard—that Penn State must have used the same images—is not the law. *Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J. 1940) ("Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.").

Vintage Brand argues that potential confusion is prevented because its house mark and "disclaimer" appear on the VB Penn State Store. (Mem. 36). But considered in the marketplace context, this evidence does not support a lack of confusion. Penn State, like many brand-owners, sells genuine merchandise through several different retailers who run e-commerce websites and similarly display their own house marks. (PRSMF ¶¶ 12, 94). That Vintage Brand's house mark appears on packaging also does not alleviate confusion given that consumers do not see this until <u>after</u> making a purchase. (DSMF ¶ 19).

The evidence shows that the "disclaimer" language used on the VB Website is not effective in preventing confusion. Defendants' expert Tülin Erdem specifically studied this issue in her consumer survey, running four versions of her survey across conditions that exposed respondents to different levels of disclaimers

(or lack thereof), including one condition that used the "disclaimers" currently on the VB Website. (PSMF ¶ 111). The results from that survey alone negate any assertion that Vintage Brand's "disclaimers" are effective in conveying to consumers that Vintage Brand is not authorized or licensed by Penn State. *Id.* That conclusion is also supported by the testimony of Meghan Maffey—the sole Vintage Brand customer to provide testimony—who had looked at the VB Website and did not recall seeing any disclaimer language. (PSMF ¶ 112). These "disclaimers" do not move the needle in Vintage Brand's favor, then, as the salient question is not whether "disclaimer" text appears, but whether it is effective.[4]

---

[4] The proposed amicus brief takes the position that any confusion here could be addressed via disclaimers. Dkt. 131-3 at 19-21. Their point here is made at a general level—making a theoretical argument about disclaimers and not even attempting to argue that the "disclaimers" on the VB Website are effective. And given that the amici's disclaimer arguments are divorced from the facts here (and that the facts here contradict their unsupported theoretical arguments about disclaimers), there is no basis to consider their position. The law is clear that confusion turns on consumer perception, and so the efficacy or inefficacy of disclaimer language is determined only by whether the language actually works in alleviating consumers' confusion. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmas. Co.*, 290 F.3d 578, 599 (3d Cir. 2002).

Further, amici's arguments on disclaimers go to the question of remedy, not liability. Dkt. 131-3 at 19-20 (urging the Court to rule that "clear labeling" can alleviate confusion, something that would only be relevant if confusion exists). *See also A&H Sportswear*, 237 F.3d at 219 (noting difference in analyzing disclaimers for liability versus remedy). The Third Circuit has indicated that it would be reversible error for the Court to find that a disclaimer (rather than an injunction) is the proper remedy for confusion here because Vintage Brand has not shown any evidence that the "disclaimers" currently on the VB Website (or any other disclaimer language) would actually be effective. *See U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 141-142 (3d Cir. 1981) (reversing district court's order requiring

## ii. Strength of the University Marks

Vintage Brand argues that the University Marks are not strong marks (*Lapp* factor 2) by maintaining that Penn State "hardly even uses" the Marks outside of licensing. (Mem. 37). The evidence says otherwise, as Penn State has exclusively used these Marks for decades, and nearly all of the University Marks are protected by federal registrations for a wide variety of goods and services, many of them incontestable. (PSMF ¶¶ 7, 9-11, 14-17, 24-27, 30-34, 42-45), *supra* at pp. 3-4. *Pennzoil-Quaker*, 2008 WL 4107159, *12 (marks protected by incontestable registrations are entitled to strong protection); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 571 (D.N.J. 2003) (marks strong where they were used continuously for years and were well-known in relevant customer group). And the strength of the University Marks was confirmed by the consumer surveys constructed by Plaintiff's expert David Franklyn. (PSMF ¶¶ 114-117, 138-140). In both surveys, consumers recognized the University Marks as trademarks signifying Penn State. *Id*. Further, the Lanham Act specifically contradicts Vintage Brand's suggestion that Penn State's licensing of its marks somehow renders those

---

infringer to use disclaimer language rather than cease use of the mark because it had not been clearly shown that the disclaimer would be effective, further noting that "[p]rotection of infringers is not a purpose of the Lanham Act" and so it was inappropriate to fashion a remedy designed to aid ongoing use of mark). *See also* McCarthy § 23:51 (noting trend, adopted by Second, Sixth, Ninth, and Tenth Circuits, to require defendant show that proposed disclaimer will dispel confusion).

marks weaker, as the statute provides that a licensee's use inures to the benefit of the owner (here, Penn State). *See* 15 U.S.C. §§ 1055, 1127.

