## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, <br>      Plaintiff, <br><br>   v. <br><br> VINTAGE BRAND, LLC; SPORTSWEAR, INC., dba PREP SPORTSWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; MICHELLE YOUNG, <br><br>      Defendants. | Case No. 4:21-cv-01091-MWB <br> Hon. Matthew W. Brann <br><br> JURY TRIAL DEMANDED |

**<u>Plaintiff Penn State's Brief in Opposition to 18 Intellectual Property Professors Motion for Leave to File Brief Amici Curiae in Support of Defendants' Motion for Summary Judgment</u>**

## I.    INTRODUCTION

The facts in this case are not novel or particularly complex. The Defendants sell t-shirts and other merchandise emblazoned with Penn State trademarks without Penn State's authorization. This conduct causes consumers to mistakenly believe that Penn State is the source of Defendants' merchandise or that Defendants are otherwise affiliated with Penn State. This has long been deemed to be infringement under the common law and is still infringement under the Lanham Act. Trademark lawsuits regarding counterfeit and knock-off merchandise are filed in the federal courts on a regular basis, and for the past century (at least), district judges have decided these cases without assistance.

Given these straightforward facts, there is no need here to permit the filing of an amicus brief by 18 Law Professors that, rather than illuminating a specific third-party concern, instead purports to advocate for a change in the law on behalf of the "public interest." Moreover, the Law Professor's proposed amicus brief has little utility as it largely cites to case law already offered by the parties and the Court, or, in circular fashion, cites to the Law Professor's own articles which in turn cite back to that same case law. Finally, the Law Professors proposed brief is plainly not relevant or desirable, where, instead of identifying authority or arguments not considered by the Parties, it instead makes policy arguments and factual assertions that are at odds with the record. For all of these reasons, the Law Professors' pending

Motion for leave to file an amicus brief in support of Defendants' motion for summary judgment should be denied.

## II.    LEGAL STANDARD

"[P]articipation as *amici curiae* at the trial, as opposed to the appellate level, is rather more the exception than the rule." *Abu-Jamal v. Price*, No. CIV. A. 95-618, 1995 WL 722518, at \*1 (W.D. Pa. Aug. 25, 1995). This is because "[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure." *Alkaabi*, 223 F. Supp. 2d at 592 n.16 (quoting *Yip*, 606 F. Supp. at 1568). The decision to accept or reject an amicus filing is entirely within the district court's discretion. *See Waste Mgmt. of Pennsylvania, Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995).

The district courts are guided in their decisions in accepting or rejecting amicus briefs using the Third Circuit's standard, under which "a motion for leave to file [an amicus brief] should be denied if the movant does not meet the requirements of (a) adequate interest, (b) desirability, and (c) relevance..." *See Feesers, Inc. v. Michael Foods, Inc.*, No. 1:CV-04-0576, 2006 WL 8448763, at \*1 (M.D. Pa. Mar. 21, 2006) (quoting *Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 131 (3d. Cir. 2002)). Additional factors in the court's decision are whether "(1) the amicus has a 'special interest' in the particular case; (2) the amicus' interest

- 2 -

is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the amicus is not partial to a particular outcome in the case. *Id.*; *see also Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999) (citations omitted); *Land v. Delaware River Basin Comm'n*, No. 3:16-CV-00897, 2016 WL 7256945, at *1 (M.D. Pa. Dec. 15, 2016) ("[a]mici status is typically granted where the following conditions are present.").

## III.   ARGUMENT

### A.   The Amici Do Not Have an Adequate Interest in this Case

When evaluating a potential amici's proffered interest in a case, courts within this Circuit look to whether its "…interests…would be ultimately and directly affected by the court's ruling on the substantive matter before it." *See, e.g., Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J. 1985) *aff'd*, 782 F.2d 1033 (3d Cir. 1986). It is the potential amici's burden to demonstrate that it has a "particularized kind of special interest" appropriate for amici status.  *See Land v. Delaware River Basin Comm'n,* No. 3:16-CV-00897, 2016 WL 7256945, at *2 (M.D. Pa. Dec. 15, 2016) (quoting *Sciotto v. Marple Newtown Sch. Dist.,* 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999)). Here the amici acknowledge that they "have no personal interest in this case [and their] sole interest is in the orderly development of trademark law in a way that serves the public interest, in part by balancing legitimate trademark interests, free expression, and informed and competitive markets." Dkt. 131 at 6. While promoting

- 3 -

the "orderly development of trademark law in a way that serves the <u>public interest</u>" may be a laudable goal, it is, by definition, not a "particularized kind of <u>special interest</u>" that justifies leave to file an amicus brief. In fact, Plaintiff would submit it shares this interest, and is adequately representing it in this case.

