## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, <br><br>      Plaintiff and <br>      Counter-Claim Defendant, <br><br>   v. <br><br> VINTAGE BRAND, LLC, <br><br>      Defendant and <br>      Counter-Claim Plaintiff, <br><br> and <br><br> SPORTSWEAR INC. d/b/a PREP SPORTWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; and MICHELLE YOUNG, <br><br>      Defendants. | Case No. 4:21-cv-01091-MWB <br> (Hon. Matthew W. Brann) <br><br> JURY TRIAL DEMANDED |

## REPLY BRIEF IN SUPPORT OF VINTAGE BRAND, LLC'S MOTION FOR SUMMARY JUDGMENT

Mark P. McKenna, Esq., *pro hac vice*
Illinois I.D. No. 6272699
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (646) 898-2055
Fax:    (646) 906-8657
Mark@lex-lumina.com

Joshua D. Harms, Esq., *pro hac vice*
Washington I.D. No. 55679
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 626-6000
Fax:    (206) 464-1496
Joshua.Harms@stokeslaw.com

**<u>TABLE OF CONTENTS</u>**                                    **Page**

I.      ARGUMENT IN REPLY...............................................................................1

    A.      The University Cannot Prove Likelihood of Confusion ......................2

        1.      The University Mischaracterizes the Law .................................5

        2.      The Empirical Evidence Demonstrates That Vintage
            Brand's Use of the Historic Images Is Not Likely to
            Cause Confusion ........................................................................9

        3.      The University Has No Evidence of Actual Confusion............12

    B.      The University's Counterfeiting Claim Is Unsupportable .................13

    C.      The University Cannot Establish Dilution .........................................14

        1.      There Is No Evidence of Fame ..................................................14

        2.      There Is No Evidence That Blurring is Likely ........................17

    D.      The False Endorsement Claim Fails with the Infringement
        Claims.................................................................................................18

II.     CONCLUSION..............................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) .................................................................. 3

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. __ (2023) ......................................................................... 2, 7

*Athletic Association v. Laite*,
756 F.2d 1535 (11th Cir. 1985) ............................................................ 6

*Bd. of Governors of the Univ. of N.C. v. Helpingstine*,
714 F. Supp. 167 (M.D.N.C. 1989) ....................................................... 5

*Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v.
KST Elec., Ltd.*,
550 F. Supp. 2d 657 (W.D. Tex. 2008) ................................................ 16

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack
Apparel Co.*,
550 F.3d 465 (5th Cir. 2008) ............................................................... 5

*Chanel, Inc. v. Gordashevsky*,
558 F. Supp. 2d 532 (D.N.J. 2008) ..................................................... 14

*Coach Servs., Inc. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012) .......................................................... 17

*Cohen & Co., Ltd. v. Cohen & Co. Inc.*,
2022 WL 5250271 (E.D. Pa. Oct. 6, 2022) .......................................... 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ....................................................................... 3, 7

*De La Salle High School of Concord v. Sportswear, Inc.*,
Case No. C11-00182 (Contra Costa, Cal. Super. Ct., Oct. 22, 2012) ................... 5

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008) ............................................................. 19

**<u>Cases</u> (cont.)**                                                                    **Page(s)**

*H-D U.S.A., LLC v. Affliction Holdings, LLC,*
    2020 WL 5913850 (C.D. Cal. June 8, 2020) ...................................................... 15

*In re The Pennsylvania State Univ.,*
    No. 88311154 (TTAB Mar. 9, 2021) ................................................................... 17

*Int'l Order of Job's Daughters v. Lindeburg & Co.,*
    633 F.2d 912 (9th Cir. 1980) ............................................................................... 5

*Jack Daniel's Prop., Inc. v. VIP Holdings, Inc.,*
    599 U.S. __ (2023) .....................................................................................*Passim*

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
    543 U.S. 111 (2004) ............................................................................................ 2

*La Barbera v. Olé Mexican Foods Inc.,*
    2023 WL 4162348 (C.D. Cal. May 18, 2023) ...................................................... 6

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.,*
    156 F. Supp. 3d 425 (S.D.N.Y. 2016)................................................................. 18

*Miss Universe, L.P., LLLP v. Villegas,*
    672 F. Supp. 2d 575 (S.D.N.Y. 2009)................................................................. 18

*Navajo Nation v. Urban Outfitters, Inc.,*
    2016 WL 3475342 (D.N.M. May 13, 2016) ....................................................... 14

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC,*
    424 F. Supp. 3d 334 (D. Del. 2019) .................................................................... 15

*Ohio State Univ. v. Skreened Ltd.,*
    16 F. Supp. 3d 905 (S.D. Ohio 2014) ................................................................... 6

*Pennsylvania State Univ. v. Parshall,*
    2022 WL 2712051 (M.D. Pa. Feb. 17, 2022) ..................................................... 17

