# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>     Plaintiff,<br><br>  v.<br><br>VINTAGE BRAND, LLC; SPORTSWEAR, INC., dba PREP SPORTSWEAR; CHAD HARTVIGSON; ERIK HARTVIGSON; MICHELLE YOUNG,<br><br>     Defendants. | Case No. 4:21-cv-01091-MWB<br>Hon. Matthew W. Brann<br><br>JURY TRIAL DEMANDED |

## Plaintiff Penn State's Reply Brief in Support of its Motion for Partial Summary Judgment

# TABLE OF CONTENTS

A.    There is No Genuine Dispute that Penn State Owns Valid and Enforceable Rights in the University Marks. ..................................................1

     1.    Penn State's Valid Rights in the University Marks. ...........................1

     2.    The University Marks Are Not Merely Ornamental. ..........................3

     3.    Defendants' Aesthetic Functionality Defense Fails. ...........................7

     4.    Defendants' Antitrust Defense Fails. .................................................8

B.    Summary Judgment Should be Granted on Penn State's Trademark Infringement and Unfair Competition Claims...............................................10

     1.    The Marks are Identical or Nearly Identical. ...................................10

     2.    There is No Reasonable Dispute that the Parties Directly Compete...........................................................................................15

     3.    The Actual Confusion Evidence Supports Summary Judgment in favor of Penn State. ...................................................................16

     4.    Defendants' Intent Supports a Likelihood of Confusion. .................18

C.    Defendants' Willful Conduct Compels Summary Judgment on Penn State's Counterfeiting Claim. ......................................................................19

D.    Defendants Are Liable As a Matter of Law on False Endorsement............21

E.    Summary Judgment Should be Granted on the Ornamentality Counterclaim.............................................................................................24

F.    Judgment Should be Granted on Vintage Brand's Counterclaim to Cancel the University Seal Registrations. ...................................................25

**Cases**

*Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*,
   367 F. Supp. 3d 1072 (N.D. Cal. 2019)............................................................20

*Audi AG v. Posh Clothing, LLC*,
   No. 18-cv-14254, 2019 WL 1951166 (D.N.J. May 2, 2019) ......................11, 12

*AVCO Corp. v. Turn & Bank Holdings, LLC*,
   2018 WL 1706359 (M.D. Pa. Apr. 9, 2018)........................................................4

*Avco Corp. v. Turn & Bank Holdings, LLC*,
   No. 4:12-CV-01313, 2022 WL 4537885 (M.D. Pa. Sept. 28, 2022) ...........20, 21

*AVS Found. v. Eugene Berry Enters., LLC*,
   No. 11-cv-01084, 2011 WL 6056903 (W.D. Pa. Dec. 6, 2011)........................19

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) ............................................................................24

*British Broadcasting Corp. v. Scott Stander & Associates Inc.*,
   2017 WL 11682913 (C.D. Cal. May 17, 2017) ...................................................2

*Chanel, Inc. v. Gordashevsky*,
   558 F. Supp. 2d 532 (D.N.J. 2008)....................................................................21

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*,
   886 F.2d 490 (2d Cir. 1989) .............................................................................16

*Concord Music Grp. Inc. v. STAX. PTY Ltd.*,
   2023 WL 2977495 (C.D. Cal. Apr. 6, 2023) ......................................................5

*Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc.*,
   146 F. Supp. 300 (S.D.N.Y. 1956) .....................................................................8

*Dell, Inc. v. 3K Computers, LLC*,
   2008 WL 6600766 (S.D. Fla. Oct. 7, 2008) .......................................................9

*Ducks Unlimited, Inc. v. Boondux, LLC*,
  2017 WL 3579215 (W.D. Tenn. Aug. 18, 2017)..................................................5

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
  30 F.3d 466 (3d Cir. 1994) .......................................................................10, 17

*Go Pro Ltd. v. River Graphics, Inc.*,
  2006 WL 898147 (D. Col. Apr. 5, 2006) .............................................................6

*H-D U.S.A., LLC v. SunFrog, LLC*,
  311 F. Supp. 3d 1000 (E.D. Wis. 2018) ............................................................10

*In Holley Performance Products, Inc. v. Quick Fuel Technology, Inc.*,
  624 F. Supp. 2d 610 (W.D. Ky. 2008)..................................................................2

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
  599 U.S. _, 143 S.Ct. 1578 (2023),..........................................................7, 16, 17

*Macy's Inc. v. Strategic Marks, LLC*,
  No. 11-CV-06198-EMC, 2016 WL 374147 (N.D. Cal. Feb. 1,
  2016) ...................................................................................................................6

*In Re McDonald's Corp.*,
  1978 WL 21263 (BNA) .......................................................................................1

*Nat'l Football League Properties, Inc. v. New Jersey Giants, Inc.*,
  637 F. Supp. 507 (D.N.J. 1986) .........................................................................19

*Nationwide Gen. Ins. Co. v. DiBileo*,
  550 F. Supp. 3d 205 (M.D. Pa. 2021).............................................................1, 25

