**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Plaintiff, | Case No. 4:21-cv-01091-MWB<br>Hon. Matthew W. Brann |
| v. | JURY TRIAL DEMANDED |
| VINTAGE BRAND, LLC; SPORTSWEAR, INC., dba PREP SPORTSWEAR; and CHAD HARTVIGSON, | |
| Defendants. | |

**Brief in Support of Penn State's Motion for Judgment as a Matter of Law**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND BACKGROUND ................................................. 1

II.    LEGAL STANDARDS ........................................................................ 2

III.   ARGUMENT ....................................................................................... 2

     A.    Judgment Should be Granted to Penn State as a Matter of Law on Vintage Brand's Counterclaim Seeking to Cancel the University Seal Registrations ............................................................. 3

     B.    JMOL Should be Granted on Defendants' Ornamentality Counterclaim 1 and all affirmative defenses presented at trial, including Affirmative Defenses 5-9, and to the extent they were not waived by not being raised in the Pretrial Memorandum or based on the ourt's pretrial rulings, Affirmative Defenses 1-4 and 10-19 ............................................................................... 5

     C.    Judgment Should be Granted to Penn State on Defendants' Aesthetic Functionality Affirmative Defense ..................................... 5

     D.    Judgment Should be Granted to Penn State on Defendants' Asserted Affirmative Defense of Nominative Fair Use ...................... 6

     E.    Penn State is Entitled to JMOL on its Infringement and Unfair Competition Claims (Counts I, VII) .................................................. 7

         1.    Applying the *Lapp* Factors Shows Penn State is Entitled to Judgment as a Matter of Law .............................................. 13

         2.    JMOL Should Be Granted Against Sportswear for Direct Infringement ........................................................................... 15

     F.    JMOL Should Be Grant on Defendants' Willfulness ....................... 17

     G.    JMOL Should Be Granted that Penn State's Lost Licensing Fees Amount to at Least $3,250.69 ................................................... 18

IV.   CONCLUSION ................................................................................. 19

## I.    <u>INTRODUCTION AND BACKGROUND</u>

A jury trial commenced on November 12, 2024 on the pending claims, affirmative defenses, and counterclaims in the trademark case between Plaintiff The Pennsylvania State University ("Penn State" or the "University") and Defendants Vintage Brand, LLC ("Vintage Brand"), Sportswear Inc. ("Sportswear"), and Chad Hartvigson ("Hartvigson").   Now, at the close of Defendants' case-in-chief, Penn State requests that pursuant to FRCP 50(a) the Court grant judgment as a matter of law (JMOL) to Penn State on the following claims and defenses:   (1) Vintage Brand's Counterclaim to Cancel the University Seal; (2) Defendants' ornamentality counterclaim and all affirmative defenses presented at trial, including Affirmative Defenses 5-9, and to the extent they were not waived by not being raised in the Pretrial Memorandum or based on the Court's pretrial rulings, Affirmative Defenses 1-4 and 10-19; (3) Defendants' Aesthetic Functionality Affirmative Defense; (4) the purported Nominative Fair Use affirmative defense; (5) Penn State's claims for trademark infringement and unfair competition as to all Defendants, including Sportswear; (6) Willfulness; and (7) that Penn State's lost licensing fees amount to at least $3,250.69. [1]

---

[1] Penn State further expressly preserves all arguments made in its summary judgment and pretrial briefings.

## II.   <u>LEGAL STANDARDS</u>

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue."  Fed. R. Civ. P. ("FRCP") 50(a).  "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."  *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (internal quotation marks omitted).  The Court must view the evidence in the light most favorable to the non-moving party and "every fair and reasonable inference" must be drawn in that party's favor.  *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir. 1995).  But "a scintilla of evidence is not enough to sustain a verdict" for the non-moving party.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

## III.   <u>ARGUMENT</u>

After several years of advancing novel legal arguments to upend trademark law, Defendants have now had the opportunity to prove to a jury that they should not be liable for infringing Penn State's trademarks, and that the University Seal should be cancelled.  With their case-in-chief now complete, the trial record is clear that on many key factual points, the parties agree.

