# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>    Plaintiff and Counter-Claim Defendant,<br><br>v.<br><br>VINTAGE BRAND, LLC;<br><br>    Defendant and Counter-Claim Plaintiff<br><br>and<br><br>SPORTSWEAR INC. d/b/a PREP SPORTWEAR; and CHAD HARTVIGSON,<br><br>    Defendants. | Case No.:  4:21-cv-01091-MWB<br>(Hon. Matthew W. Brann)<br><br>JURY TRIAL DEMANDED |

## BRIEF IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW

Mark P. McKenna, Esq., *pro hac vice*
Illinois I.D. No. 6272699
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (646) 898-2055
Fax:   (646) 906-8657
Mark@lex-lumina.com

John T. Fetters, Esq., *pro hac vice*
Washington I.D. No. 40800
Joshua D. Harms, Esq., *pro hac vice*
Washington I.D. No. 55679
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 626-6000
Fax:   (206) 464-1496
John.Fetters@stokeslaw.com
Joshua.Harms@stokeslaw.com

## I. INTRODUCTION

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Vintage Brand, LLC ("Vintage Brand"), Sportswear Inc. ("Sportswear"),[1] and Chad Hartvigson (collectively "Defendants") respectfully request that this Court enter judgment as a matter of law as to the trademark infringement claims advanced by The Pennsylvania State University (the "University") on the basis of Defendants' affirmative defense of aesthetic functionality.

### A. Legal Standard

"If a party has been fully heard on an issue during a jury trial," then the other party may seek judgment as a matter of law. FED. R. CIV. P. 50(a)(1). "The movant is entitled to judgment if there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Shrey v. Kontz*, 981 F. Supp. 2d 333, 338 (M.D. Pa. 2013) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 970–971 (3d Cir. 1996)).

> Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. The question is not whether there is literally no evidence supporting the

---

[1] The Court granted Defendants' Rule 50(a) motion as to Sportswear on November 14, 2024. 11/14/2024 Tr. at 211:12–14. The University has moved for reconsideration of the Court's ruling (Doc. 312). The Court should deny the University's motion for reconsideration, but if the Court does reconsider its previous ruling, Defendants' second Rule 50(a) motion should be considered to apply to all Defendants.

party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (cleaned up).

### B. The product features at issue indisputably serve an aesthetic purpose wholly independent of any source-identifying function.

The Court issued a Memorandum Opinion regarding whether Defendants could maintain their affirmative defense of aesthetic functionality. *See* Doc. 295 at 56–69. In concluding that Defendants' could employ this defense, the Court reasoned as follows:

> Imagery, even if it is trademarked and is the reason why consumers purchase a product, is subject to the aesthetic functionality defense so long as there is sufficient evidence that the images serve an aesthetic purpose wholly independent of any source-identifying function. In such circumstances the producer or sponsor of the goods would be of no consequence to consumers and, as the Supreme Court observed in *Dastar*, "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.

*Id.* at 64. In short, the Court held that Defendants' aesthetic functionality defense applies "to product features that serve an aesthetic purpose wholly independent of any source-identifying function." Doc. 295 at 68.

Additionally, the Court described *International Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912 (9th Cir. 1980), as exemplifying the "distinction between actionable and non-actionable aesthetic functionality defense." Doc. 295 at 62. "Trademark law does not prevent a person from copying so-called 'functional'

features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Id*. at 62–63 (citing *Job's Daughters*, 633 F.2d at 917). The Court also relied upon *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317 (3d Cir. 2023), in which the Third Circuit observed that a "design is functional if it is useful for anything beyond branding." *Id.* at 321. Whether functionality is evaluated by the University's use or Defendants' use is a distinction without a difference, Doc. 295 at 69, and "[f]unctionality is not a high bar." *PIM Brands Inc.*, 81 F.4th at 321.

