# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE BRAND, LLC; SPORTSWEAR, INC., d/b/a PREP SPORTSWEAR; and CHAD HARTVIGSON,<br><br>Defendants. | No. 4:21-CV-01091<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

### NOVEMBER 19, 2024

**I.   BACKGROUND**

Vintage Brand, LLC ("Vintage Brand") designs apparel featuring various designs, including the trademarked symbols at issue in this case, and sells that apparel on its website. As part of its contract with Vintage Brand, Sportswear Inc. ("Sportswear") manufactures this apparel—including affixing the allegedly infringing marks—and ships it to customers on demand when they place orders on Vintage Brand's website.[1]

For the past several years, plaintiff, The Pennsylvania State University ("Penn State") and defendants, Vintage Brand and Sportswear, have been embroiled in

---

[1] *See* Exhibit A – C. Hartvigson 2022.08.13 Dep. Tr. at 17:5-7, Doc. 318.

trademark litigation over the use of Penn State's marks on Vintage Brands apparel. Today marks the sixth day of Penn State's trademark infringement jury trial. On November 14, 2024, after the conclusion of Penn State's case, defendant Sportswear Inc. moved for judgment as a matter of law on the direct trademark infringement claim against it.[2] This Court granted that motion on November 15 on the understanding that, as a manufacturer of the products, Sportswear had no role in designing, marketing, or selling them—it may have been liable under a contributory infringement theory,[3] but not for direct trademark infringement. On November 16, Penn State filed a motion for reconsideration of this Court's ruling.[4] On November 18, Sportswear filed its brief in opposition,[5] and Penn State filed its reply brief.[6] The motion is now ripe for disposition. For the reasons stated below, it is granted.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 50(a) allows a district court to "remove from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result."[7] When deciding a Rule 50(a) motion, the district court is not permitted to weigh the parties' evidence or the reasonable inferences that

---

[2] Motion for Judgment as a Matter of Law, Doc. 310.
[3] *Inwood v. Ives Labs.*, 456 U.S. 844 (1982).
[4] Motion for Reconsideration, Doc. 312.
[5] Brief in Opposition, Doc. 319.
[6] Reply Brief, Doc. 320.
[7] Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, *Rule 50, § 2521 History and Purpose of the Rule* (citing *e.g.*, *Weisgram v. Marley Co.*, 528 U.S. 440 (2000)).

may be drawn by the jury.[8] The United States Court of Appeals for the Third Circuit has held that "[a] motion for judgment as a matter of law under Rule 50(a) will be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under governing law."[9]

Federal Rule of Civil Procedure 59(e) permits litigants to file a motion to alter or amend judgment within 28 days after the entry of judgment. To support a motion for reconsideration, a party must show "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or," as relevant here, "(3) the need to correct a clear error of law or fact or to prevent manifest injustice."[10]

## III. ANALYSIS

Penn State makes two arguments in support of its motion. First, it argues that Sportswear's distribution of goods featuring the allegedly infringing Penn State marks (the "goods") constitutes trademark infringement. Alternatively, it disputes this Court's original assumption that where a defendant manufactures goods featuring protected marks for sellers, that defendant can only be liable for contributory infringement, not direct trademark infringement. Based on its current

---

[8] *See e.g., Harris v. Homecomings Fin. Servs.*, 377 F. App'x 240, 242 (3d Cir. 2010).
[9] *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013).
[10] *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (cleaned up).

understanding of this thorny area, the Court opts for a third approach, which is the most narrow one. Regardless of whether a defendant's manufacture or shipment of goods featuring a protected mark could support direct trademark infringement in isolation, a reasonable juror could find that they can do so together.

In *Inwood Laboratories v. Ives Laboratories*, the Supreme Court of the United States established the contributory liability theory of trademark infringement under the Lanham Act, which applies to defendants who cannot be held directly liable for infringement.[11] Though it was "undisputed that those pharmacists who mislabeled generic drugs with Ives' registered trademark violated § 32" of the Lanham Act, the manufacturers, who had not mislabeled the drugs, could only be liable under a contributory liability theory.[12] This case is different both because Sportswear applied the mark itself during manufacturing, and shipped the goods to consumers.

As articulated by the Third Circuit, to prove trademark infringement, "a plaintiff must demonstrate that (1) it has a valid and legally protectible mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."[13] The third element is the crux of this dispute, and the Lanham Act provides context demonstrating its constituent parts.

