**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | No. 4:21-CV-1091 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| VINTAGE BRAND, LLC; SPORTSWEAR, INC., d/b/a PREP SPORTSWEAR; and CHAD HARTVIGSON, | |
| Defendants. | |

**<u>JURY CHARGE</u>**

NOVEMBER 19, 2024

Members of the jury: You have seen and heard all the evidence to be presented and the arguments of the parties. I will now instruct you on the law that you must apply. These instructions, and those that I gave to you before and during the trial, must guide you in reaching a decision in this case.

## I.    DUTIES OF THE JURY

When you retire to the jury room to deliberate, you may take with you these instructions and your notes. The exhibits that the Court has admitted into evidence are already preloaded into the electronic jury system in the jury room. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the

evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone like Galaxies or iPhones, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, LinkedIn, TikTok, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.

The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or

manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

## II.    EVIDENCE

### A. What Is and Is Not Evidence

You must make your decision in this case based only on the evidence that you saw and heard in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence from which you are to find the facts consists of both the testimony of the witnesses and the documents and other things received as exhibits.

The following are not evidence:

- Statements and arguments of the attorneys for the parties in this case;

- Questions by the attorneys;

- Objections by attorneys, including objections in which the attorneys stated facts; and

- Anything you may have seen or heard about this case outside the courtroom.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience and common sense tells you that certain evidence reasonably leads to a conclusion, you may reach that conclusion.

### B. Objections and Evidentiary Rulings

As I told you in my preliminary instructions, the rules of evidence control

what can be received into evidence. During the trial the parties objected when they thought that evidence was offered that was not permitted by the rules of evidence. These objections simply meant that the parties were asking me to decide whether the evidence should be allowed under the rules. You should not be influenced by the fact that an objection was made.

You should also not be influenced by my rulings on objections or any sidebar conferences you may have overheard. When I sustained an objection, the question was not answered or the exhibit was not received as evidence. You must disregard the question or the exhibit entirely. Do not think about or guess what the witness might have said in answer to the question; do not think about or guess what the exhibit might have shown. Sometimes a witness may have already answered before a lawyer objected or before I ruled on the objection. If that happened and if I sustained the objection, you must disregard the answer that was given.

Also, if I ordered that some testimony or other evidence be stricken or removed from the record, you must disregard that evidence. When you are deciding this case, you must not consider or be influenced in any way by the testimony or other evidence that I told you to disregard.

Although the parties may have called your attention to certain facts or factual conclusions that they thought were important, what the lawyers have said is not evidence and is not binding on you. It is your own recollection and interpretation of

the evidence that controls your decision in this case. Also, do not assume from anything I may have done or said during the trial that I have any opinion about any of the issues in this case or about what your verdict should be.

### C. Direct and Circumstantial Evidence

Let me speak now about direct and circumstantial evidence.

Two general types of evidence have been used in this trial, "direct evidence" and "circumstantial (or indirect) evidence." You may use both types of evidence in reaching your verdict.

"Direct evidence" is simply evidence which, if believed, directly proves a fact. An example of "direct evidence" occurs when a witness testifies about something the witness knows from his or her own senses — something the witness has seen, touched, heard, or smelled. For example, a witness may testify that he or she saw it raining outside.

"Circumstantial evidence" is evidence which, if believed, indirectly proves a fact. It is evidence that proves one or more facts from which you can infer some other fact through reason, experience, and common sense. For example, if someone walked into the courtroom wearing a wet raincoat and carrying a wet umbrella -- that would be circumstantial or indirect evidence from which you could reasonably infer that it was raining. You would not have to find that it was raining, but you could.

Sometimes different inferences may be drawn from the same set of facts. The Plaintiff may ask you to draw one inference, and the Defendant may ask you to draw another. You, and you alone, must decide what reasonable inferences to draw based on all the evidence and your reason, experience, and common sense.

You should consider all the evidence that was presented in this trial, both direct and circumstantial. The law makes no distinction between the weight that you should give to either type. It is for you to decide how much weight to give any evidence.

### D. The Role of Counsel

As I have explained, the statements and arguments of the attorneys are not evidence unless made as an admission or stipulation.

The purpose of an argument to the jury is to suggest inferences and deductions which the particular attorney believes can be drawn from the evidence. While you may follow the inferences and deductions that are suggested to you by a particular attorney, if they seem reasonable and logical to you, you are not bound to do so.

During their argument, the attorneys are permitted to make reference to evidence that they believe supports their position; they are permitted to refer to evidence from which they believe an inference can be drawn that supports their position; and in the course of their reference to the evidence, they are permitted to

characterize the evidence in a certain way. In all cases it is your recollection of the evidence which controls, not the attorney's recollection of what the evidence shows.

