**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, <br><br> Plaintiff and Counter-Claim Defendant, <br><br> v. <br><br> VINTAGE BRAND, LLC, <br><br> Defendant and Counter-Claim Plaintiff, <br><br> and <br><br> SPORTSWEAR INC. d/b/a PREP SPORTWEAR; and CHAD HARTVIGSON. <br><br> Defendants. | Case No. 4:21-cv-01091-MWB (Hon. Matthew W. Brann) <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Mark P. McKenna, Esq., *pro hac vice*
Illinois I.D. No. 6272699
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (646) 898-2055
Mark@lex-lumina.com

John T. Fetters, Esq., *pro hac vice*
Washington I.D. No. 40800
Leslie C. Vander Griend, Esq., *pro hac vice*
Washington I.D. 28090
Valerie A. Walker, Esq., *pro hac vice*
Washington I.D. No. 52584
STOKES LAWRENCE, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 626-6000
John.Fetters@stokeslaw.com
Leslie.VanderGriend@stokeslaw.com
Valerie.Walker@stokeslaw.com

i

**<u>TABLE OF CONTENTS</u>**                    **Page**

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT IN OPPOSITION ......................................................................1

    A.     This case is not even close to an "exceptional" case. ...........................1

    B.     The University's arguments lack credibility. .......................................6

        1.     Defendants did not alter evidence to conceal infringement........6

        2.     Defendants did not engage in litigation misconduct with respect to Vintage Brand's criteria for identifying images. ...................8

        3.     Defendants did not engage in litigation misconduct with respect to discovery regarding the Pozniak Lion Logo........................14

        4.     Defendants did not engage in litigation misconduct with respect to Mr. Hartvigson's deposition. .................................................16

        5.     Defendants did not engage in litigation misconduct with respect to their antitrust defense or cancellation counterclaim. ............18

        6.     There is no need to deter Defendants.......................................21

III.    CONCLUSION................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Avco Corp. v. Turn & Bank Holdings, LLC*,
  659 F. Supp. 3d 483 (M.D. Pa. 2023) *aff'd*, No. 23-1609, 2024 WL 3439771 (3d
  Cir. July 17, 2024)........................................................................................ 1

*Cosm. Warriors Ltd. v. Nailush LLC*,
  2017 WL 5157390 (D.N.J. Nov. 6, 2017) ............................................... 4

*Dasso Int'l, Inc. v. Moso N. Am., Inc.*, No. 17-CV-1574,
  2023 WL 5349374 (D. Del. Aug. 21, 2023) ........................................... 21

*Decus, Inc. v. Heenan*,
  2018 WL 1082842 (E.D. Pa. Feb. 27, 2018) ...................................... 3, 4

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014)...................................................................... 2

*G6 Hospitality Franchising LLC v. Hi Hotel Grp., LLC*,
  171 F. Supp. 3d 340 (M.D. Pa. Mar. 22, 2016) ................................. 4, 5

*Kove IO, Inc. v. Amazon Web Servs., Inc.*,
  2024 WL 3888772 (N.D. Ill. Aug. 20, 2024) ...................................... 20

*Lontex Corp. v. Nike, Inc.*,
  2024 WL 4763069 (E.D. Pa. Sept. 25, 2024) *report and recommendation
  adopted*, 2024 WL 4508952 (E.D. Pa. Oct. 16, 2024).......................... 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ................................................................................. 2

*Parks, LLC v. Tyson Foods, Inc.*,
  2017 WL 3534993 (E.D. Pa. Aug. 17, 2017) ...................................... 18

*Securacomm Consulting, Inc. v. Securacom Inc.*,
  224 F.3d 273 (3d Cir. 2000)................................................................... 3

*Sweet St. Desserts, Inc. v. Better Bakery, LLC*,
  2017 WL 6311664 (E.D. Pa. Dec. 11, 2017) ......................................................... 6

*United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate Sch., Inc.*,
  2015 WL 4920306 (M.D. Pa. Aug. 17, 2015) ....................................................... 1

## Statutes

15 U.S.C. § 1117(a) ................................................................................................ 1

## Rules

Fed. R. Civ. P. 30 ......................................................................................... 17, 18

## Other Authorities

Dick Anderson, *Multiple Personalities*, OXY,
  https://www.oxy.edu/magazine/issues/winter-2013/multiple-personalities (Feb. 11, 2013) (last visited Dec. 16, 2024) .............................................................. 12

*Homefield History*, HOMEFIELD APPAREL,
  https://www.homefieldapparel.com/blogs/homefield-history/art-evans-college-mascot-sailor-hats (May 16, 2023) (last visited Dec. 16, 2024) .......................... 12

## I.    INTRODUCTION

Defendants respectfully request that the Court deny the Motion for Attorneys' Fees submitted by The Pennsylvania State University (the "University"). The University cannot recover its reasonable attorneys' fees because this is not an "exceptional" case under 15 U.S.C. § 1117(a). Unable to meet the relevant statutory standard, the University resorts to a revisionist history built on half-truths and misstatements. Upon a thorough examination of Defendants' conduct in this case, the Court should reject the University's distorted narrative.

