**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PENNSYLVANIA STATE UNIVERSITY, | No. 4:21-CV-01091 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| VINTAGE BRAND, LLC; SPORTSWEAR, INC., d/b/a PREP SPORTSWEAR; and CHAD HARTVIGSON, | |
| Defendants. | |

## MEMORANDUM OPINION

### JUNE 25, 2025

This trademark dispute originated over Vintage Brand, LLC ("Vintage Brand"), Sportswear, Inc. ("Sportswear"), and Chad Hartvigson's (collectively "Defendants") use of certain of The Pennsylvania State University's ("Penn State") trademarks. After a motion to dismiss, dueling motions for summary judgment, and numerous motions *in limine*, this matter proceeded to trial, where a jury concluded that Defendants had willfully violated Penn State's trademarks.

Penn State now moves for the imposition of a permanent injunction and for an award of attorneys' fees, while Defendants move to vacate the Clerk of Court's taxation of costs against Defendants. Given the presumption of irreparable harm that applies after a finding of trademark infringement, and because the balance of equities

and other considerations tip in favor of a permanent injunction, the Court will enter such an injunction here. However, this Court concludes that an award of attorneys' fees is not warranted. This case, although exceptional in many ways as it included complex, colorable, and somewhat novel legal defenses, was not litigated by Defendants in an exceptional manner that would support such an award. Finally, because Penn State is the prevailing party, taxation of costs is appropriate.

## I.    BACKGROUND

In 2022, Penn State filed a second amended complaint alleging that Defendants had: (1) willfully infringed on Penn State's trademarks in violation of 15 U.S.C. § 1114 (Count One);[1] (2) sold and marketed counterfeit products in violation of Sections 1114, 1116(d), and 1117 (Count Two);[2] (3) unfairly competed and falsely designated Penn State as the source of Vintage Brand's products in violation of Section 1125(a) (Count Three);[3] (4) falsely advertised and endorsed its products' affiliation with Penn State in violation of Section 1125(a) (Count Four);[4] diluted Penn State's trademarks in violation of Section 1125(c) and 54 Pa. C.S. § 1124 (Counts Five and Six, respectively);[5] and (7) infringed on Penn State's common-law trademarks (Count Seven).[6]

---

[1] Doc. 67 ¶¶ 99-105. Specifically, Penn State alleges that Vintage Brand infringed on its PENN STATE, TPSU, Nittany Lion Logo, Pozniak Lion Logo, and Penn State Seal marks. *Id.*

[2] *Id.* ¶¶ 106-12.

[3] *Id.* ¶¶ 113-16.

[4] *Id.* ¶¶ 117-25.

[5] *Id.* ¶¶ 126-34 (Count Five), 135-40.

[6] *Id.* ¶¶ 141-45.

Much of the relevant history and the facts related to the underlying dispute was outlined in some detail in this Court's summary judgment Memorandum Opinion addressing the competing motions for summary judgment and to exclude certain expert opinions.[7] Because most of those facts are not directly relevant to the pending motions, they will not be repeated here.

Based on the facts underlying this matter, in February 2024, this Court granted in part and denied in part the parties' competing motions for summary judgment; granted Defendants' motion to exclude expert opinions while denying Penn State's motion to exclude expert opinions; and granted in part and denied in part Defendants' motions to strike while granting in part and denying in part Penn State's motion to strike—leaving Penn State with claims for Trademark Infringement and Unfair Competition (Counts One, Three, and Seven).[8] After unsuccessful negotiations, this matter proceeded to trial and, in preparation for that, the parties filed numerous motions *in limine*, some of which were granted, and some of which were denied.[9]

Following a six-day jury trial, the jury determined that Defendants had willfully violated Penn State's trademark[10] and awarded Penn State $28,000 in

---

[7]    *See* Doc. 194.
[8]    Docs. 194, 195.
[9]    *See* Docs. 295, 296.
[10]   Excluding Sportswear as to THE PENNSYLVANIA STATE UNIVERSITY trademark. Doc. 335 at 2.

compensatory damages.[11] The Clerk of Court entered judgment accordingly, followed by an Order taxing certain costs against Defendants.[12]

Penn State thereafter filed a motion to amend the judgment.[13] Penn State argues that it is entitled to a permanent injunction enjoining Defendants from using any Penn State trademarks at issue in this case, as it has suffered irreparable injury, other remedies are inadequate, the balance of hardships favors and injunction, and the public interest would be served by a permanent injunction.[14] It also filed a motion for attorneys' fees related to this case, asserting that, for several reasons, this case is an exceptional one that warrants the imposition of such fees.[15] Defendants filed their own motion to vacate the costs taxed, contending that Penn State does not qualify as a prevailing party, the Court should exercise its discretionary power to deny such an award, or the award should be reduced as some costs are not taxable.[16]

As explained below, the Court concludes that the relevant factors weigh in favor of the imposition of permanent injunction, and Penn State's motion will therefore be granted, with some modifications to the proposed injunction. However, Vintage Brand's conduct in litigating this matter was, on the whole, reasonable, and

---

[11] *See* Doc. 335.
[12] Docs. 337, 359.
[13] Doc. 342.
[14] Doc. 343.
[15] Docs. 344, 345.
[16] Docs. 360, 361.

attorneys' fees therefore will not be awarded. Finally, the Clerk of Court's Order taxing costs will stand.