### iii. *Similarity of Goods, Price, and Degree of Care*

There is no reasonable dispute that the goods at issue are the same (*Lapp* factor 9) and that they are sold at relatively low prices (*Lapp* factor 3). (PSMF ¶¶ 12-13, 18-19, 28, 37, 39-41, 46, 71, 121-123, 130, 162). These facts indicate likelihood of confusion because "a consumer would reasonably assume that [the goods] were offered by the same source, thereby leading to confusion." *A & H Sportswear*, 166 F.3d at 196 (discussing purpose of examining similarity of goods); *Pa. State Univ. v. Parshall*, 2022 WL 2712051 at *13 (M.D. Pa. Feb. 17, 2022) ("Taking advantage of another mark's goodwill can allow a competitor to get its foot in the door via initial confusion. . . .. Thus, closely related products strongly indicate a greater likelihood of confusion."). Vintage Brand's only contrary argument is its insistence that Penn State's claims go to Vintage Brand's use of imagery (Mem. 23-24), but that mischaracterizes Penn State's claims (*see* Dkt. 67, ¶¶ 2-4, 73-81, 89, 117-120). Further, characterizing Penn State's marks as "images" separate from the merchandise on which they appear is a thought experiment, not a meaningful distinction. All infringing trademarks begin as "images" before they are applied to infringing goods. Even taking Vintage Brand's position at face value, arguendo, courts have rejected similar attempts to distinguish goods from infringing

trademarks thereon, even finding that HARD ROCK CAFE t-shirts "are, in essence, identical" to transfers used to create t-shirts with HARD RAIN CAFE. *Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*, 776 F. Supp. 1454, 1461 (W.D. Wash. 1991).

### iv.    *Overlapping Markets*

There is no reasonable dispute here that the parties' customers overlap, given the evidence that both sell their Penn State merchandise to people looking to buy Penn State merchandise online.  (PSMF ¶¶ 53-54, 124, 127-129).

### v.    *Actual Confusion*

Customer Confusion.  Meg Maffey, who was first identified to Penn State through the discovery produced by Defendants in this case, gave clear testimony evidencing confusion.  (DSMF ¶ 104).  As Vintage Brand admits, Ms. Maffey emailed Vintage Brand in August 2022 to solicit a donation.  (DSMF ¶ 104).  Ms. Maffey testified that she visited the Vintage Brand website several times and that her impression from viewing the website was that Vintage Brand was authorized to use the University Marks.  (PRSMF ¶ 104).  She also testified that she does not recall any disclaimer language.  (PRSMF ¶¶ 13-14, 16-17).

Vintage Brand's attempts to undermine Ms. Maffey's testimony fail.  Their central theme is to argue that Ms. Maffey may not have even visited the Vintage Brand website, given that she could not recall with certainty the exact Penn State-

related products she saw on that site, and based on their statement that the timelines do not match up because Vintage Brand has disabled the VB Penn State Store at the time that Ms. Maffey recalls visiting the site.  (Mem. 35-36).  This argument avoids the important and undisputed evidence that Ms. Maffey reached out to Vintage Brand, as shown by her actual emails, as well as her testimony about visiting the website.  (DSMF ¶¶ 103-105).  Vintage Brand is asking the Court to discredit Ms. Maffey's testimony, which is improper at summary judgment. *Turner v. State Farm Fire & Cas. Co.*, 260 F. Supp. 3d 419, 424 (M.D. Pa. 2017).  Further, Vintage Brand's argument that the VB Penn State Store was disabled in 2022 is inconsistent with Vintage Brand's own expert Tulin Erdem's testimony that she had visited the VB Penn State Store in 2022.  (PRSMF ¶ 110).