*Am. Coll. of Obstetricians & Gynecologists, Pennsylvania Section v. Thornburgh* is on point. In that case the Third Circuit Court of Appeals denied a group of law professors' motion for leave to file an amicus brief, stating:

> The [30] law professors do not purport to represent any individual or organization with a legally cognizable interest in the subject matter at issue, and give only their concern about the manner in which this court will interpret the law as the basis for their brief. Since there is no indication that the parties to the lawsuit and those parties who have been granted leave to file a brief amicus curiae will not adequately present all relevant legal arguments, there is no persuasive reason to grant the motion . . ..

699 F.2d 644, 645 (3d Cir. 1983).

The same reasoning applies here. The amici here do not claim to represent any individual, organization, distinct group, or even their very own interests. An interest in the public interest is simply far too generalized and not a persuasive reason to grant the Law Professors' motion. *See Dobson Mills Apartments, L.P. v. City of Philadelphia*, No. 21-CV-273, 2022 WL 558348, at *1 (E.D. Pa. Feb. 23, 2022) (denying the Associated Builders and Contractors Eastern Pennsylvania Chapter Inc. leave to file an amicus brief, deeming them "merely a trade association with a generalized interest in Section 8(e) of the National Labor Relations Act") (citations

omitted)); *Panzer v. Verde Energy USA, Inc.*, No. CV 19-3598, 2021 WL 2186422, at *2 (E.D. Pa. May 27, 2021) (denying leave to file amicus brief because "amici…[have] at most shown a generalized interest in preserving access to justice through class actions, which is insufficient to justify its participation in this case."); *Sciotto*, 70 F. Supp. 2d at 555 (where the court found that movant's "generalized interest in all cases related to school district liability and insurance ... is not the kind of special interest that warrants amicus status."). The Law Professors' claimed interest stands in stark contrast to cases where leave to file an amicus at the district court level was granted. *See, e.g., Land*, No. 3:16-CV-00897, 2016 WL 7256945, at *2 (movants were members of associations and councils that had specialized and particularized oversight over the affected geographical region's property rights and values, railroad use, and regional commercial business).

### B.    The Amici's Interest Is Already Represented in This Case

District courts have routinely denied leave to file an amicus brief wherein the brief was deemed unnecessary given that the parties were adequately represented. *See Abu-Jamal v. Horn*, No. CIV. A. 99-5089, 2000 WL 1100784, at *3 (E.D. Pa. Aug. 7, 2000) (citing *Sciotto*, 70 F.Supp.2d at 555); *see also Goldberg v. City of Philadelphia*, No. CIV. A. 91-7575, 1994 WL 369875, at *1 (E.D. Pa. July 14, 1994) ("[i]f the court feels that the parties are adequately represented so that amicus participation is neither necessary nor helpful, it should deny amicus curiae

participation."). Here the amici have made no claims that their additional filings are necessary because the Defendants are inadequately represented. As in *Horn*, the Defendants here have the "benefit of privately-retained counsel," who are "[b]y all appearances…highly qualified to represent [them] in this matter." *See Horn*, No. CIV. A. 99-5089, 2000 WL 1100784, at *3. Notably, as the amici disclose in a footnote, Defendants are already represented by law professors at Lex Lumina, including the authors of some the articles that amici cite. Dkt. 132 at 3 n.1.

This existing competent representation is demonstrated by the fact that in large part, the proposed amicus brief merely reiterates arguments or legal issues already raised by Defendants or this Court. *See Panzer*, No. CV 19-3598, 2021 WL 2186422, at *2 (leave to file amicus brief should be denied when it repeats arguments made by the parties); *Feesers, Inc.*, No. 1:CV-04-0576, 2006 WL 8448763, at *2 (denying leave where proposed brief did not make significant original contributions beyond arguments made by the parties). Defendants in the present matter have already briefed, at length, the very same arguments, citing much of the same caselaw and authorities, as that proffered by the 18 professors in their proposed amici brief. As a result, the proposed amici brief merely serves to extend the length of Defendants' already-filed briefs, and unfairly prejudice Penn State without adding more.