*Pennzoil-Quaker State Co. v. Smith,*
    2008 WL 4107159 (W.D. Pa. Sept. 2, 2008) ...................................................... 14

**<u>Cases</u>** (cont.)                                                    **Page(s)**

*Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*,
  676 F.2d 1079 (5th Cir. 1982)...................................................................... 5

*Texas Tech Univ. v. Spiegelberg*,
  461 F. Supp. 2d 510 (N.D. Tex. 2006) .................................................. 6

*Tiffany & Co. v. Costco Wholesale Corp.*,
  971 F.3d 74 (2d Cir. 2020)...................................................................... 14

*United States Patent & Trademark Office v. Booking.com B.V.*,
  140 S.Ct. 2298 (2020) ............................................................................ 12

*University of Pittsburgh v. Champion Products, Inc.*,
  566 F. Supp. 711 (W.D. Pa. 1983) ..................................................... 3, 5

*University of Pittsburgh v. Champion Products*,
  686 F.2d 1040 (3d Cir. 1982) .................................................................. 8

*VIP Products, LLC v. Jack Daniel's Properties, Inc.*,
  291 F. Supp. 3d 891 (D. Ariz. 2018) .................................................... 12

**<u>Statutes</u>**

15 U.S.C. § 1116(d)(1)(B)(ii) .................................................................. 13

15 U.S.C. § 1125(a) ................................................................................. 18

15 U.S.C. § 1125(a)(1)(A) ...................................................................... 18

15 U.S.C. § 1125(c)(2)(A) ...................................................................... 14

15 U.S.C. § 1125(c)(2)(B) ...................................................................... 18

15 U.S.C. § 1127 ...................................................................................... 13

**Other Authorities** Page(s)

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed., 2023) ....... 15, 16

BLACK'S LAW DICTIONARY (10th ed.) .................................................................. 13

Mark P. McKenna,
*A Consumer Decision-Making Theory of Trademark Law*,
  98 VA. L. REV. 67 (2012) ......................................................................... 6

Mark A. Lemley & Mark P. McKenna,
*Irrelevant Confusion*,
  62 STAN. L. REV. 413 (2010) .................................................................. 6

Mark P. McKenna,
*Testing Modern Trademark Law's Theory of Harm*,
  95 IOWA L. REV. 63 (2009) ..................................................................... 6

Stacey L. Dogan & Mark A. Lemley,
*The Merchandising Right: Fragile Theory or Fait Accompli?*,
  54 EMORY L.J. 461 (2005) ...................................................................... 5

Rebecca Tushnet,
*What's the Harm of Trademark Infringement*,
  49 AKRON L. REV. 627 (2016) ................................................................ 6

# I.    ARGUMENT IN REPLY

A year ago, this Court recognized the unique features of merchandising cases and explained the importance of differentiating between consumer confusion about the source of a product and consumer confusion about what the law requires. Doc. 43 at 22–23. Just this past month, the Supreme Court emphatically centered trademark use, making clear that source confusion—trademark law's "bête noire"—"is most likely to arise when someone uses another's trademark as a trademark ... rather than for some other expressive function." *Jack Daniel's Prop., Inc. v. VIP Holdings, Inc.*, 599 U.S. __, slip op. at 4, 14 (2023). Apparently sharing this Court's concerns about the reasons for reported confusion, two concurring justices expressly warned litigants and courts against relying on surveys that "artificially prompt ... confusion about the law or fail to sufficiently control for it." *Id*., slip op. at 1 (Sotomayor, J., concurring).

Between this Court's July 2022 opinion and the Supreme Court's June 2023 opinion, Vintage Brand gathered empirical evidence showing that there is no confusion about the source of its products, and that the few consumers who referred to the University in the survey were indeed confused about law. In fact, even without heeding this Court's advice and controlling for legal confusion, the University's own survey (one that was constructed to find "confusion") showed that fewer than 10% of respondents were confused about who puts out Vintage Brand's products. In other

words, after all the discovery dust has settled, the University simply has no evidence that Vintage Brand uses the historic images as trademarks or that consumers are confused about the source of Vintage Brand's products. None of the University's claims can survive those two fundamental deficiencies. All must be dismissed.