*Ojays, Gigs, Inc. v. Assorted Music, Inc.*,
  08-cv-4712, 2010 WL 11561097 (E.D. Pa. Aug. 27, 2010)...............................24

*Pa. State Univ. v. Parshall*,
  2022 WL 2712051 (M.D. Pa. Feb. 17, 2022) ....................................................24

*Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.*,
  251 F. Supp. 968 (W.D. Mo. 1966) .....................................................................9

*Publications Int'l, Ltd. v. Landoll, Inc.*,
  164 F.3d 337 (7th Cir. 1998) ...............................................................................8

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*,
955 F. Supp. 598 (E.D. Va. 1997) ......................................................21

*Sabinsa Corp. v. Creative Compounds, LLC*,
609 F.3d 175 (3d Cir. 2010) ...............................................................10

*San Diego Comic Convention v. Dan Farr Prods.*,
No. 14-CV-1865-AJB-JMA, 2018 WL 4078588 (S.D. Cal. Aug. 23, 2018) ............................................................................................21

*San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*,
625 F. App'x 322 (9th Cir. 2015) ........................................................20

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*,
983 F.3d 1273 (11th Cir. 2020) ..........................................................23

*United States v. E. I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) ..............................................................................9

*Univ. of Kansas v. Sinks*,
565 F. Supp. 2d 1216 (D. Kan. 2008) .................................................18

*USPTO v. Booking.com B.V.*,
140 S.Ct. 2298 (2020) .........................................................................17

*Virgin Enterprises Ltd. v. Virginic LLC*,
No. 19-CV-0220-F, 2020 WL 1845232 (D. Wyo. Apr. 10, 2020)...............8, 9

*VMG Enters., Inc. v. F. Quesada & Franco, Inc.*,
788 F. Supp. 648 (D.P.R. 1992) .........................................................10

*Xfinity Mobile v. Globalgurutech LLC*,
No. CV-22-01950, 2023 WL 3998459 (D. Ariz. June 14, 2023)........................23

**Statutes**

15 U.S.C. § 1064(6) ..................................................................................24

15 U.S.C. § 1065(2) ....................................................................................2

15 U.S.C. § 1115(a)-(b) ..........................................................................3, 25

15 U.S.C. § 1115(b)(7)...........................................................................8, 9

15 U.S.C. § 1125(a) ...................................................................7

15 U.S.C. § 1127 ......................................................................5

Lanham Act...............................................................................26

**Other Authorities**

McCarthy on Trademarks and Unfair Competition ...........................9, 10

U.S. Department of Justice & Federal Trade Commission, *Antitrust
 Enforcement and Intellectual Propert Rights* (2007) .........................9

**Table of Abbreviations**

| | |
|---|---|
| Opp. | Defendants' Opposition to Penn State's Motion for Partial Summary Judgment ([Dkt. 137](Dkt. 137)) |
| PRSMF | Penn State's Responses to Statement of Material Facts in Support of Vintage Brand's Motion for Summary Judgment ([Dkt. 145](Dkt. 145)) |
| PSMF | Penn State's Statement of Material Facts Filed in Support of its Motion for Partial Summary Judgment ([Dkt. 123](Dkt. 123)) |
| DRSMF | Defendants' Responses to Penn State's Statement of Material Facts in Support of Penn State's Motion for Partial Summary Judgment ([Dkt. 138](Dkt. 138)) |

"Summary judgment is effectively 'put up or shut up time' for the nonmoving party." *Nationwide Gen. Ins. Co. v. DiBileo*, 550 F. Supp. 3d 205, 210 (M.D. Pa. 2021). At this stage of the case, Defendants must show evidence—not speculation or attorney argument—that there are disputed facts. They cannot and do not offer any such evidence. Penn State's Motion should be granted.

## A. There is No Genuine Dispute that Penn State Owns Valid and Enforceable Rights in the University Marks.

### 1. Penn State's Valid Rights in the University Marks.

Defendants do not dispute that Penn State owns federal registrations covering the Penn State Mark, the TPSU Mark, the Lion Shrine Logo, the Pozniak Lion Logo, and the University Seal. (DRSMF ¶¶ 9-11, 15-17, 24-27, 32, 34, 43-45).[1] Nor do Defendants dispute that Penn State sells merchandise bearing these Marks. (DRSMF ¶¶ 12-13, 18-19, 28-29, 33-37, 39-41); Dkt. 157 at 10-11.