In view of the trial record, Judgment as a Matter of Law ("JMOL") under FRCP 50 should be granted to Penn State with respect to:

A. **Judgment Should be Granted to Penn State as a Matter of Law on Vintage Brand's Counterclaim Seeking to Cancel the University Seal Registrations**

Vintage Brand's first Counterclaim requires that it prove by a preponderance of the evidence that the University Seal (U.S. Reg. Nos. 1276712 and 5877080) is unregistrable because consumers perceive the Seal to be a government insignia for the Commonwealth of Pennsylvania. *See* Dkt. 72 at 45-47. The registrations are invalid only if the marks consist of or comprise "the flag or coat of arms or other insignia" belonging to Pennsylvania, "or any simulation thereof." 15 U.S.C. §§ 1052(b), 1064(3). The question is whether relevant consumers "perceive matter in the mark as a" government insignia. *In re Family Emergency Room LLC*, 121 U.S.P.Q.2d 1886, 2017 WL 1345063, at *2 (T.T.A.B. 2017). Registration should therefore not be refused if the insignia used within the mark "is sufficiently altered, stylized, or merged with other elements in the mark, so as to create a distinct commercial impression." *Id.*

Here, Vintage Brand has not presented any evidence that would allow a jury to rule in its favor on this counterclaim. There is no evidence on record regarding the Pennsylvania Coat of Arms, nor anything indicating the consumers perceive the Seal to be a government insignia rather than a symbol of Penn State. Even if the Coat of Arms had been brought into evidence, a jury still could not reasonably conclude that consumers perceive the University Seal to be a government insignia.

The Coat of Arms that Defendants cite to here is square in shape, features black, brown, light blue, green, gold, and yellow elements against a rich blue background. [D-368]. The University Seal, by contrast, has a distinct appearance—containing several concentric circles, with fluting along the outer ring, that the words "THE PENNYSLVANIA STATE UNIVERSITY" and the date "1855" appearing between the rings. Further, Penn State's branding guidelines expressly prohibit isolating the interior portion of the Seal, ensuring that the inner elements similar to the Coat of Arms are not dominant. These visual differences mean that the Seal does not fall within the scope of 15 U.S.C. § 1052(b).

Further evidence that consumers do not perceive the University Seal to be a symbol representing the Commonwealth as a whole—as opposed to its flagship public university—is the testimony from multiple witnesses that the Seal has been in use for decades, has been used on public-facing official documents from the University such as diplomas, and that it has also been used on merchandise and recognized as a trademark since 1984. *See* Stip. Fact ¶¶ 22-25, Ex. P-12, P-14; 11/12/24 Tr. 110: 6-4; 11/13/24 Tr. 28:25-31:4. Jackie Esposito also testified that from her thirty-five years as an archivist and university librarian, she has come to know that "[a]lmost every college has a seal", 11/12/24 Tr. at 111:5-12, a point echoed by Scott Howell, 11/13/24 Tr. 28:19-24. Given this fact, coupled with Penn State's long and visible use of the Seal, there is no evidence by which the jury could

4

conclude that the University Seal is likely to be perceived as a government insignia, rather than as a symbol for Penn State. JMOL should be granted.

## B. JMOL Should be Granted on Defendants' Ornamentality Counterclaim 1 and all affirmative defenses presented at trial, including Affirmative Defenses 5-9, and to the extent they were not waived by not being raised in the Pretrial Memorandum or based on the Court's pretrial rulings, Affirmative Defenses 1-4 and 10-19

Defendants have waived many of its previously asserted affirmative defenses, including representing that they are not pursuing antitrust, and not challenging that the University Marks are inherently distinctive. The Court's rulings have further limited the evidence that Defendants may present, including barring them from bringing in evidence of copyright and public domain issues. Similarly, because all but one of the University Marks are protected by registrations—the majority of which are incontestable[2], many of these defenses and the remaining counterclaim of ornamentality must fail. JMOL should be granted.

## C. Judgment Should be Granted to Penn State on Defendants' Aesthetic Functionality Affirmative Defense

JMOL should be entered on the aesthetic functionality affirmative defense because Defendants have failed to bring forth evidence from which a reasonable jury could find that Defendants are at a significant non-reputation-related disadvantage in attracting customers if they are not permitted to use Penn State's marks. Even

---

[2] Where Penn State owns an incontestable registration, nearly identical contestable registrations are not eligible to be cancelled or challenged on grounds that would not be available to assert against an incontestable registration.

accepting Defendants' theory of aesthetic functionality here, the trial evidence precludes a reasonable jury from finding that this affirmative defense applies and is insufficient evidence on this defense for the Defendants to reach the jury.