The record is clear that the imagery at issue, whether used by the University or Vintage Brand, serves an aesthetic purpose wholly independent of any source-identifying function. The testimony of the University's own witnesses has established that a jury could not properly render a verdict for the University on this affirmative defense. For example, Jackie Esposito's testimony confirmed that she purchases fan apparel for the University because she is proud of the University and wants to express her affiliation with or support for University:

> Q. You mentioned during your testimony a moment ago that you, yourself, own fan apparel?
> A. I do.
> Q. And you testified, I believe, that you own it because of the reputation of Penn State?
> A. Absolutely.

4

> Q. Can you please explain more what you mean by reputation in that context?
>
> A.    I personally believe in the value of the education and the research that's done at Penn State. I personally believe that students from working class families should have a university to go to that first generation students should have a school that's theirs that they can go to that they can have loyalty to. I believe in those things that are part of the mission statement of Penn State. That's important to me. It was important to me when I was hired at Penn State. It's important to me as part of being an employee of Penn State, even though I'm retired from Penn State. That still means a great deal to me.
>
> And when I purchase Penn State apparel to give as gifts, it's because I'm proud of the things that Penn State has done. Penn State is responsible for thousands of inventions and innovations, and I am really proud of that record of what Penn State has done since 1855.

11/12/2024 Tr. at 134:25–135:23. Notably, Ms. Esposito did not express any concern with respect to the University's role in sourcing high quality apparel. Her purchasing rationale focused exclusively on her personal desire to identify herself with the University for its reputation as an educational institution. *Cf. Job's Daughters*, 633 F.2d at 920 (holding that the name and emblem were aesthetically functional features where they were prominent and visible to others when worn, "allowing the wearer to publicly express her allegiance to the organization").

Similarly, Stephanie Petulla, the University's Director of Licensing, agreed that wearing a Vintage Brand t-shirt to a game would express support for the University's team. 11/13/2024 Tr. at 196:21. And with respect to University-branded products, she explained that "people want to have the association to," *id.* at

5

114:22–23, and "show their affinity for," the University. *Id.* at 77:16–18. Moreover, on re-direct, Ms. Petulla engaged in the following colloquy:

> Q. Ms. Petulla, you indicated that you purchase Penn State-branded authorized products from time to time, correct?
>
> A. That's correct.
>
> Q. Why go you purchase those products?
>
> A. I purchase them for a number of reasons. ***I purchase them because I want to support the University; I purchase them because I feel pride in the University and its mission;*** I purchase them for my son because I secretly want him to go there, not so secretly; so I purchase them for a number of reasons, whether they be for myself or gifts for others. I feel like it's a great way to support the University and reinforce the mission.

*Id.* at 197:5–16 (emphasis added). Like Ms. Esposito, Ms. Petulla purchases University-branded products because she is proud of the University and wants to express support for it. This expressive desire is distinct from any source-identifying function the imagery could have. *Cf. PIM Brands Inc.*, 81 F.4th at 321 (holding that communicating a flavor is a legally recognizable function).

There is simply no need for consumers to rely on the imagery to identify the source for the goods at issue. This was demonstrated with the testimony of Scott Howell, an employee of Collegiate Licensing Company (CLC). He testified that the contractually mandated Official Label is intended as a means for consumers to identify merchandise that is "official"—*i.e.*, authorized by the University. 11/13/2024 Tr. at 51:13–18. And CLC's Standard Retail License Agreement, which

6

it enters on behalf of the University and hundreds of other college institutions, requires that the Official Label—an undisputed source identifier—must appear on every licensed article, packaging, and advertising materials. *See* Ex. D-103 at 14, ¶11(a)–(b). Mr. Howell also testified that, during his more than twelve years employed at CLC, he is not aware of any school allowing its licensees to sell goods contrary to this contractual requirement. 11/13/2024 Tr. at 61:4–10. Not only can consumers rely upon the Official Label to identify official University goods, but with respect to Vintage Brand goods, multiple disclaimers on Vintage Brand's website make clear to consumers that Vintage Brand is not affiliated with the University. 11/15/2024 Tr. at 145:15–147:1. There is no evidence to support the conclusion that the imagery on the goods at issue is performing a source-identifying function for consumers.