---

[11] 456 U.S. 844, 853-54 (1982) (explaining that liability would require showing that defendant "intentionally induced the pharmacists to mislabel generic drugs or, in fact, continued to supply [the drug] to pharmacists whom the petitioners knew were mislabeling generic drugs").
[12] *Id.*
[13] *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

The Lanham Act provides:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable.[14]

This statutory text fleshes out the third element of trademark infringement in more detail. (1) The defendant must use the mark "in commerce," (2) that use in commerce must be "in connection with" various commercial activities, including the sale or distribution of goods, and (3) that use must cause a likelihood of confusion, mistake, or deception on or in connection with the specified commercial activity.

The meaning of "use in commerce" in the Lanham Act's infringement provision has long been contentious in trademark law, and several definitions have sprung up around it.[15] The registration definition approach looks to the definition of "use in commerce" in the Act's registration provision.[16] Although persuasive authorities have criticized the registration definition,[17] Sportswear relies upon it in

---

[14] 15 U.S.C. § 1114(1).
[15] *See, e.g.*, *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 139 (2d Cir. 2009) (arguing in dictum that meaning of use in commerce is determined by jurisdiction provision); *Karl Storz Endoscapy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002) ("'use in commerce' appears to contemplate a trading upon the goodwill of or association with the trademark holder"); *See North Am. Med. Corp. v. Axiomo Worldwide, Inc.*, 522 F.3d 1211, 1219 (11th Cir. 2008) (looking to the "plain meaning of the language of the statutory language").
[16] 15 U.S.C. § 1127.
[17] *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F.Supp. 3d 334, 344-45 (D. Del. 2019); *Rescuecom Corp. v. Google, Inc.*, 562 F.2d 123, 130-40 (2d Cir. 2009); *BTG Patent Holdings, LLC v. Bag2Go*, 193 F.Supp. 3d 1310, 1322-23 (S.D. Fla. 2016);

its brief in opposition,[18] and the Supreme Court of the United States very recently endorsed it in *Abitron Austria GmbH v. Hetronic International, Inc.* "Under the Act, the 'term "use in commerce" means the bona fide use of a mark in the ordinary course of trade,' where the mark serves to 'identify and distinguish [the mark user's] goods . . . and to indicate the source of the goods.'"[19] Both because it is the definition proffered by Sportswear, and because of this language from *Abitron*, the Court will apply the test enunciated in Section 1127.

Sportswear argues from this proposition that a liable defendant must use the marks at issue "to identify the source *of its own goods*" to be liable under this definition.[20] But there is no textual source for such a requirement in Section 1127; even where the infringing goods do not belong to the defendant, the mark still "identif[ies] and distinguish[es] . . . the source of the goods" and "indicate[s] the[ir] source."[21] In this Court's research, it found one decision advancing Sportswear's interpretation, and that decision acknowledges that it is distinguishable from cases in which defendants transport goods to facilitate a sale.[22] Yet other courts applying this same definition of use in commerce have found it to be very broad, covering

---

*VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1364, 1370 (Fed. Cir. 2019); 3 McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.) ("[T]he Lanham Act § 45 definition of 'use in commerce' defines the kind of use needed to register a mark, not to infringe it.").
[18]  *See* Brief in Opposition, Doc. 319 at 5.
[19]  600 U.S. 412, 428 (2023).
[20]  Brief in Opposition, Doc. 319 at 6.
[21]  15 U.S.C. § 1127.
[22]  *See Nike, Inc. v. B&H Customs Servs.*, 565 F.Supp. 3d 498, 509-11 (S.D.N.Y. 2021).

even unwitting transporters of goods with protected marks.[23]  "While sales are the typical and clearest evidence, they are not the *sine qua non* of use in commerce."[24]

Sportswear analogizes to "white label" sellers such as Amazon and eBay, as well as the plethora of cases holding that they are not directly liable.[25] It bemoans that "[u]nder the University's proposal, Amazon, eBay, and similar intermediaries—who are necessary commercial conduits of many potentially infringing goods—could be held strictly liable for trademark infringement."[26]

But the slope is not as slippery as it would seem for several reasons, all of which mark areas this Court does not reach today. Remember that the Lanham Act requires that the "use in commerce" both be "in connection with" a specified commercial activity, and that "on or in connection with" that activity, the use in commerce must be "likely to cause confusion, or to cause mistake, or to deceive."[27]

---

[23] *See, e.g.*, *Phillip Morris USA, Inc. v. Lee*, 481 F.Supp. 2d 742, 747 (W.D. Tex. 2006); *Phillip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1121-22 (C.D. Cal. 2007) (defendant directly liable for trademark infringement because he "unloaded and transported some cargo which unfortunately turned out to be counterfeit cigarettes"); *Abbott Labs. v. Adelphia Supply USAA*, Nos. 15-CV-5826 & 17-CV-6002, 2019 U.S. Dist. LEXIS 194268, at *46 (E.D.N.Y. Sep. 27, 2019); *Nike, Inc. v. E. Ports Custom Brokers, Inc.*, No. 2:11-cv-4390-CCC-MF, 2018 U.S. Dist. LEXIS 120351, at *12-21 (D.N.J. 2018); *Nike, Inc. v. KAL Am., Inc.*, No. CV 15-5269-GW(PJWx), 2016 U.S. Dist. LEXIS 141266, at *7-9 (C.D. Cal. 2016). The Court expressly refrains from opining on whether the Lanham Act goes this far. The Court need not, and does not, decide whether shipping, in isolation, is a use in commerce.