### E. Bench Conferences and Sidebars

You observed during the course of the trial that the court from time to time called the attorneys to the bench for a conference. You are admonished not to draw any unfavorable inference or inferences whatsoever from these conferences for or against any of the parties to the case. If the court felt that the jury should hear anything that was discussed out of its hearing at the bench, the court permitted that to be presented to you in open court.

### F. Credibility and Weight

In deciding what the facts are, you must decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses, which simply means you decide whether a witness is worthy of belief. Was the witness truthful? Was his testimony accurate? You may believe everything a witness says, part of it, or none of it.

The sworn testimony of witnesses who testified by videotape at trial is entitled to the same consideration as if the witnesses had testified in court. The testimony was taken by deposition, and it was under oath, in the presence of the attorneys and was transcribed by a court reporter. You should evaluate the videotaped witnesses the same way as the other witnesses who testified in person in court.

You may decide whether to believe a witness based on his or her behavior and manner of testifying, the explanations the witness gave, and all the other evidence in the case. Decide whether to believe a witness just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection. Remember to use your common sense, your good judgment, and your experience.

In deciding what to believe, you may consider a number of factors, including:

- The opportunity and ability of the witness to see or hear or know the things about which the witness testified;

- The quality of the witness' knowledge, understanding, and memory;

- The witness' appearance, behavior, and manner while testifying;

- Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

- Any relation the witness may have with a party in the case and any effect the verdict may have on the witness;

- Whether the witness said or wrote anything before trial that was different from the witness' testimony in court;

- Whether the witness' testimony was consistent or inconsistent with other evidence that you believe; and

- Any other factors that bear on whether the witness should be believed.

Inconsistencies or discrepancies in a witness' testimony or between the testimony of different witnesses may or may not cause you to disbelieve a witness' testimony. Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience. In weighing the effect of an inconsistency, you should also consider whether it was about a matter of importance or an insignificant detail. You should also consider whether the inconsistency was innocent or intentional.

You are not required to accept testimony even if the testimony was not contradicted and the witness was not impeached. You may decide that the witness is not worthy of belief because of the witness' bearing and demeanor, or because of the inherent improbability of the testimony, or for other reasons that are sufficient to you.

After you make your own judgment about the believability of a witness, you can then attach to that witness' testimony the importance or weight that you think it deserves. The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified or the quantity of evidence that was presented. What is more important than numbers or quantity is how believable the witnesses were, and how much weight you think his testimony deserves.

**G. Opinion Testimony**

You have heard testimony containing opinions from a number of witnesses. In weighing this opinion testimony, you may consider the witnesses' qualifications, the reasons for that witness's opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of the witness should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

### H. Opinion Evidence (Expert Witnesses)

The rules of evidence ordinarily do not permit witnesses to state their own opinions about important questions in a trial, but there are exceptions to these rules.

In this case, you heard testimony from David Franklyn, David Neal, and Tülin Erdem. Because of their knowledge, skill, experience, training, or education in the fields of consumer behavior and consumer surveys, these individuals were permitted to offer opinions in that field and the reasons for those opinions.

The opinions these witnesses state should receive whatever weight you think appropriate, given all the other evidence in the case. In weighing this opinion testimony you may consider the witness' qualifications, the reasons for the witness' opinions, and the reliability of the information supporting the witness' opinions, as well as the other factors discussed in these instructions for weighing the testimony of witnesses. You may disregard the opinions entirely if you decide that Professor

Franklyn, Dr. Neal, or Dr. Erdem's opinions are not based on sufficient knowledge, skill, experience, training, or education. You may also disregard the opinions if you conclude that the reasons given in support of the opinions are not sound, or if you conclude that the opinions are not supported by the facts shown by the evidence, or if you think that the opinions are outweighed by other evidence.

## I.  False in One, False in All

If you believe a witness knowingly testified falsely concerning any important matter, you may distrust the witnesses' testimony concerning other matters. You may reject all of the witness's testimony or you may accept the parts of the witness's testimony that you believe are true.

## J.  Stipulations of Fact

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial. You must therefore treat these facts as having been proved for the purposes of this case.

## K.  Stricken Evidence

I have ordered that Chad Hartvigson's testimony referencing the public domain be struck from the record and I am instructing you that you must disregard that testimony. That means that when you are deciding the case, you must not consider that testimony in any way.

## L.  Limited Purpose

You have heard evidence that was received for a particular limited purpose. Specifically, you saw an email received by Caroline Gummo. This evidence can be considered by you as evidence of the date that The Family Clothesline learned of Vintage Brand. It may not be used for any other purpose. You further heard testimony from Chad Hartvigson about memorabilia that contained copyright symbols. You may consider that testimony only for the fact that Vintage Brand made efforts not to utilize memorabilia that contained copyright symbols. You may consider it for no other purpose.