## II.    ARGUMENT IN OPPOSITION

### A.    This case is not even close to an "exceptional" case.

The mere fact that a trial results in an adverse decision or a finding of willful infringement does not render a case "exceptional." *See United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate Sch., Inc.*, No. 3:12-CV-00669, 2015 WL 4920306, at *38 (M.D. Pa. Aug. 17, 2015) (holding that a case was not "exceptional" "[e]ven though the Court ultimately concluded that . . . Defendants' positions were entirely unsound "); *Avco Corp. v. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 497–98, 510–11 (M.D. Pa. 2023) (holding that a case was not "exceptional" notwithstanding willful infringement where both parties were "at times successful and at times unsuccessful") *aff'd*, No. 23-1609, 2024 WL 3439771 (3d Cir. July 17, 2024). The Third Circuit recognizes that under the standard set forth

by the Supreme Court in *Octane Fitness*, a district court may find a case "exceptional" when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Neither basis applies here.

The University does not even attempt to demonstrate that the first prong has been met here—it has not. As this Court repeatedly recognized, Defendants had entirely legitimate legal arguments. *See, e.g.*, Docs. 43–44 (denying the University's motion to dismiss Count 4 of Vintage Brand's First Amended Counterclaim); Docs. 194–195 (granting Vintage Brand's *Daubert* motion, granting Vintage Brand's motion for summary judgment as to Counts 2–6, granting in part Vintage Brand's motion to strike, denying the University's *Daubert* motion, and denying the University's motion for summary judgment in all respects except for two affirmative defenses); Docs. 295–296 (granting the majority of Vintage Brand's motions *in limine* and denying the University's motion to strike[1]). There is no unusual discrepancy in the merits of the positions taken by the parties.

---

[1] The Court may recall commenting on the "incredibly late nature of Penn State's motion." Doc. 295 at 68.

As for the second prong, the University paints Defendants' litigation conduct as "unreasonable," but this could not be further from the truth. Defendants never engaged in the kinds of vexatious litigation conduct that courts have relied upon as a basis for attorneys' fees. For example, courts have awarded attorneys' fees for a "deliberate effort" by the defendant to "bury" the plaintiff financially and "take everything he had." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 282 (3d Cir. 2000). Courts have also awarded fees where a larger company threatened to ruin a smaller company and "would not even speak with [the plaintiff] much less negotiate in order to find a reasonable compromise to avoid the expense of a trial." *Lontex Corp. v. Nike, Inc.*, No. CV 18-5623, 2024 WL 4763069, at *3 (E.D. Pa. Sept. 25, 2024), *report and recommendation adopted*, 2024 WL 4508952 (E.D. Pa. Oct. 16, 2024). Here, Vintage Brand and Sportswear are small companies, and Defendants have made efforts to negotiate in good faith, including traveling to Pennsylvania to engage in mediation.

The case law the University relies upon does not support finding an "exceptional" case here. For example, the University cites *Decus, Inc. v. Heenan*, No. 2:16-cv-5849, 2018 WL 1082842, at *3 (E.D. Pa. Feb. 27, 2018) for the proposition that a defendant's conduct after receipt of a cease and desist letter is a

factor to consider when evaluating the exceptionality of a case. Doc. 345 at 10.[2] But Defendants' conduct here was nothing like the course of conduct described in *Decus* (which was summarizing another decision): in that case, the defendant ignored the Trademark Office's finding that its mark was confusingly similar to plaintiff's mark, it ignored a cease and desist letter and three other attempts by plaintiff to resolve the matter out of court, and it ignored plaintiff's complaint and failed to litigate, all while continuing to use the mark. *Decus, Inc.*, 2018 WL 1082842, at *3 (citing *Cosm. Warriors Ltd. v. Nailush LLC*, No. CV 17-1475 (RBK/JS), 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017)); *Cosm. Warriors Ltd.*, 2017 WL 5157390, at *7. There are numerous differences with the instant case, including that there was no Trademark Office finding against Defendants, and that Defendants responded in good faith to cease and desist correspondence, the complaint, and resolution efforts.