## II.     DISCUSSION

### A.     Motion for a Permanent Injunction

Penn State first argues that it is entitled to a permanent injunction enjoining Defendants from using any Penn State trademarks at issue in this case, as Penn State has suffered irreparable injury, other remedies are inadequate, the balance of hardships favors and injunction, and the public interest would be served by a permanent injunction.[17]

As to irreparable harm, Penn State points out there is a presumption of irreparable harm following a finding of trademark infringement.[18] It contends that Defendants cannot overcome this presumption because there was testimony at trial that Defendants' activities resulted in harm to Penn State's reputation and goodwill, and harm from direct competition between Defendants and Penn State's authorized licensees.[19] Penn State further argues that other remedies are inadequate to compensate Penn State, as Defendants could continue infringing at a moment's notice.[20]

---

[17] Doc. 343.
[18] *Id.* at 12-13.
[19] *Id.* at 13-15.
[20] *Id.* at 15-16.

With respect to the balance of hardships, Penn State asserts that Defendants would face little harm as they have no legal right to use the trademarks and have no excess inventory, while Penn State would be harmed through loss of reputation, lost goodwill, and lost licensing fees.[21] Finally, Penn State urges that an injunction is in the public interest, since it would prevent confusion, and there is no public interest in permitting Defendants to continue selling infringing goods.[22]

Defendants respond that an injunction is not warranted because monetary damages are sufficient to compensate Penn State, and therefore there is no irreparable injury.[23] Alternatively, they assert that, even if an injunction is warranted, the injunction requested is overbroad for two reasons.[24] First, although Penn State expressly disclaimed that its complaint encompassed various images used by Defendants, it now seeks an injunction that would prohibit the use of any Penn State trademark in any manner.[25] Second, the proposed injunction is overbroad as it would cover images not contested in this case and images that may lawfully be used, and would impact Defendants' entire business model.[26] Moreover, barring the use of "substantially similar" marks would leave Defendants without any way of determining what may or may not be infringing conduct.[27] Consequently,

---

[21] *Id.* at 16-19.
[22] *Id.* at 19-20.
[23] Doc. 354 at 5-9.
[24] *Id.* at 9-20.
[25] *Id.* at 9-18.
[26] *Id.* at 18-20.
[27] *Id.* at 20-23.

Defendants argue, any injunction should be tied to the images contained within the Second Amended Complaint, or images that consist of more than one Penn State trademark or the S-Lion Logo.[28] Finally, Defendants assert that enhanced disclaimers in lieu of an injunction may be sufficient.[29]

The issuance of a permanent injunction is "entrusted to a court's equitable discretion, [and therefore] an injunction 'does not follow from success on the merits as a matter of course.'"[30] To obtain a permanent injunction, a party "must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest."[31] While courts must "consider these factors holistically, the inability to show irreparable harm—or, relatedly, that a legal remedy would be inadequate—defeats a request for injunctive relief."[32]

"The first two elements typically constitute two sides of the same inquiry, for the availability of adequate monetary damages belies a claim of irreparable injury."[33]

---

[28] *Id.* at 23-26.

[29] *Id.* at 26-28.

[30] *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)).

[31] *Id.* (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

[32] *Id.*

[33] *Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 442 (3d Cir. 2019).

Importantly, however, when a plaintiff in a Lanham Act case has proven trademark infringement, it "shall be entitled to a rebuttable presumption of irreparable harm."[34]

An analysis of those factors supports the imposition of a permanent injunction. First, Penn State has established the existence of irreparable injury. As just noted, because the jury found that Defendants infringed upon Penn State's marks,[35] there is a rebuttable presumption of irreparable injury.[36] Moreover, there was some testimony at trial that Penn State enjoys a positive reputation and goodwill related to its licensed merchandise, and that Vintage Brand's products do not meet Penn State's expectations related to quality.[37]

Second, as the United States Court of Appeals for the Third Circuit has observed, "[a] finding of infringement or the likelihood of confusion with the concurrent use of the infringed trademark implicitly signifies a loss of expectation and goodwill."[38] The Third Circuit went on to explain that "[t]he infringement amounts to borrowing the senior user's reputation and goodwill, which is an injury in and of itself, even without evidence of actual loss of goodwill."[39] And it is well

---

[34]  15 U.S.C. § 1116(a).
[35]  Doc. 335.
[36]  15 U.S.C. § 1116(a).
[37]  Doc. 347 at 133-35.
[38]  *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 131 (3d Cir. 2004).
[39]  *Id.*

established that grounds "for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."[40]

Defendants' infringement presumptively resulted in the coopting of Penn State's reputation and goodwill, which sufficiently demonstrates irreparable injury when coupled with the evidence received at trial. Relatedly, because a loss of control of Penn State's reputation and the loss of goodwill constitute irreparable injury, monetary remedies are insufficient, and no remedy other than an injunction is likely to remedy those injuries. Penn State has therefore demonstrated both irreparable injury and that no other remedy available at law could adequately remedy those injuries.