Franklyn's Survey Finding Confusion.  The consumer survey conducted by David Franklyn testing likelihood of confusion further demonstrates confusion here—showing actionable confusion rates of 27% and 39% net confusion.  (PSMF ¶¶ 139-140).  While Vintage Brand did not move to exclude Franklyn's Eveready survey, it now brings out several arguments to challenge this survey's reliability, arguing that the survey should not prevent summary judgment.  (Mem. 31).

First, Vintage Brand challenges the control stimulus utilized in Franklyn's survey.  (Mem. 31-33).  It maintains that the control "has almost nothing in common with the test stimuli, except that it also shows a t-shirt." (Mem. 32).  This position is

puzzling given that a visual comparison between the test and control cell—including the comparison that Vintage Brand includes in its brief—underscores the many similarities. *Id.* Franklyn's control was an image of a Vintage Brand t-shirt offered for sale on the Vintage Brand website that bore the Vintage Brand logo. (DSMF ¶ 116). The test and control stimuli both show t-shirts for sale, offered by the same website, at a similar price point, with similar product titles and descriptions, and with "disclaimer" language appearing on the screenshot. (DSMF ¶¶ 116-117). Vintage Brand's suggestion that the control "has almost nothing in common" with the test image is plainly wrong. (DSMF ¶¶ 116-117).

Second, Vintage Brand argues that Franklyn's control is unreliable because it contains Vintage Brand's trademark and therefore suggests a source. (Mem. 32). Vintage Brand worries that this deflated the confusion rates among the control group because respondents in this group would be more likely to name Vintage Brand, rather than Penn State, as the source. This argument has no merit. It is fundamental that a control for an allegedly infringing trademark should also be a trademark plausibly used in the same product category. Dkt. 96-10 at 15.

Third, Vintage Brand argues, almost in passing, that Franklyn improperly primed respondents by including questions in the survey's screener questions that asked respondents whether they had purchased merchandise from a list of 13 separate universities. (Mem. 33; DSMF ¶ 119). As Franklyn explained in his

Report, these questions provide a datapoint allowing results to be filtered to include only past and prospective purchasers of Penn State-related merchandise. In addition, asking this specific Penn State-related question within a long list of distractors buffered out any improper priming. (PRSMF ¶ 119). There is no reason to think that respondents who were presented with a list of 13 different colleges (such as Ohio State, University of Pittsburgh, University of Georgia, Rutgers, and Penn State) during the initial screening questions would have paid special attention to Penn State rather than the other 12 schools or would have been primed to indicate "Penn State" rather than these other institutions. Similarly, any such priming effects would occur in both the test and control groups and thus be netted out in the final calculations.

Fourth, Vintage Brand argues that the Franklyn survey is unreliable because the images in the test and control stimuli do not show the URLs for the products for sale. (Mem. 33). This does not undermine the survey results, however, given that the images used in Franklyn's survey contained many pieces of information showing that the website was run by Vintage Brand, such as including the Vintage Brand name and house mark, along with its "disclaimers". (DSMF ¶¶ 117-118).

Finally, Vintage Brand maintains that the Franklyn survey erred by including respondents whose verbatim answers indicated that a "college", a "university", or the "NCAA" was the source, sponsor, affiliate, or licensor of the products. (Mem. 33-34). Vintage Brand's position appears to be that only answers specifically

writing out "Penn State" should be counted as confused. However, the data contradicts this, showing that Franklyn's analysis captured as confused respondents who gave answers such as "the college on the face of the stimuli", "university of the shirt", responses obviously referring to Penn State, and which clearly indicated that the respondent thought that the pictured university (and not Vintage Brand) was the source of the merchandise in the stimulus. (PRSMF ¶ 120).

Tulin Erdem's Flawed Survey. Vintage Brand points to the consumer survey conducted by Tulin Erdem to bolster its argument that confusion is unlikely here. But Erdem's survey should be accorded no weight[5] here given the flaws that infect the survey's design and render the survey's net confusion calculations completely meaningless. *See* Dkt. 96, 101 (Penn State's prior briefing on flaws in Erdem's consumer survey).