As merely representative examples, the Court already noted that "Vintage Brand contends that consumers believe that the essence of [the University's] marks is to signal their support for the University, not that the University has produced, approved, or guaranteed the quality of the item." *See* Dkt. 43 at 6. This is the very same argument asserted by the amici in their proposed brief that "[s]tudents wear shirts bearing their university's name to signal their association…[s]ports fans wear their…jerseys on Sunday to demonstrate their support for their team." *See* Dkt. 132 at 23; *see also* Dkt. 131-3 at 10, 16, 20. This Court has already navigated this argument without the guidance of the amici, noting that "[t]hese arguments are nothing new." *See* Dkt. 43 at 6.

Additionally, both the Defendants, Defendants' expert, and the amici attack Plaintiff's surveys (surveys which, ironically, were crafted by a law professor). The amici would have the Court believe that their involvement in this case will help guide the Court into rearticulating the standards for evaluating survey evidence, namely that "…asking if a consumer associates the appearance of a trademark with its owner…will overestimate consumer confusion and lead to mistaken legal outcomes," and that "…surveys should not ask whether consumers believe permission is required to use another's trademark." *See* Dkt. 131 at 18. However, the Defendants already assert, at length, in their summary judgment brief that Penn State's survey is "fundamentally flawed" because "…very many of the… 'confused'

responses were attributable to respondents' beliefs that anyone referencing the University must have legal permission." *See* Dkt. 115 at 31. As Defendants have already made this argument, there is no need for the amici to make it again, particularly since it is at odds with Plaintiff's actual survey (which employed classic *Eveready* questions which have been approved by many courts) and the relevant authority. *Pebble Beach Co. v. Tour 18 I, Ltd.*, 155 F.3d 526, 48 U.S.P.Q.2d 1065, 1077 (5th Cir. 1998) (holding that the survey question "did defendant get permission?" was a proper inquiry and was probative of confusion); M.A. Lemley, *The Modern Lanham Act and the Death of Common Sense*, 198 Yale L.J. 1687, 1708, n.106 (1999) ("[I]f we are committed to basing trademark doctrine on consumer reactions, we are probably stuck with those reactions even if the law itself initially helped to create them.").

### C.   The Amici's Input is Not Relevant or Useful

The proposed amicus offers much heat but little light. Amici's brief consists primarily of policy arguments, focuses on out-of-Circuit case law rather than binding authority, seeks to assert facts that are not in the record, and does not fairly represent the academic literature on these issues. This is not useful, and does not justify filing an amicus brief.

### 1.     The Amici Assert Policy Arguments That Are Not Appropriate for Summary Judgment

Amici contend that trademark law has gone off course, that existing merchandising rights are overbroad, and that consumers and competition are harmed by existing precedent. In other words, the brief primarily consists of policy arguments, most of which either lack citation altogether, or cite to other articles by law professors. In particular, the proposed brief's remarkable suggestion that the Court should apply one type of analysis to trademarks held by "cultural institutions" (an intriguingly vague categorization that encompasses both research universities and pro sports teams) and perhaps another type of analysis to everyone else (Dkt. 132 at 15), has absolutely no basis in the Lanham Act or common law. *See, e.g.*, 4 McCarthy on Trademarks and Unfair Competition § 24:9 (5th ed.) §§ 9:5, 9:6, 9:7, 9:7.5 (collecting many cases affirming the applicability of trademark law to institutions). This (along with a paucity of references to the Lanham Act's statutory language) further flags that the Law Professors are offering policy proposals rather than helping the court to understand the actual state of the law.

Policy arguments, unfortunately, are particularly irrelevant at the summary judgment stage, as they "do not substantively assist the court in determining whether the undisputed facts establish that any of the moving parties are 'entitled to judgment as a matter of law". *Feesers, Inc.*, No. 1:CV-04-0576, 2006 WL 8448763, at *2.

Critically, courts in this Circuit have found that "[w]hile policy arguments are certainly interesting and perhaps helpful at the appellate level, they are not the currency of a trial court…if policy arguments are to be the [movants] only contribution…the judicial process is better served if the [movant] did not contribute at the district court level." *See Sciotto*, F. Supp. 2d at 556 (where the movant's contribution was its perspective on "the significant effect [of this case] on all public school entities and on the insurance marketplace.").