A.     **The University Cannot Prove Likelihood of Confusion**

The University attempts to shift the burden in this case to Vintage Brand. Specifically, the University argues that Vintage Brand has the burden to show that the marks at issue are ornamental, citing primarily inapposite registration cases. PSU Opp. at 7, 10. But the University has the burden of proving infringement. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) (holding that the "burden of proving likelihood of confusion (that is, infringement) [is] on the party charging infringement even when relying on an incontestable registration"). In this case, evaluation of infringement inescapably requires determination of whether the historic images on Vintage Brand's products serve a trademark function, rather than functioning as ornamental and expressive features of Vintage Brand's products. That is, the University has the burden of showing that the images identify the source of Vintage Brand's tangible goods. *See Jack Daniel's*, 599 U.S. __, slip op. at 10 (describing use of a mark "as a designation of source of the infringer's own goods" as the use "the Lanham Act most cares about"); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. __, slip op. at 14–15 (2023) (holding

2

that infringing use in commerce means "the bona fide use of a mark in the ordinary course of trade, where the mark serves to identify and distinguish [the mark user's] goods ... and to indicate the source of the goods" (cleaned up)); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32 (2003) (holding that only confusion about the origin of tangible goods is relevant under the Lanham Act).[1]

Because it has no evidence that a reasonable jury could credit showing that the historic images printed on Vintage Brand's products function as trademarks for those products, the University attempts to divert the Court's attention by asserting that this is a textbook trademark case involving identical marks used as marks for directly competing goods. *See, e.g.*, PSU Opp. at 40. This Court has already recognized that this case is not the case that the University is trying to litigate. The

---

[1] Despite arguing in its opening brief that the Court needs to consider only two of the *Lapp* factors, PSU Brief at 19, the University now argues that, in fact, the Court *must* consider all of the factors. PSU Opp. at 19. But the Third Circuit has been clear that the factors are not to be mechanically applied and should be considered flexibly according to the case. *See, e.g.*, *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214–15 (3d Cir. 2000) ("[W]e have repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision." Courts in the Third Circuit "need not apply each and every factor" and "the different factors may properly be accorded different weights depending on the particular factual setting."). As the *University of Pittsburgh* court recognized, in the merchandising context it makes most sense to focus on actual confusion and intent, because the defendants in merchandising cases are using the claimed marks for a very different purpose than is typically at issue in ordinary trademark infringement cases. *Univ. of Pittsburgh v. Champion Products, Inc.*, 566 F. Supp. 711, 713, 720 (W.D. Pa. 1983), *vacated by stipulation* (Feb. 2, 1984). But regardless, the evidence strongly supports Vintage Brand on many of the other *Lapp* factors. *See* VB Opp. at 7–22.

evidence demonstrates that the historic images on Vintage Brand's products serve an ornamental and expressive function, which is to permit consumers to show their affiliation with the University.[2] Those images do not function as trademarks indicating the source of Vintage Brand's products.

| Evidence | Relevance |
|---|---|
| 30(b)(6) Dep. (Doc. 116-28) at 44:8–12, 91:10–92:3. | Individuals purchase and wear apparel bearing University-related imagery to express affinity for or affiliation with the University. |
| VBExs. 85–86 (Docs. 117-35–36); VBEx. 87 (Doc. 117-37) at 7907; VBEx. 88 (Doc. 117-38); VBEx. 104 (Doc. 138-3); VBExs. 109–10 (Doc. 138-8). | The Official Label, is the source identifier of "officially licensed" merchandise, and a spurious Official Label constitutes counterfeiting, according to CLC. |
| VBEx. 75 (Doc. 117-25) at 342; VBEx. 77 (Doc. 117-27) at 251; VBEx. 79 (Doc. 117-29) at 364. | Websites on which officially licensed goods are sold include references to the "official" status of the merchandise. |
| 30(b)(6) Dep. (Doc. 116-28) at 88:12–89:3. | Absent affirmative representations of "official" status, consumers will "not necessarily" know that they are buying licensed merchandise. |
| Hartvigson Decl. (Doc. 116-2) ¶ 25; VBEx. Q (Doc. 116-19). | Product pages on Vintage Brand's website display the same image on different types of tangible goods, because the image is what consumers are really purchasing. |
| VBEx. 102 (Doc. 117-52) at Interrogatory No. 19. | The target audience for "official" merchandise is limited to the University's students, alumni, |

---

[2] The University asserts that Vintage Brand has not proven that the images are in the public domain, but the University has failed to offer any evidence demonstrating that the images are subject to valid copyright rights—and, of course, the University does not allege copyright infringement. The only evidence in this case is that Vintage Brand uses only images from earlier than 1989 that do not bear any copyright notice.

| | fans, etc.—i.e., only individuals that would be interested in the decoration. |
|---|---|
| VBExs. 13–17 (Docs. 116-40–44). | In the marketplace, the PENN STATE text is used on apparel in ways that allow consumers to express a connection with the University's specific educational programs or athletic teams. |

### 1. The University Mischaracterizes the Law

The University ignores the complexity of merchandising cases and pretends that those cases make its claims straightforward. In fact, the caselaw has been considerably more mixed than the University suggests. *See, e.g.*, *Bd. of Governors of the Univ. of N.C. v. Helpingstine*, 714 F. Supp. 167, 173 (M.D.N.C. 1989); *Univ. of Pittsburgh*, 566 F. Supp. at 713, 716; *De La Salle High School of Concord v. Sportswear, Inc.*, Case No. C11-00182 (Contra Costa, Cal. Super. Ct., Oct. 22, 2012); *see also Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.*, 676 F.2d 1079, 1084 & n.7 (5th Cir. 1982); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980); Stacey L. Dogan & Mark A. Lemley, *The Merchandising Right: Fragile Theory or Fait Accompli?*, 54 EMORY L.J. 461 (2005).