Defendants' attacks on Penn State's rights in the Pozniak Lion and S Lion Logo (Opp. 16 n.5, 50 n.26), are easily dismissed. First, on the Pozniak Lion Logo, Defendants argue that Penn State cannot establish rights in this mark because it is used "noncommercially", but a trademark need not be used on products for sale. *In Re McDonald's Corp.*, 1978 WL 21263, *1-3 (BNA) ¶ 702 (T.T.A.B. July 25, 1978) (reversing refusal to register logo for use on employee clothing). Defendants dispute

---

[1] Defendants dispute these Statements of Fact in part, asserting only whether the registrations are valid for ornamental use. Those objections are meritless. *see* § A.2.

whether the Pozniak Lion registration is now incontestable, arguing that when Penn State filed its declaration of incontestability with the USPTO, the registration was not eligible for incontestability due to the instant litigation. (Opp. 50 n.26); 15 U.S.C. § 1065(2). Defendants are incorrect even under their own cited sources. *See Trademark Manual of Examining Procedure § 1605.04* (incontestability precluded only by pending counterclaim for validity); *In Holley Performance Products, Inc. v. Quick Fuel Technology, Inc.*, 624 F. Supp. 2d 610, 616 (W.D. Ky. 2008) (same); *British Broadcasting Corp. v. Scott Stander & Associates Inc.*, 2017 WL 11682913, at *6 (C.D. Cal. May 17, 2017) (incontestability precluded where affirmative defense challenged whether registrant was rightful owner); Dkt. 72 at 38-42. Accordingly, there is no genuine dispute that Penn State owns an incontestable registration for the Pozniak Lion Logo.

Second, Defendants' challenges to Penn State's rights in the S Lion Logo rely on their efforts to exclude evidence from the Wayback machine and Penn State's licensing director, Stephanie Petulla. (Opp. 16 n.5). As discussed in separate briefing, this evidence is admissible, or, for purposes of summary judgment is likely to be admissible at trial. Dkt. 157 at 10-11. Thus, the undisputed facts show Penn State owns prior rights in the S Lion Logo. (DRSMF ¶¶ 39-41).

Accordingly, there is no genuine dispute that Penn State owns registrations in the PENN STATE Mark, the TPSU Mark, the Pozniak Lion Logo, the Lion Shrine

Logo, and the University Seal, and that at least one registration for each Mark is incontestable.  (DRSMF ¶¶ 9-11, 15-17, 24-27, 32, 34, 43-45).  Therefore Penn State is entitled to the attendant evidentiary presumptions of ownership, protectability, and validity.  15 U.S.C. § 1115(a)-(b).  Defendants bear the burden to overcome these presumptions but offer nothing but attorney argument in rebuttal, which is insufficient as a matter of law.

**2.  The University Marks Are Not Merely Ornamental.**

Defendants have not shown a triable fact as to their affirmative defense for ornamentality.[2]  Their evidence suggests that, like many trademarks, the University Marks are visually pleasing.  (PRSMF ¶¶ 5, 18, 27-29, 39-40, 49, 60, 80, 87, 90, 92, 101-102).    However, Defendants' evidence cannot overcome Penn State's registrations because it does *not* show that the marks are *solely* decorative or *solely* ornamental.  15 U.S.C. § 1115(a)-(b).  Additionally, Defendants obviously do not believe their own arguments, as they present their own Vintage Brand name in large format on the front of a t-shirt, accompanied by a ® symbol (PSMF ¶ 161; PSU Ex. 41 at 92), and present the S Lion Logo with a ™ trademark notice.  Thus, Defendants clearly believe that trademarks remain trademarks even when they are printed on the

---

[2] Penn State responds here on Defendants' ornamentality affirmative defense as that applies to all of the University Marks.  Penn State separately responds on the ornamentality counterclaim, which involves only two registrations.  *Infra*, § E.

front of a t-shirt.  (DRSMF ¶¶ 118-120); *AVCO Corp. v. Turn & Bank Holdings, LLC*, 2018 WL 1706359, at *9 & n.98 (M.D. Pa. Apr. 9, 2018).

Defendants try to bridge the gap between ornamental and merely ornamental in two ways.  **First**, they invoke Tülin Erdem's confusion survey.  (DRSMF ¶¶ 114, 117).  This does not support their argument as Erdem's survey was intended to measure confusion and did not even try to test whether consumers perceived the University Marks to be trademarks.  Dkt. 83-1, ¶ 13.  **Second**, they argue that the University Marks are merely ornamental because they appear "in large format on the front of a shirt."  (Opp. 53).  But those Marks are used in myriad ways—including typical "trademark homes" such as the left breast or sleeve of a shirt:





(PRSMF ¶ 101).  Moreover, under the Lanham Act a trademark is used in commerce

when it is "placed in any manner on the goods." 15 U.S.C. § 1127 (emphasis added).

Defendants further challenge the secondary source rule, saying it only applies

to registrability.  (Opp. 52).  Defendants are wrong; federal courts recognize and

apply this rule in infringement actions.  *Concord Music Grp. Inc. v. STAX. PTY Ltd.*,

*2023 WL 2977495, *3 (C.D. Cal. Apr. 6, 2023)* (rejecting mere ornamentality

defense where mark could indicate plaintiff as secondary source); *Ducks Unlimited,*

*Inc. v. Boondux, LLC*, 2017 WL 3579215, *23 (W.D. Tenn. Aug. 18, 2017) ("Sources include secondary sources such as licensors who authorize licensees to use the licensor's trademark in a manner that indicates sponsorship or authorization of the product."); *Macy's Inc. v. Strategic Marks, LLC*, No. 11-CV-06198-EMC, 2016 WL 374147, at *3 (N.D. Cal. Feb. 1, 2016) (discussing secondary source doctrine and noting applicability in collegiate apparel); *Go Pro Ltd. v. River Graphics, Inc.*, 2006 WL 898147, *4 (D. Col. Apr. 5, 2006).