The unrebutted testimony from Chad Hartvigson is that Vintage Brand does not know who its customers are. *See* C. Hartvigson Trial Dep. (July) at 231:07-18. This alone means that Defendants cannot satisfy their burden to show *why* consumers purchase Defendants' products, and is itself sufficient grounds to grant JMOL. Nor have Defendants put on evidence that would show that people buy the products at issue here, or that Defendants are at any disadvantage if not allowed to use Penn State's marks.

Further, Penn State maintains its positions set forth in prior briefing that Defendants' arguments about and framing of aesthetic functionality are legally erroneous and should be rejected.

### D. Judgment Should be Granted to Penn State on Defendants' Asserted Affirmative Defense of Nominative Fair Use

Defendants have attempted to pursue an affirmative defense of nominative fair use to defend against liability. The elements for nominative fair use require a defendant to show "(1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true

and accurate relationship between plaintiff and defendant's products or services."
*Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005).
Here, Defendants have not put forward the evidence sufficient to take this defense
to the jury. The evidence shows that it is not necessary to use Penn State's
trademarks to refer to the University; there are a multitude of other ways to do this.
*See, e.g.*, 11/13/24 Tr. 155:11-158:3; Ex. P-461, P-462. Defendants have put on no
evidence showing they have no other way to reference Penn State. Similarly, the
evidence shows that the vintagebrand.com website makes repeated references to
Penn State and does not accurately reflect the relationship between the parties. *See*
Ex. P-209, P-298, P-470, P-471.

But even setting aside whether Defendants have put on sufficient evidence
from which a jury could find that this affirmative defense has been proved, judgment
as a matter of law should still be granted to Penn State because this affirmative
defense was not properly pleaded, and therefore is waived. *See* ECF 72. *See*
11/12/24 Tr. 20:6-24:12; *Peet v. Beard*, 3:10-CV-482, 2015 WL 7568300, at \*8
(M.D. Pa. Nov. 25, 2015).

## E. <u>Penn State is Entitled to JMOL on its Infringement and Unfair Competition Claims (Counts I, VII)</u>

The unrebutted evidence at trial shows that Penn State owns valid and
enforceable trademark rights in each of the University Marks, that Defendants have
used those same Marks to sell identical goods through their e-commerce site at

vintagebrand.com, and that Defendants' conduct is likely to cause confusion. *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 218 (3d Cir. 2021) ("[T]o win a trademark claim, a plaintiff must establish that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services."); *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (applying standard to Pennsylvania common law unfair competition claims).

On the validity of Penn State's marks, the evidence at trial permits only the conclusion that Penn State owns each of the University Marks. 15 U.S.C. § 1115(b); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) (holding that in infringement suit, defendant may not challenge incontestable registration on a ground not enumerated in 15 U.S.C. § 1115(b)). This evidence includes Penn State's registration certificates—many of which are incontestable—testimony from multiple witnesses discussing the nature and scope of Penn State's use, and the efforts Penn State has taken to enforce those rights. *See* Ex. P-2, P-4, P-6, P-8, P-10, P-12, P-14, P-16, P-18, P-20, P-22, P-23, P-24, P-26, P-31, P-385, P-392, P-407, P-409, P-430, P-480; 11/13/24 Tr. 23:16-28:10, 28:15-29:8, 30:13-33:6. This evidence showing Penn State's decades-old registrations and its long and continuous use evidences that Penn State owns valid trademark rights in the University Marks.

8

Defendants have not put forth any evidence to challenge those rights, and the jury can only reasonably find that Penn State's marks are valid and enforceable.