    The record is replete with evidence that the product features at issue, whether appearing prominently on the goods of the University or Vintage Brand serve an aesthetic purpose wholly independent of any source-identifying function. Ultimately, there is insufficient evidence upon which the jury could properly find a verdict for the University on the question of aesthetic functionality. *Lightning Lube, Inc.*, 4 F.3d at 1166.

## II.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment as a matter of law.

\\

Dated:  November 18, 2024

        Respectfully submitted,

By: /s/ *Joshua D. Harms*
    John T. Fetters, Esq., *pro hac vice*
    Joshua D. Harms, Esq., *pro hac vice*
    Leslie Vander Griend, Esq., *pro hac vice*
    Valerie A. Walker, Esq., *pro hac vice*
    Washington I.D. Nos. 40800, 55679, 28090, 52584
    STOKES LAWRENCE, P.S.
    1420 Fifth Avenue, Suite 3000
    Seattle, Washington 98101
    Phone:  (206) 626-6000
    Fax:      (206) 464-1496
    John.Fetters@stokeslaw.com
    Joshua.Harms@stokeslaw.com
    Leslie.VanderGriend@stokeslaw.com
    Valerie.Walker@stokeslaw.com

    Mark P. McKenna, Esq., *pro hac vice*
    Illinois I.D. No. 6272699
    LEX LUMINA PLLC
    745 Fifth Avenue, Suite 500
    New York, New York 10151
    Phone:  (646) 898-2055
    Fax:      (646) 906-8657
    Mark@lex-lumina.com

    Jodi S. Wilenzik, Esq.
    Mark H. Perry, Esq.
    PA Supreme Court I.D. Nos. 89205, 68610
    POST & SCHELL, P.C.
    1717 Arch Street, 24th Floor
    Philadelphia, Pennsylvania 19103
    Phone: (215) 587-1101
    Fax:     (215) 320-4159
    jwilenzik@postschell.com
    mperry@postschell.com

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

I hereby certify that the foregoing brief complies with Local Rule 7.8(b) because it does not contain more than 5,000 words. This brief contains 1,547 words (not including the caption page submission date and signature, Certificate of Compliance, or Certificate of Service) according to the word count feature of the word processing software used to prepare this memorandum.

Dated:  November 18, 2024          By: /s/ *Joshua D. Harms*
                                         Joshua D. Harms, Esq., *pro hac vice*
                                         Washington I.D. No. 55679
                                         STOKES LAWRENCE, P.S.
                                         1420 Fifth Avenue, Suite 3000
                                         Seattle, Washington 98101
                                         Phone:  (206) 626-6000
                                         Fax:    (206) 464-1496
                                         Joshua.Harms@stokeslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 18th day of November 2024, which constitutes service on Plaintiff pursuant to Fed. R. Civ. P. 5(b)(2)(E):

>Courtney S. Schorr, Esquire
>McGuire Woods LLP
>Tower Two-Sixty
>260 Forbes Avenue, Suite 1800
>Pittsburgh, PA  15222-3142

>Claire H. Eller, Esquire (admitted pro hac)
>Lucy J. Wheatley, Esquire (admitted pro hac)
>Matthew G. Rosendahl, Esquire (admitted pro hac)
>David E. Finkleson, Esquire (admitted pro hac)
>McGuire Woods LLP
>Gateway Plaza
>800 East Canal Street
>Richmond, VA  23219-3916

>Jessica S. Maupin, Esquire (admitted pro hac)
>McGuire Woods LLP
>2000 McKinney Ave., Suite 1400
>Dallas, TX 75201

>Attorneys for The Pennsylvania State University

Dated:  November 18, 2024          By: /s/ *Joshua D. Harms*
                                   Joshua D. Harms, Esq., *pro hac vice*
                                   Washington I.D. No. 55679
                                   STOKES LAWRENCE, P.S.
                                   1420 Fifth Avenue, Suite 3000
                                   Seattle, Washington 98101
                                   Phone:  (206) 626-6000
                                   Fax:    (206) 464-1496
                                   Joshua.Harms@stokeslaw.com