[24] *ITT Indus. v. Wastecorp, Inc.*, 87 F.App'x 287, 296 n.12 (3d Cir. 2004).

[25] Brief in Opposition, Doc. 319 at 7-8; *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010).

[26] Brief in Opposition, Doc. 319 at 8.

[27] 15 USC § 1114(1)(a). *See, e.g.*, *Ak Futures LLC v. LCF Labs. Inc.*, 8:21-cv-02121-JVS (ADSx), 2022 U.S. Dist. LEXIS 231481, at *21 (Sep. 28, 2022) (providing transportation services for shipment of products did not create confusion in minds of consumers).

As such, the aforementioned broad definitions of "use in commerce" are hemmed in by the fact that this use must also be the likely cause of confusion. Intermediaries or "auction houses" that merely facilitate the brokering of sales are not "true" sellers, and so their "passive" participation is not "use in commerce."[28] And while shipment is definitionally use in commerce under the registration definition, it is not clear whether this "use" could fairly be said to cause consumer confusion because the defendant did not "design or create" the infringing material, or place the mark on the goods.[29] In contrast, under similar circumstances, Courts have found that contributing to design or manufacturing and affixing a label displaying the mark,[30] or manufacturing and affixing the label along with shipping the goods,[31] suffices to show a use in commerce that misleads consumers.

---

[28] *Compare GMA Accessories, Inc. v. BOP, LLC*, 765 F.Supp. 2d 457, 463-64 (S.D.N.Y. 2011) with *Johnson & Johnson v. S. Pointe Wholesale, Inc.*, No. 06-CV-1269 (SLT)(SMG), 2014 US Dist LEXIS 190383, at *71-76 (E.D.N.Y. Mar 28, 2014).

[29] *Basketball Mktg. Co. v. FX Digital Media, Inc.*, 257 F.App'x 492, 494 (3d Cir. 2007) ("Plaintiff must still prove a likelihood of confusion arising from Gitten's actions to establish a claim of direct infringement."); *InvenTel Prods., LLC v. Li*, 406 F.Supp. 3d 396, 405 (D.N.J. 2019) ("When defendants did not 'design or create' the offending material, they cannot be directly liable for any 'likelihood of confusion' the materials may cause."); *Car-Freshener Corp. v. Meta Platforms, Inc.*, No. 5:22-CV-1305 (MAD/ML), 2023 US Dist LEXIS 199408, at *57-60 (N.D.N.Y. Nov. 7, 2023); *Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493 (LAP), 2019 US Dist LEXIS 170715, at *16-21 (S.D.N.Y. Sep. 30, 2019); Ethan Horwitz, 3 Intellectual Property Counseling & Litigation § 30.05 ("Furthermore, the 'use' has to cause confusion or deception . . . and one might question whether merely arranging for shipment causes any confusion.").

[30] *Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 U.S. Dist. LEXIS 52748, at *24 (S.D.N.Y. Mar. 22, 2024) (defendant who helped design and affix labels for infringing product was directly liable).

[31] *Haw. Foodervice All., LLC v. Meadow Gold Dairies Haw., LLC*, CIV No. 21-00460-LEK-WRP, 2023 US Dist LEXIS 4801, at *10-13 (D. Haw. Jan. 11, 2023) (farms who made goods and placed misleading labels on them were directly liable for analogous claim).

Indeed, several cases have also distinguished between intermediaries like Amazon and eBay on such a basis.

In *Ohio State University v. Redbubble, Inc.*, the United States Court of Appeals for the Sixth Circuit held that the defendant company Redbubble could be held directly liable for infringement.[32] The defendant company, Redbubble, allowed artists to create clothing designs hosted on its website; upon sale, Redbubble printed the clothing with the designs, shipped it to customers, and affixed a Redbubble tag.[33] Along the way, the Court noted that it was undisputed that "an entity that is . . . the creator or manufacturer of the offending goods . . . is liable."[34] Explaining that "the degree of control and involvement exercised by Redbubble over the manufacturing, quality control, and delivery of goods to consumers is relevant to an assessment for the purpose of liability," the court held that Redbubble was "more than just a passive facilitator" of sales because "products ordered on Redbubble's website do not yet exist, coming into being only when ordered through Redbubble, and are delivered in Redbubble packaging and Redbubble tags."[35]