**M. Judicial Notice**

I have taken judicial notice of certain facts. Specifically, the accuracy and the fact of the Coat of Arms of the Commonwealth of Pennsylvania, which I will provide to you. I believe this fact can be so accurately and readily determined that it cannot reasonably be disputed. I have decided to accept as proved that fact, and you must accept this fact as true for purposes of this case.

**N. All Equal Before the Law**

In deciding this case, you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a legal entity like a corporation or educational institution is involved as a party must not affect your decision in any way. A legal entity and all

other persons stand equal before the law and must be dealt with as equals in a court of justice. When a legal entity is involved, of course, it may act only through people as its employees; and, in general, a legal entity is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## III.    BURDEN OF PROOF

The burden is on the Plaintiff, the Pennsylvania State University, in a civil action.

In most civil cases, the Plaintiff has the burden of proving its claims by a legal standard called "preponderance of the evidence." Preponderance of the evidence means a fact is more likely true than not.

To put it differently: if you were to put the evidence favorable to the Pennsylvania State University on one side of a scale, and the evidence favorable to the Defendants on the opposite side of the scale, the Pennsylvania State University would have to make the scale tip somewhat on its side. If the Pennsylvania State University fails to meet this burden, your verdict must be for the Defendants, Vintage Brand, LLC, Sportswear, Inc., and Chad Hartvigson.

The opposite is true as to the Defendants' affirmative defenses and counterclaims. The Defendants have the burden to prove by a preponderance of the evidence any affirmative defenses and counterclaims that they assert. Once again, preponderance of the evidence means a fact is more likely true than not.

To put it differently: if you were to put the evidence favorable to the Defendants on one side of a scale, and the evidence favorable to Penn State on the opposite side of the scale, the Defendants would have to make the scale tip somewhat

on their side. If the Defendants fail to meet this burden, your verdict must be for Penn State as to those affirmative defenses or counterclaims.

Again, as I mentioned in your preliminary instructions, while you may have heard of the phrase "proof beyond a reasonable doubt," that is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind and only apply the preponderance of the evidence standard that I have just described to you.

## IV.    THE CLAIMS

I will now instruct you on the law as it applies to this case. The Plaintiff has brought three separate claims. It alleges trademark infringement, pursuant to 15 U.S.C. § 1114, unfair competition and false designation of origin, in accordance with 15 U.S.C. § 1125(a), and common law trademark infringement and unfair competition. However, all three claims require that the Plaintiff prove the same things, and I will therefore discuss all three claims together. The Defendants have also brought a counterclaim seeking the cancellation of certain of Penn State's trademarks, and I will discuss that counterclaim later.

Before I get to that, though, I want to discuss the burdens of proof that you must apply in this case. Earlier I explained the preponderance of the evidence standard. In this case, the Plaintiff, Penn State, contends that the Defendants have engaged in trademark infringement and unfair competition. That means that the

Plaintiff has the burden of proving by the preponderance of the evidence each element of its claims.

The Defendants have presented certain affirmative defenses. That is, they argue that there are some reasons why their conduct should be excused even if you conclude that they infringed on Penn State's trademarks. The Defendants bear the burden of proving each element of those affirmative defenses by a preponderance of the evidence. Moreover, the Defendants have filed a counterclaim in this case seeking cancellation of some Penn State trademarks. For this counterclaim, Vintage Brand has the burden of proving by a preponderance of the evidence each element of this claim that certain of Penn State's trademarks should be cancelled.

### A. PENN STATE'S CLAIMS

The Plaintiff claims that the Defendants here have used Penn State's trademarks on Vintage Brand goods and, by doing so, have engaged in unfair competition and falsely designated the origin of its goods under 15 U.S.C. § 1125(a) and under the common law, and have engaged in federal trademark infringement of Penn State's registered marks under 15 U.S.C. § 1114. The Defendants deny this.

First let me take a moment to explain a little bit about trademarks to you and describe in more detail the trademarks that are involved in this case. A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source or sponsor of goods on or in connection with which they are used. The

owner of a trademark has the right to exclude others from using that trademark or a similar mark in a way that is likely to cause confusion in the marketplace.

This dispute involves eight different trademarks which, for the sake of simplicity, I will collectively call the "asserted marks." Of these eight asserted marks, two are combinations of words, those being "PENN STATE" and "THE PENNSYLVANIA STATE UNIVERSITY." The remaining six are images—more specifically, designs or logos. For your reference during deliberations, I will provide a copy of the asserted marks to you.

A person acquires the right to exclude others from using the same mark or a similar mark in a way that is likely to cause confusion in the marketplace by being the first to use it in the marketplace as a trademark, or by using it before the alleged infringer. Rights in a trademark are obtained only through use of the mark in commerce.