The University also cites *G6 Hospitality Franchising LLC v. Hi Hotel Grp., LLC*, 171 F. Supp. 3d 340, 349 (M.D. Pa. Mar. 22, 2016) because the court there found that willful infringement "further support[ed] the finding that this case is 'exceptional.'" The court's reasoning in *G6*, however, focused primarily on the defendants' role in creating unnecessarily protracted litigation—litigation marked by repeated continuances "always occasioned by the Defendants and . . . always

---

[2] Citations to documents filed via the CM/ECF system are to the page numbers in the top-right hand corner of those documents.

necessitated at the eleventh hour." *G6 Hospitality Franchising LLC*, 171 F. Supp. 3d at 349. Defendants never engaged in any such conduct.

Defendants litigated this case in a thoroughly reasonable manner.[3] Defendants stipulated to numerous facts before trial, Doc. 307, and took a measured approach to objections to exhibits and deposition designations, in contrast to the University's approach.[4] Defendants made concessions related to various motions in *limine*;[5] Defendants consented to the University's Motion for Reconsideration on Vintage Brand's motion for summary judgment. Doc. 201. Defendants successfully moved to exclude one of the surveys proffered by the University's expert and they exercised restraint in deciding not to move to exclude the second survey (despite its flaws), whereas the University unsuccessfully moved to exclude the survey conducted by Defendants' expert. *See* Docs. 194, 94, 96. Nothing in Defendants' conduct renders this case "exceptional" in the sense of the Lanham Act.

---

[3] It is worth noting that the Court previously found *the University* to have acted in bad faith. Doc. 63 at 13–16.

[4] In particular, Defendants stipulated to the admission of more than 2/3 of Plaintiff's exhibits (Doc. 277-1), whereas Plaintiff objected to almost 2/3 of Defendants' exhibits (Doc. 275-1). Defendants objected to around 1/9 of Plaintiff's deposition designations (Doc. 288-2) and none of Plaintiff's counter-designations (Doc. 285-1), whereas Plaintiff objected to around 2/3 of Defendants' deposition designations (Doc. 285-1), and around 2/3 of Defendants' counter-designations (Doc. 288-2).

[5] Vintage Brand made concessions with respect to the University's Motions in *Limine* Nos. 1–2 and did not contest the University's Motion in *Limine* No. 8. *See* Doc. 295 at 31–32, 66.

**B.     The University's arguments lack credibility.**

In the face of this record of reasonable litigation conduct, the University offers an incomplete—and often inaccurate—history of this litigation and Defendants' conduct. As demonstrated below, none of the University's accusations hold up.

### 1.   Defendants did not alter evidence to conceal infringement.

The University falsely contends that Mr. Hartvigson intentionally removed the TM symbol from products created for trial in an effort to mislead the jury. Doc. 345 at 7–9.[6] The product samples about which the University complains (the ones that do not show the TM symbol) were created for trial in September 2024 *at the University's request*. Ex. R at 67:21–68:15; *see also* Ex. B ("Fetters Decl.") ⁋ 9. But at that point, the University already had in its possession a sample product with the S-Lion Logo and the TM symbol. *See* Fetters Decl. ⁋⁋ 3–10. In late August 2024, Vintage Brand shipped product samples to the University that had been created during discovery in 2022, and one of which was a white hooded sweatshirt bearing the S-Lion Logo with the TM symbol. *Id.* ⁋⁋ 6–10.

---

[6] The University offers one legal citation for this argument. Doc. 345 at 8 (citing *Sweet St. Desserts, Inc. v. Better Bakery, LLC*, No. 5:12-cv-6115, 2017 WL 6311664, at *3 (E.D. Pa. Dec. 11, 2017)). The decision referred to a pre-*Octane* case awarding attorneys' fees where the records showed "evidence of . . . chicanery by the defendants: intentional deceit about various details of the litigation [and] multiple witnesses lying during testimony." *Sweet St. Desserts, Inc.*, 2017 WL 6311664, at *3. There was no such conduct by Defendants.

To illustrate, the TM symbol is clearly visible on the Vintage Brand product sample below, which Vintage Brand presented for inspection by the University on October 24, 2022, and which the University's counsel documented via photographs. *Id.* ⁋ 7, Ex. G. Again, the University possessed the white hooded sweatshirt shown below both before and during trial. *See id.* ⁋⁋ 7–9, Ex. G.



*Id.* ⁋ 7, Ex. G (image cropped).

In case there was any doubt that the University had examples of the S-Lion imagery with the TM symbol, the University actually used the following image (produced by Vintage Brand) in support of its summary judgment motion:



*See* Doc. 122 at 88 (image cropped) (citing portions of Vintage Brand's production to the University and referring to this "same design" appearing on other products); Doc. 123 at 2 (describing "Examples of Vintage Brand Website" from Vintage Brand's production). The TM symbol was also present on the enhanced digital image of the S-Lion Logo that Vintage Brand produced to the University. Fetters Decl. ⁋ 11, Ex. J.