Turning to the third factor, the balance of hardships also favors the imposition of a permanent injunction. The purpose of this balancing test is "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner."[41] As courts within this circuit have noted, "'[t]he balance of hardships weighs strongly in favor of an injunction where all that is requested is that Defendant comply with the law and abstain from infringing."[42]

---

[40] *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 378 (3d Cir.1992)).

[41] *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004).

[42] *Richardson v. Cascade Skating Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 833319, at *5 (D.N.J. Mar. 21, 2022) (quoting *Warner Bros. Records Inc. v. Walker*, 704 F.Supp.2d 460, 469 (W.D. Pa. 2010)) (brackets omitted).

Here, Defendants' conduct has been found by a jury to be infringing, and a permanent injunction would require only that they stop violating the Lanham Act, which weighs in Penn State's favor.[43] Failing to issue an injunction would harm Penn State financially through lost licensing revenue, and would result in potential deterioration of its goodwill and harm to its reputation if, as one witness testified at trial, Vintage Brand produces goods that some would consider inferior to those produced by Penn State licensees.

Of course, Vintage Brand would be harmed by the imposition of a permanent injunction, although any harm is lessened by the fact that it operates a print-on-demand model of production. Vintage Brand will undoubtedly lose sales as a result of any injunction. But because of Vintage Brand's print-on-demand model, it can "can continue the unhindered sale of its product" so long as those products do not contain infringing Penn State trademarks.[44] Even though Defendants will suffer some financial losses from a permanent injunction, they "openly, intentionally, and illegally appropriated [Penn State's] marks, despite being warned not to. By virtue of this recalcitrant behavior, [Vintage Brand] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon

---

[43] *Cf. Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769-70 (D.N.J. 2018) ("The Court finds a balance of the hardships weighs in favor of granting a preliminary injunction when the only harm is precluding, at least temporarily, a defendant from the sale of an infringing article"), *aff'd*, 931 F.3d 215 (3d Cir. 2019).

[44] *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

10

itself."[45] Consequently, the third factor also weighs in favor of the imposition of a permanent injunction.

Finally, an injunction would not disserve the public interest. The Third Circuit has stated that "the most basic public interest at stake in all Lanham Act cases . . . [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy."[46] Where there is a likelihood of confusion, "it follows that if such use continues, the public interest would be damaged. Conversely, a prohibition upon defendant's use of its mark would eliminate that confusion."[47] Based on the evidence presented at trial and the jury's verdict, Defendants have created a likelihood of confusion through their use of Penn State's trademarks, and this factor weighs in favor of an injunction.[48]

All four factors therefore militate in favor of the imposition of a permanent injunction. This leaves only the question of how broad the injunction should be. Defendants insist that the injunction should be narrow because: (1) Penn State limited its claims during trial by only presenting certain infringing images; (2) the requested injunction would create a per se rule against use of trademarks, which this Court has already rejected; (3) Penn State can be monetarily compensated if any

---

[45]  *Id. See* Doc. 335 at 6 (jury verdict finding that infringement was willful).
[46]  *Kos Pharms.*, 369 F.3d at 730.
[47]  *Id.* (brackets and internal quotation marks omitted).
[48]  Notably, Vintage Brand does not appear to contest this factor.

future infringement occurs in grey areas; and (4) a broad injunction would impact Vintage Brand's entire business model.[49]

Many of these arguments fail on their merits. First, as to Defendants' contention that Penn State explicitly limited its complaint to certain images, that is inaccurate. Defendants acknowledge that the second amended complaint specifically states that the images used are representative only.[50] And, as Penn State explains, its opposition to Defendants' attempt to present to the jury numerous images used by Vintage Brand was not based on a concession that some of the images were non-infringing: it opposed Defendants' efforts "to recast Penn State's claims as focusing on entire 'images' rather than the Penn State Marks" that formed the core of its complaint.[51]

Second, Defendants' "per se" argument is incorrect. The per se approach rejected by the Court was the legal conclusion that any use of a trademark always identified the trademark holder as the source or sponsor of the relevant good.[52] But here, after conducting a fact-intensive inquiry, the jury concluded that Defendants' use of Penn State's trademarks confused consumers as to the source or sponsor of the relevant goods. Prohibiting such use is therefore consistent with the jury verdict, not with a per se approach.

---

[49] Doc. 354 at 18-28.
[50] *Id.* at 13. *See also* Doc. 67 ¶¶ 79, 86 (noting that images are "representative samples").
[51] Doc. 357 at 16-17.
[52] *See* Doc. 43 at 9-10.

Third, Defendants' argument that monetary payments may compensate for any future infringement in legal grey areas may be summarily rejected based on the fact that Penn State's loss of goodwill or control over its reputation constitutes irreparable harm that cannot be compensated by a monetary award. With respect to the impact on Vintage Brand's business model, such an argument relates more to the balance of hardships analysis. A jury has found that Vintage Brand's business model infringed upon Penn State's trademark; the impact that a properly imposed injunction may have on Vintage Brand's business model is not relevant at this stage of the inquiry.