First, Vintage Brand's brief underscores how Erdem's survey studied the wrong legal issue. Her survey used a series of webpages that are replete with references to Penn State in both the test and control stimuli, "in order to isolate the effect of the images themselves." (Mem. 27 n.9). However, Penn State's allegation is that consumer confusion is likely because Vintage Brand infringes in two ways:

---

[5] Penn State submits that Erdem's consumer survey should be excluded entirely. *See* Dkt. 96. For purposes of this motion, however, Penn State asserts that even if the Court were to deny Penn State's *Daubert* motion, the survey should nonetheless be accorded little to no weight given the fundamental flaws that render the survey results meaningless and unhelpful.

(a) by featuring a "Penn State store" and "Penn State" product pages on its website that give the false impression at the point of sale that Vintage Brand is affiliated with Penn State and selling genuine Penn State merchandise, and (b) by actually manufacturing and selling those "Penn State" products, which create a likelihood of confusion at both the point of sale and in a post-sale context (i.e. when "Penn State" apparel is worn). *See, e.g.*, Dkt. 67, ¶¶ 2-4, 73-81, 89, 117-120; (PRSMF ¶ 42). By using a "control" replete with allegedly infringing University Marks, Erdem renders her survey meaningless.

Second, Vintage Brand tries unpersuasively to defend Erdem's control, asserting that it correctly measured noise. (Mem. 28 n.10). Their argument that the confusion rates of 17% to 30% (depending on her calculation method) in the control group reflects guessing is, simply, not a reasonable position. Jacob Jacoby, *Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys*, Trademark Reporter, 92 TMR 890, 931-32 (2002) ("[I]t would not be desirable for a control to yield confusion estimates that exceeded 10 percent. If it did, the control itself would begin to reach an actionable level of confusion and its utility as a control thereby compromised."). Respondents in the control group who thought that "Penn State" was the source of the pictured goods were not "guessing". They were drawing the obvious conclusion that merchandise sold in a Penn State-branded store next to other Penn State merchandise was also from Penn

State. Thus, they cannot be subtracted from the test to determine net confusion, and without subtracting the control, the test results show actionable levels of confusion. *Id.* at 932; Dkt. 96-3 at 32 (showing test confusion at 19-30%).

Third, as explained in Penn State's *Daubert* brief, Erdem's survey does not include the questions necessary to measure potential confusion about sponsorship, licensing, or affiliation, indicating that her confusion rates for the test groups are likely lower than they would be if she had included clear and appropriate questions. Dkt. 96 at 27-30. Similarly, Erdem's application of questions and measures to purportedly control for certainty is an untested and inappropriate analysis and including those questions may have further influenced how respondents answered. *Id.* at 30-33.

Erdem's survey should be excluded, and it cannot provide a basis to conclude as a matter of law that confusion is unlikely.

### vi. *Defendants' Intent*

Finally, the evidence of Defendants' intent indicates confusion is likely. Defendants conducted preclearance trademark searches, looking at records from the United States Patent and Trademark Office and searching websites like fanatics.com to see some of the products Penn State sells and to learn about the University's actual use. (PSMF ¶¶ 144-146). And Defendants knew that they had no permission to use the University Marks yet developed and sold the VB Penn State Merchandise

anyway.  *AVS Found.*, 2011 WL 6056903, at *7.  Defendants are also serial infringers who have licensed university trademarks in the past, but opted to stop asking for permission, or compensating the universities whose reputations they profit from. (PSMF ¶¶ 147-155).

While Vintage Brand points to its use of its house mark and its "disclaimers", neither of those are persuasive to find that this factor negates confusion.  It is common for e-commerce companies selling authorized merchandise to include their house mark on the website and packaging used.  (PRSMF ¶ 94).  And the presence of those retailer trademarks will not materially affect consumer perception as it relates to whether Penn State has authorized the use of its trademarks on the merchandise itself.  Consumers are well aware that third-party manufacturers are involved in the production of many branded items.  (DSMF ¶ 93-94, PRSMF ¶¶ 12, 93-94, 101; PSMF ¶ 68).  Vintage Brand's disclaimers are ineffective and were shown in fine print and in a manner that is purposely designed to keep portions hidden.  (PSMF ¶¶ 107-108).  This does not negate bad intent—it demonstrates it.

\*       \*       \*

On balance, a full examination of the *Lapp* factors shows that these factors support a likelihood of confusion.  As a result, Vintage Brand cannot show as a matter of law that confusion is unlikely.  Its motion should be denied.