As it largely consists of policy arguments, leave should not be granted to file the proposed amicus brief.

### 2.     The Amici Ask the Court to Disregard Applicable Authority

Amici also make arguments that are not specific or helpful to this case. The amici's entire proposed brief seeks to correct a claimed mistake made by the Fifth Circuit in deciding *Boston Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg.*, Inc., 510 F.2d 1004 (5th Cir. 1975) and resolve an alleged split between the Fifth Circuit, the Eleventh Circuit, the Ninth Circuit, and the Tenth Circuit on this point. *See* Dkt. 131 at 11-13. While the amici, notably without citing to the Third Circuit, urge the Court to review "incongruent case law . . . to inject much-needed clarity into the law," this is entirely unnecessary. *See* Dkt. 132 at 18-22.  The Court can (and should) apply the standard likelihood of confusion analysis under the *Lapp* factors. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt.*, LLC, 793 F.3d 313, 319

(3d Cir. 2015); *see also Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

### 3.    The Amici Rely on Unsupported Factual Assertions

Finally, least helpful, amici's brief purports to inject additional facts into the record, facts that require an evidentiary foundation that has not been created by the Defendants. As merely representative examples, the amici here assert, without support, that " . . . it is almost certainly the case that a significant number of consumers do not view trademarks in the . . . merchandising context as identifying source or sponsorship . . . [and] purchase merchandise…not because the trademark tells them who stands behind…the merchandise," but because they are participating in "expressive [trademark] uses." *See* Dkt. 132 at 18. Furthermore, amici assert that Vintage Brand's designs "fulfill a unique market niche that the trademark owners did not exploit. . . . [and give] at least some consumers a product they wanted and would not have otherwise had." *See* Dkt. 132 at 24. These are factual assertions, but are not backed by any evidence whatsoever, and thus should not be considered via amicus brief at summary judgment.

### 4.    The Amici Do Not Accurately Explain the Law

Finally, amici's arguments are not helpful because they misapprehend the law. It is not relevant to likelihood of confusion at summary judgment whether or not consumers buy Vintage Brand's merchandise in order to express allegiance to Penn

State. In the context of merchandising, modern trademark law "…condemns any use by a third party that is likely to cause confusion as to a mark owner's sponsorship of or affiliation with a third party's use, whether or not such relationship is material to consumers' purchasing decisions." *See* Mark P. McKenna, *The Normative Foundations of Trademark Law*, 97 TRADEMARK REP. 1126, 1193 (2007). Contrary to the amici's argument that the Court must use this opportunity to "…help correct consumers' misconceptions about institutional merchandising," (Dkt. 132 at 27), in the merchandising and licensing context, "…rights are bounded *only* by consumer understanding." *See id.* (emphasis added) (stating that "[i]f consumers believe that a Yankees logo on a hat suggests the Yankees endorsed the marker of the hat, then the Yankees have the right to control that use."); *see also* Dkt. 132 at 22-23.  While the amici purport to be interested in protecting the public and reshaping their perceptions on "…what trademark law requires," the fact remains that trademark law must follow consumer perception and not vice versa. *See* Mark P. McKenna, *The Normative Foundations of Trademark Law*, 97 TRADEMARK REP. at 1193 (2007) (discussing that if consumer beliefs regarding the use of marks on merchandise even approximates the available evidence suggesting that consumers believe trademarks are subject to substantial control, then modern trademark law must respond); *see also* Dkt. 131 at 17-19.

## IV.   CONCLUSION

For the reasons set forth above, the Law Professor's Motion should be denied.

Dated: June 23, 2023

Respectfully submitted,

**McGuireWoods LLP**

By: /s/Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com
Email:  celler@mcguirewoods.com
Email:  mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP
Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)</u>

The undersigned certifies that Penn State's Brief complies with the Length

Limits set forth under Local Rule 7.8(b), and contains less than 5,000 words.

By: <u>/s/ Lucy Jewett Wheatley</u>
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

- 14 -

## <ins>CERTIFICATE OF SERVICE</ins>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 23 day of June, 2023, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Esquire (Pro Hac Vice)
Theresa Wang, Esquire (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
Theresa.Wang@stokeslaw.com

By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*