More to the point, the cases that have found liability in the merchandising context are, overwhelmingly, based on the discredited reasoning of *Boston Hockey*. *See, e.g.*, *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 484–86 (5th Cir. 2008); *Univ. of Georgia. Athletic*

*Association v. Laite*, 756 F.2d 1535, 1546–47 (11th Cir. 1985). To the extent those cases evaluated confusion at all rather than simply relying on anti-freeriding impulses, *see* Mark P. McKenna, *A Consumer Decision-Making Theory of Trademark Law*, 98 VA. L. REV. 67, 126–28 (2012), they simply assumed confusion rather than empirically testing the theories of confusion offered by the plaintiffs. *See Texas Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 519, 523 (N.D. Tex. 2006); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 918 (S.D. Ohio 2014).[3] That defect has been remedied in the record before this Court. Especially given the evidence of the development and use of the "Officially Licensed" merchandise label, the Court now has clear reason to reject the hypotheses of the *Boston Hockey*-influenced merchandising cases, at least for uses of historical, non-identical images like the ones at issue in this case. *See generally* Doc. 131-3.[4]

---

[3] The University uses misleading partial quotations from several academic articles, including those by Mark McKenna, to support its assertion that the merchandising case law is settled in its favor. Vintage Brand welcomes the Court's reading of those articles and their criticisms of arguments like the University presents here, particularly the articles showing that prior courts' expansive assumptions about consumer understanding were always misguided. *See, e.g.*, Mark A. Lemley & Mark P. McKenna, *Irrelevant Confusion*, 62 STAN. L. REV. 413 (2010); Mark P. McKenna, *Testing Modern Trademark Law's Theory of Harm*, 95 IOWA L. REV. 63 (2009); *see also* Rebecca Tushnet, *What's the Harm of Trademark Infringement*, 49 AKRON L. REV. 627 (2016).

[4] Any hypothetical consumers who care about whether University-related merchandise is officially licensed have a clear and easy way of confirming official status. *Cf. La Barbera v. Olé Mexican Foods Inc.*, 2023 WL 4162348 at *10 (C.D. Cal. May 18, 2023) ("if a consumer cares about any particular quality in a product,

Those cases are even more clearly wrong in light of the Supreme Court's *Jack Daniel's*, *Abitron*, and *Dastar* decisions, which collectively emphasize precisely the considerations the University asks this Court to ignore. As the Supreme Court said in both of its recent cases, "trademark use" is use that identifies the source of the product, and that use is at the core of the Lanham Act's concern. *Jack Daniel's*, 599 U.S. __, slip op. at 3 ("[W]hatever else it may do, a trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)."); *see also Abitron*, 600 U.S. __, slip op. at 14 (defining infringing use in commerce as "the bona fide use of a mark in the ordinary course of trade, where the mark serves to identify and distinguish [the mark user's] goods ... and to indicate the source of the goods" (internal quotation marks omitted)). The plain language of both *Jack Daniel's* and *Abitron* makes clear that infringing trademark use is a use that identifies the source of a product.[5]

*Dastar* holds that only confusion about the source of tangible goods is actionable under the Lanham Act. *Dastar*, 539 U.S. at 32. The University now

_____

she is willing to spend at least a few seconds reading a product's packaging to see if it answers her question").

[5] The University argues that *Jack Daniel's* actually supports its case because the Supreme Court recognized that trademarks can sometimes do more than identify source. PSU Brief at 11. But that misses the point of *Jack Daniel's*. It is, of course, true that a mark can do more than identify source. But nothing is a mark *unless it does* indicate source, *Jack Daniel's*, 599 U.S. __, slip op. at 3, and use as a mark is necessary for the infringement provisions of the Lanham Act to apply. *Abitron*, 600 U.S. __, slip op. at 14.

responds to Vintage Brand's emphasis of *Dastar* by insisting that its case *is* about tangible goods—i.e., the merchandise bearing the historic images at issue. But the University ignores the import of that critical admission.[6] The University has to prove that consumers are confused about the source of Vintage Brand's tangible products; it is not sufficient that consumers associate the *images* with the University. That point is essential because the University has provided absolutely no evidence that consumers think or care about the tangible goods when purchasing Vintage Brand's products; the record (and logic) make clear that the tangible goods are mere substrate and that what consumers are purchasing is the imagery. Doc. 43 at 9 (in the context of "university-trademarked apparel and merchandise … the mark itself is the product"); *University of Pittsburgh v. Champion Products*, 686 F.2d 1040, 1047 (3d Cir. 1982) ("With negligible exception, a consumer does not desire a 'Champion' T-shirt, he (or she) desires a 'Pitt' T-shirt. The entire impetus for the sale is the consumer's desire to identify with Pitt or, perhaps more realistically, with Pitt's successful athletic programs." (cleaned up)). That is why the University's entire argument is built around inferences it would have the Court draw from the fact that