Ultimately, Defendants cannot point to evidence showing that the University Marks (as used by either party) are merely decorative elements with *no* source-indicating role. (PRSMF ¶¶ 18, 27-29, 36-40, 44-47, 49, 51-53, 57, 60 64, 67, 70-71, 73-74, 78, 80, 87, 92, 101-102). And the only actual evidence as to consumer perception offered in this case (as opposed to Defendants' unsupported attorney argument) shows that consumers do view the University Marks as trademarks. (PSMF ¶ 114 (Franklyn's commercial impression survey); Dkt. 98 at 5-28 (briefing on why Defendants' motion to strike survey should be denied). Further, the secondary source rule provides an additional basis for why no reasonable jury could find the University Marks are not trademarks. (DRSMF ¶ 1; PRSMF ¶¶ 24, 36, 44); Dkt. 143 at 16-22 (prior briefing on ornamentality). Judgment should be granted to Penn State on the ornamentality affirmative defenses.

### 3. Defendants' Aesthetic Functionality Defense Fails.

Defendants' aesthetic functionality arguments are largely addressed in Penn State's opposition brief. Dkt. 143 at 24-27. They press their position that a design or logo which performs an expressive function cannot be a trademark. (Opp. 14). This position is foreclosed by *Jack Daniel's*, which put to rest any doubt that (1) marks can be both expressive and trademarks, and (2) expressive marks are subject to standard likelihood of confusion analysis.[3] *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 143 S.Ct. 1578, 1583-90 (2023). To the extent the University Marks permit a consumer to "express" an allegiance to Penn State, that expressive function does not means they are not trademarks, and does not change the infringement analysis.

---

[3] Defendants repeatedly cite *Jack Daniel's* as if that decision supports their view of the law. It doesn't. Worth noting, counsel for Defendants and nearly every law professor signed onto the proposed amicus brief also filed amicus briefing to the Supreme Court. *See* Brief for 30 Trademark Law Professors in Support of Respondent, *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. _, 143 S.Ct. 1578 (2023) (No. 22-148), http://www.supremecourt.gov/DocketPDF/22/22-148/255429/20230223152033068_22-148%20Trademark%20Law%20Professors%20Amicus%20Brief%20TO%20FILE.pdf. They espoused the same views they submit here, arguing that likelihood of confusion analysis should not apply to "expressive works" (*id.* at 5-6, 8-9); arguing that commercial products with an expressive aspect are "selling the speech itself" rather than a product (*id.* at 6, 25); arguing that 15 U.S.C. § 1125(a)'s cause of action for confusion as to sponsorship, affiliation, or connection is too expansive (*id.* at 6-7); arguing that *Dastar* forecloses various trademark claims (*id.* at 8 n.2, 26-27); and arguing that consumer perception should not define the scope of trademark rights (*id.* at 15-16). The Supreme Court disagreed on all points. *Jack Daniel's*, 143 S.Ct. at 1583-84, 1588-93.

Defendants present no additional evidence that would satisfy their burden to show aesthetic functionality. *Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 340 (7th Cir. 1998) ("[R]egistration creates a presumption of validity, implying that the defendant has the laboring oar on all issues relating to validity, including functionality ..."). Defendants therefore cannot rely on aesthetic functionality as providing a complete defense.

### 4. Defendants' Antitrust Defense Fails.

Defendants antitrust arguments are erroneous and barred by law.

First, Defendants' position that § 1115(b)(7) provides a complete defense is wrong. That provision sets out available defenses against incontestable registrations, and a successful § 1115(b)(7) defense would mean only that Penn State could not rely on the special evidentiary presumptions granted to incontestable registrations. It would not defeat Penn State's claims. *Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc.*, 146 F. Supp. 300, 303 (S.D.N.Y. 1956) (successful § 1115(b)(7) defense strips plaintiff of evidentiary advantages but "does not strip him of his trademark").

Second, the *Noerr-Pennington* doctrine bars this defense because the allegedly "anticompetitive" conduct Defendants allege are lawsuits like this one that "deter lawful competition". (Opp. 47). Under *Noerr-Pennington*, resort to legal protections is immune from antitrust liability unless it is a sham, *i.e.*, "objectively baseless." *Virgin Enterprises Ltd. v. Virginic LLC*, No. 19-CV-0220-F, 2020 WL

1845232, at \*4-8 (D. Wyo. Apr. 10, 2020) (collecting cases and dismissing similar defense on pleadings). Defendants do not argue this lawsuit (or others) are objectively baseless, and this defense is barred. *Id.*; *Dell, Inc. v. 3K Computers, LLC*, 2008 WL 6600766, at \*2-3 (S.D. Fla. Oct. 7, 2008) (judgment on pleadings against § 1115(b)(7) defense where defendant used similar marks on similar products—suit not objectively baseless).