Similarly, given the evidence in the case, the jury can only reasonably find that Defendants' offering and sales of Penn State-related merchandise is likely to cause confusion. The evidence shows that the parties are using similar and sometimes identical trademarks. *See, e.g.*, P-267, P-269, P-272, P-277, P-277, P-279, P-280, P-283, P-285, P-289, P-292, P-293, P-429, P-432, P-437, P-440, P-443, P-448, P-458, P-459, P-463, P-465. Defendants use those marks with the same types of products, such as t-shirts, hats, pennants, sweatshirts, koozies, and drinkware. *See* 11/12/24 Tr. 80:5-12; Ex. P-298, P-421, P-423, P-424, P-425, P-427, P-429, P-431, P-432, P-434, P-435, P-438, P-442, P-445, P-448, P-449, P-457, P-465, P-467 P-470, P-471. Penn State's licensees sell at a range of price points, including a price range that overlaps with Vintage Brand's customers. *See, e.g.*, Ex. P-298, P-470, P-471, 11/13/24 Tr. 47:17-48:24, 159:2-160:3. Defendants, like many Penn State licensees, sell their merchandise online through websites that are visually similar — for instance often with links to locate additional sports teams' merchandise. *See, e.g.*, Ex. P-132, P-172, P-174, P-176, P-298, P-470, P-471; 11/13/24 Tr. 43:10-45:5, 63:18-64:4, 94:25-96:3. These similarities in products, marks, and sales methods are not only likely to cause confusion—they have caused confusion. The evidence includes testimony from a consumer who went to the Vintage Brand website and

9

testified that she believed that the products she saw there were authorized by Penn State. Maffey Dep. Tr. 55:11-13. The consumer survey performed by Professor David Franklyn similarly showed that there were significant levels of net confusion. 11/15/24 Tr. 76:4-13. The only evidence before the jury that confusion is not likely to occur comes from Defendants' own survey expert, Tulin Erdem, who ran her own survey and found that the results indicated no confusion. However, as noted by Professor Franklyn, Dr. Erdem arrived at those results only because she used a flawed instrument that featured a defective control cell. *Id.* at 154:5-16. Dr. Erdem's control did not perform its basic function of measuring noise (as opposed to confusion), and as a result, her net confusion opinion is fundamentally flawed. Strikingly, though, if Dr. Erdem's flawed control is disregarded, her remaining data echo the results found by Professor Franklyn and indicate that Defendants' products are likely to confuse. *Id.* at 153:13-20.

Defendants' primary arguments against liability rely on "disclaimer" language on the Vintage Brand website, and the fact that merchants who sell authorized Penn State merchandise use signage and advertising such as product hang-tags with holograms that declare themselves as selling officially licensed items. But even if Defendants' theories carried some weight and would insulate them from liability (which they cannot, as the result would be a legal black market), Defendants have not put forth any actual evidence that these factors minimize or

prevent confusion.  The evidence at trial, rather, shows that disclaimers and licensing statements have little if any impact.  11/13/24 Tr. 160:4-19; 172:13-19.  Defendants have not put forth a scintilla of evidence that consumers actually read the disclaimer language on their website, that they understand it, or that they even notice that language.  *See generally* 11/14/24 Tr. 163:17-164:3; Ex. P-147.  As local retailer Caroline Gummo testified, she does not include a hologram on her ecommerce website because "it's not necessary because we are showing that it is a Penn State garment, with the word mark and the seal underneath it, so it is understood that it is a Penn State licensed product."  11/15/24 Tr. 163:25-164:3.  That is, consumers know that the products she sells are genuine *simply because they bear the Penn State trademarks*—the very presence of those trademarks tells consumers that the products are affiliated with Penn State.  *Id.*  This matches Meghan Maffey's remark that when she saw Penn State products on the Vintage Brand website at first, "I did not think about the licensing, as my experience with Penn State licensing is that *if it has the logo on it, it's trademarked through the University.*"  Maffey Dep. Tr. 57:16-19. This testimony that the presence of the University Marks on merchandise like t-shirts signals to consumers that the products are licensed by Penn State is unrebutted.  On this record, and in light of the remaining likelihood of confusion facts, no reasonable jury could find that confusion is unlikely to occur.  *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("where the identical

mark is used concurrently by unrelated entities, a likelihood of confusion is inevitable").

Defendants' position that Penn State must show that their use is "trademark use" is waived; it is irrelevant whether Defendants are using the marks as trademarks given that this is not an element of the statute or recognized by the circuit court; and courts have consistently rejected this argument. Further, given that Defendants have sold Penn State products that include the trademark symbol and given that they have put on no evidence (and are barred from) challenging Penn State's marks as ornamental, the jury could only reasonably conclude that Vintage Brand's products prominently featuring strong Penn State marks constitute trademark use. Ms. Gummo similarly testified that people who see Penn State marks on a shirt recognize those to be trademarks.