Likewise, in *H-D U.S.A., LLC v. SunFrog, LLC*, a case involving similar facts, the court's inquiry was broader.[36] The defendant company in *Sunfrog* automatically

---

[32] 989 F.3d 435 (6th Cir. 2021).
[33] *Id.* at 440-441.
[34] *Id.* at 447.
[35] *Id.* at 448.
[36] 311 F.Supp. 3d 1000 (E.D. Wis. 2018).

printed products designed by a seller and shipped them to customers who ordered them on its website.[37] The court concluded that the marks "were not maintained in the All Art database without SunFrog's effort, did not get onto SunFrog's goods without the use of SunFrog's own printers, nor did they make it to purchasers without being shipped by SunFrog. Thus, SunFrog is actively involved in the infringing conduct."[38] Distinguishing SunFrog from passive facilitators like eBay, the court explained that "SunFrog operates the very printers that print infringing goods."[39] The Southern District of New York reached the same ruling in a case involving a similar defendant, reasoning that "'[t]he goods are sold and transported in commerce'" whenever the imprinted merchandise is sold and shipped to CafePress' online customers . . . The sort of 'use discussed in the search provider context is simply irrelevant in cases, like this one, where the alleged infringer physically places the mark on goods that it sells to customers."[40]

There are of course distinctions. *Redbubble* held that a defendant who manufactures and ships goods designed by a third party could still be liable, but it also drew attention to Redbubble's packaging, tags, and maintenance of an online marketplace. *SunFrog*'s language was broader, but it also noted how SunFrog

---

[37] *Id.* at 1030.
[38] *Id.*
[39] *Id.* at 1037.
[40] *Born to Rock Design, Inc. v. CafePress.com, Inc.*, 10 Civ. 8588 (CM), 2012 U.S. Dist. LEXIS 129230, at *13 (S.D.N.Y. Sept. 7, 2012).

involved itself in advertising products. And *CafePress*, though it seems to capture this case within its dictum, remains distinguishable on the facts. But together, these cases stand for the proposition that one uses a mark in commerce by manufacturing goods displaying the mark in connection with their sale, which causes consumer confusion. In this case, Sportswear manufactures goods displaying the mark in connection with their distribution, which causes consumer confusion. Both scenarios entail a far more active role from the defendants.

Another question the Court does not reach is whether Sportswear's status as a manufacturer would be enough, even a manufacturer who affixes the infringing mark. Some Courts have held that all defendants within the supply chain are directly liable for trademark infringement once the mark is affixed; the argument is that the ultimate sale of the good to the consumer is "in connection with" the manufacturer's upstream sale of the manufactured goods to the designer.[41] But one may argue, in contrast, that the "use in commerce" of manufacturing has not yet caused any confusion, because by fulfilling its contract, the manufacturer only provides the

---

[41] *See Ak Futures LLC v. LCF Labs. Inc.*, 8:21-cv-02121-JVS (ADSx), 2022 U.S. Dist. LEXIS 231481, at *16-20 (Sep. 28, 2022); *Juul Labs, Inc. v. Chou*, 557 F.Supp. 3d 1041, 1052 (C.D. Cal. 2021) (defendants, who stored, coordinated, shipped, and managed the handling of infringing goods at the New Jersey warehouse were "part of the distribution chain and therefore used the goods in commerce"); *See also Red Rock Sourcing LLC v. JGX LLC*, No. 21 Civ. 1054 (JPC), 2024 U.S. Dist. LEXIS 52748, at *80-81 (SDNY Mar. 22, 2024) ("Indeed, any member of the distribution chain may be held liable for infringement.") (collecting cases).

goods to the designer, the true infringer, and this does not convey the goods to the consumer and so does not result in consumer confusion.[42]

In sum, is not clear whether or when mere manufacturers or shippers can be liable for direct infringement, and the Court does not opine on those facts. The context is unique here because in response to orders on Vintage Brand's website, Sportswear manufactures the goods on demand, affixes the marks, and ships them directly to the customers. Sportswear's commercial use of the mark (manufacturing) is in connection with its distribution of the goods through shipping them to customers, and upon that shipping, Sportswear's use of the mark in manufacturing may be likely to cause consumer confusion such that it can be liable for direct infringement.

## IV.   CONCLUSION

Accordingly, Penn State's motion for reconsideration will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[42] *See* Stacey L. Dogan & Mark A. Lemley, *Grounding Trademark Law Through Trademark Use*, 92 IOWA L. REV. 1669, 1680 (2007) (discussing *Andrew Jergens Co. v. Bonded Prods. Corp.*, 21 F.2d 419, 422 (2d Cir. 1927)).

12