### 1.  Requirements for Penn State's Claims

As to Penn State's claim for unfair competition and false designation of origin under 15 U.S.C. § 1125(a) and under the common law, as well federal trademark infringement of its registered marks under 15 U.S.C. § 1114, Penn State has the burden of proving each of the following elements by a preponderance of the evidence:

First, that Penn State's asserted trademarks are valid, protectable trademarks;

Second, Penn State owns rights in those asserted trademarks;

Third, the Defendants used the asserted trademarks in interstate commerce, meaning the Defendants' goods are transferred, sold, or advertised across state lines; and

Fourth, the Defendants used the asserted trademarks—or words or symbols similar to the asserted trademarks—without the consent of Penn State in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods sold by Vintage Brand.

If you find that the Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for the Defendants. If, on the other hand, you find that the Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider the Defendants' affirmative defenses. If you find that the Plaintiff has proved each of the elements of its claims by a preponderance of the evidence, and the Defendants have not proved one or more of their affirmative defenses by a preponderance of the evidence, then you must find for the Plaintiff.

I will now explain those requirements to you in a little more detail.

## 2. Validity and Ownership of Trademark

Penn State has the burden of proving by the preponderance of the evidence that it owns valid rights in the asserted marks.

The owner of a trademark may register that mark in the United States Patent and Trademark Office. Registration creates a presumption that the registered mark

is valid and that the registrant owns and has the exclusive right to use the registered mark to use the registered mark in commerce. Trademark registrations can become "incontestable" under certain conditions; for registrations that have become incontestable, the presumptions of validity and ownership may not be rebutted except on certain specified grounds.

Penn State has submitted certificates of registration for all of the asserted marks except the S-Lion Logo; the S-Lion Logo therefore is not registered. Penn State has submitted evidence that its registrations have achieved incontestable status, with the exception of the Pozniak Lion Logo.

### i. Validity and Ownership

For any trademark that is not registered—here, the S-Lion Logo—Penn State will need to prove that it was the first to use the S-Lion Logo in commerce.

In addition to showing that the trademark is valid, Penn State will need to prove ownership of that trademark. To do so, Penn State must demonstrate that it used the S-Lion Logo in a manner that allowed consumers to identify the S-Lion Logo with Penn State or its merchandise before the Defendants began to use the S-Lion Logo on the Defendants' merchandise. Among the factors you may consider are the volume of sales of the Plaintiff's product, the nature of the Plaintiff's sales and purchasers, and the amount of the Plaintiff's advertising, promotion, and

publicity relating to the product. As I will discuss later, you may find ownership if a licensee of Penn State has satisfied this requirement, rather than Penn State itself.

If you conclude that the S-Lion Logo is either not owned by Penn State or is not valid, your inquiry as to that particular mark is over, and you must find for the Defendants as to that mark or marks. If you find that one or more marks are both valid and owned by Penn State, you must consider likelihood of confusion, which I will now discuss.

### 3. Likelihood of Confusion

As I have told you, Penn State must also prove a likelihood of confusion to establish its claims. Again, you should only consider a likelihood of confusion if you first find that Penn State has established both that the trademarks are valid, and that it owns the trademarks. Undertake a likelihood of confusion analysis only as to each individual mark that you find is valid and owned by Penn State. As to those marks, Penn State must prove a likelihood of confusion among an appreciable number of purchasers or perspective purchasers of Vintage Brand's products. In deciding this, you may consider the following:

- the degree of similarity between Penn State's marks and the alleged infringing marks;

- the strength of Penn State's marks;

- the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

- any evidence of actual confusion and, relatedly, the length of time the Defendants have used the marks without evidence of actual confusion arising;

- the intent of the Defendants in adopting the marks;

- whether the goods are marketed through the same channels of trade and advertised through the same media;

- the extent to which the targets of the parties' sales efforts are the same;

- the similarity of the goods in the minds of consumers; and

- any other factors that you believe are relevant.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion, and you may give more weight to one factor than to others, if you believe that is appropriate. You may also conclude that some of these factors are not relevant to your decision. At bottom, those factors are merely guides to help you determine whether you believe that an appreciable number of consumers viewing Vintage Brand's products, goods, or website would probably assume that Vintage Brand's products are manufactured, sponsored, or approved by Penn State.

Some of those factors that I discussed are not self-explanatory, so I will give you a little more guidance on what you should examine for each particular factor.

**The degree of similarity between Penn State's marks and the alleged infringing marks**. This factor is straightforward: how similar are the asserted marks

to the images used by Vintage Brand? In evaluating the similarity of those images, you should consider whether the images create the same overall impression when viewed separately. Side-by-side comparison of the two images is not the proper method for analysis when the products are not usually sold in such a fashion. Instead, an effort must be made to move into the mind of the roving consumer. Furthermore, you must consider each image as a whole; you should not compare only a part or parts of an image to a part or parts of the other image. You must view them as a whole and decide whether the whole of one image is similar to the whole of a competing image.