At trial, Mr. Hartvigson explained why Vintage Brand later removed the TM symbol from the enhanced S-Lion Logo file maintained by Vintage Brand: the TM symbol was missed during the enhancement process and was never intended to have been included in the Vintage Brand design. *See* Ex. Q at 156:14–157:1, 173: 20–24; Ex. R at 66:5–7; 67:1–17, 68:3–9. Vintage Brand removed the TM symbol from the digital file long in advance of trial, when its presence was noted by the University. *See* Ex. R at 67:13–17, 68:3–9. As Mr. Hartvigson explained, the removal of the TM symbol had nothing to do with litigation strategy. *See id.* at 69:5–19. The University's conspiracy theory regarding the TM symbol makes no sense where Vintage Brand produced ample materials with the TM symbol present.

### 2. Defendants did not engage in litigation misconduct with respect to Vintage Brand's criteria for identifying images.

The University argues that Mr. Hartvigson insisted that Vintage Brand's design selection was based on four "rules" that Vintage Brand "repeatedly claim[ed] to strictly follow" but actually disregarded. Doc. 345 at 10–11. First, contrary to the

University's contention, Vintage Brand did not claim strict adherence to a set of rules.[7] Second, to the extent Mr. Hartvigson testified to using certain criteria in searching for artwork, Vintage Brand's adherence to such criteria is not material to the question of whether this is an "exceptional" case. Defendants did not argue at trial that employing such criteria immunized them from liability for trademark infringement. Indeed, some of the criteria Mr. Hartvigson used to evaluate images focused on the copyright status of the images, and evidence related to copyright law—including the concept of the public domain—was specifically excluded from trial, with some allowance for Mr. Hartvigson to testify to his personal understandings. Doc. 295 at 52. Thus, the record at trial regarding copyright law concepts was necessarily limited.

Third, the University's claim that Mr. Hartvigson did not follow any of the criteria is extremely misleading. Vintage Brand's selection criteria for artwork were: (1) images from before 1989; (2) images without a copyright symbol; (3) images not currently being used by the universities for educational services or athletic programs; and (4) unique or interesting images with artistic value. Ex. Q at 113:4–114:3.

---

[7] None of the University's citations reflect Defendants referring to "rules," let alone strict adherence. *See* Doc. 345 at 11 (citing Doc. 345-3, Doc. 116-2, and the rough draft Tr. Transcript (Nov. 18) at 37:5–38:9, 44:7–9, 46:18–22, 49:16–18 (for the official Tr. Transcript (Nov. 18), see Ex. R at 40:13–41:13, 47:11–13, 49:22–50:1, 52:20–22)). Vintage Brand has 25,000 sports collectables, and it did its best to historically date the images involved; Vintage Brand has acknowledged that it does not always get it a hundred percent right. *See* Ex. R at 47:5–10; Ex. S at 30:15.

With respect to the first criterion, the University focuses on a single decal—from a collection of 25,000 items of memorabilia—that appears to have been printed after 1989. Defendants' Trial Ex. 218; *see* Doc. 345 at 12.[8]



But that is not actually an example of Vintage Brand violating its criteria—regardless of when this particular image was printed as a physical item. Mr. Hartvigson had good reason to believe the *image* predated 1989. Ex. R at 44:17–18 ("That's an *image* from, we believe, the early 1950s." (emphasis added)). Notably, the University's counsel told Mr. Hartvigson the following before securing the testimony it characterizes as a falsehood: "Defendant[s'] 218, the little growling kitten . . . I believe you testified that that was from the early 50s." Ex. R at 42:15–17. This alleged previous testimony about Defendants' Trial Ex. 218 appears

---

[8] The University cites the Rough Draft Tr. Transcript for Nov. 15, 2024 and Nov. 18, 2024. For the Court's convenience, and to better evaluate the extent to which the University's citations support its arguments on this point (or rather, fail to do so), please see the below table.

| Date | Rough Draft Tr. Transcript | Official Tr. Transcript |
|---|---|---|
| Nov. 15 | 119:17–122:23 | 120:10–123:16 (Ex. Q) |
| Nov. 15 | 149:4–25 | 150:8–151:4 (Ex. Q) |
| Nov. 15 | 161:19–162:23 | 163:8–164:12 (Ex. Q) |
| Nov. 18 | 39:11–43:3 | 42:15–46:7 (Ex. R) |

nowhere in the trial transcripts.[9] While Mr. Hartvigson believed the University's counsel when he purported to summarize his prior testimony, this cannot be a "blatant falsehood made under oath" when Mr. Hartvigson never testified to it in the first instance.