In addition to those four arguments, Defendants present their most cogent argument: that the proposed injunction's prohibition on the use of anything that is "substantially similar" to Penn State's trademarks is overbroad and confusing.[53] Penn State requests an injunction that would prevent Defendants from using "the Penn State Word and Logo Trademarks, or words, phrases, designs or parts of designs that are substantially similar thereto."[54]

It is firmly established that any injunction must be narrowly tailored and "cannot be broader than necessary to restrain the unlawful conduct."[55] Relatedly, "'[s]ince an injunctive order prohibits conduct under threat of judicial punishment,

---

[53] Doc. 354 at 20-26.
[54] Doc. 342-1 at 2.
[55] *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 545 (3d Cir. 1986) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 & n. 67 (1982)).

basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.'"[56] Stated differently, "an injunction ought not leave too much guesswork for the Defendants to determine if they are engaging in activities that violate the injunction; it cannot be little more than a recitation of the law."[57]

Defendants assert that the inclusion of the term "substantially similar" is problematic, as it leaves too much guesswork as to what may be substantially similar to a Penn State trademark.[58] Penn State does not attempt to explain what is meant by "substantially similar" or delineate the outer bounds of that phrase.[59] Instead, it argues that Defendants must understand the meaning of that phrase because they responded in discovery to a request for any designs that were "confusingly similar to" the Penn State marks.[60] Penn State further asserts that such phrasing is permissible because, without it, Defendants "could sidestep the bounds of any injunction by making small design tweaks" and because infringers must take extra care to avoid future infringement.[61]

While Penn State's point regarding side-stepping any court order is well taken, it ignores the fundamental requirement that those subject to injunctions must be made plainly aware of what conduct is prohibited. As the Third Circuit has

---

[56] *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 388 (3d Cir. 2021) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

[57] *Id.* (brackets and internal quotation marks omitted).

[58] Doc. 354 at 20-23.

[59] Doc. 357 at 20-22.

[60] *Id.* at 21.

[61] *Id.* at 21-22.

explained, Federal Rule of Civil Procedure 65(b) requires specificity in injunctions due to "concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." [62] Courts "must protect that which is protectable, but, in doing so, we must limit the use of injunctive relief to situations where it is necessary to prevent immediate and irreparable injury."[63]

The Court is concerned that the phrase "substantially similar" may be sufficiently ambiguous such that it does not give precise notice of what specific conduct is prohibited. This is especially true given that two of Penn State's trademarks—Lion Shrine Logo Two and Pozniak Lion Logo—consist only of representations of a mountain lion. It may be difficult to parse how similar or dissimilar an image of a mountain lion must be to cross the threshold into being "substantially similar" to those trademarks.

Penn State asserts that Defendants must understand the definition of "substantially similar" because they responded to discovery requests for designs used by Vintage Brand that were "confusingly similar" to Penn State marks, but there is a gulf of difference between those two phrases. And even if there were no practical difference between those phrases, there is a difference between a defendant being overly cautious and submitting anything that may qualify as confusingly

---

[62] *Mallet*, 16 F.4th at 389.
[63] *Id.*

similar during discovery, and an injunction that limits an entity's First Amendment rights by implementing potentially vague language regarding substantial similarity.

Moreover, it does not appear that such language is actually necessary to protect Penn State's rights in its trademarks. In a lawsuit filed by Baylor University, Vintage Brand and Baylor University agreed to the entry of a permanent injunction.[64] Nowhere in that injunction is the term "substantially similar" used; rather, the parties agreed to prohibit Vintage Brand from using "any design that resembles Baylor's Sailor Bear mark, notwithstanding any differences in color orientation, or other minor visual elements."[65] This is a more precise definition, and would appear to both put Defendants on better notice of what is prohibited, while also protecting Penn State from Defendants simply making minor alterations to Penn State's trademarks and using those new designs to circumvent any injunction. The Court will therefore adopt such language in the injunction that will issue.

Finally, Defendants urge that, in lieu of an injunction preventing use of the Penn State trademarks, the Court should consider requiring enhanced disclaimers.[66] As Penn State correctly notes, Defendants include no proposed disclaimer language, nor do they cite to any evidence that such a disclaimer would actually prevent

---

[64]  *See Baylor University v. Vintage Brand*, LLC, No. 6:21-CV-00409, ECF No. 158 (W.D. Tx. Oct. 20, 2023).

[65]  *Id.* at 9.