## 2. Vintage Brand's Arguments Premised on "Public Domain" Rights and *Dastar* Are Unsupported and Legally Erroneous.

Vintage Brand invokes the Supreme Court's decision in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), arguing that this decision drastically curtailed the scope of trademark rights under the Lanham Act. But this position distorts the holding in *Dastar*. *Dastar* did not narrow the scope of trademark rights or change how trademark claims are analyzed. Rather, the *Dastar* decision considered the intersection between trademark and copyright law and stands for the proposition that a claim sounding in copyright cannot be dressed up as an unfair competition claim and brought under the Lanham Act. *Id.* at 32-34.

The background of *Dastar* is helpful in understanding the Court's ruling and its scope. *Dastar* involved a dispute over the rights in President Eisenhower's book about the allied campaign in Europe in World War II. 539 U.S. at 25-26. The plaintiff (Fox) acquired the exclusive right to produce a television show on that book, and created a TV show called "Crusade", which premiered in 1949. *Id.* Fox owned the copyright in that "Crusade" television series until 1977, when Fox allowed the copyright to expire and the show then went into the public domain. *Id.* Fox later reacquired copyright protection in the series. *Id.* In 1995, the defendant (Dastar) purchased a copy of the original "Crusade" video tapes—meaning, a tape that was in the public domain due to the ten-year lapse in Fox's copyright rights—and used portions of the "Crusade" video in creating its own docuseries about World War II,

called "Campaigns". *Id.* at 26-27. In marketing its new "Campaigns" series, however, Dastar left out any references to the original "Crusade" series. *Id.* Fox sued, bringing an unfair competition claim under the Lanham Act, 15 U.S.C. § 1125(a), under a theory that Dastar's failure to attribute the original series constituted a false designation of origin. *Id.* The Supreme Court ruled that the Lanham Act did not provide a cause of action there because Fox's attribution claim was, in essence, an attempted maneuver to seek relief under the Lanham Act on a claim that really sounded in copyright. *Id.* at 32-38.

*Dastar* insists that separate intellectual property rights (i.e., patent, copyright, trademark) remain separate. *Id.* at 32-33. Fox had tried to dress up a copyright claim as an unfair competition claim because it could not obtain relief under the Copyright Act. *Id.* at 34-35. But importantly, *Dastar* does not hold that trademark rights are somehow limited by the time limits applicable to copyrights. *Id.* at 32-35. The *Dastar* decision actually emphasizes the reverse: affirming that, for instance, trademark rights do not expire after a certain length of time the way copyright and patent rights terminate. *Id.* at 33. *Dastar* does not apply here, and other courts have rejected attempts to use *Dastar* as a shield against standard trademark liability. *WickFire, LLC v. Woodruff*, 989 F.3d 343, 351 (5th Cir. 2021) ("We understand *Dastar* to stand for the general proposition that one cannot shoehorn what essentially amounts to a putative patent violation or a putative copyright violation into a

Lanham Act claim.  In other words, there is no cause of action for violating the Lanham Act merely because the 'good' at issue incorporates the plaintiff's ideas, concepts, writings, or the like.").

Vintage Brand urges this Court to read *Dastar* as fundamentally altering the analysis for trademark infringement cases.  (Mem. 23-25).  But their position here is not supported by the facts or by the law.

First, Vintage Brand's reliance on *Dastar* is premised on viewing Penn State's claims as alleging confusion over images rather than over products.  *See* Mem. 21-26 (referencing "historic artwork" and "historic images" that exist in the "public domain").  But Penn State's pleadings on this point are clear: the claims in this case concern Defendants' infringing use of the University Marks to sell *merchandise* through the VB Website.  *See, e.g.*, Dkt. 67 at ¶¶ [2-4,](#) [73-87.](#)  Vintage Brand cannot recast Penn State's claims as copyright claims over images rather than trademark claims over products.  *See [WickFire,,](#)* [989 F.3d at 351](#); *[Parikh Worldwide Media,](#) [LLC v. Sheth,](#)* [No. 20-cv-01185, 2021 WL 856901, at \*3 (D.N.J. Mar. 8, 2021)](#) (plaintiffs could maintain trademark infringement claim for alleged copying of articles and display of plaintiffs' trademarks on defendant's website because "Plaintiffs seek recourse for confusion of the origin of Plaintiffs' content, not the unattributed copying of Plaintiffs' articles").