---

[6] The University's admission that it must show confusion about the source of Vintage Brand's tangible goods should now foreclose any additional argument about the admissibility of Mr. Franklyn's Survey 1. Mr. Franklyn did not even attempt to determine whether respondents viewed the images as trademarks *for the merchandise*. *See* Doc. 94. His Survey 1 is therefore not probative of the central question of trademark use.

the images are associated with the University. *E.g.*, PSU Opp. at 13–14 (argument relying on the TTAB's secondary source doctrine); *id*. at 22 (downplaying composite nature of Vintage Brand's historic imagery because "every element of these 'composite' images pertains to Penn State"). That is just *Boston Hockey*, vaguely repackaged.

### 2. The Empirical Evidence Demonstrates That Vintage Brand's Use of the Historic Images Is Not Likely to Cause Confusion

The University asks this Court to presume confusion and rely on the discredited reasoning of *Boston Hockey*. Vintage Brand asks the Court to presume nothing—it has offered compelling empirical evidence that consumers are not confused about the source of Vintage Brand's goods. Erdem Report (Doc. 94-7). That result is unsurprising: consumers are not confused because the historic images on Vintage Brand's products do not perform a trademark function. Virtually none of the respondents in Dr. Erdem's survey believed that the University was responsible for the quality of Vintage Brand's products. Erdem Report (Doc. 94-7) ¶¶ 63–70; *see Jack Daniel's*, 599 U.S. __, slip op. at 3 ("a mark tells the public who is responsible for a product"). Even the University's own flawed survey—one structured to find "confusion"—found only 5–9% *gross* confusion about who puts out Vintage Brand's products. Franklyn Report (Doc. 123-44) at 38. By the University's own biased measure, an insignificant percentage of respondents believed that the University was the source of Vintage Brand's products.

Beyond confirming that Vintage Brand's images do not function as marks, the University's survey offers no evidence of likely consumer confusion, for all the reasons Vintage Brand has explained at length. VB Brief at 20–22; VBSMF ¶¶ 114–20; *see also* Neal Report (Doc. 94-5); Erdem Report (Doc. 94-7) at Part IV. In line with the University's insistence that this case is a straightforward instance of same marks/same products, Mr. Franklyn made no effort to address any of the features of this case that complicate the University's legal claims. For example, the survey's design purposely eliminated relevant context that bears directly on the question of the source of Vintage Brand's products. Neal Report (Doc. 94-5) at 13, ¶ 2.5.2.

Mr. Franklyn also made no effort to determine the *reasons* for responses to his survey questions, a particularly notable failure with respect to the vague "sponsorship" or "affiliation" questions. Justice Sotomayor sounded the alarm about just this problem in her concurrence in *Jack Daniel's*, emphasizing that "[s]urvey answers may reflect a mistaken belief among some survey respondents that all parodies require permission from the owner of the parodied mark." 599 U.S. __, slip op. at 1 (Sotomayor, J., concurring). Indeed, Justice Sotomayor demonstrated her point by quoting specific answers in Jack Daniel's survey that "illustrate this potential" for survey results to be infected by mistaken legal beliefs. *Id*. at 1–2 ("'I'm sure the dog toy company that made this toy had to get [Jack Daniel's] permission and legal rights to essentially copy the[ir] product in dog toy form'); ('The bottle is

mimicked after the Jack Daniel BBQ sauce. So they would hold the patent therefore you would have to ask permission to use the image.')." (cleaned up)).

The answers Justice Sotomayor highlighted are strikingly similar to the answers respondents gave in Mr. Franklyn's survey when he asked them to explain their "confused" answers. VBSMF ¶ 115. Those verbatim answers were part of the reason Dr. Erdem tested for legal belief. Erdem Report (Doc. 94-7) at 23–24, ¶¶ 39–40 & n.36. Unsurprisingly, "confused" responses in Dr. Erdem's study correlate almost perfectly with respondents' beliefs that any use of University-related imagery requires permission. Erdem Dep. (Doc. 83-2) at 166–70.