Third, this defense is unavailing on its merits. Courts have repeatedly and consistently rejected these defenses and have specifically rejected the arguments made here. *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956) (rejecting view that trademark over brand within larger product category creates monopoly when competitor products under different branding remain available); U.S. Dep't of Justice & Fed'l Trade Comm'n, *Antitrust Enforcement and Intellectual Property Rights* at 1-2 (2007) (antitrust enforcers and courts have shifted away from earlier views that antitrust and intellectual property laws are incompatible); *McCarthy on Trademarks and Unfair Competition* (**"McCarthy"**), § 31:91 (observing that "in no final reported decision involving trademark infringement has a court actually refused to enforce a trademark because it was used in violation of antitrust laws" and collecting cases).[4]

---

[4] Defendants' incorrectly state that *Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.*, 251 F. Supp. 968 (W.D. Mo. 1966), applied § 1115(b)(7) and construed this as a complete defense. (Opp. 49). That decision was not on the merits and cannot

**B.** **Summary Judgment Should be Granted on Penn State's Trademark Infringement and Unfair Competition Claims.**

Penn State should be granted summary judgment on its infringement and unfair competition claims because there is no reasonable dispute that confusion is likely.

### 1. The Marks are Identical or Nearly Identical.

Defendants argue extensively that their use of "composite images" negates similarity here. (Opp. 17-20). They assert that the Court may not consider individual components of its "composite images" because doing so would be impermissible dissection.[5] On this point, Defendants misapply the anti-dissection rule, which is not a rule meant to shield infringers by blocking courts from considering individual marks used on products when those marks are combined with other elements. *H-D*

---

be read so broadly. *See VMG Enters., Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 657 n.4 (D.P.R. 1992).

[5] The anti-dissection rule reflects that "the two marks should not be examined with a microscope to find the differences". *See* McCarthy, § 23:41. This rule would be violated, for instance, if the analysis zoomed in on specific subcomponents of the marks at issue to spot differences without comparing the marks in full (including the context in which they appear). *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 184 (3d Cir. 2010) (reversing district court where it "focused on minute differences" between FORSLEAN and FORSTHIN logos to find marks were not substantially similar). The anti-dissection rule does not protect infringers by preventing courts from looking at the specific mark in question, even when other elements are included on goods or services. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476-78 (3d Cir. 1994) ("[A] subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-descriptive matter to it.") (quoting McCarthy).

*U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1027-28 (E.D. Wis. 2018) (rejecting similar argument based on "careful reading" of case law). Defendants' narrow analysis would mean that if it sold t-shirts with only PENN STATE, the similarity factor would indicate confusion, but that by combining PENN STATE with other University Marks and Penn State-related imagery, the similarity factor now weighs against confusion—an absurd result.

Courts do not apply Defendants' preferred mark vs. composite analysis. For example, in *Audi AG v. Posh Clothing, LLC*, the plaintiff asserted marks including AUDI, AUDI SPORT, the "Audi Rings" Logo, the Bentley "B in Wings" Logo, and the Lamborghini "Charging Bull Crest" Logo. No. 18-cv-14254, 2019 WL 1951166, at *3 (D.N.J. May 2, 2019); Plt. Mot. for Default Judgment, No. 18-cv-14254 (D.N.J.) (Dkt. 13-1), at 8-16. The defendant (like Vintage Brand) combined those marks on merchandise, often with additional elements:

   

  

*Audi*, Dkt. 13-1 at 18-22.  The *Audi* court looked at the use of the individual marks

on defendant's merchandise (mark vs. mark, not mark vs. composite) and concluded

defendant was using the "exact marks" asserted by the plaintiff.  2019 WL 1951166,

at *3-4 (finding of "exact marks" for both trademark infringement and counterfeiting

analysis).

There is no genuine dispute that the VB Penn State Merchandise uses logos

and designs that are identical or nearly identical to the University Marks.  (DRSMF

¶ 113).  And review of some examples of that Merchandise confirms this—Vintage

Brand has not, for instance, added additional words or letters to "Penn State" or

redesigned the face on the Pozniak Lion Logo:

| The University Marks | VB Penn State Merchandise |
| --- | --- |
| PENN STATE |  |
| THE PENNSYLVANIA STATE UNIVERSITY |  |
|  |  |



(DRSMF ¶ 113).

Aside from the similarity of the marks themselves, Defendants argue at length that contextual factors (such as website elements) create dissimilarity and alleviate confusion. (Opp. 21-22). Penn State has addressed much of this in prior briefing—

showing evidence that: (1) Vintage Brand's "disclaimers" have no effect on confusion, and (2) the Vintage Brand "house logo" appearing on the VB Penn State Store does not affect confusion. Dkt. 143 at 31-32; (DRSMF ¶¶ 107-112; PRSMF ¶¶ 13-14, 16-17, 19, 93-94). The additional contextual factors Defendants cite include (3) that websites selling authorized Penn State merchandise sometimes use the phrase "officially-licensed", and (4) that Penn State's licensing agent CLC requires hangtags on merchandise to include an "Official Label". (Opp. 22-23). Here too, the evidence does not support Defendants' view because results from Erdem's survey showed statements about merchandise being "officially licensed" did not meaningfully affect confusion (PRSMF ¶ 93), and consumers shopping online do not see the "Official Label" tag Defendants put so much stock in (PRSMF ¶ 94).