The only mark at issue that is not protected by a federal registration is the S Lion Logo. Penn State has been using the S Lion Logo continuously since before Vintage Brand was founded or it first sold Penn State merchandise. *See* 11/13/24 Tr. (Petulla) at 143:19-144:2. Penn State licensees use the trademark symbol with this logo, *id.* at 144:21-23, indicating to the world that this logo serves as a trademark. Penn State's use of the University Marks includes licensing those marks to at least 2015 in connection with t-shirts, sweatshirts, hats, wall hangings, mugs, koozies, glassware, and other products. Penn State therefore owns valid and

enforceable rights in this mark.  *See Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 219 (3d Cir. 2021) (common law ownership of a trademark is shown through continuous use of that mark in commerce).  Further, the S Lion Logo is inherently distinctive as it combines multiple elements that are themselves distinctive (such as the word "Penn State" and an image of an African lion), against the background of a stylized "S".  11/12/24 Tr. (Esposito) at 105:10-106:13.  *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382 (2d Cir. 2005); *Nike, Inc. (Substituted For Official Starter LLC) v. WNBA Enterprises, LLC*, 85 U.S.P.Q.2d 1187, 2007 WL 763166 (T.T.A.B. 2007).  Given that Penn State's continuous use of the S Lion Logo predates when Vintage Brand was even founded or started its website, Penn State has priority and is entitled to enforce its common law rights in this Logo here.  *See Kars 4 Kids*, 8 F.4th at 219 (party who had continuously used mark first owned common law trademark rights).

### 1. Applying the *Lapp* Factors Shows Penn State is Entitled to Judgment as a Matter of Law.

The evidence at trial establishes that no reasonable jury could find that Defendants' offering and sale of Penn State-related products is likely to cause confusion among consumers.  The *Lapp* factors include: (1) the similarity of the marks; (2) the strength of the owner's mark; (3) the price of goods and amount of care purchasers will exercise; (4) & (6) actual confusion and length of time that the goods have been sold without confusion arising; (5) defendant's intent in adopting

the mark; (7) marketing channels; (8) overlapping markets; (9) similarity of goods; and (10) evidence that owner might expand markets. *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (3d Cir. 2015); *see also Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

These factors weigh heavily in Penn State's favor. Crucially, Defendants are using marks that are identical or nearly identical to the University Marks to sell the same goods as does Penn State, and to the same set of customers. *See AVS Found. v. Eugene Berry Enters., LLC*, No. 11-cv-01084, 2011 WL 6056903, at *7 (W.D. Pa. Dec. 6, 2011) (finding likelihood of confusion where defendant sold shirts bearing plaintiff's TERRIBLE TOWEL-related marks because those products were targeted to the same Pittsburgh Steelers fans as were plaintiff's products).

Further, Penn State's marks are strong (***Lapp* factor 2**) as they have all been used exclusively by Penn State for decades, Penn State invests in developing and promoting those marks, and nearly all of the marks are protected by federal registrations, many of them incontestable. *See Pennzoil-Quaker*, 2008 WL 4107159, *12 (marks protected by incontestable registrations are entitled to strong protection); *see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc*., 275 F. Supp. 2d 543, 571 (D.N.J. 2003) (marks were considered strong where they were used continuously for years and were well-known in relevant customer group). And the

strength of the University Marks was confirmed by the consumer surveys constructed by Plaintiff's expert David Franklyn.

The evidence of Defendants' bad intent goes on. Defendants' business strategy is to use Penn State's trademarks to attract customers and purchases, and to not to stop unless forced. This shows an intent to infringe. *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1536-37, 1545 (11th Cir. 1985); *AVS Found.*, 2011 WL 6056903, at *7. Furthermore, Defendants are serial infringers, which also evidences bad faith. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187-88 (3d Cir. 2010).

In all, given that the *Lapp* factors tip so heavily in favor of a likelihood of confusion, summary judgment should be granted to Penn State. *See, e.g.*, *AVS Found.*, 2011 WL 6056903, at *1-8 (analyzing likelihood of confusion under the *Lapp* factors and granting summary judgment on Lanham Act trademark infringement claims); *see also New Balance*, 424 F. Supp. 3d at 349-50 (same).

### 2. JMOL Should Be Granted Against Sportswear for Direct Infringement

The Court should grant JMOL against Sportswear as a direct infringer because the undisputed evidence is that Sportswear, pursuant to a licensing and fulfillment agreement, manufactures and distributes the merchandise at issue in this case. *See* 11/18/24 Tr. (forthcoming); Ex. P-35. *See also New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F. Supp. 3d 334 (D. Del. 2019). Penn State

asserted infringement and unfair competition claims against Sportswear for direct infringement, and the evidence shows that Sportswear is liable as a direct infringer.