**The strength of Penn State's marks**. This factor calls on you to consider the strength of Penn State's marks in a commercial sense. That is to say, you should consider the distinctiveness or conceptual strength of the mark and the commercial strength or marketplace recognition of the mark. In making this determination, consider the following definitions of arbitrary, fanciful, suggestive, descriptive, or generic marks.

Trademark law provides protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. Trademarks are grouped into four categories according to their relative strength or distinctiveness. These four

categories are, in order of strength or distinctiveness: arbitrary or fanciful (which is inherently distinctive), suggestive (also inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which is not at issue here, and generic names (which are entitled to no protection).

- **Arbitrary or Fanciful Trademarks.** The first category is arbitrary or fanciful trademarks. Arbitrary marks are considered strong marks and are automatically protectable. They involve the arbitrary use of a word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way.

  For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

  Fanciful trademarks are closely related but involve the use of a fanciful or fictitious word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It is a newly created word, which is used solely as a trademark. For instance, the fanciful trademark "Google" is a strong and inherently distinctive trademark, identifying a prominent technology company. "Google" is a fanciful word that had no meaning or application prior to its use as the name of this company.

- **Suggestive Trademarks.** The second category is suggestive trademarks. These trademarks are inherently distinctive but are considered weaker than arbitrary and fanciful trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the

trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

- **Descriptive Trademarks.** The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

  For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than "Apple Valley Juice") she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

- **Generic Names**. The fourth and final category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to the plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark is to name the type of product rather than the manufacturer, the term is a generic name and cannot be a valid trademark. If the majority of consumers would understand the term to name the type of product rather than the manufacturer, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**The price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase**. Here you should consider whether the consumer of a certain good is likely to be sophisticated and therefore more easily able to discern the company behind the goods, and whether the price of the goods indicates that a consumer would pay close attention to the company that manufactures or sponsors a good.

**Any evidence of actual confusion and, relatedly, the length of time the Defendants have used the marks without evidence of actual confusion arising**. This factor is fairly self-explanatory. You may find that evidence that consumers have actually been confused as to the manufacturer or sponsor of a good makes it more likely that there is a likelihood of confusion. Confusion in this sense does not

mean a simple mistake in making a purchase—it means that the consumer was actually confused as to the manufacturer, source, or sponsor of a good. You may also believe that evidence that the allegedly infringing use of a trademark has occurred for a long time without any actual confusion indicates a lower likelihood of confusion. Or conversely you may determine that evidence that the allegedly infringing trademark was used for only a short time before evidence of actual confusion arose indicates a higher likelihood of confusion.

**The intent of the Defendants in adopting the marks**. Here, you are not to consider whether the Defendants intended merely to copy the asserted marks. Rather, you should consider only whether you believe the Defendants intended to confuse consumers by using the images that Penn State alleges infringe on its trademarks. If you conclude that the Defendants intended to confuse consumers, then you may find it is more probable that there is a likelihood of confusion. In contrast, if you do not believe that the Defendants intended to confuse consumers, you may determine that there is a lesser likelihood of confusion.

**Whether the goods are marketed through the same channels of trade and advertised through the same media and the extent to which the targets of the parties' sales efforts are the same**. Here, you may consider whether Vintage Brand's products are sold in the same manner or in the same stores as those of Penn State or its licensees, or whether Vintage Brand and Penn State's licensees advertise

over the same platforms, such as in-store promotions, television commercials, endorsements from sports or apparel influencers, or other social media advertising. If Vintage Brand and Penn State's licensees generally advertise in the same way and through the same channels, you may conclude that there is a higher likelihood of confusion. For example, if both companies often advertise on television during Penn State football games, there may be a higher likelihood of confusion than if, say, Penn State's licensees advertised in such a manner, but Vintage Brand advertised through only social media companies. Likewise, there may be a higher likelihood of confusion if both Vintage Brand and Penn State's licensees sell goods in the same stores, such as Dick's Sporting Goods or Wal Mart, where the goods would naturally be viewed side by side.

**The similarity of the goods in the minds of consumers**. With this factor, you may ask yourself whether buyers and users of each parties' goods are likely to encounter the goods of the other, which may create an assumption of common source affiliation or sponsorship. That is to say, you should consider whether the goods are similar enough that a customer may assume they were offered by the same source. Bear in mind that goods may fall under the same general product category but operate in distinct niches, and when two products are part of distinct sectors of a broad product category, they can be sufficiently unrelated that consumers are not likely to assume the products originate from the same mark.

**Any other factors that you believe are relevant**. As this implies, the list of factors that I have provided to you is not exhaustive, meaning you should use your own judgment and common sense to determine if any other facts indicate to you that Vintage Brand's goods or website create a likelihood of confusion.