What does appear in the record is Mr. Hartvigson's testimony regarding the dating of historic memorabilia like games programs, Ex. Q at 120:10–123:16, and the typical historical dating research in which Vintage Brand engages, *id.* at 150:8–151:4. Additionally, when Mr. Hartvigson testified at trial to the criteria used by Vintage Brand, he explained, "First and foremost . . . we're looking for historical *images* . . ." *Id.* at 113:9–11. On cross-examination, Mr. Hartvigson acknowledged that Defendants' Trial Ex. 218 itself was not old, though he remained steadfast in

---

[9] Perhaps the University's counsel was thinking of Mr. Hartvigson's testimony regarding Defendants' Trial Ex. 219, not 218. *See* Ex. Q at 150:8–19 (Mr. Hartvigson explaining he believed that image originated from 1950).



Defendants' Trial Ex. 219.

his belief that the *image* was indeed historic.[10] Ex. R at 45:4–7, 15–16. Mr. Hartvigson's testimony about this singular item does not even approach litigation misconduct, especially where numerous items of memorabilia are clearly historic.

As for the second criterion, regarding the absence of the copyright symbol, the University marshals a single example regarding the Pozniak Lion. Mr. Hartvigson explained, however, that the review of memorabilia involves an item-by-item approach, and Vintage Brand's use of the Pozniak Lion was in fact consistent with this criterion. *See* Ex. R at 49:12–13 ("The copyright notice goes with the individual item. If something has a copyright on it, we discard that one."). The University accuses Vintage Brand of "making very fine distinctions," *id.* at

---

[10] There is ample reason to trace the image at issue to famed collegiate mascot artist Arthur Evans, based on similarities between the image and designs authored by him. *See, e.g.*,

  

Dick Anderson, *Multiple Personalities*, Oxy, https://www.oxy.edu/magazine/ issues/winter-2013/multiple-personalities (Feb. 11, 2013) (last visited Dec. 16, 2024) (providing the left picture as an example of artwork by Arthur Evans); *Homefield History*, Homefield Apparel, https://www.homefieldapparel.com/ blogs/homefield-history/art-evans-college-mascot-sailor-hats (May 16, 2023) (last visited Dec. 16, 2024) (providing the right picture as an example of artwork by Arthur Evans and describing Evans as "the head artist for the Angelus Pacific Co. of Fullerton from 1932 until 1977").

49:4–7, but given the complexity of the legal situation and the age of these images, "very fine distinctions" were called for. That is a far cry from litigation misconduct.

Turning next to the third criterion, i.e., images not currently being used by the universities for educational services or athletic programs, the University conflates the underlying issues. The University apparently believes that the mere fact that the words "Penn State" are used with education or for a University football team means that every *image* that happens to contain those words is being used by the University for educational services or athletics. *See* Ex. R at 49:22–50:10. While Mr. Hartvigson acknowledged that the words "Penn State" are the name of the whole educational institution, *id.* at 50:2–7, that does not mean that every *image* that happens to contain the words "Penn State" is being used by the University for educational services.

The University's approach to the fourth criterion, regarding unique images, is similarly off-base. For example, the University seems to think that its alleged sale of merchandise associated with the lion shrine must mean that this fourth criterion cannot be satisfied by Vintage Brand vis-à-vis lion shrine imagery. *See id.* at 54:17–24. Mr. Hartvigson explained, however, that while the lion shrine itself might not be unique, the *images* that Vintage Brand found depicting the lion shrine are unique. *Id.* Vintage Brand used different images than the ones used by the University's licensors. *Id.* at 58:23–59:5. The University distorts the application of Vintage

13

Brand's criteria and Mr. Hartvigson's testimony regarding the same, and there is no basis for the University's accusation of litigation misconduct.

### 3. Defendants did not engage in litigation misconduct with respect to discovery regarding the Pozniak Lion Logo.

The University demanded that Vintage Brand permanently stop using various images on its website, and in response, Vintage Brand removed artwork depicting the Pozniak Lion from its website and permanently deleted the digitally enhanced memorabilia image for the Pozniak Lion design to prevent that image from being inadvertently uploaded back onto the Vintage Brand website in the future. Doc. 138 at 141 (undisputed statement of material fact); *see also* Doc. 345-5 at 7–8 (explaining that Vintage Brand removed the artwork from the website in April 2021). This occurred before the Complaint was filed. Vintage Brand's action did not constitute spoliation because Vintage Brand's intention was not to destroy evidence, but to satisfy (in part) the University's request to permanently cease offering products bearing certain images. In fact, the University's proposed permanent injunction makes clear that the University wants Vintage Brand to certify permanent destruction of all digital images subject to injunction, as such destruction would be an effective way to prevent future use of that image. Doc. 342-1. In other words, the University characterizes the permanent deletion of the digital file that comprised the Pozniak Lion image as bad faith, but that is exactly what the University wants the Court to order in the University's proposed injunction. As for the "external

14

evidence" that the University relies upon as showing "links to the VB website featuring merchandise with the Pozniak Lion after this lawsuit was filed," the University's Ex. B does *not* depict any images of the Pozniak Lion. *See* Doc. 345-4.