[66]  Doc. 354 at 26-28.

confusion.[67] To the contrary, Defendants acknowledge that (1) Dr. Tülin Erdem found certain disclaimers were ineffective at dispelling confusion, and (2) the academic paper upon which they rely only indicates that "confusion is effectively reduced," not eliminated.[68]

The position advocated by Defendants also runs contrary to an aged, but still good, Third Circuit case. In *United State Jaycees v. Philadelphia Jaycees*, our Court of Appeals examined whether a district court abused its discretion in implementing an injunction that required the defendant cease using the trademark Jaycees unless such use was accompanied by a prominent disclaimer.[69] The Third Circuit held that the district court had abused its discretion for several reasons, notably holding "that a strong and fanciful mark is entitled to broad protection and . . . it is error to deny a broad injunction barring all use" of the trademark.[70] Although factual differences mean that *Jaycees* is not entirely controlling, the holding there—when considered in combination with the evidence from Dr. Erdem and lack of countervailing evidence indicating that any warnings would be effective—demonstrate that Defendants' requested compromise would be an abuse of discretion if implemented here. Consequently, this proposed compromise must be rejected.

---

[67] Doc. 357 at 23-26.
[68] Doc. 354 at 28.
[69] 639 F.2d 134, 141 (3d Cir. 1981).
[70] *Id.* at 143.

### B.    Motion for Attorneys' Fees

Penn State also moves for an award of attorneys' fees related to this case.[71] It argues that this case is an exceptional one that warrants the imposition of attorneys' fees for three reasons.[72] First, Penn State contends that Defendants acted in bad faith because (1) after suit was brought against Defendants, Vintage Brand removed the trademark symbol from the S Lion Logo that it used on its merchandise,[73] and (2) Defendants willfully infringed on Penn State's trademarks despite a pre-suit cease and desist letter.[74]

Second, Penn State asserts that Defendants' litigation conduct justifies an award of attorneys' fees, since: (1) Chad Hartvigson purportedly disregarded his own criteria for selecting images for use on Vintage Brand products;[75] (2) they made misrepresentations and engaged in stonewalling during discovery by claiming they had deleted all images of the Pozniak Lion Logo when products featuring that logo were available through Vintage Brand's website after the case was filed, and misrepresented the number of sales of items using that logo;[76] (3) Hartvigson, at the direction of counsel, refused to answer certain questions during his deposition;[77] and (4) Defendants made a late decision not to pursue certain defenses and counterclaims

---

[71] Doc. 344.
[72] Doc. 345.
[73] *Id.* at 7-9.
[74] *Id.* at 9-10.
[75] *Id.* at 10-13.
[76] *Id.* at 13-16.
[77] *Id.* at 16.

at trial—including an antitrust defense and counterclaim to cancel the University Seal, after these issues were litigated through summary judgment and motions *in limine*.[78]

Third, Penn State argues that this case is exceptional because Defendants need to be deterred from future willful infringement.[79] Specifically, Penn State believes that infringing merchandise was available for purchase from Defendants as of December 20, 2024.[80] This persistent infringement, Penn State argues, requires attorneys' fees as a deterrent measure.[81]

Defendants respond that attorneys' fees are not warranted because this is not an exceptional case, since Defendants litigated this case in a reasonable manner and engaged in good faith efforts to settle the dispute.[82] Defendants further dispute Penn State's allegations of unreasonable litigation conduct, asserting that, first, it accidentally removed the trademark symbol from the S Lion Logo during litigation but, by that point, it had already provided Penn State with samples that did have the trademark symbol.[83] Second, they contend that Hartvigson's alleged failure to adhere to certain criteria in selecting historical images for use on Vintage Brand products is not relevant to whether this is an exceptional case.[84]

---

[78] *Id.* at 17-18.
[79] *Id.* at 19-20.
[80] *Id.* at 19; Doc. 356 at 5-8.
[81] Doc. 345 at 20.
[82] Doc. 353 at 5-9.
[83] *Id.* at 10-12.
[84] *Id.* at 12-18.

Third, Defendants assert that there was no litigation misconduct in deleting its Pozniak Lion design file, as they were attempting to comply with Penn State's request that they stop selling items bearing that logo, and Penn State has produced no evidence that items bearing that logo were actually available for sale by Defendants after this case was initiated. [85] Fourth, Defendants contest that Hartvigson's refusal to answer certain questions during his deposition makes this case exceptional, since during the deposition Penn State requested information beyond the control of Sportswear, which was not yet a party to this lawsuit.[86]

Fifth, Defendants argue that their late abandonment of certain defenses and counterclaims was not done in bad faith, as they merely made a tactical decision to drop some defenses to focus on others before the jury.[87] Finally, Defendants assert that there is no need to deter them from future infringement because items listed for sale on their websites was the result of Defendants reactivating design files to create sample products for trial, and that issue has been corrected.[88]

Turning to the merits of the motion, the "Lanham Act . . . permits the recovery of reasonable attorneys' fees only 'in exceptional cases.'"[89] The Third Circuit has explained that, pursuant to United States Supreme Court precedent, "a district court

---

[85] *Id.* at 18-20.
[86] *Id.* at 20-22.
[87] *Id.* at 22-24.
[88] *Id.* at 25.
[89] *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313 (3d Cir. 2014) (quoting 15 U.S.C. § 1117(a)).

may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"[90]

"Thus, it is within a court's discretion to find a case 'exceptional' based upon 'the governing law and the facts of the case,' irrespective of whether the losing party is culpable. For example, 'a case presenting exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.'"[91] "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'"[92] "The losing party's blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case," but culpability is not a requirement to award attorneys' fees."[93]

As an initial matter, Penn State does not argue that there was an unusual discrepancy in the merits of the positions taken by the parties.[94] In any event, there was no unusual discrepancy, as demonstrated by the fact that this matter survived summary judgment—indeed Defendants' motion for summary judgment was

---

[90] *Id.* at 315 (quoting (*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

[91] *Id.* at 314 (quoting *Octane Fitness*, 572 U.S. at 555 (ellipsis omitted)).