Second, Vintage Brand's argument that *Dastar* ushered in a change in the law concerning trademark merchandising of apparel and related items is fundamentally incorrect. (Mem. 24-25). The Lanham Act governs the federal causes of action here, and Congress has crafted this statute to establish that the "source" of a product can include a licensor, sponsor, or affiliate, and that confusion about these relationships is actionable. *See* 15 U.S.C. § 1055 (stating that when a "related company" uses a registrant's mark, "such use shall inure to the benefit of the registrant"); § 1127 (defining "related company" as one that exercises control of the nature and quality of the products). Vintage Brand's own counsel has recognized that the Lanham Act's amendments in recent decades codified this expanded scope of "source" and noting that "source" under the Act "might be related to the actual producer only by contract." Mark A. Lemley & Mark McKenna, *Irrelevant Confusion*, 62 Stan. L. Rev. 413, 426 n.52 (2010).[6] *Jack Daniel's*, a case about infringing merchandise,

---

[6] Because the proposed amicus brief filed by a series of law professors levy a full attack on merchandising rights, Penn State responds briefly to their arguments—which, Penn State notes, improperly ask the Court to make policy and issue what amounts to an advisory opinion to govern cases in other courts. *See* Dkt. 131-3. The proposed amici's attack presupposes that trademark law's only purpose is to protect consumers. However, the Lanham Act is not simply a consumer protection statute, it also codifies a property right. Tellingly, unlike pure consumer protection statutes, the Lanham Act does not provide a private right of action to confused consumers. The Supreme Court has long recognized the dual purpose of the statute. *See, e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.15 (1992) (citing legislative history explaining dual purpose of trademark law).

underscores this point, making no reference to *Dastar*, and affirming the traditional likelihood of confusion analysis. *See Jack Daniel's*, 2023 WL 3872519.

Third, Vintage Brand's arguments about whether other trademark cases were correctly decided (and the impact, if any, of *Dastar*) is a red herring. Penn State's claims are that in this case, and on this record, consumers are likely to be confused about the source of the VB Penn State Merchandise. *See supra*, § IV.C.1 (applying likelihood of confusion factors). *Dastar* does not affect these claims, and Vintage Brand's arguments otherwise are legally erroneous. *WickFire*, 989 F.3d at 351*; see also Jack Daniel's*, 599 U.S. at __, 2023 WL 3872519 at *10.

## D. Vintage Brand Offers and Sells Counterfeit Penn State Merchandise.

Vintage Brand's arguments on Penn State's claim for counterfeiting of the Registered Marks fare no better, largely recycling Vintage Brand's prior arguments regarding the similarity of the marks and likelihood of confusion. Vintage Brand further contends that it cannot be liable for counterfeiting because this claim requires that consumers be confused about who actually makes or puts out a product and cannot be based on confusion as to sponsorship or affiliation. (Mem. 44). That is incorrect as a matter of law. The Lanham Act makes no such distinction, *see* 15 U.S.C. § 1116(d), § 1127, nor does the applicable authority. *See, e.g.*, *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (counterfeiting requires likelihood of confusion and intentional or willfully blind use of that mark, with court

not including any additional element of the type of confusion); *Pennzoil-Quaker State Co. v. Smith*, No. 2:05-cv-1505, 2008 WL 4107159, at *20 (W.D. Pa. Sept. 2, 2008) (same).  The authority that Vintage Brand cites for its view is inapposite, going to the question of whether a defendant can be liable for counterfeiting where it has not used the mark as a trademark, *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 95 n.18 (2d Cir. 2020), or where the goods are not similar enough to be perceived as coming from the same source, *Fujifilm N. Am. Corp. v. PLR IP Holdings*, 2019 WL 274967, at *3 (S.D.N.Y. 2019). Here, Vintage Brand's use of the University Marks is identical to Penn State's use of the University Marks, and on identical goods. This, by definition, is counterfeiting.