This Court already identified the same concern about allegedly "confused" consumers in merchandising cases: consumers may assume that merchandise bearing the name or logo of a university is licensed by that university simply because those consumers have the mistaken belief that the law inevitably requires licensing. Doc. 43 at 22–23 ("If consumers' confusion stems from their incorrect belief that goods bearing Penn State's emblem must be licensed, shouldn't that belief be corrected, not perpetuated?"). As Justice Sotomayor suggested, "[p]laintiffs can point to this misunderstanding of the legal framework as evidence of consumer

confusion." *Jack Daniel's*, 599 U.S. __, slip op. at 2 (Sotomayor, J., concurring). That is precisely what the University is trying to do here.[7]

### 3. The University Has No Evidence of Actual Confusion

The single witness the University put forward, Ms. Maffey, either never saw Vintage Brand's website or is misremembering (or misrepresenting) the relevant facts, and in any event, anything she currently believes is attributable only to her belief that anyone who references the University must have permission. VBSMF ¶¶ 103–10. The complete lack of actual confusion evidence is the clearest of tells. If this were in fact a straightforward case of identical marks and identical goods, it is implausible that there would be no evidence of actual confusion.

_____

[7] The University repeatedly argues that the Court should not care why consumers might be confused—that the Court is bound by whatever consumers say. But the Supreme Court has instructed courts in several recent cases to be careful about interpreting survey results and not to take them at face value. *See Jack Daniel's*, 599 U.S. __, slip op. at 1–2 (Sotomayor, J., concurring); *United States Patent & Trademark Office v. Booking.com B.V.*, 140 S.Ct. 2298, 2309 (2020) (Sotomayor, J., concurring) ("Flaws in a specific survey design, or weaknesses inherent in consumer surveys generally, may limit the probative value of surveys in determining whether a particular mark is descriptive or generic in this context."); *id*. at 2313–14 (Breyer, J., dissenting) (describing the weakness of surveys in the genericness context, especially their inability to differentiate the reasons for consumer associations). Notably, the majority in *Jack Daniel's* strongly suggested that confusion was unlikely in that case, despite the plaintiff's survey purporting to show significant confusion. *Jack Daniel's*, 599 U.S. __, slip op. at 15 n.2; *id*. at 10 ("[C]onsumers are not so likely to think that the maker of a mocked product is itself doing the mocking."); *see also VIP Products, LLC v. Jack Daniel's Properties, Inc.*, 291 F. Supp. 3d 891, 908 (D. Ariz. 2018) (survey showed confusion rate of 29%).

**B.      The University's Counterfeiting Claim Is Unsupportable**

Remarkably, the University's argument in support of its *$66 million* counterfeiting claim is limited to a single paragraph. PSU Opp. at 39–41. That paragraph ignores basic requirements of counterfeiting.[8] It also wrongly suggests that counterfeiting remedies are available even where the "confusion" at issue is confusion as to an opaque business relationship—i.e., sponsorship or affiliation—rather than confusion as to source or origin. That argument fails to engage with the Lanham Act's definition of a "counterfeit" mark as one that is "spurious." 15 U.S.C. §§ 1127, 1116(d)(1)(B)(ii). "[S]purious means more than unauthorized; it means '[d]eceptively suggesting an erroneous origin; fake.'" *Cohen & Co., Ltd. v. Cohen & Co. Inc.*, 2022 WL 5250271, at *3 (E.D. Pa. Oct. 6, 2022) (quoting *Spurious*, BLACK'S LAW DICTIONARY (10th ed. 2014)). When applying that definition, the Second Circuit, like the Supreme Court's recent decisions, emphasized trademark use, holding that only uses "to indicate the source of the goods" can be counterfeiting, because counterfeiting requires (among other things) true source confusion:

> Terms not used as a mark may still generate confusion as to affiliation, connection, association, sponsorship, or approval and therefore

---

[8] The University does not attempt to explain how Vintage Brand's historic composite images could be considered "substantially indistinguishable" from the University's alleged marks or why the Court should ignore differences in the relevant marketplaces. VB Brief at 30–33.

constitute trademark *infringement*. But because terms not used as marks are not "spurious," they cannot, as a matter of law, be *counterfeit*.

*Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 95 n.18 (2d Cir. 2020) (cleaned up; emphasis in original).[9]

## C.  **The University Cannot Establish Dilution**

The University's opposition only confirms that it lacks the evidence necessary to establish trademark dilution. It can neither meet the high threshold of fame nor establish that the distinctiveness of any of its alleged marks is likely to be impaired by Vintage Brand's images. 15 U.S.C. § 1125(c)(2)(A); *see also Navajo Nation v. Urban Outfitters, Inc.*, 2016 WL 3475342, at *4 & n.4 (D.N.M. May 13, 2016).