In all, the similarity of marks factor favors confusion.

**2. There is No Reasonable Dispute that the Parties Directly Compete.**

Defendants argue that the parties' merchandise is not directly competitive, offering no facts or evidence to support this view. (Opp. 23-25). Rather, they reason that "it is abundantly clear to consumers that Vintage Brand's products are not licensed by the University" and then suggest that there are two sets of consumers—those who are about licensure and those who do not. (Opp. 25). There is no evidence to support this argument, and so it cannot be considered. Furthermore, the evidence

shows confusion, refuting Defendants' theory. (PSMF ¶¶ 136-140; DRSMF ¶¶ 107-112; PRSMF ¶¶ 13-14, 16-17, 19, 93-94). Vintage Brand's request that the Court bless a black market for counterfeit goods must be rejected. There is no reasonable dispute here that the parties' near identical merchandise is in direct competition. (DRSMF ¶¶ 124-128, 130-135).

### 3. The Actual Confusion Evidence Supports Summary Judgment in favor of Penn State.

On the actual confusion factor, Defendants try to undercut evidence showing Meghan Maffey's confusion in visiting the VB Penn State Store, and the clear results of Franklyn's likelihood of confusion survey showing significant confusion. (Opp. 25-29). Penn State has addressed both issues in prior briefing. Dkt. 143 at 35-42; (PRSMF ¶¶ 103-110, 114-120).

Defendants criticize Franklyn's confusion survey for not asking respondents whether they believe the law required Penn State's permission to sell the Penn State-branded merchandise on the Vintage Brand website. For this proposition Defendants cite a concurring opinion in *Jack Daniel's* that raised concern about over-relying on survey data "in the context of *parodies*" because parodic uses raise "particular risk in giving uncritical or undue weight to surveys."[6] *Jack Daniel's Properties, Inc. v.*

---

[6] Justice Sotomayor's concurrence focused on parodies, which "convey two simultaneous—and contradictory—messages: that it is the original, but also that it is *not* the original." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc., 886 F.2d 490, 494 (2d Cir. 1989)*.

*VIP Prod. LLC*, 143 S.Ct. 1578, 1593 (2023) (Sotomayor, J., concurring). The VB Penn State Merchandise are not parodies and there is no special concern here. The Court should consider the consumer surveys here just as in any other case, viewing surveys as "one piece of the multifaceted likelihood of confusion analysis". *Id.*

Further, there is no merit to Defendants' critiques that Franklyn's surveys did not segregate out consumers based on whether they believed the law required Penn State's permission to sell the VB Penn State Merchandise. Key here: Consumer perception defines whether or not permission is required, and the reason for that perception is irrelevant. If evidence shows that Defendants' use of the University Marks confuses consumers as to the source, sponsorship, or affiliation of Defendants' products, then Defendants may not use those Marks without permission. *Fisons*, 30 F.3d at 472-73. The "circularity" concern is inherent when consumer perception drives the law. The Lanham Act has existed for over seventy years; at this point its impact on consumer perception must be considered a feature, not a bug. *USPTO v. Booking.com B.V.*, 140 S.Ct. 2298, 2304 (2020) (emphasizing "Lanham Act's focus on consumer perception" in governing whether term can be a trademark). Franklyn's survey showed actionable levels of confusion—which means that Penn State's permission *is* required for Vintage Brand to sell this merchandise. (PSMF ¶¶ 138-139).

#### 4. Defendants' Intent Supports a Likelihood of Confusion.

Defendants' intent arguments fall flat. Attempting to create a trial issue, Defendants point to their "disclaimers" and "preclearance searches". (Opp. 29-30).

**First**, Defendants do not dispute evidence from Mr. DeLong that Vintage Brand purposely minimizes and hides the "disclaimers", considering this "best practice". (DRSMF ¶¶ 108-110). And the evidence shows consumers do not notice the "disclaimers" and the "disclaimers" do not affect confusion. Dkt. 143 at 31; (DRSMF ¶¶ 107-112; PRSMF ¶¶ 13-14, 16-17, 19, 93-94. **Second,** Defendants' reliance on "preclearance searches" is disingenuous, as Defendants concede that they did not conduct "what might be traditionally considered a 'trademark clearance' search." (DRSMF ¶ 144). Their claimed attempt to investigate copyright issues is irrelevant (and ineffective, *see* Dkt. 142 at 4-9; Dkt. 143 at 10)).

The evidence establishes Defendants' bad intent. (DRSMF ¶¶ 108-110, 113, 141-156); *Univ. of Kansas v. Sinks*, 565 F. Supp. 2d 1216, 1247-48 (D. Kan. 2008) (finding bad intent at summary judgment for one set of shirts defendants sold based on use of almost identical marks and defendants selling shirts without license).