The undisputed evidence from trial is that Sportswear fulfills multiple roles for Vintage Brand: licensing trademarks and content from Vintage Brand, manufacturing all orders, applying the infringing designs to merchandise, shipping that merchandise to consumers, and providing all customer service. C. Hartvigson Trial Dep. (July) at 16:11-17:2. Sportswear's direct infringement liability is further supported by Chad Hartvigson's testimony that "every item that Vintage Brand sells come[s] from Prep Sportswear." *Id.* at 17:5-7.

Sportswear is directly liable for infringement and unfair competition here because it has manufactured and distributed infringing merchandise in commerce. *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200 (D.C. Cir. 1981) ("Courts have long held in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tort-feasor.") (Ginsburg, J.); 15 U.S.C. § 1114(1); § 1125(a)(1)(A). *See also Gucci America, Inc. v. Daffy's Inc.,* 354 F.3d 228, 231 (3d Cir. 2003) (affirming a district court finding of directly liability as to a retail distributor despite the distributor's good faith belief that its goods were genuine); *New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC,* 424 F. Supp. 3d

334, 350 (D. Del. 2019) (finding directly liable a distributor of infringing shoes that were manufactured by a third party).

### F.  __JMOL Should Be Grant on Defendants' Willfulness__

The Court should grant JMOL on the issue of whether Defendants' conduct was willful because the evidence shows that Defendants deliberately copied Penn State's trademarks in a way that would emphasize the trademark components and Penn State-related imagery.  *Compare, e.g.*, D-4 and D-126 *with* D-7, D-10, D-17, D-25.  "Willful conduct can be established through 'deliberate and unnecessary duplicating of a plaintiff's mark … in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff nurtured.'"  *Coach, Inc.*, 2012 WL 13028160, at *5 (quoting *Securacomm Consulting, Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999).

Here, Defendants physically copied and applied exact or near-exact duplicates of Penn State's Registered Marks to their merchandise.  *See* Trial Dep. of M. Young at 43:04-45:25.  Starting with Penn State memorabilia, Defendants extract images and make few to no changes before making those designs available for purchase on merchandise.  *Id.*; 11/12/24 Tr. 79:22-80.  Many items contain multiple Penn State trademarks (*see, e.g.*, P-268, P-269, P-270, P-272, P-279, P-280, P-283), evidencing Defendants' intent to appropriate Penn State's goodwill.  The unrebutted evidence is that Defendants are familiar with trademarks and intellectual property, using their

own branding and logos to build customer recognition and strengthen their brand. M. Young Trial Dep. at 36:10-41:22. Mr. Hartvigson testified at trial that trademarks are important, that registering trademarks is important, and that he is familiar with searching the USPTO website. 11/18/24 Tr. (forthcoming). He agreed that companies cannot use other companies' trademarks. *Id.*

Defendants' business model highlights their ill intent. Sportswear has licensed marks from educational institutions, including colleges, for nearly twenty years and clearly is familiar with intellectual property rules and what is required to respect and protect trademark rights. 11/15/24 Tr. 95:25-101:2. Chad Hartvigson is the CEO of Sportswear and has executed declarations to obtain and secure trademark registrations. 11/18/24 Tr. (forthcoming). And Mr. Hartvigson testified that Vintage Brand will not use an image if it is a registered trademark. C. Hartvigson Trial Dep. (July) at 131:14-131:23. Given his familiarity with the USPTO and its system and his disavowal of using registered trademarks on merchandise, Defendants' bad faith or reckless disregard for Penn State's rights is apparent. The unrebutted testimony is that a USPTO search for "Penn State", for example, shows that the University owns registrations for the PENN STATE mark. 11/13/24 Tr. 104:14-106:3.

### G. **JMOL Should Be Granted that Penn State's Lost Licensing Fees Amount to at Least $3,250.69**

The unrebutted evidence at trial is that Defendants sold 1,269 products through the Penn State store on vintagebrand.com, with Defendants receiving

revenues of $23,219.27 from those sales.  11/12/24 Tr. 84:17-21.  The evidence has

further shown that while Penn State receives royalties at varying rates depending on

the type of product and type of mark, 14% is a conservative measure of the royalty

rate that Penn State would have received for the goods at issue if Defendants had

obtained a license.  11/13/24 Tr. 39:1-16.  Applying that conservative 14% rate to

the total revenues, the evidence shows that Penn State would have received

$3,250.69 in licensing fees for the sales of Penn State merchandise by Defendants.