These factors may be helpful guides for you but, at bottom, it is up to you to decide whether you believe that Vintage Brand's use of the images in question creates a likelihood that consumers will be confused as to whether Penn State manufactured, sponsored, or approved Vintage Brand's goods. If you agree with Penn State that consumers are likely to be confused, then you should find that Penn State has succeeded in demonstrating a likelihood of confusion. If, however, you agree with Vintage Brand that consumers do not care who manufactures or sponsors these goods and are not confused by Vintage Brand's use of the images, then you should find that Penn State has not carried its burden of proving that there is a likelihood of confusion.

### 4. Individual Liability

If you conclude that Penn State has proven the elements of its infringement claims, you must consider whether Chad Hartvigson may be held personally responsible for that infringement. An officer of a corporation may be held individually liable for any acts of trademark infringement that he personally commits or authorizes and approves. To find Chad Hartvigson personally liable then, you

must find by a preponderance of the evidence that he personally committed trademark infringement or authorized and approved of Vintage Brand's trademark infringement.

### 5. Willfulness

As I explained previously, if you find that one or more Defendants infringed on one or more of the asserted marks and you find that no affirmative defenses protect the conduct of those Defendants, you must enter a verdict in Penn State's favor as against that or those Defendants. However, you must also consider whether the infringing Defendant(s) acted willfully.

An individual or organization willfully violates a trademark when it knowingly and purposefully capitalizes on and appropriates the goodwill of another. That is to say, willful infringement consists of more than the accidental or careless encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of a mark holder's rights, in a way that was calculated to appropriate or otherwise benefit from the good will that the mark holder had nurtured.

Willful infringement may occur where an organization exhibits an aura of indifference to a mark holder's rights or where an organization undertakes a deliberate and unnecessary duplicating of a trademark in a way that was calculated to appropriate or otherwise benefit from the good will that the mark holder had nurtured. An act that is done willfully is done voluntarily and intentionally as

opposed to by mistake or accident—for example, an act may be mistaken or accidental if the infringer did not know that something was trademarked.

### 6. Licenses

The owner of a trademark may enter into an agreement that permits another person to use the trademark. This type of agreement is called a license, and the person permitted to use the trademark is called a licensee. Sometimes the only use of a trademark is through a licensee. The use of the trademark by a licensee generally creates the same legal rights as use of the trademark by the owner of the trademark, and such use does not affect the validity of that trademark or the validity of its registration.

However, for the use of a trademark by a licensee to create the same legal rights as would use by the licensor, the licensor has a duty to oversee the quality of a licensee's products. If a licensor fails to exercise reasonable control over the use of the mark by a licensee, then the trademark is no longer being used to identify goods and services that are under the control of the owner of the mark, and therefore the use of that trademark by a licensee does not inure to the benefit of the licensor. Stated differently, where a licensor does not exercise sufficient quality control over its licensees, the licensee is no longer using that mark as a trademark, and its use of the trademark does not create trademark rights for the licensor.

### B. AFFIRMATIVE DEFENSES

You heard me state earlier that the Defendants assert some affirmative defenses. If you find that the Defendants have established an affirmative defense by a preponderance of the evidence, you should find in favor of the Defendants even if you believed that one or more of the Defendants infringed on Penn State's trademarks.

### 1. Nominative Fair Use

Penn State contends that the Defendants infringed, in part, by using "PENN STATE" or "THE PENNSYLVANIA STATE UNIVERSITY" on the Vintage Brand website. If you find that Vintage Brand's use of the images in question on its products is not infringing, then you should consider whether Vintage Brand's use of Penn State on the Vintage Brand website constitutes what is called "nominative fair use." If you find that Vintage Brand's use of the words Penn State on Vintage Brand's website are likely to cause confusion, you must then proceed to the test that I will now describe to you. If you do not find that Penn State has proven by a preponderance of the evidence that Vintage Brand's uses of PENN STATE or THE PENNSYLVANIA STATE UNIVERSITY on Vintage Brand's website is likely to cause confusion, then you must find for Vintage Brand.

The owner of a trademark cannot exclude others from making a nominative fair use of that trademark. A defendant makes nominative fair use of a mark when

the defendant uses it as other than a trademark, to accurately describe or identify the plaintiff's product, even if the defendant's ultimate goal was to describe its own product.

The Defendants contend that they did not infringe the trademark because the alleged infringement was a nominative fair use of the trademark to describe or identify the Plaintiff's product. The Defendants must prove three things by a preponderance of the evidence:

- First, the product in question was not easily identifiable without use of the trademark;

- Second, the Defendants used only so much of the trademark as was reasonably necessary to identify the product in question; and

- Third, the Defendants did not do anything in connection with the trademark that would suggest sponsorship or endorsement by the plaintiff.

A product is not readily identified without use of its trademark when there would be no other effective way to compare, criticize, refer to, or identify it without using the trademark.

A reasonably necessary use of a trademark occurs when no more of the mark's appearance is used than is necessary to identify the product and make the reference intelligible to the consumer. For example, if a particular word is the plaintiff's trademark, the defendant reasonably uses it when the defendant does not use any

distinctive color, logo, abbreviation, or graphic that the plaintiff uses to display the trademark.