The University also asserts that it "pressed for disclosure" of information regarding sales of products bearing the Pozniak Lion Logo. Doc. 345 at 15. In reality, the University's "discovery deficiency" letter mentions the Pozniak Lion once, in reference to "RFP 45." Fetters Decl. ¶ 25. RFP 45 relates to acquisition of Vintage Brand's memorabilia collection, not Vintage Brand's sales data. *Id.*; Doc. 345-5 at 7. Accordingly, Vintage Brand's response (the "Responsive Discovery Letter") focused on the memorabilia collection. *See* Fetters Decl. ¶ 25; Doc. 345-5 at 7. The Responsive Discovery Letter went on to provide additional contextual information beyond what was requested in RFP 45, including that Vintage Brand sold two products bearing the 1978 Pozniak Lion artwork. Fetters Decl. ¶ 26; Doc. 345-5 at 8.

At the time the Responsive Discovery Letter was prepared, Defendants' counsel was under the impression that the 1978 Pozniak Lion artwork was identified by Vintage Brand as Asset ID No. 4,851 and failed to appreciate that the 1978 Pozniak Lion artwork was identified by Vintage Brand with Asset ID number No. 6,268. *Id.* ¶¶ 28–29. To the extent that the Responsive Discovery Letter created any misimpression as to Vintage Brand's total sales associated with the Pozniak Lion

design, that misimpression was inadvertent and quickly dispelled *six days later* when Mr. Hartvigson explained in a deposition that the Pozniak Lion design was associated with Asset ID No. 6,268. *Id.* ⫫ 30.

### 4. Defendants did not engage in litigation misconduct with respect to Mr. Hartvigson's deposition.

The University's description of the parties' conflict regarding the initial deposition of Sportswear does not provide the full picture. *See* Doc. 345 at 16. Upon the Court's review of the more complete sequence of events, Defendants are confident that the Court will conclude that Defendants' actions are not consistent with the kind of conduct that would merit finding this case "exceptional."[11]

On August 26, 2022, at the time that the University served a subpoena on Sportswear for deposition testimony, Sportswear was not yet a party to the lawsuit, and the University had already taken the depositions of Vintage Brand and of Mr. Hartvigson in his personal capacity.[12] Fetters Decl. ⫫⫫ 13–15. In response to the subpoena to Sportswear, Sportswear's counsel served on the University's counsel a letter (the "Objection Letter") on September 7, 2022, identifying Mr. Hartvigson as Sportswear's corporate designee and raising objections to some of the topics

---

[11] While the Court ultimately ruled in the University's favor with respect to moving forward with the Sportswear deposition, the Court declined to award fees and costs.

[12] The University's counsel also took two depositions the day of and the day before the Sportswear deposition on September 13, 2022, Fetters Decl. ⫫ 24, though the University's counsel previously suggested to the Court that the only reason they traveled to Seattle was for the Sportswear deposition. *See* Doc. 51 at 1.

included in the subpoena to Sportswear, namely those topics that sought "information outside of Sportswear's custody and control and [were] more appropriately directed to Vintage Brand." *Id.* ⁋⁋ 17–22, Ex. M. Sportswear's counsel noted that it looked "forward to conferring with [the University] regarding [these] matters . . . and would prefer to resolve any disagreements, if possible, without court involvement." *Id.* ⁋ 22, Ex. M. Despite Rule 30(b)(6)'s requirement that "the serving party and the organization must confer in good faith about the matters for examination," the University failed to confer with Sportswear on the matters for examination. *Id.*

When the Sportswear deposition occurred, counsel for the University began to inquire of Sportswear about information beyond the scope of Rule 30(b)(6): "The persons designated must testify about information known or reasonably available to *the organization*." Fed. R. Civ. P. 30(b)(6). Sportswear's counsel did not instruct Mr. Hartvigson to disclaim knowledge as the University contends. Rather, Sportswear's counsel instructed Sportswear to "answer all questions and answer them truthfully," about "anything that is in Sportswear's knowledge." Ex. N (Hartvigson Dep. Tr.) at 37:12–14; *see also id.* 31:17–19, 27:9–12. Thus, Sportswear's Objection Letter clearly set forth the basis for the objections that were asserted during the initial deposition of Sportswear.