[92] *Id.* at 315 (quoting *Octane Fitness*, 572 U.S. at 555).

[93] *Id.*

[94] *See* Docs. 345, 356.

granted in part—and proceeded to trial.[95] Although Defendants were unsuccessful in defending this case, they presented a valid defense with which the jury ultimately did not agree.

The Court must turn then to the analysis of whether Defendants litigated this case in an unreasonable manner. In general, the Court believes Defendants have reasonably litigated this action. While there were discovery disputes, they were not overly laborious or frequent, and the case generally proceeded in good order. And, in the runup to trial, Defendants were sparing in their objections, appeared willing to concede issues that should be conceded, and reached compromises when appropriate—while Penn State largely took the opposite tack. Penn State litigated every issue conceivable, objecting—as Defendants point out—to approximately two-thirds of the deposition designations and counter-designations[96] and driving the charge conference to several hours, including a lengthy debate of a single paragraph of those instructions.

Beyond that, as noted above, Penn State points to a number of minor issues that it contends demonstrate that Defendants litigated this case in an unreasonable manner. However, these issues are either fairly minor or not truly issues at all.

First, Penn State complains about the fact that Defendants "altered key evidence in a transparent effort to conceal [their] bad-faith infringement" by

---

[95] *See* Docs. 194, 195, 212.
[96] Doc. 353 at 9 n.4.

removing the ™ symbol from the S Lion Logo that they used on their products.[97] It is undisputed that Defendants did take such action but, as they explain, inclusion of the ™ symbol was accidental, and it was removed well in advance of trial after Penn State pointed it inclusion out to Defendants.[98] Although Defendants' explanation is not entirely satisfactory, those actions may not even constitute spoliation, as Penn State urges. That is primarily because the evidence itself was not destroyed; prior to the deletion of the ™ symbol, Defendants produced samples of their products that bore the ™ symbol and turned them over to Penn State during discovery.[99]

Moreover, Penn State's suggestion that Defendants deleted the ™ symbol to conceal their bad faith infringement does not make sense—deleting the symbol could not possibly conceal infringement when Defendants had already provided Penn State with samples that bore the ™ symbol. Therefore, Defendants' actions may have been careless—maybe even reckless—but were not nefarious, and do not contribute significantly to whether this is an exceptional case.

---

[97] Doc. 345 at 7-9.

[98] Doc. 353 at 10-12.

[99] *Id.* at 10-11. The Court need not definitively decide whether such action constitutes spoliation. But the Third Circuit has held that producing only "facsimiles and photocopies" of a document rather than the original may, in certain circumstances, constitute spoliation where failure to produce the originals "would prevent discovering critical information." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). There is no evidence that such is the case here, and it would appear that Penn State was able to fully present its case to the jury using the sample products that contained the ™ symbol. Importantly, Penn State never moved for sanctions related to alleged spoliation of evidence.

As to the allegation that Defendants violated their own rules—as set forth by Hartvigson—for selecting images to use on their products,[100] this is not terribly relevant to whether this case is exceptional. To begin, the fact that Hartvigson may not always have followed his own rules for selecting images prior to litigation has nothing to do with how this litigation was prosecuted. Moreover, while Penn State points to three images that did not fit Hartvigson's criteria,[101] Vintage Brand has more than 25,000 images in its collection.[102] Three images out of 25,000 equates to .00012 percent of total images that do not align with Hartvigson's criteria, which is essentially a rounding error. And while Penn State makes much of Defendants' use of a lion image that was reproduced on a modern sticker,[103] Hartvigson explained during trial that, while the sticker itself was new, the image was historical and dated, he believed, from between 1950 and 1954—and the history behind the image itself is why he used acquired it for Vintage Brand.[104]

With respect to the deletion of the Pozniak Lion file that Defendants possessed, Defendants assert that they "permanently deleted the digitally enhanced memorabilia image for the Pozniak Lion design to prevent that image from being inadvertently uploaded back onto the Vintage Brand website in the future."[105]

---

[100] Doc. 345 at 10-13.
[101] *Id.*
[102] Doc. 350 at 47.
[103] Doc. 345 at 12-13.
[104] Doc. 350 at 42-45.
[105] Doc. 353 at 18.

During the hearing on these motions, Defendants explained that it was necessary to delete that file and not others because they believed the Pozniak Lion Logo was still actively used by Penn State, while other images were not. Again, no harm appears to have come from Defendants' actions, and the deletion does not appear to have impacted this case in any way. And again, Defendants' actions are unusual, but do not render the case exceptional.