## E. Defendants Have Diluted the PENN STATE Mark.

Vintage Brand cannot show as a matter of law that it should be granted judgment on Penn State's claim that it has diluted the PENN STATE Mark.

Vintage Brand first argues that the PENN STATE Mark is not famous.  Fame requires that the general consuming public of the United States (for federal dilution) or of Pennsylvania (for state law dilution) recognize the mark at hand and associate it with the owner.  *See* 15 U.S.C. § 1125(c)(2)(A); 54 Pa. C.S.A. § 1124.  The fame analysis considers factors including distinctiveness; duration, extent, and geographic scope of advertising; amount, volume, and geographic scope of sales; actual

recognition of the mark; and whether the mark is registered on the principal register. *Id.* Properly applied, these factors show that the PENN STATE Mark is famous.

The distinctiveness of the PENN STATE Mark strongly supports fame. On this factor, Vintage Brand argues that the PENN STATE Mark is geographically descriptive—but this position can be disposed of outright because the TTAB considered and rejected these precise arguments. *In re: The Pa. State Univ.*, at 13-15 (T.T.A.B. 2021) (finding the term "Penn State" is not geographically descriptive under Lanham Act). The evidence shows that Penn State owns incontestable registrations covering PENN STATE, and the PENN STATE Mark is therefore distinctive. (PSMF ¶ 10), 15 U.S.C. § 1052. Penn State's ownership of these registered marks for decades also supports a finding of fame. (DSMF ¶¶ 35-38).

Review of the additional factors similarly point to fame here. *Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 165-67 (3d Cir. 2000) (analyzing factors). Penn State has been exclusively using the PENN STATE Mark for four decades and has an established customer base stretching across the nation. (PSMF ¶¶ 4-5, 8-13, 124). Evidence in the record shows that the PENN STATE Mark is widely recognized through the United States, including:

- Evidence that Penn State draws students from across the country and internationally, and that more than 740,000 Americans (representing nearly 1% of all college graduates in the United States) are themselves Penn State alumni (PSMF ¶¶ 2-3);

- Evidence that Penn State has one of the largest living alumni bases among all United States universities (PSMF ¶ 3);

- Survey data collected by Penn State showing that approximately 39% of adults in Pennsylvania, Ohio, New York, Connecticut, New Jersey, Maryland, and Washington D.C. consider themselves avid or casual Penn State fans (PSMF ¶ 5);

- Results of a consumer perception survey conducted by David Franklyn that found that 70% of respondents perceived the PENN STATE Mark appearing on a t-shirt offered by Vintage Brand as being a trademark (PSMF ¶ 5).

*Times Mirror*, 212 F.3d at 165-67 (considering similar evidence in affirming fame);

*Valley Forge Military Academy Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451 (E.D. Pa. 2014) (considering evidence of third-party references). This Court previously found that the PENN STATE Mark is "indisputably famous" and that it is "clear" that it is "distinctive and commercially strong." *Parshall*, 2022 WL 2712051 at *16. At a minimum, the evidence of fame precludes summary judgment.

Vintage Brand next reasserts its arguments that the marks at hand are not similar for purposes of dilution. (Mem. 51). This similarity argument is unconvincing. There is no dispute that Vintage Brand uses the PENN STATE Mark, and Vintage Brand's position that the additional elements it uses with PENN STATE negate dilution is unpersuasive where those additional elements are other trademarks and images related to Penn State. (PRSMF ¶ 43). If anything, those additional elements added to the PENN STATE Marks increase the connection to the University and further support dilution by blurring.

Vintage Brand's third argument restates its unsupported assertions concerning

whether use of the University Marks qualifies as trademark use (it does), along with its unsupported position that consumers of the VB Penn State Merchandise are simply identifying as Penn State supporters. (Mem. 51-52). However, consumer purchasing motivations have no bearing on whether use of a mark causes dilution. Thus, these arguments can be rejected for the reasons stated above, § IV.A.2, IV.B.