### 1.  There Is No Evidence of Fame

The University cannot—and does not even attempt to—show that its sales and marketing of the asserted marks are sufficient to show fame. *See* PSU Opp. at 40–43; VB Brief at 35–40; *see also New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F. Supp. 3d 334, 350 (D. Del. 2019) (cited by the University) ("$20 billion in revenue worldwide" and "$6 billion in the U.S." over five years

---

[9] The University's authority does not suggest a different result. In *Chanel, Inc. v. Gordashevsky*, the court found that "consumers would mistake [ ] Defendant Coheann's low-quality goods for the genuine high quality products offered for sale by Chanel." 558 F. Supp. 2d 532, 537 (D.N.J. 2008). In *Pennzoil-Quaker State Co. v. Smith*, the court *rejected* the counterfeiting claim because the defendant did not use the plaintiff's mark to pass off goods or services as those of the plaintiff but instead used the plaintiff's mark to falsely advertise the nature of its goods and services. 2008 WL 4107159, at *21–23 (W.D. Pa. Sept. 2, 2008).

sufficient to support fame). The University instead points to three sources of evidence, none of which withstand scrutiny.[10]

*First*, the University offers statistics concerning the number of University alumni in the United States. For example, it claims that "more than 740,000 Americans[11] ... are themselves Penn State alumni" and that number is less than 1% of a niche market—U.S. college graduates. PSU Opp. at 41. Critically, those statistics are, at best, evidence of recognition of the University as a university; they do not remotely show the PENN STATE text is famous *as a mark*. *See H-D U.S.A., LLC v. Affliction Holdings, LLC*, 2020 WL 5913850, at *5 (C.D. Cal. June 8, 2020) (dismissing dilution claim where allegations related to business generally rather than the specific mark at issue). Even if they were evidence of the fame of the mark, what they show is that PENN STATE is *not*, in fact, a household name among the general consuming public of the United States—a population that includes a substantial number of people who have never attended college, much less attended the University. *See Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 677–78 (W.D. Tex. 2008).

---

[10] Whether the University's registrations are incontestable is relevant to validity, not strength, and certainly not fame. MCCARTHY § 32:155.

[11] The record does not support this. The University's Rule 30(b)(6) designee's testimony, which is the basis of this assertion (PSMF ¶ 3), confirmed the accuracy of the following from the University's Brand Book: "Our reach spans more than 740,000 living alumni (sic) *around the world*." 30(b)(6) Dep. (Doc. 123-5) at 42:21–22 (emphasis added) (quoting VBEx. 8 (Doc. 116-35) at 12).

**Second**, the University identifies an inadmissible survey[12] (PEx. 12) that, even if accepted, actually supports Vintage Brand's position because it shows only 39% recognition in a limited geographic region. PEx. 12 at 6; *see also* MCCARTHY § 24:106 ("[A] minimum threshold survey response should be in the range of 75% of the general consuming public of the United States."). Indeed, that facially insufficient figure is inflated by the fact that the survey limited respondents to those in the geographical region surrounding Pennsylvania, where recognition of the University is likely highest. PEx. 12 at 6.

**Third**, the University points to Mr. Franklyn's Survey 1, but that survey— which is already the subject of a motion to exclude—was not a fame survey. Moreover, it did not purport to measure recognition of the PENN STATE text; as described by Mr. Franklyn, the survey asked whether *composite Vintage Brand designs* on T-shirts "are perceived as ornamental features or make the commercial impression of trademarks." Franklyn Report (Doc. 123-44) at 2. Mr. Franklyn did not survey the general consuming public; he purposefully limited the universe to respondents who had recently purchased, or planned to purchase, "college/university apparel." *Id*. at 13. That survey is simply not probative of the fame of the PENN STATE text.

---

[12] *See* Doc. 136.

In addition to the record, the University relies on a Report and Recommendation stating that the "Penn State Marks are indisputably famous." *Pennsylvania State Univ. v. Parshall*, 2022 WL 2712051, at *16 (M.D. Pa. Feb. 17, 2022), *adopted*, 2022 WL 2714998 (M.D. Pa. Mar. 31, 2022). This finding did not stem from a rigorous analysis of the evidence but, rather, from the defendant's failure to respond to Requests for Admission. *Id*. at *10 ("Parshall ... failed to respond to Requests for Admission .... Therefore, Parshall has admitted that ... Penn State trademarks (sic) are famous ...."). The University cannot impute the defendant's failure in that case—which resulted in an absurd legal fiction—to this case.[13]

### 2. There Is No Evidence That Blurring Is Likely

Finally, the University fails to present any evidence that, even if consumers associate Vintage Brand's historic images with the University, those images impair the distinctiveness of the claimed marks. Bare association is not enough. 15 U.S.C. § 1125(c)(2)(B) ("'[D]ilution by blurring' is association ... that impairs the

---

[13] The University cites a TTAB decision to argue that the PENN STATE text is not geographically descriptive. *In re The Pennsylvania State Univ.*, No. 88311154, 18 TTABVUE (TTAB Mar. 9, 2021). That case concerned the below mark, not the PENN STATE text—a fact the Board found relevant because the University previously made Section 2(f) or acquired distinctiveness claims to support registrability of the latter. *Id*. at 12; *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1375–76 (Fed. Cir. 2012) (rejecting relevance of other determinations).