\*　　\*　　\*

Defendants do not assert any arguments as to the remaining confusion factors, which also favor Penn State. Dkt. 114 at 28-33; (DRSMF ¶¶ 124-128, 130-135). On balance, Defendants' use of the University Marks is likely to cause confusion

about source, sponsorship, or affiliation and summary judgment should be grated to

Penn State. *AVS Found. v. Eugene Berry Enters., LLC*, No. 11-cv-01084, 2011 WL 6056903, at *7 (W.D. Pa. Dec. 6, 2011); *Nat'l Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 512 (D.N.J. 1986) (confusion where defendant's use is "likely to confuse consumers into believing that it is part of the wide array of licensed merchandise sponsored and approved by" owner "and available to the public through [owner's] licensing program").

## C. Defendants' Willful Conduct Compels Summary Judgment on Penn State's Counterfeiting Claim.

Defendants' arguments on counterfeiting also fail. Their arguments about the similarity of the marks repeats their views on dissection of composite images and contextual factors—and are addressed above. *Supra* § B.1 (citing cases finding infringement and counterfeiting, including *Audi*, 2019 WL 1951166, at *3-4, and *SunFrog*, 311 F. Supp. 3d at 1027-28).

Defendants urge that regardless of the outcome on Penn State's infringement claims, summary judgment should not be granted on counterfeiting because of the additional willfulness element. (Opp. 42). They cite their preliminary "search" as showing good faith and rebutting willfulness but searching for potential *copyright*

issues[7] does not evidence good faith with respect *trademark* rights—particularly where Defendants purposely avoided a fulsome investigation of trademark issues. (DRSMF ¶¶ 141, 143-146). The undisputed facts are that Chad Hartvigson did not perform "what might be traditionally considered a 'trademark clearance' search[.]" (DRSMF ¶¶ 144-146), instead pursuing incomplete half-measures.

This shows Defendants' willful ignorance. Their reliance on *SecuraComm* is misplaced, as this Court previously explained that for whatever *SecuraComm* says about subjective belief, "the Third Circuit also made clear that that *one's subjective belief may not be relevant when that belief is formed based on willful ignorance*. … [C]ertain behavior or actions may evidence willful ignorance akin to willful infringement." *Avco Corp. v. Turn & Bank Holdings, LLC*, No. 4:12-CV-01313, 2022 WL 4537885, at *3 (M.D. Pa. Sept. 28, 2022) (emphasis added) (quotation omitted). Just like in *Avco*, the evidence here does not show good faith—it shows that (at most) Defendants buried their heads in the sand. *Id.*

The cases Defendants cite are so factually distinct that they underscore Defendants' willfulness. *San Miguel Pure Foods Co., Inc. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) (defendant had reasonable basis to believe it was first to use marks in United States and that products were distinct); *Am. Auto. Ass'n*

---

[7] Penn State has explained in separate briefing that there is no evidence that Vintage Brand's Penn State images are in the public domain under copyright law. Dkt. 143 at 10; Dkt. 142 at 4-9; (PRSMF ¶¶ 5, 8, 17).

*of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (defendant developed plan to use mark before plaintiff actually launched mark); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-CV-1865-AJB-JMA, 2018 WL 4078588, at *12-13 (S.D. Cal. Aug. 23, 2018) (declining to grant new trial on willfulness where defendant had thoroughly researched mark and found more than one hundred third party uses); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598, 603-04 & n.16 (E.D. Va. 1997) (dilution not willful where defendant registered mark federally and in Utah and received opinion from Utah Attorney General that use of mark was appropriate). Defendants cannot show facts that come close to the evidence in those cases.

Rather, the evidence here shows that Defendants purposely disregard third parties' trademark rights, which establishes willfulness. (DRSMF ¶¶ 141, 143-155); Dkt. 114 at 33-34. *See also Avco*, 2022 WL 4537885, at *3; *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (willfulness shown by willful blindness).

## D. Defendants Are Liable As a Matter of Law on False Endorsement.

Defendants' false endorsement arguments also focus on their "disclaimer" and the words "official" and "licensed", arguments that are addressed above. (Opp. 37-38). *Supra* § B.1. Their additional arguments specific to false endorsement are even

less compelling. **First**, Defendants argue that licensed websites sell merchandise with Penn State's "current logos, which Vintage Brand does not do." (Opp. 38). This is wrong, as Vintage Brand sells merchandise using logos Penn State currently uses—often on nearly identical products:

| Authorized Penn State Merchandise | Vintage Brand's Unauthorized Merchandise |
|---|---|
|  | |

(PSMF ¶ 123).  **Second,** Defendants argue that their website predates any admissible evidence of authorized licensees selling authorized merchandise (Opp. 38).  This assertion is grounded on Defendants' baseless efforts to exclude evidence from the Wayback Machine, which is addressed in separate briefing.  (Dkt. 157 at 10-11).