*Id.* 39:21-40:3.  Given this evidence, which is uncontradicted, the Court should grant

JMOL and rule that Penn State's damages include a minimum of $3,250.69 in lost

licensing fees.

## IV.    CONCLUSION

However, Defendants' novel legal arguments cannot overcome the mountain

of evidence that they have used Penn State's exact registered marks on the registered

goods without permission.  Nor have Defendants ever been able to adduce any

evidence to show that Penn State's marks are invalid, as the consuming public

unquestionably views the University Marks as famous trademarks, belonging

exclusively to Penn State.  Judgment should be granted to Penn State as a matter of

law.

19

Dated: November 18, 2024

                            Respectfully submitted,

                            **MCGUIREWOODS LLP**

                            By: _/s/Lucy Jewett Wheatley_
                            Lucy Jewett Wheatley (*Pro Hac Vice*)
                            David Finkelson (*Pro Hac Vice*)
                            Claire Hagan Eller (*Pro Hac Vice*)
                            McGuireWoods LLP
                            800 East Canal Street
                            Richmond, VA 23219
                            Tel: (804) 775-4320
                            Fax: (804) 698-2130
                            Email:  lwheatley@mcguirewoods.com
                            Email:  dfinkelson@mcguirewoods.com
                            Email:  celler@mcguirewoods.com

                            Kyle S. Smith (*Pro Hac Vice*)
                            McGuireWoods LLP
                            501 Fayetteville St., Ste. 500
                            Raleigh, NC 27601
                            Tel: 919-835-5966
                            Fax: 919-755-6607
                            Email: ksmith@mcguirewoods.com

                            Jessica S. Maupin (*Pro Hac Vice*)
                            McGuireWoods LLP
                            2000 McKinney Ave., Ste. 1400
                            Dallas, TX 75201
                            Tel: 214-932-6400
                            Fax: 214-932-6499
                            Email: jmaupin@mcguirewoods.com

                            Courtney S. Schorr
                            Pa. I.D. No. 317370
                            McGuireWoods LLP
                            Tower Two Sixty – Suite 1800

260 Forbes Avenue
Pittsburgh, PA 15222
Tel: 412-667-6000
E-mail: cschorr@mcguirewoods.com

*Attorneys for The Pennsylvania State University*

## <ins>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)</ins>

The undersigned certifies that Penn State's Brief complies with the Length

Limits set forth under Local Rule 7.8(b), and contains 4,552 words.

By: <ins>/s/ Lucy Jewett Wheatley</ins>
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Brief in Support of Penn State's Motion for Judgment as a Matter of Law with the Clerk of the Court using the CM/ECF system on November 18, 2024, which constitutes service on Defendants pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jodi S. Wilenzik, Esquire
PA Supreme Court I.D. No. 89205
Marc H. Perry, Esquire
PA Supreme Court I.D. 6810
POST & SCHELL, P.C.
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, PA 19103
jwilenzik@postschell.com
mperry@postschell.com

Leslie Vander Griend, Esquire (Pro Hac Vice)
John Fetters, Esquire (Pro Hac Vice)
Bradford J. Axel (Pro Hac Vice)
Joshua D. Harms (Pro Hac Vice)
Valerie A. Walker (Pro Hac Vice)
Theresa H. Wang (Pro Hac Vice)
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Leslie.VanderGriend@stokeslaw.com
John.Fetters@stokeslaw.com
josh.harms@stokeslaw.com
valerie.walker@stokeslaw.com
bja@stokeslaw.com
Theresa.wang@stokeslaw.com

Mark P. McKenna (Pro Hac Vice)
Christopher Jon Sprigman (Pro Hac Vice)

LEX LUMINA, PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
mark@lex-lumina.com
chris@lex-lumina.com

By: /s/ *Lucy Jewett Wheatley*
Lucy Jewett Wheatley (*Pro Hac Vice*)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1368
Fax: (804) 698-2130
Email:  lwheatley@mcguirewoods.com

*Attorney for The Pennsylvania State University*

24