A use of the plaintiff's trademark does not suggest sponsorship or endorsement of the defendant's product when the defendant does not attempt to deceive, mislead, or capitalize on consumer confusion, or when the defendant does not appropriate the cachet of the plaintiff's product for the defendant's product.

The fact that the defendant's use of the trademark may bring the defendant a profit or help in competing with the mark owner does not mean the use was not a fair use.

### 2. Aesthetic Functionality

Vintage Brand further asserts the affirmative defense of aesthetic functionality. To succeed on such a defense, Vintage Brand must prove either of two things:

- First, it may demonstrate that the images in dispute here that it used are essential to the use or purpose of Vintage Brand's goods or affect the cost or quality of those goods.

- Second, it may instead demonstrate that protection of the features as trademarks would impose a significant non-reputation-related competitive disadvantage upon Vintage Brand.

It is important to note that aesthetic functionality protects the use of a design feature that, in itself and apart from its identification of source, improves the usefulness or appeal of the object it adorns. That is to say, the defense applies if the feature communicates the use, purpose, cost, or quality of the product rather than the source or sponsor of the product. Therefore, the defense is generally limited to product features that serve an aesthetic purpose independent of any source-identifying function.

If you find that the Defendants have proved this affirmative defense, then you must find for the Defendants on all of Penn State's claims, even if you conclude that one or more Defendants committed trademark infringement.

## V.    DAMAGES

I will now instruct you on the law regarding damages. The fact that I am instructing you on damages does not imply any opinion on my part as to whether damages should be awarded to the Plaintiff in this case.

Should you determine that one or more of the Defendants is liable in this matter, you must then determine what compensatory damages, if any, Penn State is entitled to. Compensatory damage means the amount of money that will reasonably and fairly compensate Penn State for any injury you find that the Defendants' infringement of the asserted marks contributed materially to.

Compensatory damages must be based solely on the injury caused to Penn State by Defendants' infringement of the asserted marks. In determining compensatory damages, the difficulty or uncertainty in ascertaining the precise amount of damages does not preclude recovery. Instead, you should use your best judgment in determining the amount of such damages. You may not, however, determine damages by speculation or conjecture. The Plaintiff must prove the amount of each category of compensatory damages by a preponderance of the evidence.

Here are several categories of damages that Penn State is seeking:

- The Plaintiff's lost profits on lost sales, licensing and sponsorship fees. This consists of the revenue Penn State would have earned but for the Defendants' infringement, less the expenses the Plaintiff would have sustained in earning these revenues. In assessing the amount of lost profits, the amount should be a reasonable approximation from the evidence put before you.

- Loss of royalties. A royalty is a payment for the right to use a trademark. In determining lost royalties, you should determine the royalty the Penn State and Vintage Brand would have agreed upon if they had negotiated the terms of a royalty before the Defendants used the asserted marks.

- Harm due to damage to Penn State's goodwill and reputation due to Vintage Brand's trademark infringement.

## VI.    COUNTERCLAIMS

Lastly, the Defendants have countersued Penn State seeking to cancel two of its trademarks on the ground that those marks inappropriately included a state seal. Penn State denies that the trademarks should be cancelled. You must reach a verdict regarding the Defendants' counterclaims, and you must do this regardless of how you resolve the Plaintiff's claims. The Defendants have filed counterclaims asserting that certain of Penn State's trademarks, specifically those that contain the Coat of Arms of the Commonwealth of Pennsylvania, must be cancelled.

A trademark may not be registered if it consists of or comprises the flag or coat of arms or other insignia of any State. Therefore, a trademark must be cancelled if it includes the coat of arms of a state in such a manner that consumers would perceive that trademark as a government insignia. In determining whether consumers would perceive a trademark as being a government insignia, you should consider whether the mark is sufficiently altered, stylized, or merged with other elements in the mark so as to create a distinct commercial impression. While you must visually compare the Penn State trademarks at issue with the Pennsylvania Coat of Arms, your focus should be on the relevant purchasers' general recollection of the

Coat of Arms, not on a careful side-by-side comparison of the trademarks and the coat of arms.

As you may have gathered from what I just told you, the disputed trademark need not consist only of the government insignia, and may comprise a government insignia even if there are other elements to the trademark. However, the incorporation of other elements may be relevant to your determination of whether the trademarks create a distinct commercial impression. Therefore, you must determine whether the Defendants have demonstrated by a preponderance of the evidence that the Penn State Seal Logos do not create a distinct commercial impression.

For your convenience, below are the trademarks that Vintage Brand seek to cancel:

 

And below is the Pennsylvania Coat of Arms:



## VII.    DELIBERATIONS

Now let me explain some things about your deliberations in the jury room and your possible verdicts.