The Sportswear deposition was ultimately terminated. Sportswear's counsel made clear, on the record, that the objections and termination of the deposition were based on the grounds set forth at Rule 30(d)(3). *Id.* at 37:21–23 (explaining that Rule 30 permits a deponent to "seek termination of the deposition and seek court relief because the questions are outside of the scope."); Fetters Decl. ⁋ 23. Sportswear's position was that it was not proper to take a second deposition of Vintage Brand or a second deposition of Mr. Hartvigson, personally, under the auspices of a subpoena to then non-party Sportswear. *See* Rule 30(a)(2)(A)(ii) (requiring a court order to re-depose a witness previously deposed in the same case); *see also* Fetters Decl. ⁋ 19, ⁋ 23. The Court ordered Sportswear to sit for another deposition—which it did—but Sportswear's actions were taken in good faith.

**5. Defendants did not engage in litigation misconduct with respect to their antitrust defense or cancellation counterclaim.**

The University argues that Defendants advancement of its antitrust-based affirmative defense and cancellation counterclaim were wasteful, but this argument lacks merit.[13] In preparing for trial, counsel must make tactical decisions as to which aspects of a case to highlight and which defenses to rely upon during the limited time

---

[13] The University cites *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-946, 2017 WL 3534993, at *1–4 (E.D. Pa. Aug. 17, 2017), Doc. 345 at 17–18, but that court ultimately determined that the fifteen discovery-related opinions and orders the court issued were *not* indicative of unreasonable conduct by one party or the other where both sides "seemed to believe earnestly in the correctness of their positions."

they have with the jury. For example, where multiple defenses are at issue in a complex case, a defendant might choose to focus the jury's attention on fewer defenses. For another example, where multiple defendants have been sued, a plaintiff might choose to narrow the lawsuit to fewer defendants. Here, the University decided not to continue with prosecuting its case against Erik Hartvigson and Michelle, individual defendants, in September 2024, after advancing its claims for several years. *See* Doc. 249.

Defendants' decision not to pursue its antitrust argument as a separate affirmative defense was a legitimate tactical decision and not one made in bad faith. The University falsely claims that "the first time" that Defendants informed Penn State that they would no longer be pursuing that affirmative defense was *after* the Court denied the University's motion in *limine* on that defense and "on the eve of trial." Doc. 345 at 17. According to the University's own filing, the University was aware of Defendants' decision at least as early as October 18, 2024, when the University observed that Defendants did not propose instructions on antitrust and told the Court that "Defendants' counsel confirmed Defendants are no longer pursuing" the antitrust affirmative defense. Doc. 276 (Plaintiff's Notice of Supplemental Authority) at 1–2; *see also* Doc. 266 (Defendants' Proposed Jury Instructions), 267 (Defendants' Proposed Verdict Form). The Court denied the University's motion in *limine* on November 4, 2024, Docs. 295–296, and then on

19

November 9, 2024, the University notified the Court that "Defendants have now *repeatedly* confirmed, including via email today, that they are not pursuing an antitrust defense at trial." Doc. 302 at 2 (Plaintiff's Corrected Notice of Remaining Disputes in Advance of Trial) (emphasis added). Needless to say, the University was obviously well aware prior to "the eve of trial" that Defendants were not going to assert antitrust as a standalone affirmative defense.

This Court's decision to deny the University's motion *in limine* on the antitrust issue further supports the conclusion that the antitrust defense was viable, i.e., Vintage Brand had a good faith basis for initially pursuing that defense. *See* Doc. 295 at 54 ("The Court therefore finds that Vintage Brand's affirmative defense is legally valid."); *see also* Ex. P at 24:24–25:1.[14]

The University's statement that "Defendants failed to prosecute" its counterclaim is similarly baseless. Defendants asked, and the Court agreed, to take judicial notice of the state seal, and the Court ultimately found there was sufficient evidence to put the cancellation question to the jury. *See* Doc. 335 at 5. Defendants' decision to focus its trial resources on its defenses rather than its counterclaim is not unreasonable litigation conduct.

---

[14] *See Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2024 WL 3888772, at *32 (N.D. Ill. Aug. 20, 2024) (holding that abandonment of affirmative defenses did not rise to the level of "exceptional" conduct where there was no evidence of improper motive).