Further related to the Pozniak Lion Logo, Penn State asserts that Defendants stated that they had sold only 2 items bearing that image, when a subsequent investigation revealed that Vintage Brand had in fact sold 50 products bearing that image.[106] Defendants offer an innocent explanation for this discrepancy: counsel apparently attributed the wrong Asset ID Number—numbers that Vintage Brand uses to identify its various images—to the Pozniak Lion design, and therefore inadvertently reported the wrong sales numbers to Penn State.[107] This mistake, although yet again careless, does not seem to be malicious. Rather, this is the type of mistake that can, and often does, happen during litigation. Moreover, that error caused no lasting damage, as the misinformation was corrected by Defendants six days later.[108]

---

[106] Doc. 345 at 15.
[107] Doc. 353 at 19-20.
[108] *Id.*

Next, Penn State complains that counsel for Defendants once instructed Hartvigson not to answer questions during a deposition,[109] which necessitated a telephonic status conference call wherein this Court ordered that Hartvigson sit for another deposition and answer the challenged questions.[110] One discovery dispute does not make a case exceptional, particularly when Penn State is the only party in this litigation that has engaged in conduct that this Court has described as having been taken in "bad faith."[111] This simple discovery dispute does nothing to render this matter exceptional.

As to Penn State's contention that Defendants' decision to drop their pursuit of certain defenses and counterclaims renders this case exceptional,[112] that decision appears entirely reasonable. It is frequently the case that parties will pursue certain issues throughout litigation as a fallback position or as leverage in settlement negotiations. But, when trial inevitably arrives, parties must make decisions on whether to simplify and scale back its case before the jury.[113] Dropping certain defenses or counterclaims is both ordinary and appropriate and does not contribute to whether this case was extraordinary.

---

[109] Doc. 345 at 16.

[110] *See* Docs. 51 (letter detailing discovery dispute) and 60 (minute sheet detailing phone call).

[111] *See* Doc. 63 at 13 (describing Penn State's attempt to excise from its complaint allegations related to the Penn State Seal marks after the Court denied a motion to dismiss Vintage Brand's counterclaim seeking to cancel those marks as "constitut[ing] bad faith").

[112] Doc. 345 at 17-18.

[113] In fact, Penn State pursued claims against Erik Hartvigson and Michelle Young through the filing of motions *in limine*, only to drop claims against them in September 2024.

Finally, Penn State argues that this case is exceptional because Defendants continue to infringe on Penn State's marks to this day.[114] Defendants respond that, while Vintage Brand had listed items for sale as a result of reactivating design files to create sample products for trial and accidentally failed to remove those files after creating the samples, it has now corrected the issue.[115] Penn State notes in its reply brief that Defendants continue to infringe even after filing the response brief, as the Prep Sportswear website still sells items bearing the PENN STATE trademark.[116]

Defendants' explanation—that continued infringement occurred because of yet more carelessness or inadvertence—is plausible. But continued infringement is troublesome, as it indicates, at a minimum, that Defendants do not take this matter seriously enough to put forth sufficient effort to cease their infringing conduct. At the motions hearing, defense counsel was unable to offer a satisfactory reason why infringing items are still being advertised on Defendants' websites.

Nevertheless, while this conduct is troublesome, courts have held that continued infringement alone is insufficient to warrant attorneys' fees under the Lanham Act.[117] For example, the United States Court of Appeals for the Sixth Circuit observed in *Max Rack, Inc. v. Core Health & Fitness, LLC* that "a bright-line rule permitting fees if a defendant's intentional infringement continued after the

---

[114] Doc. 345 at 19-20.
[115] Doc. 353 at 25.
[116] Doc. 356 at 5-8.
[117] The Third Circuit does not appear to have weighed in on this issue.

plaintiff sued" would run contrary to "the Supreme Court's more flexible totality-of-the-circumstances approach to this inquiry."[118] For that reason, while continued infringement may be relevant to the question of whether a case is exceptional, that alone cannot justify attorneys' fees.[119]

If Defendants in fact continue to infringe upon on Penn State's trademarks, that would be quite concerning, although not in and of itself demonstrative of an exceptional case. But the seriousness of such action is mitigated by the fact that there is no evidence that infringing merchandise was sold to, or is capable of being purchased by, consumers. Penn State shows what it contends is the ability to purchase infringing goods on Defendants' websites,[120] but it is notable that Penn State never actually purchased any of those goods; had they, those infringing products would likely have featured prominently in the motions hearing and briefing. It is therefore not entirely clear whether infringing products were actually posted for sale by Defendants, or if these are simply glitches in their websites that have not been corrected. Accordingly, although Defendants possible continued infringement weighs in favor of finding that this is an exceptional case, the Court does not afford this action undue weight when considering the totality of the circumstances.

---

[118] 40 F.4th 454, 479 (6th Cir. 2022) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

[119] *Id.* Penn State cites to an unpublished Third Circuit case in arguing that continued infringement warrants attorneys' fees, but that case is easily distinguishable, as it involved the entry of default judgment after the defendant failed to appear in the case. Doc. 345 at 20 (citing *World Ent. Inc. v. Brown*, 487 F. App'x 758, 763 (3d Cir. 2012)).

[120] Doc. 356 at 8.