Finally, Vintage Brand argues that Penn State cannot show that dilution has occurred. (Mem. 52-54). Here, Vintage Brand minimizes the similarities between the marks, claims that Penn State's decisions not to implement a formal licensing program before 1982, and the "widespread" references to "Penn" compel the conclusion that dilution is unlikely. (Mem. 53). Those overlook the central issue however, which examines whether Vintage Brand's use of the PENN STATE Mark lessens the degree to which consumers associate that mark with Penn State. *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334, 351-52 (D. Del. 2019). Vintage Brand's own argument, that its use of PENN STATE is viewed by consumers as mere content, in fact strongly supports dilution, as it suggests Vintage Brand is successfully weakening that association. Where Penn State owns incontestable federal registrations for the PENN STATE Mark, has been using that Mark for nearly a century, and has actively policed this mark, Vintage Brand is not entitled to judgment as a matter of law on dilution. (PSMF ¶¶ 8-13, 56-60, 62-64); *New Balance*, 424 F. Supp. 3d at 352 (similar facts evidence dilution).

## F. Defendants' Conduct Constitutes False Endorsement.

Vintage Brand's motion for summary judgment on Penn State's false endorsement claim largely repeats its arguments about likelihood of confusion and the application of *Dastar*. (Mem. 53). Because Vintage Brand cannot succeed on either of those arguments (*supra*, § IV.C), its motion on this claim similarly fails.

Further, the cases on which Vintage Brand relies are inapposite. *Rudovsky v. West Publishing Corp.* involved a lawsuit brought by two law professors and concerned pocket parts updating a criminal law treatise, which the defendant published bearing the plaintiffs' names. 2010 WL 2804844, at *1-2 (E.D. Pa. July 15, 2010). Those facts are fundamentally more similar to *Dastar*, which similarly involved issues of false attribution as to a copyrighted work rather than a claim concerning a trademark. *Dastar*, 539 U.S. at 25-26. And *Madama v. Genesis Services* bears no factual resemblance here given that the plaintiff there actually had a connection with the products at issue and "there was nothing 'false' about Defendant's use of her likeness." 2014 WL 3695976, at *8 (D.N.J. July 24, 2014).

*Parks LLC v. Tyson Foods, Inc*. is also distinguishable. Penn State's false endorsement claim hinges on Vintage Brand's use of misleading content (including non-trademarked content) on its website to falsely suggest an endorsement by Penn State. Dkt. 67 at 23-27, 36-37. Such conduct is actionable under 15 U.S.C. § 1125(a)(1(A), which encompasses false endorsement claims beyond the use of

infringing trademarks, such as through any "false or misleading description [or representation] of fact." 15 U.S.C. § 1125(a)(1); *Dastar*, 539 U.S. at 29 (noting that § 1125(a) "is one of the few provisions [of the Lanham Act] that goes beyond trademark protection"); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019-20 (3d Cir. 2008) (articulating modified set of *Lapp* factors to apply where defendant used plaintiff's voice to falsely convey sponsorship). *Parks*, in contrast, merely held that trademark infringement is not actionable as false advertising under 15 U.S.C. § 1125(a)(1)(B). 863 F.3d 220, 226 (3d Cir. 2017).

## V. CONCLUSION

Defendants' Motion, in every respect, disregards the plain language of the Lanham Act and half a century of legal precedent in order to agitate for a change in the law. Defendants ignore Section 1125 of the statute, which protects against confusion as to "affiliation", "connection", "association", "sponsorship", or "approval" and not just "origin". Defendants also ask the Court, without furnishing any supporting evidence on consumer perception, to find that "decorative" use of marks is not trademark use, despite clear statutory language to the contrary. 15 U.S.C. § 1127 (a trademark can be placed "*in any manner* on the goods"). Penn State respectfully requests that this Court decline Defendants' invitation to rewrite the Lanham Act. For these reasons and those set forth above, Defendants' Motion should be denied.

Dated: June 23, 2023

Respectfully submitted,

**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

By: /s/Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com
Email: celler@mcguirewoods.com
Email: mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

The undersigned certifies that Penn State's Brief complies with the Length Limits set forth under Local Rule 7.8(b), as modified by the Court's Order of May 26, 2023 (Dkt. 107), which provided that the parties could each file a Response brief consisting of up to 45 pages.

By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 23rd day of June, 2023, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Esquire (Pro Hac Vice)
Theresa Wang, Esquire (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
Theresa.Wang@stokeslaw.com


By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*