distinctiveness of the famous mark."); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 436 (S.D.N.Y. 2016), *aff'd*, 674 Fed. Appx. 16 (2d Cir. 2016) ("[A]ssociation is a necessary, but not sufficient, condition for a finding of dilution by blurring."). If anything, Vintage Brand's ornamental use of historic composite imagery *strengthens* the association of the PENN STATE text with the University's educational or athletic services. *See* PSU Opp. at 42 ("additional elements added to the PENN STATE Marks increase the connection to the University"). The University has offered nothing but bald conjecture, warranting summary judgment. *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 595 (S.D.N.Y. 2009) (granting summary judgment because the plaintiff "offered the Court nothing in support of its claim that the defendants are likely to dilute its mark.").

## D.    The False Endorsement Claim Fails with the Infringement Claims

The University misconstrues what is, and is not, a separately actionable wrong under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Confusion as to "approval" is actionable under 15 U.S.C. § 1125(a)(1)(A). A claim for false endorsement is a claim for infringement premised on purported confusion about the plaintiff's "approval"—a claim which the University has separately alleged. Doc. 67 ¶ 110; *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008) ("This claim is considered a trademark claim because Facenda's voice is a distinctive

mark" which might "imply[] that the Estate 'sponsor[s]' or 'approve[s] of'" the videogame in which it was used.). Where, as here, the allegations of false endorsement arise from unauthorized use of an entity's alleged text or design marks, there is no meaningful distinction between trademark infringement and false endorsement, and the University is incorrect to suggest otherwise.

## II. CONCLUSION

Vintage Brand respectfully requests that the Court grant its motion for summary judgment.

\\

Dated:  July 7, 2023                     Respectfully submitted,

By: /s/ *Joshua D. Harms*
    Joshua D. Harms, Esq., *pro hac vice*
    Leslie Vander Griend, Esq., *pro hac vice*
    John T. Fetters, Esq., *pro hac vice*
    Valerie A. Walker, Esq., *pro hac vice*
    Washington I.D. Nos. 55679, 28090,
    40800, 52584
    STOKES LAWRENCE, P.S.
    1420 Fifth Avenue, Suite 3000
    Seattle, WA 98101
    Phone:   (206) 626-6000
    Fax:       (206) 464-1496
    Joshua.Harms@stokeslaw.com
    Leslie.VanderGriend@stokeslaw.com
    John.Fetters@stokeslaw.com
    Valerie.Walker@stokeslaw.com

    Mark P. McKenna, Esq., *pro hac vice*
    Illinois I.D. No. 6272699
    LEX LUMINA PLLC
    745 Fifth Avenue, Suite 500
    New York, NY 10151
    Phone:   (646) 898-2055
    Fax:       (646) 906-8657
    Mark@lex-lumina.com

    Jodi S. Wilenzik, Esq.
    Mark H. Perry, Esq.
    PA I.D. Nos. 89205, 68610
    POST & SCHELL, P.C.
    1600 JFK Boulevard, 13th Floor
    Philadelphia, PA 19103
    Phone:  (215) 587-1101
    Fax:       (215) 320-4159
    jwilenzik@postschell.com
    mperry@postschell.com

    *Attorneys for Defendants*

20

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

The undersigned certifies that Vintage Brand, LLC's Reply Brief in Support of its Motion for Summary Judgment contains 4,994 words and therefore complies with Local Rule 7.8(b)(2).

Dated:  July 7, 2023                    By: /s/  *Joshua D. Harms*
                                         Joshua D. Harms, Esq., *pro hac vice*
                                         Washington I.D. No. 55679
                                         STOKES LAWRENCE, P.S.
                                         1420 Fifth Avenue, Suite 3000
                                         Seattle, WA 98101
                                         Phone:   (206) 626-6000
                                         Fax:      (206) 464-1496
                                         Joshua.Harms@stokeslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 7th day of July 2023, which constitutes service on Plaintiff pursuant to Fed. R. Civ. P. 5(b)(2)(E):

>Allison L. Ebeck, Esquire
>McGuire Woods LLP
>Tower Two-Sixty
>260 Forbes Avenue, Suite 1800
>Pittsburgh, PA  15222-3142
>
>Claire H. Eller, Esquire (admitted pro hac)
>Lucy J. Wheatley, Esquire (admitted pro hac)
>Matthew G. Rosendahl, Esquire (admitted pro hac)
>McGuire Woods LLP
>Gateway Plaza
>800 East Canal Street
>Richmond, VA  23219-3916
>Attorneys for Plaintiff,
>The Pennsylvania State University

Dated:  July 7, 2023

By: /s/  *Joshua D. Harms*
Joshua D. Harms, Esq., *pro hac vice*
Washington I.D. No. 55679
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone:   (206) 626-6000
Fax:      (206) 464-1496
Joshua.Harms@stokeslaw.com