**Third**, Defendants claim consumers will not believe Penn State endorsed the VB Penn State Merchandise because the VB Website sells merchandise related to hundreds of teams and schools.  (Opp. 40).  First, it is extremely common for retailers to sell multiple genuine authorized brands—in fact almost all retailers operate this way.  Furthermore, Defendants' own expert testified that consumers do not all visit the VB Website's Home Page or other schools' subpages, so there is no evidence that consumers would be aware of the other merchandise.  Dkt. 83-2 (Erdem Dep.) at 42:23-48:19.  The only support Defendants offer is an inapposite case.  (Opp. 40 (citing *Xfinity Mobile v. Globalgurutech LLC*, No. CV-22-01950, 2023 WL 3998459 (D. Ariz. June 14, 2023)).  *Xfinity* involved sales of pre-owned cell phones that were locked by the phones' original carrier, and the court ruled that listing names of those carriers was fair use.  2023 WL 3998459, at *5.  That decision has no bearing here, particularly in the face of numerous on-point cases finding confusion where a defendant sells merchandise related to many different colleges and sports teams.  *E.g., Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1277, 1287 (11th Cir. 2020) (affirming finding likelihood of confusion against Sportswear

where its website sells merchandise related to many schools); *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 472-74, 478-85 (5th Cir. 2008) (affirming verdict against website infringing many schools' trademarks); *Pa. State Univ. v. Parshall*, 2022 WL 2712051 at *4-5, 9-15 (M.D. Pa. Feb. 17, 2022) (finding defendant liable for counterfeiting based on use of Penn State marks on website listing many other college and professional sports teams' marks).

Defendants have not shown any triable fact for a jury on the false endorsement claim, and summary judgment should be granted. *Ojays, Gigs, Inc. v. Assorted Music, Inc.*, 08-cv-4712, 2010 WL 11561097, *2-3 (E.D. Pa. Aug. 27, 2010).

## E. Summary Judgment Should be Granted on the Ornamentality Counterclaim.

Vintage Brand cannot show that Penn State's Registration No. 5,766,698 (PENN STATE) and No. 5,877,080 (University Seal) should be cancelled as merely ornamental. In their briefing on the cancellation counterclaim, Defendants argue that Penn State's *incontestable* registrations may be cancelled (Opp. 50-54 & n.26), but those arguments are misplaced because the counterclaim does not seek to cancel any incontestable registrations.[8]

---

[8] Much of Defendants' analysis focuses on 15 U.S.C. § 1064(6) as the basis by which Penn State's incontestable registrations can be cancelled. (Opp. 50-54). To the extent Defendants intend to invoke § 1064(6) to support their *affirmative defense* of ornamentality as to the incontestable registrations, that provision offers no help as it

Beyond those misplaced arguments, Defendants' arguments for cancellation repeat arguments they made trying to support their affirmative defense, which all fail. *See supra*, § A.2. Penn State's motion for judgment on this counterclaim should be granted. *Nationwide Gen. Ins. Co. v. DiBileo*, 550 F. Supp. 3d 205, 209 (M.D. Pa. 2021).

## F. Judgment Should be Granted on Vintage Brand's Counterclaim to Cancel the University Seal Registrations.

Defendants also fail to defend the counterclaim to cancel the University Seal registrations. Defendants provide no evidence about how consumers perceive the University Seal. (Opp. 54-55). Nor do Defendants dispute that specimens of use and images of actual merchandise show the Seal generally appears in a single color, or that Penn State's branding guidelines restrict any alterations to the Seal or isolating the interior portion. (DRSMF ¶¶ 42, 47-50). Vintage Brand has not shown evidence that there are elements of the University Seal that "reinforce[] the state connection", or that those marks would be perceived by the public as the government insignia. (Opp. 55). As the counterclaimant bearing the burden of proof, Vintage Brand's failure to point to any relevant evidence requires that judgment be granted to Penn State. *Nationwide*, 550 F. Supp. 3d at 209.

---

pertains only to grounds for cancellation. Grounds for defense against registrations are listed in § 1115(a)-(b), and ornamentality is not available against incontestable registrations. *Park 'N Fly*, 469 U.S. at 205.

*     *     *

It is clear here that Defendants disagree with the scope of trademark law and feel that free market principles support a right to sell unauthorized merchandise. They should direct these arguments to Congress.

Also clear here, Defendants have deliberately flouted the Lanham Act and run a counterfeiting operation with the goal of profiting off of Penn State's reputation and hard-won goodwill. Penn State's Motion for Partial Summary Judgment should be granted.

Dated: July 7, 2023

Respectfully submitted,

**McGuireWoods LLP**

By: /s/Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
Matthew George Rosendahl (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com
Email: celler@mcguirewoods.com
Email: mrosendahl@mcguirewoods.com

Allison Ebeck, Esquire
Pa. I.D. No. 322837
McGuireWoods LLP

Tower Two Sixty – Suite 1800
260 Forbes Avenue
Pittsburgh, PA 15222
(412) 667-6000
E-mail: aebeck@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)

The undersigned certifies that Penn State's Brief complies with the Length

Limits set forth under Local Rule 7.8(b), as the brief contains 4,999 words.

By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 7th day of July, 2023, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
1600 JFK Boulevard, 13th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Esquire (Pro Hac Vice)
Theresa Wang, Esquire (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
Theresa.Wang@stokeslaw.com

By: /s/ Lucy Jewett Wheatley
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*