First: The first thing that you should do in the jury room is choose someone to be your foreperson. This person will speak for the jury here in court. He or she will also preside over your discussions. However, the views and vote of the foreperson are entitled to no greater weight than those of any other juror.

Second: I remind you again that your verdict as to each specific claim must be unanimous. To find in favor of the Plaintiff on a particular claim, every one of you must agree that the Plaintiff has proven the elements of that claim by a preponderance of the evidence. The same goes for the Defendants' counterclaim; to find in their favor on a particular counterclaim, all of you must agree that the Defendants' proved their counterclaim by a preponderance of the evidence.

Third: As I have said before, your verdict must be based only on the evidence received in this case and the law I have given to you. You should not take anything I may have said or done during trial as indicating what I think of the evidence or what I think your verdict should be. What the verdict should be is the exclusive responsibility of the jury.

Fourth: Now that all the evidence is in and the arguments are completed, and once I have finished these instructions, you are free to talk about the case in the jury

room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently or just to get the case over with.

In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. Listen carefully to what the other jurors have to say, and then decide for yourself whether the Plaintiff has proved its claims by a preponderance of the evidence or if the Defendants have proved their affirmative defenses or counterclaims by a preponderance of the evidence. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should all feel free to speak your minds.

Fifth: You have been permitted to take notes to assist you in answering the special verdict questions. Your notes are not evidence; they are merely to aid you in your recollection. Your answers to the special verdict questions must be based on the evidence, not your notes. You should not give your notes precedence over the independent recollection of the evidence. If you did not take notes, you should rely

on your own independent recollection of the proceedings and you should not be influenced by the notes of other jurors. I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror about what the testimony may have been.

Sixth: Once you start deliberating, do not talk about the case to court officials, to me, or to anyone else except each other. A few days ago, I instructed you that you are not to communicate about this case either in person or by social media or other electronic media device. During your deliberations, you may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Samsung Galaxy or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, Twitter, LinkedIn, SnapChat, TikTok, YouTube or Instagram to communicate any information about this case or to conduct any research about this case.

Seventh: If you have any questions or messages, your foreperson should write them down on a piece of paper, sign the paper, and then give it to a court official who will give it to me. I will first talk to the attorneys about what you have asked, and I will respond as soon as I can. In the meantime, if possible, continue with your deliberations on some other subject. One more thing about messages. Do not ever write down or tell anyone how you or anyone else voted. That should stay secret until you have finished your deliberations. If you have occasion to communicate

with the court while you are deliberating, do not disclose the number of jurors who have voted in favor of or against either party.

The Clerk and all other persons are forbidden from communicating in any way or any manner with any member of the jury on any subject touching the merits of the case.

## VIII.    VERDICT FORM

As I alluded to earlier, a verdict form has been prepared for your convenience.

For the purpose of your findings, we will be using verdict questions. As a result, our instructions to you on the law have been tailored to reflect the use of these questions. Answer questions in the same sequence as they are given to you, starting with Question 1. Note that, depending on your answer, you may be instructed to skip a question or questions.

In answering the questions, it is your duty as jurors to consult with each other and to deliberate in an effort to reach an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, public opinion, or prejudice or favor for either party, and adopt the conclusion that in your good conscience is in accordance with the truth.

You will take the verdict form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date and sign it, and then return to the courtroom.

## IX.    CLOSING

Keep in mind that the dispute between the parties is, for them, a most serious matter. They and the court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you.

Consider all the circumstances, the probabilities or improbabilities of the testimony, and what the attorneys and the Court have said. You should try to reach what is a just, true, and correct resolution of the controversy submitted to you. In reaching your conclusion, you should be guided solely by the evidence that has been presented to you, the inferences drawn from the evidence, and the instructions of the court on the law. You should not be influenced by fear, favor, prejudice, or sympathy. All the parties stand equally before the court, and each is entitled to the same fair and impartial treatment at your hands.

Counsel, has there been a failure to charge on any substantial matter of law?

## X.    BAILIFF'S OATH

I will now ask the bailiff to take the jurors to the jury room so that you may start your deliberations.

Oath to Courtroom Deputy and CSO: Do you swear that you will keep this jury in some private and convenient place and that you will suffer no one to speak to them, nor will you speak to them yourself, without leave of court, unless it be to ask them if they have agreed upon a verdict, so help you God?

# APPENDIX A

| DESIGN OR WORD MARK | INFORMAL NAME |
|---|---|
| PENN STATE | PENN STATE |
| THE PENNSYLVANIA STATE UNIVERSITY | THE PENNSYLVANIA STATE UNIVERSITY |
|  | "Lion Shrine Logo One" |
|  | "Lion Shrine Logo Two" |
|  | "Pozniak Lion Logo" |
|  | "Penn State Seal Logos" |
|  | "S-Lion Logo" |