**6. There is no need to deter Defendants.**

The University accuses Vintage Brand and Mr. Hartvigson of disregarding the University's rights, but in fact the Vintage Brand web pages the University suggests were viewable online were activated in August or September 2024 to comply with the University's request for new sample products for use at trial. Ex. A (Hartvigson Decl.) ⁋ 4. Mr. Hartvigson was not aware that any Vintage Brand products featuring artwork related to the University were viewable online as of November 2024. *Id.* ⁋ 6. Upon being alerted to the issue, Mr. Hartvigson investigated and determined that this was the result of Vintage Brand activating certain design files to create new sample products for use at trial. *Id.* ⁋⁋ 4–6. Vintage Brand inadvertently missed some of the design files in its deactivation process. *Id.* ⁋ 6. That oversight has now been corrected. *Id.* ⁋ 7. In other words, the University has failed to establish a need for deterrence.[15]

## III.   CONCLUSION

For the foregoing reasons, the Court should deny the University's motion.

---

[15] Even if there was a demonstrated need for deterrence, deterrence alone does not warrant granting a motion for attorney's fees. *Dasso Int'l, Inc. v. Moso N. Am., Inc.*, No. 17-CV-1574, 2023 WL 5349374, at *24 (D. Del. Aug. 21, 2023).

Dated:  December 17, 2024          Respectfully submitted,

By: */s/ Valerie A. Walker*_____

    Valerie A. Walker, Esq., *pro hac vice*
    John T. Fetters, Esq., *pro hac vice*
    Leslie Vander Griend, Esq., *pro hac vice*
    Joshua D. Harms, Esq., *pro hac vice*
    Washington I.D. Nos. 52584, 40800,
    55679, 28090
    STOKES LAWRENCE, P.S.
    1420 Fifth Avenue, Suite 3000
    Seattle, Washington 98101
    Phone:   (206) 626-6000
    Fax:      (206) 464-1496
    Valerie.Walker@stokeslaw.com
    John.Fetters@stokeslaw.com
    Leslie.VanderGriend@stokeslaw.com
    Joshua.Harms@stokeslaw.com


    Mark P. McKenna, Esq., *pro hac vice*
    Illinois I.D. No. 6272699
    LEX LUMINA PLLC
    745 Fifth Avenue, Suite 500
    New York, New York 10151
    Phone:   (646) 898-2055
    Fax:      (646) 906-8657
    Mark@lex-lumina.com

    Mark H. Perry, Esq.
    PA Supreme Court I.D. Nos. 89205,
    68610
    POST & SCHELL, P.C.
    1717 Arch Street, 24th Floor
    Philadelphia, Pennsylvania 19103
    Phone:  (215) 587-1101
    Fax:      (215) 320-4159
    mperry@postschell.com
    *Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)</u>

I hereby certify that the foregoing brief complies with Local Rule 7.8(b) because it does not contain more than 5,000 words. This brief contains 4,988 words (not including the caption page, Table of Contents, Table of Citations, submission date and signature, Certificate of Compliance, or Certificate of Service) according to the word count feature of the word processing software used to prepare this memorandum.

Dated:  December 17, 2024        By: */s/ Valerie A. Walker*
                                 Valerie A. Walker, Esq., *pro hac vice*
                                 Washington I.D. No. 52584
                                 STOKES LAWRENCE, P.S.
                                 1420 Fifth Avenue, Suite 3000
                                 Seattle, WA 98101
                                 Phone:   (206) 626-6000
                                 Fax:      (206) 464-1496
                                 Valerie.Walker@stokeslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 17th day of December, 2024, which constitutes service on Plaintiff pursuant to Fed. R. Civ. P. 5(b)(2)(E):

>Courtney S. Schorr, Esquire
>McGuire Woods LLP
>Tower Two-Sixty
>260 Forbes Avenue, Suite 1800
>Pittsburgh, PA  15222-3142

>Claire H. Eller, Esquire (admitted pro hac)
>Lucy J. Wheatley, Esquire (admitted pro hac)
>Matthew G. Rosendahl, Esquire (admitted pro hac)
>David E. Finkleson, Esquire (admitted pro hac)
>McGuire Woods LLP
>Gateway Plaza
>800 East Canal Street
>Richmond, VA  23219-3916

>Jessica S. Maupin, Esquire (admitted pro hac)
>McGuire Woods LLP
>2000 McKinney Ave., Suite 1400
>Dallas, TX 75201

>Attorneys for The Pennsylvania State University

Dated:  December 17, 2024    By: */s/ Valerie A. Walker*
    Valerie A. Walker, Esq., *pro hac vice*
    Washington I.D. No. 52584
    STOKES LAWRENCE, P.S.
    1420 Fifth Avenue, Suite 3000
    Seattle, WA 98101
    Phone:   (206) 626-6000
    Fax:     (206) 464-1496
    Valerie.Walker@stokeslaw.com

24