When viewed in totality, Penn State strings together a series of fairly innocuous events and occurrences in an effort to paint this case as extraordinary in nature. It is not, as Vintage Brand litigated this matter reasonably, while making occasional mistakes that often occurs during years-long litigation. The deletion of images or portions of images was careless but, ultimately, harmless, and the only other major issue—continued infringement—appears to be unintentional and isolated. These actions, when considered over the long arc of years-long litigation, simply do not render this case extraordinary in nature. Accordingly, Penn State's motion for attorneys' fees will be denied.

### C.    Motion to Vacate Costs Taxed

Finally, Defendants move to vacate the costs taxed by the Clerk of Court.[121] First, Defendants argue that Penn State does not qualify as the prevailing party for purposes of taxation of costs because this was a mixed judgment where Penn State lost four of its claims and only obtained a judgment of $28,000.[122] Second, Defendants assert that the Court should exercise its discretion and decline to award costs, as Penn State acted in bad faith during this case and litigated it in an

---

[121] Doc. 360.
[122] Doc. 361 at 5-7. Defendants further assert that taxation of costs is premature until the Court rules on the motion for a permanent injunction. *Id.* at 7-9. The Court has ruled on that motion, rendering this argument moot.

unreasonable manner.[123] Finally, Defendants contend that some costs within Penn State's cost bill are not properly taxable.[124]

Penn State responds that there is no doubt it is the prevailing party under Third Circuit precedent.[125] It further argues that the costs awarded should not be reduced, since the fees awarded are narrowly tailored to the costs required to obtain the jury verdict, and the only instance of bad faith on Penn State's part was narrow and occurred on an issue upon which it ultimately prevailed at trial.[126]

While litigants generally bear their own expenses in a lawsuit, "Congress [has] permitted a prevailing party to obtain reimbursement for a 'narrow' category of expenses 'that a federal court may tax as a cost under the discretionary authority found in [Federal Rule of Civil Procedure] 54(d).'"[127] "Among other things, the costs for service of process, transcripts, and copies may be awarded."[128] Rule 54(d) "creates the strong presumption that costs are to be awarded to the prevailing party."[129]

---

[123] *Id.* at 9-10.

[124] *Id.* at 10-11.

[125] Doc. 362 at 5-10.

[126] *Id.* at 10-11.

[127] *Knowles v. Temple Univ.*, 109 F.4th 141, 142-43 (3d Cir. 2024) (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) (brackets and internal citations omitted)).

[128] *Id.* at 143.

[129] *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d Cir. 2000) (internal quotation marks omitted).

Although an award of fees under Rule 54(d) is subject to equitable principles, "the losing party bears the burden of making the showing that an award is inequitable under the circumstances."[130] Two equitable factors should be considered:

> (1) the prevailing party's unclean hands, bad faith, dilatory tactics, or failures to comply with process during the course of the instant litigation or the costs award proceedings; and (2) each of the losing parties' potential indigency or inability to pay the full measure of a costs award levied against them.[131]

As to whether Penn State qualifies as a prevailing party within the meaning of Rule 54, "[t]he Supreme Court has given a 'generous formulation' to the term 'prevailing party,' stating that 'plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"[132] As the United States Supreme Court has explained, "'[t]he touchstone of the prevailing party inquiry must be the *material alteration of the legal relationship of the parties*.'"[133]

Under that definition, Penn State clearly qualifies as the prevailing party here. Not only did Penn State obtain a jury verdict in its favor as to the most consequential claims in this matter—those of trademark infringement—but it has now obtained a permanent injunction against Defendants. There can be no doubt that the imposition

---

[130] *Id.* at 462-63.

[131] *Id.* at 468.

[132] *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

[133] *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989)).

of a permanent injunction materially alters the legal relationship between the parties here and achieves a benefit for Penn State, as Defendants may no longer use Penn State's trademarks.[134]

Nor does the Court find any reason to exercise its discretion to deny an award of fees. First, the losing party's potential indigence disfavors an exercise of this Court's equitable powers, as Defendants do not contend that they are indigent.[135] Second, although Penn State did engage in some conduct that the Court viewed as having been taken in bad faith,[136] that action occurred relatively early in the case and related to a small portion of the litigation. Moreover, the costs requested by Penn State are unrelated to that bad faith act. The Court therefore determines that taxation of costs is appropriate, and Defendants' motion will be denied.[137]

## III.    CONCLUSION

In accordance with the above discussion, Penn State's motion to amend the Clerk's judgment is granted, its motion for attorneys' fees is denied, and Defendants' motion to vacate the costs taxed is denied.

---

[134] *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) ("we have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing party] test").

[135] The Third Circuit has stated that the indigency factor is "[t]he most important of these factors." *In re Paoli*, 221 F.3d at 463.

[136] *See* Doc. 63.

[137] Defendants assert that, to the extent costs were awarded for the daily delivery of a transcript, that should be excised from any award. Doc. 361 at 11 (citing Doc. 355-4 at 12). After reviewing the costs awarded for transcripts, it does not appear that these costs were awarded to Penn State.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge